Eric H. Gibbs (State Bar No. 178658)
ehg@girardgibbs.com
Dylan Hughes (State Bar No. 209113)
dsh@girardgibbs.com
Geoffrey A. Munroe (State Bar No. 228590)
gam@girardgibbs.com
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, California  94108
Telephone:  (415) 981-4800
Facsimile:   (415) 981-4846

Norman E. Siegel
siegel@stuevesiegel.com
Todd Hilton
hilton@stuevesiegel.com
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, MO 64112
Telephone: (816) 714-7100
Facsimile: (816) 714-7101

Co-Lead Interim Class Counsel

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL PARKINSON, et al., on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>    v.<br><br>HYUNDAI MOTOR AMERICA, INC., a California Corporation,<br><br>                    Defendant. | Case No.  SACV 06-345 AHS (MLGx)<br><br>**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DEFENDANT'S FURTHER RESPONSES TO DOCUMENT REQUESTS AND INTERROGATORIES**<br><br>Fact Discovery Cut-Off:  May 7, 2008<br>Pre-trial Conference: December 8, 2008<br>Trial Date: March 3, 2009<br><br>Hearing Date:  June 24, 2008<br>Hearing Time: 10:00 a.m.<br>Hearing Location:  Courtroom 6A,<br>411 West Fourth Street, Santa Ana, CA<br>Magistrate Marc L. Goldman |

As framed by the parties' Joint Stipulation, Plaintiffs' motion to compel raises two issues. The first is whether Hyundai, after orally representing that no documents have been withheld pursuant to its stated objections but refusing to commit its position to writing, should now be compelled to confirm in amended responses that it has fully complied with Plaintiffs' discovery requests. (*See* Joint Stipulation [Doc No. 78] at 5-156.) The second issue is whether Hyundai should be compelled to produce readily available repair data for the Hyundai Elantra, which will help establish whether the alleged flywheel system failures are a result of "driver behavior" and "road and traffic conditions," as Hyundai contends, or the result of an inherent defect specific to the 2003 Hyundai Tiburon GT. (*See* Joint Stipulation at 156-204.)

### 1. Hyundai Has An Obligation To Confirm In Writing That It Has Produced All Responsive Documents And Is Not Withholding Any Based On Its Stated Objections.

Under the Federal Rules of Civil Procedure, Hyundai was required to respond to Plaintiffs' document requests by either stating that it would produce the documents "as requested" *or* by objecting to the request. See Fed. R. Civ. Proc. 34(b)(2)(B). By both objecting and stating it will produce "non-privileged, responsive" documents (rather than documents "as requested"), Hyundai's responses "create[] an ambiguity as to whether some documents are being withheld on the basis of objections." Schwarzer, et al., Civil Procedure Before Trial, ¶ 11:1912.1 (The Rutter Group 2008) (noting that ambiguous responses like Hyundai's are a common source of discovery disputes); *see also* Fed. R. Civ. Proc. 34(b)(2)(C) (objections to only part of a request must specify the part).

Hyundai argues that it should not be required to amend its discovery responses to remove any ambiguity because it "has repeatedly disclosed orally and in writing that it is not withholding any documents on the basis of its objections." (*See* Joint Stipulation at 9.) It points to Rule 26(e) and its Advisory Committee's Note, which provides that there is "no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process, as when

1

a witness not previously disclosed is identified during the taking of a deposition or when an expert during a deposition corrects information contained in an earlier report." *See* Fed. R. Civ. P. 26, Advisory Committee's Note to 1993 Amendments, Subdivision (e); *Coleman v. Keebler Co.*, 997 F. Supp. 1102, 1107 (N.D. Ind. 1998) (obligation met where disclosures made as part of deposition testimony).

The problem is that Hyundai refuses to say, in writing, that (a) it has produced all the documents plaintiffs requested, and (b) it has not withheld any documents based on its objections. Nor has Hyundai testified at a deposition that it has produced all documents requested by Plaintiffs and has not relied on its stated objections to withhold any documents. Even now Hyundai is unwilling to confirm in writing that it is not withholding any documents based upon its objections. Instead, Hyundai insists—incorrectly and without reference to the record before the Court—that it *previously* stated as much in writing. (See Joint Stipulation at 3, 8, 9.) Were that the truth, Plaintiffs would not be moving to compel Hyundai to do so now.

Hyundai similarly insists—also incorrectly and without reference to the record—that "Plaintiffs acknowledge that Hyundai has stated in writing that it has produced all responsive documents and is not withholding any documents on the basis of its objections." (*See* Joint Stipulation at 8.) To the contrary, Plaintiffs say that Hyundai's statements were limited to a "telephone conference" and that this motion is motivated by Plaintiffs' concern that "Hyundai's verbal representation," through its counsel, is not binding. (*See* Joint Stipulation at 5-6.)

Hyundai's argument that it should not have to "undertake the burdensome task of supplementing each if its discovery responses so that they no longer contain any objections" is undermined by its own conduct. Rather than simply deleting its objections, printing out the revised responses, and mailing them to Plaintiffs' counsel, Hyundai instead chose the far more burdensome approach of instigating and then opposing a formal motion to compel. At this point, with Hyundai having remained coy about the meaning of its objections to the very end, Plaintiffs request that the Court order Hyundai

to do what it should have done in the first place, that is, formally withdraw its objections and confirm in plain language that it is has fully complied with Plaintiffs' document requests.[1]

### 2. Hyundai Should Be Compelled To Produce Comparative Failure Rate Data, Which Is Highly Probative Of An Inherent Defect Specific To The Tiburon's Flywheel System.

Hyundai's reported rates of warranty claims and sale of replacement parts for the 2003 Tiburon GT are dramatic and, in Plaintiffs' view, indicative of an inherent defect in the Tiburon's flywheel system. Hyundai has taken the position that these figures are not in themselves significant, however. Its designated representative has testified that a 25 percent warranty claims rate was "not necessarily" a high rate or cause for concern—though in his position as Hyundai's National Manager of Engineering and Design Analysis he could not identify any other instance where Hyundai parts failed at such a high rate, and Hyundai refuses to identify any such instance in response to Plaintiffs' interrogatory. (*See* Exhibit D[2] at 151-153; Joint Stipulation at 198.)

Hyundai previously argued that for Plaintiffs to prevail, they will have to establish standards by which reasonable consumer expectations can be set. (*See* Hyundai's Memorandum in support of Motion to Dismiss [Doc No. 39] at 5-6.) Put differently, Hyundai says Plaintiffs need to establish a baseline against which the Tiburon flywheel system data can be objectively measured. (*See id.* at 5.) Plaintiffs therefore asked Hyundai to produce failure data for the Hyundai Elantra, the same vehicle Hyundai itself

---

[1]   Hyundai prefaces its response by noting the timing of Plaintiffs' motion. (*See* Joint Statement at 6:25-26.) Presumably, Hyundai advances no argument based on timing because (1) Plaintiffs' motion is timely under the Courts' scheduling orders (see Exhibits E-F), and (2) Hyundai cannot demonstrate prejudice, particularly considering that any delay in the litigation process arose from the parties' agreement to keep litigation costs at a minimum during a lengthy and unfortunately unsuccessful formal mediation process.

[2]   All referenced exhibits are attached to the previously-filed Declaration of Dylan Hughes [Doc No. 79].

1  uses as a comparison for Tiburon flywheel system failures.  (*See* Exhibit G (where the 2.7
2  GKs are Tiburons, and the 2.0 XD is the Elantra.)  Hyundai refuses to produce the
3  Elantra data.  (See Joint Stipulation at 156-204.)  In other words, having argued that
4  Plaintiffs need a baseline, without which the Tiburon's flywheel system failures can have
5  no meaning, Hyundai now seeks to avoid producing the Elantra data, which will establish
6  that baseline.

7      Hyundai refuses to produce the Elantra data because the Elantra uses a single mass
8  flywheel system, while the Tiburon uses a dual mass flywheel system.  That is precisely
9  the point, however.  By alternating one variable (the flywheel system) while other
10 variables remain the same, Plaintiffs can expose as a fallacy Hyundai's contention that
11 "driver behavior" and "road and traffic conditions" are responsible for the large number
12 of Tiburon flywheel system failures.  For if those factors were truly responsible, one
13 would expect flywheel systems to fail at the same rate in all Hyundai's vehicles.  If
14 however, there is a defect systemic to the Tiburon's dual mass flywheel system, one
15 would expect that the rate would be significantly lower in a vehicle, such as an Elantra,
16 that does not use that system.

17     A class of Kia Sephia owners used the same logical approach at trial to
18 successfully demonstrate an inherent defect in their vehicles' brake system. *Samuel-*
19 *Bassett v. Kia Motors Am.*, 2006 Phila. Ct. Com. Pl. LEXIS 490 (2006) (affirming jury
20 verdict and judgment in favor of the plaintiff class).  Kia's records revealed that Sephias
21 had a 41.8% warranty claims rate.  In contrast, the rate for the Kia Sportage, which used a
22 different brake system, was only 6.3%.  *Id.* at *25-26.  Based on that comparative data,
23 Plaintiffs' automotive engineering expert testified, "[I]f there's that much of a difference
24 in the claims rate, then it points to a problem with the braking system on that vehicle and
25 nothing else."  *Id.* at *26.  After all, it is "unreasonable to expect that a driver of a Kia
26 Sephia is any different than a driver of the Kia Sportage, that Sephia vehicles are driven
27 in any different conditions or at any different locations than a Sportage."  *Id.*
28     In the same way that the Kia Sportage was used as a control at the Kia Sephia trial,

1 | Plaintiffs may use the Hyundai Elantra as a control at their Hyundai Tiburon trial.  That
2 | Hyundai seeks to avoid disclosing its Elantra data by citing the very difference that
3 | renders comparison with the Tiburon meaningful says a lot about its true intent.  When
4 | Hyundai wanted to know what was wrong with the Tiburon, it compared it to the Elantra.
5 | (*See* Exhibit G.)  Now that Plaintiffs want to do the same, Hyundai claims that
6 | information is "simply not relevant or admissible and it is not discoverable as a matter of
7 | law."  (Joint Stipulation at 5.)  The truth is that the Elantra data is readily available, its
8 | relevance vastly exceeds the standards for discoverability, and Hyundai is withholding
9 | the data simply because it undermines Hyundai's defense to this case.  *See City of Rialto*
10 | *v. United States DOD*, 492 F. Supp. 2d 1193, 1202 (C.D. Cal. 2007) ("a request for
11 | discovery should be considered relevant if there is any possibility that the information
12 | sought may be relevant to the claim or defense of any party").

  For the reasons stated above and in the Joint Stipulation, Plaintiffs request that the Court grant their motion to compel.

DATED:  June 10, 2008          Respectfully submitted,

**GIRARD GIBBS LLP**


By:   /s/ Dylan Hughes

Eric H. Gibbs
Geoffrey A. Munroe
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, California  94108
Telephone:  (415) 981-4800
Facsimile:   (415) 981-4846

Norman E. Siegel
Todd Hilton
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, MO 64112
Telephone: (816) 714-7100
Facsimile: (816) 714-7101

Co-Lead Interim Class Counsel