# EXHIBIT Q

08-03-06   01:19pm   From-                                    T-240   P.004/008   F-628

# //ACT
ADVANCED CLUTCH TECHNOLOGY®

**INVOICE**

Advanced Clutch Technology, Inc.
209 East Avenue K-4
Lancaster, CA 93535
(661) 940-7556

**INVOICE NUMBER: 0041719-IN**
INVOICE DATE: 12/19/2005

ORDER NUMBER: 0030345
ORDER DATE: 12/19/2005
SALESPERSON: CDW
CUSTOMER NO: COUNTER

| SOLD TO: | SHIP TO: |
|---|---|
| ERIC MATUSCHECK | ERIC MATUSCHECK |
| 1105 VENTURA BLVD | 1105 VENTURA BLVD |
| #231 | #231 |
| STUDIO CITY, CA 91604 | STUDIO CITY, CA 91604 |

CONFIRM TO:                                                    FAX:

| CUSTOMER P.O. | SHIP VIA | F.O.B. | TERMS | Total Weight (lb) |
|---|---|---|---|---|
| VERBAL 12/19 | WC | | Credit Card | |

| ITEM NO. | UNIT | ORDERED | SHIPPED | BACKORDERED | PRICE | AMOUNT |
|---|---|---|---|---|---|---|
| HY2-HDOO | EACH | 1 | 1 | 0 | 426.09 | 426.09 |
| Hyundai Tiburon 04' V6,6 Speed | | | | | | |
| Component: 1001601 | EACH | 1 | 1 | 0 | | |
| SUPERSEDES HYSD802 | | | | | | |
| Component: HY011 | EACH | 1 | 1 | 0 | | |
| ACT HD P/PL HYUNDAI TIBURONV6 | | | | | | |
| Component: RB104 | EACH | 1 | 1 | 0 | | |
| Release Bearing Hyundai Tiburo | | | | | | |
| /MISDIS | | | | | | -42.61 |
| 10% OFF | | | | | | |

C/C Auth
101394

Tracking No.:
Ship Weight:

| | |
|---|---|
| Net Invoice: | 383.48 |
| Freight: | 0.00 |
| Sales Tax: | 35.15 |
| **Invoice Total:** | **418.63** |

Pltf.   Deft.
Exhibit No. 9
Heidi Hummel-Grant CSR 12556   I.D.
Date: 01/17/08
Witness: _____

MATUSCHEK00002



09-03-06   01:19pm   From-                                            T-240   P.003/006   F-829

# Power G. Hyundai
## South Bay
20460 HAWTHORNE BLVD.
TORRANCE, CA 90503
(310) 803-5100   FAX (310) 803-5184

| CUST. NO. | TAX EXEMPT NUMBER | CUST. P.O. NO. | SHIP VIA | PAY | SOLD BY | INVOICE DATE | INVOICE NO. |
|---|---|---|---|---|---|---|---|
| 61864 | | | | PENDING | TONY G | 12/26/05 | 1120634 |
| | 818-231-2611 | | | | | | HYR |

ERIC MATUSCHEK
11054 VENTURA BLVD
STUDIO CITY, CA 91604

| SHIP QTY | B.O. QTY | PART NUMBER / DESCRIPTION | BIN | LIST | NET | AMOUNT |
|---|---|---|---|---|---|---|
| 1 | 0 | 23260-37311   FLYWHEEL ASSY | SPORD | 723.98 | 650.00 | 650.00 |
| | | SHIPPED 0   SPECIAL ORDERED 1 | | | | |

12/27/06
VISA
B.

|  | | |
|---|---|---|
| SUBTOTAL | | 650.00 |
| TAX | | 53.63 |
| FREIGHT | | 0.00 |
| PAY THIS AMOUNT | | 703.63 |

NO PARTS RETURNABLE AFTER 10 DAYS. ELECTRICAL AND SPECIAL ORDERED PARTS ARE NOT RETURNABLE. NO REFUND WITHOUT THIS INVOICE. PARTS RETURNED MUST BE RESALABLE CONDITION. A 10% RE-STOCKING CHARGE WILL BE ADDED ON ALL RETURNS. SEE REVERSE SIDE FOR LIMITED WARRANTY. ALL REFUNDS OVER $40.00 WILL BE MADE BY COMPANY CHECK WITHIN 10 DAYS BY MAIL.

REC.
BY:

**CUSTOMER COPY**

## PARTS INVOICE

12:38:52 PAGE 1 OF 1
NET039

POWER HYUNDAI SOUTH BAY
24460 HAWTHORNE BLVD
TORRANCE CA 90503
310-270-5511
### Sale
ID: 0001              Ref #:  0064
12/26/05              12:39:56
Batch #: 274

## REDACTED

App Code: 09511   Inv#: 020634
Total:            $ 703.63

MATUSCHEK00001

EXHIBIT Q
PAGE 213

# EXHIBIT R

1       IN THE UNITED STATES DISTRICT COURT

2       FOR THE CENTRAL DISTRICT OF CALIFORNIA

3             SOUTHERN DIVISION

4                 * * *

5    MICHAEL PARKINSON, et al.,

6    on behalf of themselves

7    and all others similarly

8    situated,

9         Plaintiffs,

10    vs.        CASE NO. SACV 05-34

             AHS (MLGx)

11    HYUNDAI MOTOR AMERICA,      CLASS ACTION

12    INC., a California corporation,

13        Defendant.

14                * * *

15       Deposition of MICHAEL PARKINSON,

16    Plaintiff herein, called by the Defendant for

17    cross-examination pursuant to the Rules of Civil

18    Procedure, taken before me, Kimberly C. Causlin, a

19    Notary Public in and for the State of Ohio, at the

20    offices of Mike Mobley Reporting, 1600 Scripps

21    Center, 312 Walnut Street, Cincinnati, Ohio, on

22    Friday, the 6th day of June, 2008, at 10:42 a.m.

23                * * *

24

25

1    intrance@intranceproductions.com,

2    I N T R A N C E; Mike@ripplejunction.com;

3    MParkinson11@Gmail.com.  I don't remember what

4    my Calphalon address was.  It was my last

5    employer.

6         Q.  Where do you currently live?

7         A.  1357 Windward Drive, Mason, Ohio.

8    45040.

9         Q.  And how long have you resided at

10   that address?

11        A.  Around a year.

12        Q.  Do you live with anyone?

13        A.  My fiancee and her sister's child,

14   Savannah.

15        Q.  Do you own or rent the residence?

16        A.  We own.  She owns the residence.

17        Q.  Where did you live prior to that?

18        A.  About how far back?

19        Q.  Pardon?

20        A.  About how far back?

21        Q.  Immediately prior to the one that

22   you're at now.  I'll go back for a period of

23   five years.

24        A.  Timber Ridge Lane.  That was in

25   Sharonville, Ohio.

1    right shoulder and saw the garbage cans and

2    turned the wheel and didn't realize I was

3    parked on the side and ran into the side of it.

4         Q.   Have you made any claims on your

5    insurance as a result of that?

6         A.   No.

7         Q.   Do you plan to?

8         A.   We're going to see if we can just

9    repair it ourselves.

10        Q.   Have you received any driving

11   moving violations in your Tiburon?

12        A.   I have.  In August of '05, I had a

13   speeding ticket.  And then August of '07, I had

14   a speeding ticket.

15        Q.   Any others in your Tiburon?

16        A.   No.

17        Q.   Where were you -- let's focus on

18   August the '05 one.  Where did that occur?

19        A.   That was downtown Cincinnati on 75

20   going north.

21        Q.   What time of day?

22        A.   Probably about eight at night.

23        Q.   What were the driving conditions?

24        A.   It was dry.

25        Q.   What month, do you remember?

EXHIBIT R
PAGE 216

1        Q.   Why did you think a six speed was

2    cool?

3        A.   When I valet'd and I got to drive

4    Porsches and Ferraris and Dodge Viper, some

5    pretty pricey cars, and a few of those had six

6    speeds I thought that's pretty --

7        Q.   Six speed, you have arrived,

8    basically?

9        A.   Yes.

10       Q.   Did you talk to any dealerships

11   prior to purchasing your Tiburon?

12       A.   I stopped in Brown Automotive

13   first to test drive it and spoke to them about

14   it.  And then, you know, thought about it for a

15   while, went back and just sort of got their

16   marketing material, you know, to see the point

17   of purchase ads, collateral that they supplied

18   me with and I reviewed that and, you know, just

19   seen the other price points that were out there

20   on the other cars that I was interested in and

21   then, you know, just seen where I sit, you

22   know, price-wise for both what I want and sort

23   of weigh all of options, do I want leather,

24   moon roof, you know, do I want to pay this

25   much, this much, do I want to live in an

1          A.   I like the larger fin on the back

2     and I think the other ones were the low

3     profile.

4          Q.   Okay.  All right.  Why don't we

5     let the court reporter rest for a couple of

6     minutes.

7          A.   Okay.

8               (Pause in proceedings.)

9               MR. ANDERSON:  Back on the record,

10    please.

11         Q.   You understand you're still under

12    oath?

13         A.   I do.

14         Q.   Okay.  At the time that you

15    purchased your car, did it come with an owner's

16    manual?

17         A.   It did.

18         Q.   Did you read it and understand it?

19         A.   I did.

20         Q.   At the time of purchase?

21         A.   Yes.

22         Q.   Okay.  Did you receive an owner's

23    handbook as well?

24         A.   I did.

25         Q.   Did you read and understand that?

EXHIBIT R
PAGE 218

1        A.  Yes.

2        Q.  At the time of purchase?

3        A.  Yes.

4        Q.  How many times do you think you've

5    reviewed the owner's handbook since you've

6    owned the car?

7        A.  Probably a couple of times.

8        Q.  When do you think the last time

9    you reviewed it is?

10       A.  After I had the flywheel problem.

11       Q.  Okay.  What did you read in it

12   after you had the flywheel problem?

13       A.  First, you know, when I had the --

14   when the flywheel system failed, I went in to

15   the dealership and, you know, asked them, hey,

16   you know, I can't get this in reverse and

17   something's wrong with the transmission, I

18   didn't know any better, and after we discussed

19   with them -- or they had told me that this

20   isn't covered and took a look at it and went

21   through the entire -- the process, then I went

22   back and reviewed that again, reviewed the

23   owner's handbook.

24       Q.  What did you review when you

25   reviewed it at that time?

EXHIBIT R
PAGE 219

Parkinson, Michael 6/6/2008 10:42:00 AM

1    Q.   Have you ever had any performance

2    testing done on it?

3    A.   No.

4    Q.   Have you made any modifications to

5    your Tiburon?

6    A.   I installed the cold air intake.

7    The first installation was Showdown Motorsports

8    in Toledo because it needed to be lifted up to

9    take out the old air intake boxes and then

10   Mytee Muffler put on my exhaust.

11   Q.   Can you spell that?

12   A.   M Y T E E.

13   Q.   Your exhaust?

14   A.   Yes.

15   Q.   Anything else?

16   A.   My strut bar, I installed that.

17   The emblems, which I also installed that

18   myself, the hood, the rear emblem and then the

19   four wheel ones.

20   Q.   Tuscani?

21   A.   Yeah, the Tuscani.  I also

22   detailed my brakes red to match the intake and

23   the mounting on the strut bar.  And then an

24   antenna, the short Euro style antenna.  And

25   also the emblem on my steering wheel, which was

1    a sticker, basically, and I believe that's it.

2         Q.   When was the cold intake system

3    put in?

4         A.   Summer of '03.

5         Q.   And who did that?

6         A.   It was Showdown Motorsports.

7         Q.   Where are they -- sorry?  Where

8    are they located?

9         A.   In Toledo.  I believe it's on

10   Airport Road.

11        Q.   Okay.  And is that where you

12   purchased the intake system as well?

13        A.   No, I bought it on-line.

14        Q.   Who did you buy it from?

15        A.   Someone on eBay.

16        Q.   Do you remember what you paid for

17   it?

18        A.   I think it was around a hundred

19   and eighty, a hundred and ninety.

20        Q.   And then you bought it on eBay, it

21   was delivered to your house and then you took

22   it up to the shop who installed it for you?

23        A.   Yes.

24        Q.   How did it come about that you put

25   a cold intake system on your car?

Parkinson, Michael 6/6/2008 10:42:00 AM

1    summer comes, I'll put the cold air intake back

2    in.

3         Q.   You take the cold off for the

4    winter?

5         A.   Just the part from the intake down

6    to the first pipe that goes to the --

7         Q.   Okay.

8         A.   -- actual air filter.  So I'll

9    take the air filter out so it doesn't get

10   dirty.  I'll leave that pipe in there and then

11   just replace the section from like the manifold

12   to the first part of the pipe.

13        Q.   Okay.  And when did you start

14   doing that?

15        A.   The first year, when I saw that

16   the air filter got all gunked up and got a

17   little chugging -- a little chuggie.

18        Q.   Okay.

19        A.   So I did that.

20        Q.   So that would be '04?

21        A.   Yes.

22        Q.   When did you do the exhaust?

23        A.   I also did that in summer of '03.

24        Q.   Summer of '03.  Where did you buy

25   them?

EXHIBIT R
PAGE 222

Parkinson, Michael  6/6/2008  10:42:00 AM

1        A.  On eBay.

2        Q.  And who installed them?

3        A.  Mytee Muffler.

4        Q.  And what did they charge you to

5    install it?

6        A.  Actually, I think the cold air

7    intake and that the exhaust was a hundred

8    because there was welding.

9        Q.  Yeah.  This was all on one shot,

10   the muffler and the cold intake?

11       A.  Within a month or so.

12       Q.  Do you know who manufactured the

13   exhaust?

14       A.  HKS.

15       Q.  Did you buy them new or used?

16       A.  New.

17       Q.  What did you pay for them?

18       A.  One ten or one twenty for both.

19       Q.  And you said a hundred bucks,

20   roughly, to install them?

21       A.  Yes.

22       Q.  Where did you buy the strut bar?

23       A.  Also on eBay.

24       Q.  When?

25       A.  I think it was '04.  I did it the

Parkinson, Michael  6/6/2008  10:42:00 AM

1    bars on.

2        Q.  How long did it take you to

3    install?

4        A.  Probably about twenty minutes

5    because I had to remove the plastic coverings

6    and bolt them down.

7        Q.  What happened to those plastic

8    coverings?

9        A.  They're in storage along with the

10   original stock.

11       Q.  Original what?

12       A.  Original stock air intake.

13       Q.  Did anybody help you put the strut

14   bar in?

15       A.  No, I did it myself.

16       Q.  Okay.  What about all of the

17   Tuscani emblems, when did you get those?

18       A.  Either '03 or '04.

19       Q.  Where did you get them?

20       A.  On eBay.

21       Q.  What did you pay for them?

22       A.  I think I paid about forty-five

23   dollars for the -- I don't know if there were

24   two separate purchases.  I think there was one

25   set that came with the wheel emblems and then

1    you know, there was no way I could drive that

2    car with those wheels on it in the wintertime,

3    so I swap those out each year.

4        Q.  When did you start doing that?

5        A.  The first year because I knew that

6    the tires were not recommended for winter.

7        Q.  Okay.  And do you change the tires

8    out yourself or have something do it for you?

9        A.  I have someone do it for me.

10       Q.  Who has done it for you?

11       A.  Just different body shops.  Like

12   in Toledo, I think it was -- it's like a

13   muffler, tire shop like, Mytee or Midas.

14       Q.  What about here in Cincinnati?

15       A.  Actually, with the -- let me see.

16   Let me think.  Probably just Midas.

17       Q.  Anything else in terms of

18   modifications?

19       A.  Huh-uh.

20       Q.  Have you had any bodywork at all

21   on the car?

22       A.  No.

23       Q.  Do you have the receipts and

24   invoices for all of these purchases and

25   installations?

Parkinson, Michael  6/6/2008  10:42:00 AM

1    was a problem with your clutch?

2        A.   Just in general or --

3        Q.   Yes.

4        A.   -- like when it failed?

5        Q.   What happened?

6        A.   There was no prior warning to

7    anything being wrong with it.  My friend and I

8    went downtown.  We parked it.  I don't remember

9    exactly what we were doing probably went

10   downtown, went out to eat, came back and

11   couldn't get it in reverse, so at that point

12   we're trying to figure out what's going on,

13   what we should do and we just took it out of

14   gear and pushed it back.  I could see that I

15   could get it into first but it was really hard

16   to get it into first and basically got it home

17   and then the next morning I took it to the --

18   Columbia Hyundai.  At that point I thought

19   something had failed in my transmission with it

20   not being able to get into a gear -- into the

21   gears.  That was my first initial thought.

22       Q.   Okay.  You said you were downtown.

23   Downtown where, what city?

24       A.   Cincinnati.

25       Q.   Cincinnati, okay.  Do you remember

1      A.  It felt really loose.

2      Q.  Anything else that it felt like?

3      A.  Not that I can remember.

4      Q.  Okay.

5      A.  Just very difficult to move back.

6   I knew that reverse was gone.

7      Q.  Did you notice any smells, sounds?

8      A.  Huh-uh.

9      Q.  Okay.

10         MR. MARSHALL:  Is that a no?

11         THE WITNESS:  No, sorry.

12      Q.  You said you put it in neutral and

13   pushed it back.  Was this so you could get it

14   out of being at a car immediately in front of

15   you?

16      A.  It was in a parking garage so it

17   was right up against the wall.

18      Q.  Okay.  And then you -- once you

19   got it out and could go forward, you and your

20   buddy drove it back to your house?

21      A.  Um-hmm.

22      Q.  How far is that, do you think?

23      A.  Probably twenty miles.

24      Q.  Okay.  And then on your drive

25   back, you shifted in the other gears, second

1        Q.   You kind of rolled through it in

2    second gear?

3        A.   Um-hmm?

4            THE NOTARY:  Is that yes?

5            THE WITNESS:  Yes.

6        Q.   Okay.  So then the next day, the

7    next morning, you took it into Columbia, is

8    that what you said?

9        A.   Um-hmm.

10       Q.   Did your friend go with you?

11       A.   No, I think he went home because

12   he still lived in Toledo at that point.  He

13   just came down for the weekend.

14       Q.   Okay.  And describe for me the

15   drive from where you lived to Columbia, from

16   turning the ignition on to stopping.

17       A.   It was much the same, just trying

18   to get it there.

19       Q.   Okay.  Did you have to back your

20   car out to get it going?

21       A.   I think when we stopped, we

22   stopped, sort of turned and then just pushed it

23   back in, so -- because he was leaving in the

24   morning and I had two hands -- or four hands

25   to, you know, help me back into the right spot.

```
 1    actual shift.

 2         Q.  Okay.  How many gears did you go

 3    through from your house to Columbia the next

 4    morning?

 5         A.  I think I had it to fifth gear

 6    because I had it on the highway.

 7         Q.  Describe the route where you were

 8    to Columbia.

 9         A.  275 and then the exit to the --

10    Columbia.

11         Q.  Where you just about were?

12         A.  Um-hmm.

13         Q.  Yes?

14         A.  Yes.  Sorry.

15         Q.  How far is that?

16         A.  About ten miles.

17         Q.  And how many stops did you make

18    from your house to Columbia?

19         A.  I think I got caught by one light.

20         Q.  Okay.  So you came to a complete

21    stop at one light?

22         A.  Yes.

23         Q.  And then you -- to start it up

24    again you put it in first?

25         A.  I think I still had it in second
```

1        Q.   Did they -- while you were still

2    there, did they test drive the car, pop the

3    hood open, do anything?

4        A.   Nothing.

5        Q.   Did they tell you what they were

6    going to do?

7        A.   Just that they were going to take

8    a look at it and they would give me a call.

9        Q.   Nothing else?

10       A.   No.

11       Q.   You go to work and you get a call?

12       A.   Yes.

13       Q.   Do you remember who you got a call

14   from?

15       A.   I'm sure it's the representative

16   that's on the document for the repair.  I can't

17   remember who exactly had called me.

18       Q.   And they say what?

19       A.   That my clutch and I think --

20   yeah, they basically said that my clutch had

21   failed and that it would have to be replaced.

22       Q.   Okay.  I'm sorry, go ahead.

23       A.   That's it.

24       Q.   That's it?

25       A.   Yes.

Parkinson, Michael  6/6/2008  10:42:00 AM

1      Q.   Do you recall exactly what they

2   said?

3      A.   No, I don't.

4      Q.   Okay.  Did they -- let me step

5   back a minute before you -- when you took it in

6   before you left to go to work, was there any

7   discussion about what it would cost to take a

8   look at what the problem was or what they

9   thought the repair cost might be or anything

10   along those lines?

11      A.   I think at that point I had

12   assumed that everything was under the

13   warranty --

14      Q.   When you brought it in?

15      A.   Yes.  There wouldn't be any cost

16   to look at it, to repair it -- I knew there

17   would be something wrong.  There would be a

18   repair.  I wasn't thinking about cost because I

19   thought it all fell under the warranty.

20      Q.   So to answer the question, you

21   don't recall any discussions when you first

22   brought it in with a representative about costs

23   or warranties or anything like that?

24      A.   No.

25      Q.   So then they call up and they tell

1    you it's the clutch?

2         A.  Um-hmm.

3         Q.  That's what you recall and was

4    there any discussion about costs and all of

5    that kind of stuff at that point?

6         A.  No.  I just said, you know -- I

7    said does this fall under the warranty.  We'll

8    have to take a look at it to see if -- you

9    know, what failed in there.  So I think that

10   they -- at that point they had diagnosed it

11   prior to getting it on the lift and taking it

12   apart and said that, you know, they believe it

13   was the clutch that had failed and then asking

14   if they can maybe put it on the lift and take a

15   closer look at it.

16        Q.  Okay.  Did you agree to that?

17        A.  Yes.

18        Q.  Okay.  Did they tell you there was

19   a cost associated with that?

20        A.  I don't believe so.

21        Q.  Okay.

22        A.  Up until this point I assumed

23   everything was under the warranty.

24        Q.  You're still assuming warranty at

25   this point, okay.  Anything else in that

1    particular conversation that you can recall

2    talking about?

3         A.   No.

4         Q.   And then they call you back again

5    later or did you call them or what do you

6    remember?

7         A.   I believe they called me once they

8    had everything taken apart.

9         Q.   When?  Same day?  Next day?

10        A.   I believe it was the same day.

11        Q.   Okay.

12        A.   And -- yeah, after work or at

13   lunch -- I -- that part -- I mean, I don't

14   have -- it's hard to remember --

15        Q.   Okay.

16        A.   -- the exact sequence, but I know

17   I had gone down there.  I think they had it

18   taken apart and I went to take a look at what

19   had failed on it and what they needed to

20   replace.  And at that point that's the part,

21   you know, your clutch disk had failed, this

22   part isn't covered under your warranty and they

23   went into the -- basically like this is going

24   to be your cost and everything else.  And I was

25   like, well, you know, it's under warranty, I

1    know this.  This is like after, you know,

2    thirty thousand miles, it has to be under

3    warranty.  It's up to sixty thousand miles for

4    the bumper to bumper.  And at that point I -- I

5    really wasn't getting anywhere with the person

6    I was talking to, so it was Michael Mattis that

7    I had spoke with and we went into more

8    discussion over, you know, like looking at the

9    parts themselves and what had failed.  And from

10   what I saw, the flywheel was demolished.  It

11   was -- like heat marks on it, it was cracked.

12   There was a -- it just looked -- didn't look

13   like any normal wear and tear from what I've

14   seen with my Pontiac.  You know, my clutch disk

15   that was just worn down.  This looked like

16   everything was damaged in some way, shape or

17   form.

18           I said, well, obviously, you know,

19   there's something wrong with the entire mechanism.

20   This has to be warrantied.  And he says, well, no,

21   we know this could be your driving habits, do you

22   do this, do you do this, and I was like this isn't

23   about my driving habits.  This is something that

24   failed here that -- you know, how do you discern

25   that this part -- the flywheel versus this failed

Parkinson, Michael  6/6/2008  10:42:00 AM

1    or this didn't fail this, so we went back and

2    forth and I wasn't really getting anywhere with

3    them and, you know, I had to have the repairs

4    done, so they gave me a temporary car to drive.

5    At that point I had looked on-line to see -- or,

6    you know, looked at my warranty and went through

7    different things to just see like what the

8    specifics are on that and for me it was unclear

9    because everything looked like it was affected.

10   Like there was no piece that they showed me that,

11   you know, from the flywheel to that that didn't

12   look, you know, affected.

13       Q.   Okay.  They call you up, they say

14   we're going to have to diagnose, we're going to

15   have to open up the clutch and find out whether

16   it's covered by the warranty and then at some

17   point they call you back?

18       A.   Yes.

19       Q.   And then after that you go down to

20   the dealership?

21       A.   Right.

22       Q.   When they called you back up the

23   second time, do you recall the specifics of any

24   discussions?

25       A.   Not the specifics, but it sparked

1    Pontiac.

2        Q.   Okay.  What did you see with your

3    Pontiac?

4        A.   Just the actual disk and then they

5    said we need to replace the disk.

6        Q.   What did you see on the disk?

7    What do you remember seeing?

8        A.   It just looked worn down and they

9    said that, you know, there were sections here

10   that have pads and that those were worn down

11   almost to the metal and they needed to be

12   replaced.

13       Q.   Okay.  Did you see anything else

14   or did they tell you anything else?

15       A.   Just showed me a new one and an

16   old one.

17       Q.   So what about the flywheel in the

18   Tiburon that you looked like differentiated

19   itself from either the pictures that you looked

20   at or your Pontiac, what was different about

21   it?

22       A.   It looked like it was scorched.

23   There were cracks all through it.  You know, it

24   just looked like it was -- it was -- like

25   something wrong, like something burned or like

1    it didn't look like it was -- like stable, I

2    guess, for a word.

3        Q.   Anything else that you recall

4    seeing about the flywheel?

5        A.   Huh-uh.

6        Q.   What about the other parts, what

7    did you see visually that led you to believe

8    that they were, quote, unquote, affected

9    somehow?

10       A.   The clutch disk was completely

11   worn down.

12       Q.   Give me more specifics, completely

13   worn torn.

14       A.   From my experience with the

15   Pontiac and seeing the pictures on-line that it

16   was down to straight metal.  You know, there

17   was no -- like the -- the padding or -- you

18   know, the -- the -- I guess, yeah, the padding

19   left on it.  It just -- you know, I thought the

20   pressure plate looked somewhat scorched.  It

21   was just -- there was -- I don't know.  It was

22   just a general like, you know, all of these

23   pieces were, you know, affected in some way.

24       Q.   Any other parts that you looked

25   at?

Parkinson, Michael  6/6/2008  10:42:00 AM

1      A.   That was it.

2          Q.   Anything else you noticed about

3    these parts other than what you described?

4          A.   No.  I asked them if there was a

5    failure in the transmission if that could have

6    caused what happened.  And he kept coming back

7    around, you know, saying it was my driving

8    habits, you know, this -- you know, if you do

9    this, this and this it's going to fail.  You

10   know, you burned it out.  You know, you do all

11   of these improper things of driving a manual

12   transmission and I'm like I've had one since

13   this time and it's not really in your place to

14   tell me that, you know, how you drive or -- I'm

15   looking at these items and this isn't like

16   normal wear and tear.  I guess I would have

17   gone back around with him a few times and I

18   really wasn't getting anywhere.

19         Q.   Okay.  What questions did the

20   person ask you about the driving habits, what

21   were they asking you?

22         A.   They asked me if I ride the

23   clutch, if I pop the clutch, you know, if I

24   drive aggressively, you know, if I've ever

25   driven a manual transmission before.  And I

1      A.  That's when I came back down and

2   they started the accusatory.

3      Q.  Right.  I got that.  But did they

4   ever give you a final diagnosis, conclusion or

5   anything before you went and talked to the

6   manager or you just kind of get annoyed with

7   the questioning and move to the next person?

8      A.  They kept referring back to the

9   clutch and that the clutch had failed and that

10   that wasn't covered.

11      Q.  Okay.  Did they say what part of

12   the clutch failed?

13      A.  No.  They said just the clutch

14   failed and the clutch wasn't covered.

15      Q.  The clutch wasn't covered

16   completely or it wasn't --

17      A.  Yes.

18      Q.  Okay.

19      A.  At that point I was speaking to

20   the manager --

21      Q.  Don't go to the manager yet.

22      A.  I'm sorry.

23      Q.  I'm just trying to get everything

24   that you talked to the service guy about before

25   moving on to the manager.

1      Q.  Have you told me everything you

2    can recall specifically talking with people at

3    Columbia on that day, either coming out of your

4    mouth or coming out of their mouth?

5      A.  I believe that's the gist of each

6    conversation.

7      Q.  My question --

8      A.  Everything that I can remember.

9      Q.  That's everything that you can

10   recall, okay.  So then you go home -- and this

11   loaner car that you still have, right?

12     A.  Um-hmm.  Yes.

13     Q.  And you started doing research,

14   right?

15     A.  Um-hmm.  I did.

16     Q.  What research did you do?

17     A.  I did more research on like --

18   well, first to see if other people had

19   experiences, just different Google searches

20   just to see what would come up, like clutch

21   failure, you know, flywheel failure, you know,

22   just trying to find out, you know, what

23   happened, what I need to replace and I knew

24   that I didn't want to put the stock parts back

25   in or any stock parts from Hyundai back in, so

1    it was more of looking for replacement flywheel

2    and aftermarket clutch and aftermarket clutch

3    plate and the throw out bearing.  So I called

4    around and one of the issues I ran into is

5    there's two different like -- for the .

6    aftermarket flywheel, it's the single flywheel

7    inside of the double one and it's built of

8    aluminum so it stands up, it is stronger, it's

9    lighter, more responsive, things like that, but

10   when I placed the order with it, because I kept

11   getting calls -- well, I didn't keep getting

12   calls, but they called me and are you going to

13   get it fixed, are you getting some parts, so I

14   ordered some parts that I had found, but the

15   flywheel, he says he's had -- he should be

16   sending it to someone else, it wasn't like the

17   right size but it was the right something, like

18   with this aftermarket one, so he wanted to make

19   sure he got me the right one that would fit

20   that.  There was some discrepancy in that.

21        So I got the one that fit correctly

22   and then the new -- it was a Fidanza flywheel, the

23   ATC clutch and then just stock throw out bearing

24   and I took those parts to them and had them put it

25   back together.

Parkinson, Michael  6/6/2008  10:42:00 AM

1       Q.   Did you have an understanding at

2    that point that if you did not put the stock

3    parts back in, that you might have affected

4    your warranty coverage?

5       A.   They told me that and I said my

6    warranty isn't working now.

7       Q.   When did they tell you that?

8       A.   At that point when I said I'm

9    putting aftermarket parts in.

10      Q.   So you researched aftermarket

11   parts, any other research that you did at that

12   time?

13      A.   No, I just had to get the parts

14   and get them shipped to me as quick as I could.

15      Q.   And you ultimately purchased parts

16   from various locations, right?

17      A.   Right.

18      Q.   Okay.  And you've produced to us

19   your invoices for where you purchased those

20   parts, correct?

21      A.   Correct.

22      Q.   You said also that you had talked

23   to Hyundai Motor America at that time too,

24   correct?

25      A.   Um-hmm.

Parkinson, Michael  6/6/2008  10:42:00 AM

1       Q.   How long did it take you to get

2    the parts?

3       A.   It was about a week.  A week from

4    it going to the garage to it actually being

5    fixed.

6       Q.   Okay.  Any other research in this

7    week period that we haven't discussed?

8       A.   No.

9       Q.   Any other telephone conversations

10   with anyone about this that we haven't

11   discussed?

12      A.   No.  At this point I was chalking

13   it up as a loss and really felt disheartened by

14   you know, my experience and that, you know,

15   something that really should have been under

16   warranty wasn't.

17      Q.   Okay.  Did you ever look at your

18   owner's handbook during that period of time?

19      A.   I had reviewed through it and I

20   had confirmed the areas that they said, you

21   know, if it was, in fact, the clutch, I

22   reviewed that and you know, which I still felt

23   it wasn't specifically that.  It was the entire

24   system.

25      Q.   When did you do that review?

1       A.   I think we did it with my meeting

2    with the manager and then on my own too.

3       Q.   On your own before or after you

4    took the parts?

5       A.   After, just reading through.

6       Q.   And so you take all of your parts

7    in and you have a conversation with somebody

8    about whether or not your warranty coverage

9    would be denied if you used aftermarket parts?

10      A.   Um-hmm.

11      Q.   And you were told there's no

12   guarantee?

13      A.   Right.  I think that they said

14   that if, you know, any of these parts are not a

15   certified or genuine Hyundai part that, you

16   know, these parts put in are not covered under

17   the warranty at all.

18      Q.   Okay.  Anything else that you

19   recall discussing?

20      A.   No.  Just my response of, well,

21   you know, it isn't covered now, so --

22      Q.   Did you tell them that or is that

23   just a thought in your head?

24      A.   No, I told them that.

25      Q.   Okay.  Do you remember who you

1      talked to?

2           A.   I think it was Mike Mattis.

3           Q.   Okay.  Any other conversations or

4      discussions you can recall having at the time

5      before they did the work?

6           A.   No.  I mean, at that point I was

7      just like, you know, okay, this is a loss, I've

8      learned my lesson like, you know, I'm not going

9      to buy Hyundai again.  I felt sort of deceived

10     and let down and, you know, I thought, okay,

11     well, go on forward.  There's not much I can do

12     about it now.

13          Q.   Columbia Hyundai did the repair

14     then?

15          A.   Yes.

16          Q.   How did the car operate after they

17     did the repair?

18          A.   It operated fine.

19          Q.   Did you have any issues with your

20     clutch since then?

21          A.   Yeah, I've got like the noise in

22     the clutch housing and t sounds like something

23     rattling around when I have it out of gear and

24     the clutch not depressed.  It's a clicking

25     sound inside of the transmission -- not

1      Q.   You're concerned the parking brake

2   is not engaging, basically?

3      A.   Right.  I don't want to put it all

4   on though, it being in gear.

5      Q.   Okay.  Any other repair or

6   warranty work on your Tiburon since the clutch?

7      A.   No, that's it.

8      Q.   What happened to the clutch parts?

9      A.   The old parts?

10     Q.   Yes.

11     A.   I -- I believe they just recycled

12   them or threw them out.

13     Q.   Any particular reason why you

14   didn't ask for them?

15     A.   My head wasn't clear at that time.

16   With work and, you know, trying to figure out

17   how to incur these costs as well as trying to

18   find at work, you know, these parts and call

19   these people and still being able to do my job,

20   there was a lot going on and I really didn't

21   think at that point, especially after speaking

22   with Hyundai Motor, you know, that there was a

23   reason to keep them or if anything was going

24   to -- you know, I didn't -- it was a

25   combination of so much going on, not thinking

Parkinson, Michael  6/6/2008  10:42:00 AM

1    and then, you know, it just not really coming

2    to mind, something else might become of this.

3        Q.   Have you at any time gone back to

4    see if they still had them?

5        A.   No.

6        Q.   Since you've had the clutch

7    repaired at Columbia, have you had any

8    subsequent conversations with anybody at

9    Columbia about your clutch and your warranty

10   coverage?

11       A.   No.

12       Q.   When the clutch parts were out,

13   you know, when they were diagnosing the parts,

14   did you take any pictures of those parts?

15       A.   No.

16       Q.   Did you take any notes regarding

17   those parts?

18       A.   No, I mean other than my mental

19   notes of what I saw in comparison.

20       Q.   Okay.  And then how soon after the

21   issue -- how soon after your clutch was

22   repaired did you start looking for attorneys?

23       A.   I looked on that same forum where

24   I found the phone number and I believe I made a

25   posting saying, hey, you know, I had this go

# EXHIBIT S

# BROWN AUTOMOTIVE GROUP

**PURCHASE CONTRACT**

| BROWN PONTIAC-HYUNDAI-MAZDA | BROWN HONDA | BROWN CREDIT LOTS | | BROWN BUDGET LOT | INTERNET |
|---|---|---|---|---|---|
| | | WEST | EAST | | |
| 5625 W. CENTRAL AVENUE TOLEDO, OHIO 43615 | 6155 W. CENTRAL AVENUE TOLEDO, OHIO 43615 | 5744 W. CENTRAL AVENUE TOLEDO, OHIO 43615 | 4510 WOODVILLE ROAD NORTHWOOD, OHIO 43619 | 5654 W. CENTRAL AVENUE TOLEDO, OHIO 43615 | Visit us on the web at www.brownautomotive.com or e-mail us at brownautomotive @brownautomotive.com |
| (800) 222-4099 (419) 531-0151 Fax (419) 536-1316 | (800) 686-3535 (419) 841-2222 Fax (419) 841-9662 | (419) 536-3040 Fax (419) 539-3054 | (419) 698-2277 Fax (419) 698-1699 | (419) 536-5108 Fax (419) 534-4699 | |

PURCHASER'S NAME: MICHAEL L PARKINSON WILLIAM L PARKINSON  
STOCK NO. 03108  DEAL NO. 101902  
ADDRESS: 1377 PICADILLY LANE #8  E-MAIL  DATE MAY 31  03  
CITY: MAUMEE  STATE OH  ZIP 43537  COUNTY LUCAS  HOME PHONE (419)408-0811  BUSINESS PHONE  
SOCIAL SECURITY NUMBER: 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  BIRTH DATE 09/30/77  DRIVER'S LICENSE NUMBER  SALESPERSON BRIAN GAULT

**ENTER MY ORDER FOR ONE:** → ☐ NEW ☐ USED → ☐ CAR; ☐ TRUCK → ☐ DEMONSTRATOR  ☐ FACTORY OFFICIAL CAR  ☐ FORMER RENTAL VEHICLE  ☐ OTHER

| YEAR | MAKE | MODEL | BODY TYPE | COLOR | INTERIOR TRIM |
|---|---|---|---|---|---|
| 2003 | HYUNDAI | TIBURON | 2DR | SUPER SILVER | BLACK |

MVI. OR SERIAL NO. K M H H N 6 5 F 9 3 U 6 1 3 3  MILEAGE 213  
☐ ODOMETER MILEAGE IS ACCURATE  
☐ ODOMETER MILEAGE IS NOT ACCURATE

| | |
|---|---|
| MANUFACTURERS SUGGESTED RETAIL PRICE * 20552.00 | CASH PRICE OF VEHICLE  19500.00 |
| UNLESS OTHERWISE NOTED, ALL AFTERMARKET ACCESSORIES INSTALLED ON THIS VEHICLE ARE NOT SUPPLIED, MARKETED, OR WARRANTED BY THE MANUFACTURER OF THE VEHICLE. | ADDITIONAL EQUIPMENT  CUSTOMER DECLINES EXTENDED SERVICE PROGRAM |
| REMARKS: | |

**NEGATIVE EQUITY:**  
I am aware the balance owed on my trade-in vehicle exceeds the trade-in allowance from Dealer and, as a result, I have requested that $ N/A of negative equity from my trade-in be included in the cash price of the vehicle. The cash price of the vehicle has been raised $ _____ to cover negative equity from the trade-in vehicles.

X _____

| | |
|---|---|
| RUSTPROOFING | |
| PAINT PROOF II | |
| INTERIOR FABRIC PROTECTION | |
| SERVICE CONTRACT | |

**DEPOSIT RECEIPT:**  
Dealer hereby acknowledges receipt of the sum of $ _____ as a Deposit/Partial Payment for the vehicle described above. If this Receipt is for a Deposit Dealer will refrain from selling the described vehicle for _____ days. This Deposit/Partial Payment IS NOT refundable.

| | | | |
|---|---|---|---|
| ► SELLING PRICE | | | 19500.00 |
| ► DOCUMENTARY FEE | | | 50.00 |
| SUB-TOTAL | | | 19550.00 |

**TRADE-IN AND OTHER CREDITS**

| | | |
|---|---|---|
| TRADE-IN ALLOWANCE | | |
| BALANCE OWED ON TRADE | TAXABLE TOTAL 19550.08 | X 6.25 %=SALES TAX  1221.88 |
| BALANCE OWED TO | | COUNTY: LUCAS |
| NET EQUITY | – USED VEHICLE – "The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale." | CERTIFICATE OF TITLE  5.00 |
| DEPOSIT/ PARTIAL PAYMENT – NON REFUNDABLE | | MEMORANDUM CERTIFICATE OF TITLE  5.00 |
| CASH ON DELIVERY | | LIEN NOTATION  5.00 |
| OTHER REBATE | 1000.00 | 30 DAY TAG  5.25 |
| TOTAL CREDIT | 1000.00 | TOTAL  20792.13 |
| TRADE-IN STOCK NO. YEAR MAKE MOD. COLOR | | TOTAL CREDIT  1000.00 |
| BODY TYPE MILEAGE | | BALANCE DUE  19792.13 |

ALL WARRANTIES, IF ANY, BY A MANUFACTURER OR SUPPLIER OTHER THAN DEALER ARE THEIRS, NOT DEALERS, AND ONLY SUCH MANUFACTURER OR OTHER SUPPLIER SHALL BE LIABLE FOR PERFORMANCE UNDER SUCH WARRANTIES, UNLESS DEALER FURNISHES BUYER WITH A SEPARATE WRITTEN WARRANTY MADE BY DEALER ON ITS OWN BEHALF, DEALER HEREBY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE ON ALL GOODS AND SERVICES SOLD BY DEALER. IN THE EVENT THAT A SERVICE CONTRACT IS SOLD BY DEALER ON ITS OWN BEHALF, ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE IS LIMITED IN DURATION TO THE TERM OF THE SERVICE CONTRACT.

The front and back of this Agreement and any documents referenced herein comprise the entire agreement affecting this purchase and no other agreement or understanding of any nature concerning same has been made or entered into, or will be recognized. This Agreement is for a used vehicle, see contractual disclosure statement below. I hereby certify that no credit has been extended to me for the purchase of this vehicle except as it appears in writing on the face of this Agreement. I have read the matter printed on the back hereof and agree to it as a part of this Agreement the same as if it were printed above my signature. I certify that I am at least 18 years old, and hereby acknowledge receipt of a copy of this Agreement. CONTRACTUAL DISCLOSURE STATEMENT (USED VEHICLES ONLY) THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE. IF THIS CONTRACT IS A FINANCE SALE ARRANGED BY THE SELLER THEN THIS PURCHASE CONTRACT IS NOT VALID UNTIL A FINANCE DISCLOSURE STATEMENT IS FILLED IN AND SIGNED BY THE BUYER.

THIS PURCHASE CONTRACT IS NOT VALID UNLESS SIGNED AND ACCEPTED BY DEALER OR HIS AUTHORIZED REPRESENTATIVE

APPROVED _____  DATE 05/31/03  
DEALER or AUTHORIZED DEALER REPRESENTATIVE

ACCEPTED BY PURCHASER  DATE 05/31/03  
SIGNED _____  PURCHASER

* THE MANUFACTURER'S SUGGESTED RETAIL PRICE IS THE PRICE INDICATED BY THE MANUFACTURER PURSUANT TO FEDE  
NECESSARILY THE PRICE AT WHICH THE VEHICLE IS SOLD.

**EXHIBIT S PAGE 248**

# EXHIBIT T

*Columbia Oldsmobile / Hyundai*

"I-275 and Montgomery Road"
10981 Montgomery Road
**CINCINNATI, OHIO 45249**

PHONE
| | |
|---|---|
| SERVICE: | 489-4424 |
| BODY SHOP: | 489-7381 |
| MAIN: | 489-2000 |

SERVICE HOURS
MON-FRI   7:30 am - 6:00 pm
SAT   8:00 am - 12:00 noon

The seller, COLUMBIA MOTORS, INC., hereby expressly disclaims all warranties, either express or implied including any implied warranty of merchantability or fitness for a particular purpose, and COLUMBIA MOTORS, Inc. neither assumes nor authorizes any other person to assume for it any liability in connection with this sale.

| CUSTOMER NO. | | |
|---|---|---|
| **70050** | | |

MICHAEL PARKINSON
11651 NORBOURNE DR
APT 113
CINCINNATI, OH 45240

| ADVISOR | | | |
|---|---|---|---|
| MICHAEL J MATTIS | 111 | 575 | |
| LABOR RATE | LICENSE NO. | MILEAGE | |
| | | 29,036 | |

| | TAG NO. | INVOICE DATE | INVOICE NO. |
|---|---|---|---|
| | 575 | 05/23/05 | HYCS344403 |
| | | COLOR | STOCK NO. |
| | | SILVER/ | |

YEAR/MAKE/MODEL
03/HYUNDAI/TIBURON/TIBURON FX 2.0L A

VEHICLE I.D. NO.
K M H N 6 5 F 9 3 U 0 6 1 3 3 0

| DELIVERY DATE | DELIVERY MILES |
|---|---|
| | |

| SELLING DEALER NO. | PRODUCTION DATE |
|---|---|

| RESIDENCE PHONE | BUSINESS PHONE |
|---|---|
| 419-408-0811 | |

| P.O. NO. | |
|---|---|

| R. O. DATE |
|---|
| 05/16/05 |

**LABOR & PARTS**

CUSTOMER STATES CLUTCH SLIPS UNDER HARD ...
REPLACE CLUTCH (PLATE), DISC BEARING AND ...
FLYWHEEL (CUSTOMER PROVIDED AFTERMARKET PARTS)

| PARTS | QTY | FP-NUMBER | DESCRIPTION | UNIT PRICE | |
|---|---|---|---|---|---|
| JOB # 1 | 1 | 08960-00010 A | MT MANUAL TRAN | 33.99 | |

JOB # 1 TOTAL PARTS     33.99
JOB # 1 TOTAL LABOR & PARTS    765.99

REMOVE VALVE ...
BLEED SYSTEM, PER CUSTOMER

| PARTS | QTY | FP-NUMBER | DESCRIPTION | UNIT PRICE |
|---|---|---|---|---|

JOB # 2 TOTAL PARTS     0.00
JOB # 2 TOTAL LABOR & PARTS    75.00

**TOTALS**

WE ARE PROUD OF OUR SERVICE DEPARTMENT
THANK YOU FOR USING COLUMBIA SERVICE
(*) BY PART # DENOTES GOODWRENCH
SERVICE PLUS LIFETIME WARRANTY PART

PAID BY
CASH
CHECK
AMEX
DISCOVER
MC
VISA

| | |
|---|---|
| TOTAL LABOR | 825.00 |
| TOTAL PARTS | 33.99 |
| TOTAL SUBLET | 0.00 |
| TOTAL G.O.G. | 0.00 |
| TOTAL MISC | 0.00 |
| TOTAL MISC DISC | 0.00 |
| TOTAL TAX | 60.13 |

**TOTAL INVOICE $    919.12**

CUSTOMER SIGNATURE

EXHIBIT
Parkinson
5

PAGE 1 OF 1          SERVICE FILE COPY

END OF INVOICE   10:45:55



# Columbia, Oldsmobile / Hyundai

**OLDSMOBILE**

**HYUNDAI**

10981 MONTGOMERY RD (I-275 and MONTGOMERY RD)   CINCINNATI, OH 45249

SERVICE PHONE.
489-4424

BODY SHOP PHONE
489-7381

MAIN.
489-2000

**RECOMMENDED SERVICES**

| OPERATION | OPERATION DESCRIPTION | MO/MI | TOTAL | OPERATION | OPERATION DESCRIPTION | MO/MI | TOTAL |
|---|---|---|---|---|---|---|---|
| 02HYZ02 | WIPER BLADES | MI | 0.00 | 02HYZ01 | SAFETY INSPECTION | MI | 0.00 |
| 02HYZ05 | BELT & HOSE INSP | MI | 0.00 | 02HYZ27 | 27000 MILE SERVICE | MI | 0.00 |
| 02HYZ30 | 30000 MILE SERVICE | MI | 0.00 | 04HY206 | ALIGN FRONT END | MI | 0.00 |
| 04HYZ08 | PACK FRONT WHEEL BRG | MI | 0.00 | 04HY209 | SHOCKS OR STRUT INSP | MI | 0.00 |
| 06HYZ06 | ROTATE TIRES | MI | 0.00 | 06HYZ07 | BALANCE (FRONT) | MI | 0.00 |

**SERVICE HISTORY**

| DATE | REPAIR ORDER | MILEAGE | ADVISOR | TECHNICIAN | TYPE | OPERATION | OPERATION DESCRIPTION |
|---|---|---|---|---|---|---|---|
| 04/22/05 | 342542 | 27793 | 111 | 39 | C | 02HYZ04 | OIL FILTER & LUBE |
| | | | | 39 | C | 36HYV | NOISES GENERAL |
| 01/20/05 | 335263 | 24221 | 322 | 39 | C | 36HYZ01 | INSPECT & REPORT |
| | | | | 39 | C | 02HYZ04 | OIL FILTER & LUBE |
| 11/08/04 | 329722 | 21156 | 111 | 39 | W | 10HYZ06 | CHECK ENGINE LIGHT |
| | | | | 186 | W | 44HYZ01 | INSPECT & REPORT |

**SALESPERSON NO.**

# SERVICE

| | |
|---|---|
| CALL WHEN READY | 03/HYUNDAI/ELANTRA/4DRN/4DRGKN FX 2.0L |
| ☐ YES | |
| ☐ NO | |

MICHAEL PARKINSON
11651 NORBOURNE DR
APT 113
CINCINNATI, OH 45240

419-408-0811

08:16am 05/16/05. 07:00pm

Jive Appt

STATE REG# A

PRODUCTION DATE        LICENSE NO.        R.O. DATE
344403
05/16/05

COLOR
SILVER

MILEAGE
29,036

ADVISOR
111

ADVISOR
MICHAEL J MATTIS

EXPIRATION MILES
575

**ORIGINAL CUSTOMER ESTIMATE   PARTS   LABOR   TOTAL**

65¢

CUSTOMER STATES CLUTCH SLIPS/WONT SHIFT INTO REVERSE

*Remove clutch valve out of slave cylinder & bleed system @ customers request*

**ESTIMATE**
(UNDER OHIO LAW) YOU HAVE THE RIGHT TO AN ESTIMATE IF THE EXPECTED COST OF REPAIRS OR SERVICES WILL BE MORE THAN TWENTY-FIVE DOLLARS. INITIAL YOUR CHOICE.

$ 375

REPLACED PARTS WILL BE RETURNED UNLESS SPECIFIED OTHERWISE

ALL PARTS ARE NEW OR FACTORY REBUILT UNLESS SPECIFIED OTHERWISE

The Seller, COLUMBIA OLDSMOBILE/HYUNDAI, hereby expressly disclaims all warranties, either express or implied, including any implied warranty of merchantability or fitness for a particular purpose, and COLUMBIA OLDSMOBILE/HYUNDAI neither assumes nor authorizes any other person to assume for it any liability in connection with the sale.

| PHONE NOS. | SERVICE: | 513-489-4424 |
|---|---|---|
| | BODY SHOP: | 513-489-7381 |
| | MAIN: | 513-489-2000 |

344403

PAGE 1 OF 1

EXHIBIT T
PAGE 250

# EXHIBIT U

1  BINGHAM McCUTCHEN LLP
   TODD E. GORDINIER, STATE BAR NO. 82200
2  todd.gordinier@bingham.com
   JASON H. ANDERSON, STATE BAR NO. 172087
3  jason.anderson@bingham.com
   600 Anton Blvd., 18th Floor
4  Costa Mesa, CA  92626
   Telephone: (714) 830-0600
5  Fax: (714) 830-0700

6  JASON R. ERB, STATE BAR NO. 180962
   JasonErb@hmausa.com
7  HYUNDAI MOTOR AMERICA
   10550 Talbert Ave.
8  P.O. Box 20850
   Fountain Valley, CA  92728-0850
9  Telephone: (714) 965-3393
   Fax: (714) 965-3815
10
   Attorneys For Defendant
11 HYUNDAI MOTOR AMERICA

12

13              UNITED STATES DISTRICT COURT

14              CENTRAL DISTRICT OF CALIFORNIA

15                  SOUTHERN DIVISION

16

| 17 | MICHAEL PARKINSON, et al. on behalf of themselves and all others similarly situated, | CASE NO. SAVC 06-345-AHS (MLGx) |
|---|---|---|
| 18 | | Hon. Alicemarie H. Stotler |
| 19 | Plaintiffs, | |
| 20 | v. | **DEFENDANT HYUNDAI MOTOR AMERICA, INC.'S FIRST SET OF REQUESTS FOR PRODUCTION OF** |
| 21 | HYUNDAI MOTOR AMERICA, a California Corporation, | **DOCUMENTS AND THINGS TO PLAINTIFF DONN SCHROEDER** |
| 22 | | |
| 23 | Defendant. | |

24  PROPOUNDING PARTY:      DEFENDANT HYUNDAI MOTOR AMERICA,

25                          INC.

26  RESPONDING PARTY:       PLAINTIFF DONN SCHROEDER

27  SET:                    ONE

28

A/72476590.1

1        Pursuant to Federal Rule of Civil Procedure 34, Defendant Hyundai Motor

2 America, Inc. ("Hyundai") hereby requests that Plaintiff Donn Schroeder

3 ("Schroeder") respond under oath to the following requests for production of

4 documents and things and produce or permit the inspection and copying of the

5 documents and things described below at, unless specified otherwise below, the

6 offices of Bingham McCutchen, 600 Anton Blvd., 18th Floor, Costa Mesa,

7 California, on or before April 24, 2008, at 10:00 a.m.

8

9                            **DEFINITIONS**

10        The following definitions shall apply to the requests:

11        1.      The terms "YOU" and "YOUR" refer to Plaintiff Donn Schroeder.

12        2.      The term "HYUNDAI" refers to Defendant Hyundai Motor America,

13 Inc.

14        3.      The term "COMPLAINT" refers to YOUR First Amended

15 Consolidated Complaint.

16        4.      The term "TIBURON" refers to the 2003 Hyundai Tiburon that YOU

17 own (or owned) that is the subject matter of YOUR COMPLAINT.

18        5.      The term "DOCUMENT" or "DOCUMENTS" refers to all writings or

19 recordings that consist of letters, words, numbers, or their equivalent, set down by

20 handwriting, type-writing, printing, photostating, photographing, magnetic

21 impulse, mechanical or electronic recording, or other form of data compilation in

22 YOUR actual or constructive possession, custody, care or control, including both

23 originals, as defined by Federal Rule of Evidence ("FRE") 1001(3), and duplicates,

24 as defined by FRE 1001(4). To the extent DOCUMENTS exist in paperless form

25 (including e-mails, video tapes, or other data stored on computers or electronic

26 devices) please make or download copies.

27        6.      As used herein, the terms "COMMUNICATION" or

28 'COMMUNICATIONS" shall mean and refer to any meeting, conversation,

**EXHIBIT U
PAGE 252**

1   discussion, letter, facsimile, note, memorandum, correspondence, message, e-

2   mails, or other writing or occurrence whereby thoughts, opinions, data, or

3   information are transmitted.

4       7.    The term "PHOTOGRAPH" or "PHOTOGRAPHS" refers to all

5   photographs, X-ray films, video tapes, motion pictures, or electronic recordings in

6   YOUR actual or constructive possession, custody, care or control, including both

7   originals, as defined by FRE 1001(3), and duplicates, as defined by FRE 1001(4).

8   To the extent PHOTOGRAPHS exist in paperless form (including e-mails, video

9   tapes, or other data stored on computers or electronic devices) please make or

10  download copies.

11      8.    The term "AFTERMARKET MODIFICATIONS" refers to any

12  addition or replacement of non-factory (i.e. not manufactured by HYUNDAI)

13  parts, accessories, or upgrades to a motor vehicle.

14

15  **REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS**

16

17  **REQUEST FOR PRODUCTION NO. 1:**

18  YOUR TIBURON for purposes of inspection and/or non-destructive testing.

19  **REQUEST FOR PRODUCTION NO. 2:**

20  All DOCUMENTS and PHOTOGRAPHS that refer or relate to YOUR

21  TIBURON.

22  **REQUEST FOR PRODUCTION NO. 3:**

23  All DOCUMENTS and PHOTOGRAPHS that evidence, refer or relate to

24  any service, repair, or diagnosis to YOUR TIBURON.

25  **REQUEST FOR PRODUCTION NO. 4:**

26  All DOCUMENTS and PHOTOGRAPHS that evidence, refer or relate to

27  any AFTERMARKET MODIFICATIONS made, whether by YOU or a prior

28  owner, to YOUR TIBURON.

A/72476590.1                                   - 2 -

**REQUEST FOR PRODUCTION NO. 5:**

All DOCUMENTS and PHOTOGRAPHS that evidence, refer, or relate to the purchase or lease of any manual transmission automobile by YOU.

**REQUEST FOR PRODUCTION NO. 6:**

All DOCUMENTS and PHOTOGRAPHS that evidence, refer, or relate to any service, repair, modification, alteration, or upgrade of any automobile that YOU have owned or leased.

**REQUEST FOR PRODUCTION NO. 7:**

All DOCUMENTS and PHOTOGRAPHS that evidence, refer, or relate to any clutch, flywheel, clutch disk, clutch release, or clutch release bearing problems, services, or repairs to any automobile that YOU have owned or leased.

**REQUEST FOR PRODUCTION NO. 8:**

All DOCUMENTS that refer or relate to any automobile insurance YOU had on YOUR TIBURON.

**REQUEST FOR PRODUCTION NO. 9:**

All DOCUMENTS that refer or relate to any insurance claims made with respect to YOUR TIBURON.

**REQUEST FOR PRODUCTION NO. 10:**

All DOCUMENTS that refer or relate to traffic tickets or citations (including vehicle equipment citations) that YOU have received (excluding parking tickets or tickets for an invalid or expired license or registration).

**REQUEST FOR PRODUCTION NO. 11:**

All advertising, promotional, or marketing DOCUMENTS that refer or relate to the 2003 Hyundai Tiburon that YOU actually read or reviewed prior to acquiring YOUR TIBURON.

**REQUEST FOR PRODUCTION NO. 12:**

a.      All DOCUMENTS that evidence, refer or relate to any lawsuits to which YOU have been a party, including case number, date complaint was filed

EXHIBIT U
PAGE 254

1  and court.

2  b.  All DOCUMENTS that evidence, refer or relate to any prior litigation

3  instituted by YOU relating to a motor vehicle.

4  c.  All DOCUMENTS that evidence, refer or relate to any prior litigation

5  in which YOU were a putative class representative.

6  **REQUEST FOR PRODUCTION NO. 13:**

7  All DOCUMENTS that support YOUR contention in paragraph 4 of YOUR

8  COMPLAINT that "[t]he Flywheel System that Hyundai manufactured and/or

9  installed on the Class Vehicles was defective at the initial point of sale, in that it

10  causes abrupt powertrain failure, leading to vehicle inoperability, both during the

11  stated duration of the express warranties and the expected useful life of the system

12  itself."

13  **REQUEST FOR PRODUCTION NO. 14:**

14  a.  All DOCUMENTS that support YOUR contention in paragraph 5 of

15  the COMPLAINT that "When Tiburon owners present their vehicles for repair or

16  replacement of the Flywheel System, Hyundai fails to disclose and/or conceals that

17  the component parts of the Flywheel System are covered by the warranties."

18  b.  All DOCUMENTS that support YOUR contention in paragraph 5 of

19  the COMPLAINT that "Hyundai's policy and practice is to diagnose the Flywheel

20  System defect as normal wear and tear, or driver abuse, and to deny warranty

21  coverage."

22  c.  All DOCUMENTS that support YOUR contention in paragraph 5 of

23  the COMPLAINT that "Hyundai charges for repair or replacement of the defective

24  Flywheel System and then, in many instances, replaced the defective Flywheel

25  System with identical, defective parts."

26  **REQUEST FOR PRODUCTION NO. 15:**

27  All DOCUMENTS that support YOUR contention in paragraph 36 of the

28  COMPLAINT that "Hyundai instructs authorized Hyundai dealerships on warranty

A/72476590.1                                    - 4 -

1  policy, including what is and what is not covered under the Express Warranties,

2  what is and is not defective in material or workmanship, including instructions to

3  authorized Hyundai dealerships of the warranty policies described herein."

4  **REQUEST FOR PRODUCTION NO. 16:**

5      All DOCUMENTS that support YOUR contention in paragraph 41 of

6  YOUR COMPLAINT that "it has been and continues to be futile for Class

7  members to bring their vehicles to Hyundai dealerships to have the Flywheel

8  System defects fixed under warranty."

9  **REQUEST FOR PRODUCTION NO. 17:**

10      All DOCUMENTS that evidence, refer, or relate to any

11  COMMUNICATIONS between YOU and any authorized HYUNDAI dealership

12  about YOUR TIBURON.

13  **REQUEST FOR PRODUCTION NO. 18:**

14      Any DOCUMENTS that evidence, refer, or relate to any

15  COMMUNICATIONS between YOU and HYUNDAI about YOUR TIBURON.

16  **REQUEST FOR PRODUCTION NO. 19:**

17      Any DOCUMENTS that evidence, refer, or relate to any

18  COMMUNICATIONS by YOU about YOUR TIBURON.

19  **REQUEST FOR PRODUCTION NO. 20:**

20      Any DOCUMENTS that evidence, refer, or relate to COMMUNICATIONS

21  about the alleged defect to YOUR TIBURON'S flywheel, clutch cover and

22  housing, clutch disc assembly and/or clutch release bearing.

23  **REQUEST FOR PRODUCTION NO. 21:**

24      A true and correct copy of the original owner's manual delivered with

25  YOUR TIBURON.

26  **REQUEST FOR PRODUCTION NO. 22:**

27      A true and correct copy of the original owner's handbook delivered with

28  YOUR TIBURON.

A/72476590.1

1   **REQUEST FOR PRODUCTION NO. 23:**

2       A true and correct copy of YOUR driver's license.

3

4   DATED: March 21, 2008                    BINGHAM McCUTCHEN LLP

5

6

7                                            By: _____
                                                 Todd E. Gordinier
8                                                Attorneys for Defendant Hyundai
                                                 Motor America
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

A/72476590.1                               - 6 -

1

## PROOF OF SERVICE

2       I am over eighteen years of age, not a party in this action, and employed in

3  Orange County, California at 600 Anton Boulevard, 18th Floor, Costa Mesa,

4  California 92626-1924. I am readily familiar with the practice of this office for

5  collection and processing of correspondence for mail delivery, and they are

6  deposited that same day in the ordinary course of business. On **March 21, 2008**, I

7  served the attached:

8
9

**DEFENDANT HYUNDAI MOTOR AMERICA, INC.'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS TO PLAINTIFF DONN SCHROEDER**

10
11

☐ (BY FAX) by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

12
13
14
15
16

☒ (BY MAIL) by causing a true and correct copy of the above to be placed in the United States Mail at Costa Mesa, California in sealed envelope(s) with postage prepaid, addressed as set forth below. I am readily familiar with this law firm's practice for collection and processing of correspondence for mailing with the United States Postal Service. Correspondence is deposited with the United States Postal Service the same day it is left for collection and processing in the ordinary course of business.

17
18
19

☐ (EXPRESS MAIL/OVERNIGHT DELIVERY) by causing a true and correct copy of the document(s) listed above to be delivered by _____ in sealed envelope(s) with all fees prepaid at the address(es) set forth below.

20
21

☐ (VIA EMAIL) by transmitting via email the document(s) listed above on this date before 5:00 p.m. PST to the person(s) at the email address(es) set forth below.

22

### PLEASE SEE ATTACHED SERVICE LIST

23       I declare that I am employed in the office of a member of the bar of this

24  court at whose direction the service was made and that this declaration was

25  executed on **March 21, 2008**, at Costa Mesa, California.

26

27                      Julie M. Valenzuela

28

A/72476590.1

1

## SERVICE LIST

2

Parkinson v. Hyundai

3

4

5

6

7

8

Christine P. Bartholomew, Esq.
Finkelstein Thompson LLP
601 Montgomery Street, Suite 665
San Francisco, CA 94111
Phone: (415) 398-8700
Fax: (415) 398-8704
Email:
cbartholomew@finkelsteinthompson.com

Eric H. Gibbs, Esq.
Girard Gibbs & De Bartolomeo
601 California Street, Suite 1400
San Francisco, CA 94108
Phone: (415) 981-4800
Fax: (415) 981-4846
Email: ehg@girardgibbs.com

9

10

11

12

13

Robert S. Green, Esq.
Green Welling LLP
595 Market Street, Suite 2750
San Francisco, CA 94105
Phone: (415) 477-6700
Fax: (415) 477-6710
Email: rsg@classcounsel.com

Hallen D. Rosner
Rosner & Mansfield, LLP
10085 Carroll Canyon Road
Suite 100
San Diego, CA 92131-1100
Phone: (858) 348-1005
Fax: (858) 348-1150

14

15

16

17

18

19

Norman E. Siegel, Esq.
Stueve Siegel Hanson Woody LLP
330 West 47th Street
Suite 250
Kansas City, MO 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
Email: siegel@sshwlaw.com

Richard M. Volin, Esq.
Finkelstein Thompson LLP
1050 30th Street N.W.
Washington, DC 20007
Phone: (202) 337-8000
Fax: (202) 337-8090
Email:
rvolin@finkelsteinthompson.com

20

21

22

23

24

25

26

27

28

A/72476590.1

1   BINGHAM MCCUTCHEN LLP
2   TODD E. GORDINIER, STATE BAR NO. 82200
    todd.gordinier@bingham.com
3   JASON H. ANDERSON, STATE BAR NO. 172087
    jason.anderson@bingham.com
    600 Anton Blvd., 18th Floor
4   Costa Mesa, CA 92626
    Telephone: (714) 830-0600
5   Fax: (714) 830-0700

6   JASON R. ERB, STATE BAR NO. 180962
    JasonErb@hmausa.com
7   HYUNDAI MOTOR AMERICA
    10550 Talbert Ave.
8   P.O. Box 20850
    Fountain Valley, CA 92728-0850
9   Telephone: (714) 965-3393
    Fax: (714) 965-3815
10
    Attorneys For Defendant
11  HYUNDAI MOTOR AMERICA

12

13                 UNITED STATES DISTRICT COURT

14                 CENTRAL DISTRICT OF CALIFORNIA

15                      SOUTHERN DIVISION

16

17  MICHAEL PARKINSON, et al. on        CASE NO. SAVC 06-345-AHS (MLGx)
    behalf of themselves and all others
18  similarly situated,                 Hon. Alicemarie H. Stotler

19              Plaintiffs,

20       v.                             **DEFENDANT HYUNDAI MOTOR
                                        AMERICA, INC.'S FIRST SET OF
21  HYUNDAI MOTOR AMERICA, a            REQUESTS FOR PRODUCTION OF
    California Corporation,             DOCUMENTS AND THINGS TO
                                        PLAINTIFF MICHAEL SANO**
22
            Defendant.
23

24  PROPOUNDING PARTY:        DEFENDANT HYUNDAI MOTOR AMERICA,

25                            INC.

26  RESPONDING PARTY:         PLAINTIFF MICHAEL SANO

27  SET:                      ONE

28
    A/72476604.1

EXHIBIT U
PAGE 260

1       Pursuant to Federal Rule of Civil Procedure 34, Defendant Hyundai Motor

2    America, Inc. ("Hyundai") hereby requests that Plaintiff Michael Sano ("Sano")

3    respond under oath to the following requests for production of documents and

4    things and produce or permit the inspection and copying of the documents and

5    things described below at, unless specified otherwise below, the offices of

6    Bingham McCutchen, 600 Anton Blvd., 18th Floor, Costa Mesa, California, on or

7    before April 24, 2008, at 10:00 a.m.

8

9                      **DEFINITIONS**

10    The following definitions shall apply to the requests:

11       1.    The terms "YOU" and "YOUR" refer to Plaintiff Michael Sano.

12       2.    The term "HYUNDAI" refers to Defendant Hyundai Motor America,

13    Inc.

14       3.    The term "COMPLAINT" refers to YOUR First Amended

15    Consolidated Complaint.

16       4.    The term "TIBURON" refers to the 2003 Hyundai Tiburon that YOU

17    own (or owned) that is the subject matter of YOUR COMPLAINT.

18       5.    The term "DOCUMENT" or "DOCUMENTS" refers to all writings or

19    recordings that consist of letters, words, numbers, or their equivalent, set down by

20    handwriting, type-writing, printing, photostating, photographing, magnetic

21    impulse, mechanical or electronic recording, or other form of data compilation in

22    YOUR actual or constructive possession, custody, care or control, including both

23    originals, as defined by Federal Rule of Evidence ("FRE") 1001(3), and duplicates,

24    as defined by FRE 1001(4).  To the extent DOCUMENTS exist in paperless form

25    (including e-mails, video tapes, or other data stored on computers or electronic

26    devices) please make or download copies.

27       6.    As used herein, the terms "COMMUNICATION" or

28    'COMMUNICATIONS" shall mean and refer to any meeting, conversation,

A/72476604.1                    - 1 -

1  discussion, letter, facsimile, note, memorandum, correspondence, message, e-

2  mails, or other writing or occurrence whereby thoughts, opinions, data, or

3  information are transmitted.

4      7.    The term "PHOTOGRAPH" or "PHOTOGRAPHS" refers to all

5  photographs, X-ray films, video tapes, motion pictures, or electronic recordings in

6  YOUR actual or constructive possession, custody, care or control, including both

7  originals, as defined by FRE 1001(3), and duplicates, as defined by FRE 1001(4).

8  To the extent PHOTOGRAPHS exist in paperless form (including e-mails, video

9  tapes, or other data stored on computers or electronic devices) please make or

10  download copies.

11      8.    The term "AFTERMARKET MODIFICATIONS" refers to any

12  addition or replacement of non-factory (i.e. not manufactured by HYUNDAI)

13  parts, accessories, or upgrades to a motor vehicle.

14

15  **REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS**

16

17  **REQUEST FOR PRODUCTION NO. 1:**

18      YOUR TIBURON for purposes of inspection and/or non-destructive testing.

19  **REQUEST FOR PRODUCTION NO. 2:**

20      All DOCUMENTS and PHOTOGRAPHS that refer or relate to YOUR

21  TIBURON.

22  **REQUEST FOR PRODUCTION NO. 3:**

23      All DOCUMENTS and PHOTOGRAPHS that evidence, refer or relate to

24  any service, repair, or diagnosis to YOUR TIBURON.

25  **REQUEST FOR PRODUCTION NO. 4:**

26      All DOCUMENTS and PHOTOGRAPHS that evidence, refer or relate to

27  any AFTERMARKET MODIFICATIONS made, whether by YOU or a prior

28  owner, to YOUR TIBURON.

A/72476604.1

- 2 -

1  **REQUEST FOR PRODUCTION NO. 5:**

2  All DOCUMENTS and PHOTOGRAPHS that evidence, refer, or relate to

3  the purchase or lease of any manual transmission automobile by YOU.

4  **REQUEST FOR PRODUCTION NO. 6:**

5  All DOCUMENTS and PHOTOGRAPHS that evidence, refer, or relate to

6  any service, repair, modification, alteration, or upgrade of any automobile that

7  YOU have owned or leased.

8  **REQUEST FOR PRODUCTION NO. 7:**

9  All DOCUMENTS and PHOTOGRAPHS that evidence, refer, or relate to

10  any clutch, flywheel, clutch disk, clutch release, or clutch release bearing

11  problems, services, or repairs to any automobile that YOU have owned or leased.

12  **REQUEST FOR PRODUCTION NO. 8:**

13  All DOCUMENTS that refer or relate to any automobile insurance YOU had

14  on YOUR TIBURON.

15  **REQUEST FOR PRODUCTION NO. 9:**

16  All DOCUMENTS that refer or relate to any insurance claims made with

17  respect to YOUR TIBURON.

18  **REQUEST FOR PRODUCTION NO. 10:**

19  All DOCUMENTS that refer or relate to traffic tickets or citations (including

20  vehicle equipment citations) that YOU have received (excluding parking tickets or

21  tickets for an invalid or expired license or registration).

22  **REQUEST FOR PRODUCTION NO. 11:**

23  All advertising, promotional, or marketing DOCUMENTS that refer or

24  relate to the 2003 Hyundai Tiburon that YOU actually read or reviewed prior to

25  acquiring YOUR TIBURON.

26  **REQUEST FOR PRODUCTION NO. 12:**

27  a.    All DOCUMENTS that evidence, refer or relate to any lawsuits to

28  which YOU have been a party, including case number, date complaint was filed

A/72476604.1                                            - 3 -

1    and court.

2          b.       All DOCUMENTS that evidence, refer or relate to any prior litigation

3    instituted by YOU relating to a motor vehicle.

4          c.       All DOCUMENTS that evidence, refer or relate to any prior litigation

5    in which YOU were a putative class representative.

6    **REQUEST FOR PRODUCTION NO. 13:**

7          All DOCUMENTS that support YOUR contention in paragraph 4 of YOUR

8    COMPLAINT that "[t]he Flywheel System that Hyundai manufactured and/or

9    installed on the Class Vehicles was defective at the initial point of sale, in that it

10   causes abrupt powertrain failure, leading to vehicle inoperability, both during the

11   stated duration of the express warranties and the expected useful life of the system

12   itself."

13   **REQUEST FOR PRODUCTION NO. 14:**

14         a.       All DOCUMENTS that support YOUR contention in paragraph 5 of

15   the COMPLAINT that "When Tiburon owners present their vehicles for repair or

16   replacement of the Flywheel System, Hyundai fails to disclose and/or conceals that

17   the component parts of the Flywheel System are covered by the warranties."

18         b.       All DOCUMENTS that support YOUR contention in paragraph 5 of

19   the COMPLAINT that "Hyundai's policy and practice is to diagnose the Flywheel

20   System defect as normal wear and tear, or driver abuse, and to deny warranty

21   coverage."

22         c.       All DOCUMENTS that support YOUR contention in paragraph 5 of

23   the COMPLAINT that "Hyundai charges for repair or replacement of the defective

24   Flywheel System and then, in many instances, replaced the defective Flywheel

25   System with identical, defective parts."

26   **REQUEST FOR PRODUCTION NO. 15:**

27         All DOCUMENTS that support YOUR contention in paragraph 36 of the

28   COMPLAINT that "Hyundai instructs authorized Hyundai dealerships on warranty

A/72476604.1                                   - 4 -

1  policy, including what is and what is not covered under the Express Warranties,

2  what is and is not defective in material or workmanship, including instructions to

3  authorized Hyundai dealerships of the warranty policies described herein."

4  **REQUEST FOR PRODUCTION NO. 16:**

5      All DOCUMENTS that support YOUR contention in paragraph 41 of

6  YOUR COMPLAINT that "it has been and continues to be futile for Class

7  members to bring their vehicles to Hyundai dealerships to have the Flywheel

8  System defects fixed under warranty."

9  **REQUEST FOR PRODUCTION NO. 17:**

10      All DOCUMENTS that evidence, refer, or relate to any

11  COMMUNICATIONS between YOU and any authorized HYUNDAI dealership

12  about YOUR TIBURON.

13  **REQUEST FOR PRODUCTION NO. 18:**

14      Any DOCUMENTS that evidence, refer, or relate to any

15  COMMUNICATIONS between YOU and HYUNDAI about YOUR TIBURON.

16  **REQUEST FOR PRODUCTION NO. 19:**

17      Any DOCUMENTS that evidence, refer, or relate to any

18  COMMUNICATIONS by YOU about YOUR TIBURON.

19  **REQUEST FOR PRODUCTION NO. 20:**

20      Any DOCUMENTS that evidence, refer, or relate to COMMUNICATIONS

21  about the alleged defect to YOUR TIBURON'S flywheel, clutch cover and

22  housing, clutch disc assembly and/or clutch release bearing.

23  **REQUEST FOR PRODUCTION NO. 21:**

24      A true and correct copy of the original owner's manual delivered with

25  YOUR TIBURON.

26  **REQUEST FOR PRODUCTION NO. 22:**

27      A true and correct copy of the original owner's handbook delivered with

28  YOUR TIBURON.

A/72476604.1

- 5 -

1   **REQUEST FOR PRODUCTION NO. 23:**

2       A true and correct copy of YOUR driver's license.

3

4   DATED: March 21, 2008          BINGHAM McCUTCHEN LLP

5

6

7                  By: _____

8                        Todd E. Gordinier
                     Attorneys for Defendant Hyundai
                     Motor America

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT U
PAGE 266

## **PROOF OF SERVICE**

I am over eighteen years of age, not a party in this action, and employed in Orange County, California at 600 Anton Boulevard, 18th Floor, Costa Mesa, California 92626-1924. I am readily familiar with the practice of this office for collection and processing of correspondence for mail delivery, and they are deposited that same day in the ordinary course of business. On **March 21, 2008,** I served the attached:

**DEFENDANT HYUNDAI MOTOR AMERICA, INC.'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS TO PLAINTIFF MICHAEL SANO**

☐ (BY FAX) by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☒ (BY MAIL) by causing a true and correct copy of the above to be placed in the United States Mail at Costa Mesa, California in sealed envelope(s) with postage prepaid, addressed as set forth below. I am readily familiar with this law firm's practice for collection and processing of correspondence for mailing with the United States Postal Service. Correspondence is deposited with the United States Postal Service the same day it is left for collection and processing in the ordinary course of business.

☐ (EXPRESS MAIL/OVERNIGHT DELIVERY) by causing a true and correct copy of the document(s) listed above to be delivered by _____ in sealed envelope(s) with all fees prepaid at the address(es) set forth below.

☐ (VIA EMAIL) by transmitting via email the document(s) listed above on this date before 5:00 p.m. PST to the person(s) at the email address(es) set forth below.

### **PLEASE SEE ATTACHED SERVICE LIST**

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made and that this declaration was executed on **March 21, 2008,** at Costa Mesa, California.

_Julie M. Valenzuela_

A/72476604.1

1

## SERVICE LIST

2

Parkinson v. Hyundai

3

4   Christine P. Bartholomew, Esq.
Finkelstein Thompson LLP

5   601 Montgomery Street, Suite 665
San Francisco, CA 94111

6   Phone: (415) 398-8700
Fax: (415) 398-8704

7   Email:
cbartholomew@finkelsteinthompson.com

8

9   Robert S. Green, Esq.
Green Welling LLP

10  595 Market Street, Suite 2750
San Francisco, CA 94105

11  Phone: (415) 477-6700
Fax: (415) 477-6710

12  Email: rsg@classcounsel.com

13

14  Norman E. Siegel, Esq.
Stueve Siegel Hanson Woody LLP

15  330 West 47th Street
Suite 250

16  Kansas City, MO 64112

17  Phone: (816) 714-7100
Fax: (816) 714-7101

18  Email: siegel@sshwlaw.com

19

Eric H. Gibbs, Esq.
Girard Gibbs & De Bartolomeo
601 California Street, Suite 1400
San Francisco, CA 94108
Phone: (415) 981-4800
Fax: (415) 981-4846
Email: ehg@girardgibbs.com

Hallen D. Rosner
Rosner & Mansfield, LLP
10085 Carroll Canyon Road
Suite 100
San Diego, CA 92131-1100
Phone: (858) 348-1005
Fax: (858) 348-1150

Richard M. Volin, Esq.
Finkelstein Thompson LLP
1050 30th Street N.W.
Washington, DC 20007
Phone: (202) 337-8000
Fax: (202) 337-8090
Email:
rvolin@finkelsteinthompson.com

20

21

22

23

24

25

26

27

28

A/72476604.1

BINGHAM MCCUTCHEN LLP
TODD E. GORDINIER, STATE BAR NO. 82200
todd.gordinier@bingham.com
JASON H. ANDERSON, STATE BAR NO. 172087
jason.anderson@bingham.com
600 Anton Blvd., 18th Floor
Costa Mesa, CA 92626
Telephone: (714) 830-0600
Fax: (714) 830-0700

JASON R. ERB, STATE BAR NO. 180962
JasonErb@hmausa.com
HYUNDAI MOTOR AMERICA
10550 Talbert Ave.
P.O. Box 20850
Fountain Valley, CA 92728-0850
Telephone: (714) 965-3393
Fax: (714) 965-3815

Attorneys For Defendant
HYUNDAI MOTOR AMERICA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

|  |  |
|---|---|
| MICHAEL PARKINSON, et al. on behalf of themselves and all others similarly situated, | CASE NO. SAVC 06-345-AHS (MLGx) |
|  | Hon. Alicemarie H. Stotler |
| Plaintiffs, |  |
| v. | **DEFENDANT HYUNDAI MOTOR AMERICA, INC.'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS TO PLAINTIFF WESLEY GORMAN** |
| HYUNDAI MOTOR AMERICA, a California Corporation, |  |
| Defendant. |  |

PROPOUNDING PARTY:     DEFENDANT HYUNDAI MOTOR AMERICA, INC.

RESPONDING PARTY:       PLAINTIFF WESLEY GORMAN

SET:                    ONE

A/72476645.1

1    Pursuant to Federal Rule of Civil Procedure 34, Defendant Hyundai Motor

2    America, Inc. ("Hyundai") hereby requests that Plaintiff Wesley Gorman

3    ("Gorman") respond under oath to the following requests for production of

4    documents and things and produce or permit the inspection and copying of the

5    documents and things described below at, unless specified otherwise below, the

6    offices of Bingham McCutchen, 600 Anton Blvd., 18th Floor, Costa Mesa,

7    California, on or before April 24, 2008, at 10:00 a.m.

8

9    **DEFINITIONS**

10   The following definitions shall apply to the requests:

11   1.    The terms "YOU" and "YOUR" refer to Plaintiff Wesley Gorman.

12   2.    The term "HYUNDAI" refers to Defendant Hyundai Motor America,

13   Inc.

14   3.    The term "COMPLAINT" refers to YOUR First Amended

15   Consolidated Complaint.

16   4.    The term "TIBURON" refers to the 2003 Hyundai Tiburon that YOU

17   own (or owned) that is the subject matter of YOUR COMPLAINT.

18   5.    The term "DOCUMENT" or "DOCUMENTS" refers to all writings or

19   recordings that consist of letters, words, numbers, or their equivalent, set down by

20   handwriting, type-writing, printing, photostating, photographing, magnetic

21   impulse, mechanical or electronic recording, or other form of data compilation in

22   YOUR actual or constructive possession, custody, care or control, including both

23   originals, as defined by Federal Rule of Evidence ("FRE") 1001(3), and duplicates,

24   as defined by FRE 1001(4).  To the extent DOCUMENTS exist in paperless form

25   (including e-mails, video tapes, or other data stored on computers or electronic

26   devices) please make or download copies.

27   6.    As used herein, the terms "COMMUNICATION" or

28   'COMMUNICATIONS" shall mean and refer to any meeting, conversation,

A/72476645.1                          - 1 -

1   discussion, letter, facsimile, note, memorandum, correspondence, message, e-

2   mails, or other writing or occurrence whereby thoughts, opinions, data, or

3   information are transmitted.

4       7.    The term "PHOTOGRAPH" or "PHOTOGRAPHS" refers to all

5   photographs, X-ray films, video tapes, motion pictures, or electronic recordings in

6   YOUR actual or constructive possession, custody, care or control, including both

7   originals, as defined by FRE 1001(3), and duplicates, as defined by FRE 1001(4).

8   To the extent PHOTOGRAPHS exist in paperless form (including e-mails, video

9   tapes, or other data stored on computers or electronic devices) please make or

10   download copies.

11       8.    The term "AFTERMARKET MODIFICATIONS" refers to any

12   addition or replacement of non-factory (i.e. not manufactured by HYUNDAI)

13   parts, accessories, or upgrades to a motor vehicle.

14

15   **REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS**

16

17   **REQUEST FOR PRODUCTION NO. 1:**

18       YOUR TIBURON for purposes of inspection and/or non-destructive testing.

19   **REQUEST FOR PRODUCTION NO. 2:**

20       All DOCUMENTS and PHOTOGRAPHS that refer or relate to YOUR

21   TIBURON.

22   **REQUEST FOR PRODUCTION NO. 3:**

23       All DOCUMENTS and PHOTOGRAPHS that evidence, refer or relate to

24   any service, repair, or diagnosis to YOUR TIBURON.

25   **REQUEST FOR PRODUCTION NO. 4:**

26       All DOCUMENTS and PHOTOGRAPHS that evidence, refer or relate to

27   any AFTERMARKET MODIFICATIONS made, whether by YOU or a prior

28   owner, to YOUR TIBURON.

A/72476645.1    - 2 -

**REQUEST FOR PRODUCTION NO. 5:**

All DOCUMENTS and PHOTOGRAPHS that evidence, refer, or relate to the purchase or lease of any manual transmission automobile by YOU.

**REQUEST FOR PRODUCTION NO. 6:**

All DOCUMENTS and PHOTOGRAPHS that evidence, refer, or relate to any service, repair, modification, alteration, or upgrade of any automobile that YOU have owned or leased.

**REQUEST FOR PRODUCTION NO. 7:**

All DOCUMENTS and PHOTOGRAPHS that evidence, refer, or relate to any clutch, flywheel, clutch disk, clutch release, or clutch release bearing problems, services, or repairs to any automobile that YOU have owned or leased.

**REQUEST FOR PRODUCTION NO. 8:**

All DOCUMENTS that refer or relate to any automobile insurance YOU had on YOUR TIBURON.

**REQUEST FOR PRODUCTION NO. 9:**

All DOCUMENTS that refer or relate to any insurance claims made with respect to YOUR TIBURON.

**REQUEST FOR PRODUCTION NO. 10:**

All DOCUMENTS that refer or relate to traffic tickets or citations (including vehicle equipment citations) that YOU have received (excluding parking tickets or tickets for an invalid or expired license or registration).

**REQUEST FOR PRODUCTION NO. 11:**

All advertising, promotional, or marketing DOCUMENTS that refer or relate to the 2003 Hyundai Tiburon that YOU actually read or reviewed prior to acquiring YOUR TIBURON.

**REQUEST FOR PRODUCTION NO. 12:**

a.     All DOCUMENTS that evidence, refer or relate to any lawsuits to which YOU have been a party, including case number, date complaint was filed

1 | and court.

2 |       b.     All DOCUMENTS that evidence, refer or relate to any prior litigation

3 | instituted by YOU relating to a motor vehicle.

4 |       c.     All DOCUMENTS that evidence, refer or relate to any prior litigation

5 | in which YOU were a putative class representative.

6 | **REQUEST FOR PRODUCTION NO. 13:**

7 |     All DOCUMENTS that support YOUR contention in paragraph 4 of YOUR

8 | COMPLAINT that "[t]he Flywheel System that Hyundai manufactured and/or

9 | installed on the Class Vehicles was defective at the initial point of sale, in that it

10 | causes abrupt powertrain failure, leading to vehicle inoperability, both during the

11 | stated duration of the express warranties and the expected useful life of the system

12 | itself."

13 | **REQUEST FOR PRODUCTION NO. 14:**

14 |       a.     All DOCUMENTS that support YOUR contention in paragraph 5 of

15 | the COMPLAINT that "When Tiburon owners present their vehicles for repair or

16 | replacement of the Flywheel System, Hyundai fails to disclose and/or conceals that

17 | the component parts of the Flywheel System are covered by the warranties."

18 |       b.     All DOCUMENTS that support YOUR contention in paragraph 5 of

19 | the COMPLAINT that "Hyundai's policy and practice is to diagnose the Flywheel

20 | System defect as normal wear and tear, or driver abuse, and to deny warranty

21 | coverage."

22 |       c.     All DOCUMENTS that support YOUR contention in paragraph 5 of

23 | the COMPLAINT that "Hyundai charges for repair or replacement of the defective

24 | Flywheel System and then, in many instances, replaced the defective Flywheel

25 | System with identical, defective parts."

26 | **REQUEST FOR PRODUCTION NO. 15:**

27 |     All DOCUMENTS that support YOUR contention in paragraph 36 of the

28 | COMPLAINT that "Hyundai instructs authorized Hyundai dealerships on warranty

1    policy, including what is and what is not covered under the Express Warranties,

2    what is and is not defective in material or workmanship, including instructions to

3    authorized Hyundai dealerships of the warranty policies described herein."

4    **REQUEST FOR PRODUCTION NO. 16:**

5            All DOCUMENTS that support YOUR contention in paragraph 41 of

6    YOUR COMPLAINT that "it has been and continues to be futile for Class

7    members to bring their vehicles to Hyundai dealerships to have the Flywheel

8    System defects fixed under warranty."

9    **REQUEST FOR PRODUCTION NO. 17:**

10           All DOCUMENTS that evidence, refer, or relate to any

11   COMMUNICATIONS between YOU and any authorized HYUNDAI dealership

12   about YOUR TIBURON.

13   **REQUEST FOR PRODUCTION NO. 18:**

14           Any DOCUMENTS that evidence, refer, or relate to any

15   COMMUNICATIONS between YOU and HYUNDAI about YOUR TIBURON.

16   **REQUEST FOR PRODUCTION NO. 19:**

17           Any DOCUMENTS that evidence, refer, or relate to any

18   COMMUNICATIONS by YOU about YOUR TIBURON.

19   **REQUEST FOR PRODUCTION NO. 20:**

20           Any DOCUMENTS that evidence, refer, or relate to COMMUNICATIONS

21   about the alleged defect to YOUR TIBURON'S flywheel, clutch cover and

22   housing, clutch disc assembly and/or clutch release bearing.

23   **REQUEST FOR PRODUCTION NO. 21:**

24           A true and correct copy of the original owner's manual delivered with

25   YOUR TIBURON.

26   **REQUEST FOR PRODUCTION NO. 22:**

27           A true and correct copy of the original owner's handbook delivered with

28   YOUR TIBURON.

1

## REQUEST FOR PRODUCTION NO. 23:

2     A true and correct copy of YOUR driver's license.

3

4  DATED: March 21, 2008         BINGHAM McCUTCHEN LLP

5

6

7                  By: _____

                         Todd E. Gordinier

8                         Attorneys for Defendant Hyundai

                         Motor America

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

A/72476645.1

- 6 -

1

## PROOF OF SERVICE

2       I am over eighteen years of age, not a party in this action, and employed in

3  Orange County, California at 600 Anton Boulevard, 18th Floor, Costa Mesa,

4  California 92626-1924. I am readily familiar with the practice of this office for

5  collection and processing of correspondence for mail delivery, and they are

6  deposited that same day in the ordinary course of business. On **March 21, 2008**, I

7  served the attached:

8
9  **DEFENDANT HYUNDAI MOTOR AMERICA, INC.'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS TO PLAINTIFF WESLEY GORMAN**

10
11  ☐ (BY FAX) by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

12
13
14
15
16  ☒ (BY MAIL) by causing a true and correct copy of the above to be placed in the United States Mail at Costa Mesa, California in sealed envelope(s) with postage prepaid, addressed as set forth below. I am readily familiar with this law firm's practice for collection and processing of correspondence for mailing with the United States Postal Service. Correspondence is deposited with the United States Postal Service the same day it is left for collection and processing in the ordinary course of business.

17
18  ☐ (EXPRESS MAIL/OVERNIGHT DELIVERY) by causing a true and correct copy of the document(s) listed above to be delivered by _____ in sealed envelope(s) with all fees prepaid at the address(es) set forth below.

19
20
21  ☐ (VIA EMAIL) by transmitting via email the document(s) listed above on this date before 5:00 p.m. PST to the person(s) at the email address(es) set forth below.

22

### PLEASE SEE ATTACHED SERVICE LIST

23      I declare that I am employed in the office of a member of the bar of this

24  court at whose direction the service was made and that this declaration was

25  executed on **March 21, 2008**, at Costa Mesa, California.

26
27                    Julie M. Valenzuela

28

A/72476645.1

**EXHIBIT U
PAGE 276**

1

## SERVICE LIST

2

Parkinson v. Hyundai

3

4 Christine P. Bartholomew, Esq.          Eric H. Gibbs, Esq.
  Finkelstein Thompson LLP               Girard Gibbs & De Bartolomeo
5 601 Montgomery Street, Suite 665        601 California Street, Suite 1400
  San Francisco, CA 94111                San Francisco, CA 94108
6 Phone: (415) 398-8700                   Phone: (415) 981-4800
  Fax: (415) 398-8704                     Fax: (415) 981-4846
7 Email:                                  Email: ehg@girardgibbs.com
8 cbartholomew@finkelsteinthompson.com

9 Robert S. Green, Esq.                   Hallen D. Rosner
  Green Welling LLP                       Rosner & Mansfield, LLP
10 595 Market Street, Suite 2750          10085 Carroll Canyon Road
11 San Francisco, CA 94105                Suite 100
   Phone: (415) 477-6700                  San Diego, CA 92131-1100
12 Fax: (415) 477-6710                    Phone: (858) 348-1005
13 Email: rsg@classcounsel.com            Fax: (858) 348-1150

14 Norman E. Siegel, Esq.                 Richard M. Volin, Esq.
15 Stueve Siegel Hanson Woody LLP         Finkelstein Thompson LLP
   330 West 47th Street                   1050 30th Street N.W.
16 Suite 250                              Washington, DC 20007
17 Kansas City, MO 64112                  Phone: (202) 337-8000
   Phone: (816) 714-7100                  Fax: (202) 337-8090
18 Fax: (816) 714-7101                    Email:
19 Email: siegel@sshwlaw.com              rvolin@finkelsteinthompson.com

20

21

22

23

24

25

26

27

28

A/72476645.1

1   BINGHAM MCCUTCHEN LLP
    TODD E. GORDINIER, STATE BAR NO. 82200
2   todd.gordinier@bingham.com
    JASON H. ANDERSON, STATE BAR NO. 172087
3   jason.anderson@bingham.com
    600 Anton Blvd., 18th Floor
4   Costa Mesa, CA 92626
    Telephone: (714) 830-0600
5   Fax: (714) 830-0700

6   JASON R. ERB, STATE BAR NO. 180962
    JasonErb@hmausa.com
7   HYUNDAI MOTOR AMERICA
    10550 Talbert Ave.
8   P.O. Box 20850
    Fountain Valley, CA 92728-0850
9   Telephone: (714) 965-3393
    Fax: (714) 965-3815
10
    Attorneys For Defendant
11  HYUNDAI MOTOR AMERICA

12

13            UNITED STATES DISTRICT COURT

14          CENTRAL DISTRICT OF CALIFORNIA

15               SOUTHERN DIVISION

16

17  MICHAEL PARKINSON, et al. on        CASE NO. SAVC 06-345-AHS (MLGx)
    behalf of themselves and all others
18  similarly situated,                 Hon. Alicemarie H. Stotler

19              Plaintiffs,
                                        **DEFENDANT HYUNDAI MOTOR**
20      v.                              **AMERICA, INC.'S FIRST SET OF**
                                        **REQUESTS FOR PRODUCTION OF**
21  HYUNDAI MOTOR AMERICA, a            **DOCUMENTS AND THINGS TO**
    California Corporation,             **PLAINTIFF ERIC MATUSCHEK**
22
                Defendant.
23

24  PROPOUNDING PARTY:     DEFENDANT HYUNDAI MOTOR AMERICA,

25                         INC.

26  RESPONDING PARTY:      PLAINTIFF ERIC MATUSCHEK

27  SET:                   ONE

28

A/72476608.1

1    Pursuant to Federal Rule of Civil Procedure 34, Defendant Hyundai Motor

2   America, Inc. ("Hyundai") hereby requests that Plaintiff Eric Matuschek

3   ("Matuschek") respond under oath to the following requests for production of

4   documents and things and produce or permit the inspection and copying of the

5   documents and things described below at, unless specified otherwise below, the

6   offices of Bingham McCutchen, 600 Anton Blvd., 18th Floor, Costa Mesa,

7   California, on or before April 24, 2008, at 10:00 a.m.

8

9                                    **DEFINITIONS**

10     The following definitions shall apply to the requests:

11     1.    The terms "YOU" and "YOUR" refer to Plaintiff Eric Matuschek.

12     2.    The term "HYUNDAI" refers to Defendant Hyundai Motor America,

13   Inc.

14     3.    The term "COMPLAINT" refers to YOUR First Amended

15   Consolidated Complaint.

16     4.    The term "TIBURON" refers to the 2003 Hyundai Tiburon that YOU

17   own (or owned) that is the subject matter of YOUR COMPLAINT.

18     5.    The term "DOCUMENT" or "DOCUMENTS" refers to all writings or

19   recordings that consist of letters, words, numbers, or their equivalent, set down by

20   handwriting, type-writing, printing, photostating, photographing, magnetic

21   impulse, mechanical or electronic recording, or other form of data compilation in

22   YOUR actual or constructive possession, custody, care or control, including both

23   originals, as defined by Federal Rule of Evidence ("FRE") 1001(3), and duplicates,

24   as defined by FRE 1001(4).  To the extent DOCUMENTS exist in paperless form

25   (including e-mails, video tapes, or other data stored on computers or electronic

26   devices) please make or download copies.

27     6.    As used herein, the terms "COMMUNICATION" or

28   'COMMUNICATIONS" shall mean and refer to any meeting, conversation,

A/72476608.1                              - 1 -

1   discussion, letter, facsimile, note, memorandum, correspondence, message, e-
2   mails, or other writing or occurrence whereby thoughts, opinions, data, or
3   information are transmitted.

4       7.    The term "PHOTOGRAPH" or "PHOTOGRAPHS" refers to all
5   photographs, X-ray films, video tapes, motion pictures, or electronic recordings in
6   YOUR actual or constructive possession, custody, care or control, including both
7   originals, as defined by FRE 1001(3), and duplicates, as defined by FRE 1001(4).
8   To the extent PHOTOGRAPHS exist in paperless form (including e-mails, video
9   tapes, or other data stored on computers or electronic devices) please make or
10  download copies.

11      8.    The term "AFTERMARKET MODIFICATIONS" refers to any
12  addition or replacement of non-factory (i.e. not manufactured by HYUNDAI)
13  parts, accessories, or upgrades to a motor vehicle.

14

15  **REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS**

16

17  **REQUEST FOR PRODUCTION NO. 1:**
18      YOUR TIBURON for purposes of inspection and/or non-destructive testing.
19  **REQUEST FOR PRODUCTION NO. 2:**
20      All DOCUMENTS and PHOTOGRAPHS that refer or relate to YOUR
21  TIBURON.
22  **REQUEST FOR PRODUCTION NO. 3:**
23      All DOCUMENTS and PHOTOGRAPHS that evidence, refer or relate to
24  any service, repair, or diagnosis to YOUR TIBURON.
25  **REQUEST FOR PRODUCTION NO. 4:**
26      All DOCUMENTS and PHOTOGRAPHS that evidence, refer or relate to
27  any AFTERMARKET MODIFICATIONS made, whether by YOU or a prior
28  owner, to YOUR TIBURON.

A/72476608.1

- 2 -

**REQUEST FOR PRODUCTION NO. 5:**

All DOCUMENTS and PHOTOGRAPHS that evidence, refer, or relate to the purchase or lease of any manual transmission automobile by YOU.

**REQUEST FOR PRODUCTION NO. 6:**

All DOCUMENTS and PHOTOGRAPHS that evidence, refer, or relate to any service, repair, modification, alteration, or upgrade of any automobile that YOU have owned or leased.

**REQUEST FOR PRODUCTION NO. 7:**

All DOCUMENTS and PHOTOGRAPHS that evidence, refer, or relate to any clutch, flywheel, clutch disk, clutch release, or clutch release bearing problems, services, or repairs to any automobile that YOU have owned or leased.

**REQUEST FOR PRODUCTION NO. 8:**

All DOCUMENTS that refer or relate to any automobile insurance YOU had on YOUR TIBURON.

**REQUEST FOR PRODUCTION NO. 9:**

All DOCUMENTS that refer or relate to any insurance claims made with respect to YOUR TIBURON.

**REQUEST FOR PRODUCTION NO. 10:**

All DOCUMENTS that refer or relate to traffic tickets or citations (including vehicle equipment citations) that YOU have received (excluding parking tickets or tickets for an invalid or expired license or registration).

**REQUEST FOR PRODUCTION NO. 11:**

All advertising, promotional, or marketing DOCUMENTS that refer or relate to the 2003 Hyundai Tiburon that YOU actually read or reviewed prior to acquiring YOUR TIBURON.

**REQUEST FOR PRODUCTION NO. 12:**

a.    All DOCUMENTS that evidence, refer or relate to any lawsuits to which YOU have been a party, including case number, date complaint was filed

**EXHIBIT U**
**PAGE 281**

1    and court.

2        b.    All DOCUMENTS that evidence, refer or relate to any prior litigation

3    instituted by YOU relating to a motor vehicle.

4        c.    All DOCUMENTS that evidence, refer or relate to any prior litigation

5    in which YOU were a putative class representative.

6    **REQUEST FOR PRODUCTION NO. 13:**

7        All DOCUMENTS that support YOUR contention in paragraph 4 of YOUR

8    COMPLAINT that "[t]he Flywheel System that Hyundai manufactured and/or

9    installed on the Class Vehicles was defective at the initial point of sale, in that it

10   causes abrupt powertrain failure, leading to vehicle inoperability, both during the

11   stated duration of the express warranties and the expected useful life of the system

12   itself."

13   **REQUEST FOR PRODUCTION NO. 14:**

14       a.    All DOCUMENTS that support YOUR contention in paragraph 5 of

15   the COMPLAINT that "When Tiburon owners present their vehicles for repair or

16   replacement of the Flywheel System, Hyundai fails to disclose and/or conceals that

17   the component parts of the Flywheel System are covered by the warranties."

18       b.    All DOCUMENTS that support YOUR contention in paragraph 5 of

19   the COMPLAINT that "Hyundai's policy and practice is to diagnose the Flywheel

20   System defect as normal wear and tear, or driver abuse, and to deny warranty

21   coverage."

22       c.    All DOCUMENTS that support YOUR contention in paragraph 5 of

23   the COMPLAINT that "Hyundai charges for repair or replacement of the defective

24   Flywheel System and then, in many instances, replaced the defective Flywheel

25   System with identical, defective parts."

26   **REQUEST FOR PRODUCTION NO. 15:**

27       All DOCUMENTS that support YOUR contention in paragraph 36 of the

28   COMPLAINT that "Hyundai instructs authorized Hyundai dealerships on warranty

A/72476608.1                              - 4 -

1  policy, including what is and what is not covered under the Express Warranties,
2  what is and is not defective in material or workmanship, including instructions to
3  authorized Hyundai dealerships of the warranty policies described herein."

4  **REQUEST FOR PRODUCTION NO. 16:**

5  All DOCUMENTS that support YOUR contention in paragraph 41 of
6  YOUR COMPLAINT that "it has been and continues to be futile for Class
7  members to bring their vehicles to Hyundai dealerships to have the Flywheel
8  System defects fixed under warranty."

9  **REQUEST FOR PRODUCTION NO. 17:**

10  All DOCUMENTS that evidence, refer, or relate to any
11  COMMUNICATIONS between YOU and any authorized HYUNDAI dealership
12  about YOUR TIBURON.

13  **REQUEST FOR PRODUCTION NO. 18:**

14  Any DOCUMENTS that evidence, refer, or relate to any
15  COMMUNICATIONS between YOU and HYUNDAI about YOUR TIBURON.

16  **REQUEST FOR PRODUCTION NO. 19:**

17  Any DOCUMENTS that evidence, refer, or relate to any
18  COMMUNICATIONS by YOU about YOUR TIBURON.

19  **REQUEST FOR PRODUCTION NO. 20:**

20  Any DOCUMENTS that evidence, refer, or relate to COMMUNICATIONS
21  about the alleged defect to YOUR TIBURON'S flywheel, clutch cover and
22  housing, clutch disc assembly and/or clutch release bearing.

23  **REQUEST FOR PRODUCTION NO. 21:**

24  A true and correct copy of the original owner's manual delivered with
25  YOUR TIBURON.

26  **REQUEST FOR PRODUCTION NO. 22:**

27  A true and correct copy of the original owner's handbook delivered with
28  YOUR TIBURON.

A/72476608.1

- 5 -

1    **REQUEST FOR PRODUCTION NO. 23:**

2         A true and correct copy of YOUR driver's license.

3

4    DATED: March 2<u>l</u>, 2008                BINGHAM McCUTCHEN LLP

5

6                                         By: _____

7                                         Todd E. Gordinier
                                          Attorneys for Defendant Hyundai
8                                         Motor America

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT U
PAGE 284

1

## PROOF OF SERVICE

2    I am over eighteen years of age, not a party in this action, and employed in

3  Orange County, California at 600 Anton Boulevard, 18th Floor, Costa Mesa,

4  California  92626-1924.  I am readily familiar with the practice of this office for

5  collection and processing of correspondence for mail delivery, and they are

6  deposited that same day in the ordinary course of business.  On **March 21, 2008**, I

7  served the attached:

8    **DEFENDANT HYUNDAI MOTOR AMERICA, INC.'S FIRST SET**
     **OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND**
9    **THINGS TO PLAINTIFF ERIC MATUSCHEK**

10  ☐  (BY FAX) by transmitting via facsimile the document(s) listed above to the
11      fax number(s) set forth below on this date before 5:00 p.m.

12  ☒  (BY MAIL) by causing a true and correct copy of the above to be placed in
        the United States Mail at Costa Mesa, California in sealed envelope(s) with
13      postage prepaid, addressed as set forth below.  I am readily familiar with this
14      law firm's practice for collection and processing of correspondence for
        mailing with the United States Postal Service.  Correspondence is deposited
15      with the United States Postal Service the same day it is left for collection and
16      processing in the ordinary course of business.

17  ☐  (EXPRESS MAIL/OVERNIGHT DELIVERY) by causing a true and correct
        copy of the document(s) listed above to be delivered by _____ in
18      sealed envelope(s) with all fees prepaid at the address(es) set forth below.

19
20  ☐  (VIA EMAIL) by transmitting via email the document(s) listed above on this
        date before 5:00 p.m. PST to the person(s) at the email address(es) set forth
21      below.

22    **PLEASE SEE ATTACHED SERVICE LIST**

23    I declare that I am employed in the office of a member of the bar of this

24  court at whose direction the service was made and that this declaration was

25  executed on **March 21, 2008**, at Costa Mesa, California.

26  _____

27                                 Julie M. Valenzuela

28

A/72476608.1

1

## SERVICE LIST

2  Parkinson v. Hyundai

3

4  Christine P. Bartholomew, Esq.
Finkelstein Thompson LLP

5  601 Montgomery Street, Suite 665
San Francisco, CA 94111

6  Phone: (415) 398-8700

7  Fax: (415) 398-8704
Email:

8  cbartholomew@finkelsteinthompson.com

9  Robert S. Green, Esq.
Green Welling LLP

10  595 Market Street, Suite 2750

11  San Francisco, CA 94105
Phone: (415) 477-6700

12  Fax: (415) 477-6710

13  Email: rsg@classcounsel.com

14

15  Norman E. Siegel, Esq.
Stueve Siegel Hanson Woody LLP

16  330 West 47th Street
Suite 250

17  Kansas City, MO 64112
Phone: (816) 714-7100

18  Fax: (816) 714-7101

19  Email: siegel@sshwlaw.com

Eric H. Gibbs, Esq.
Girard Gibbs & De Bartolomeo
601 California Street, Suite 1400
San Francisco, CA 94108
Phone: (415) 981-4800
Fax: (415) 981-4846
Email: ehg@girardgibbs.com

Hallen D. Rosner
Rosner & Mansfield, LLP
10085 Carroll Canyon Road
Suite 100
San Diego, CA 92131-1100
Phone: (858) 348-1005
Fax: (858) 348-1150

Richard M. Volin, Esq.
Finkelstein Thompson LLP
1050 30th Street N.W.
Washington, DC 20007
Phone: (202) 337-8000
Fax: (202) 337-8090
Email:
rvolin@finkelsteinthompson.com

20

21

22

23

24

25

26

27

28

A/72476608.1

1   BINGHAM MCCUTCHEN LLP
    TODD E. GORDINIER, STATE BAR NO. 82200
2   todd.gordinier@bingham.com
    JASON H. ANDERSON, STATE BAR NO. 172087
3   jason.anderson@bingham.com
    600 Anton Blvd., 18th Floor
4   Costa Mesa, CA  92626
    Telephone: (714) 830-0600
5   Fax: (714) 830-0700

6   JASON R. ERB, STATE BAR NO. 180962
    JasonErb@hmausa.com
7   HYUNDAI MOTOR AMERICA
    10550 Talbert Ave.
8   P.O. Box 20850
    Fountain Valley, CA  92728-0850
9   Telephone: (714) 965-3393
    Fax: (714) 965-3815

10
    Attorneys For Defendant
11  HYUNDAI MOTOR AMERICA

12

13                    UNITED STATES DISTRICT COURT

14                   CENTRAL DISTRICT OF CALIFORNIA

15                         SOUTHERN DIVISION

16

| | |
|---|---|
| 17   MICHAEL PARKINSON, et al. on behalf of themselves and all others 18   similarly situated, | CASE NO. SAVC 06-345-AHS (MLGx) |
| 19                    Plaintiffs, | Hon. Alicemarie H. Stotler |
| 20        v. | **DEFENDANT HYUNDAI MOTOR AMERICA, INC.'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS TO PLAINTIFF MICHAEL PARKINSON** |
| 21   HYUNDAI MOTOR AMERICA, a California Corporation, | |
| 22                    Defendant. | |
| 23 | |

24   PROPOUNDING PARTY:        DEFENDANT HYUNDAI MOTOR AMERICA,

25                                               INC.

26   RESPONDING PARTY:         PLAINTIFF MICHAEL PARKINSON

27   SET:                                ONE

28

A/6232155.1

EXHIBIT U
PAGE 287

1    Pursuant to Federal Rule of Civil Procedure 34, Defendant Hyundai Motor

2  America, Inc. ("Hyundai") hereby requests that Plaintiff Michael Parkinson

3  ("Parkinson") respond under oath to the following requests for production of

4  documents and things and produce or permit the inspection and copying of the

5  documents and things described below at, unless specified otherwise below, the

6  offices of Bingham McCutchen, 600 Anton Blvd., 18th Floor, Costa Mesa,

7  California, on or before April 24, 2008, at 10:00 a.m.

8

9                                **DEFINITIONS**

10   The following definitions shall apply to the requests:

11   1.    The terms "YOU" and "YOUR" refer to Plaintiff Michael Parkinson.

12   2.    The term "HYUNDAI" refers to Defendant Hyundai Motor America,

13  Inc.

14   3.    The term "COMPLAINT" refers to YOUR First Amended

15  Consolidated Complaint.

16   4.    The term "TIBURON" refers to the 2003 Hyundai Tiburon that YOU

17  own (or owned) that is the subject matter of YOUR COMPLAINT.

18   5.    The term "DOCUMENT" or "DOCUMENTS" refers to all writings or

19  recordings that consist of letters, words, numbers, or their equivalent, set down by

20  handwriting, type-writing, printing, photostating, photographing, magnetic

21  impulse, mechanical or electronic recording, or other form of data compilation in

22  YOUR actual or constructive possession, custody, care or control, including both

23  originals, as defined by Federal Rule of Evidence ("FRE") 1001(3), and duplicates,

24  as defined by FRE 1001(4).  To the extent DOCUMENTS exist in paperless form

25  (including e-mails, video tapes, or other data stored on computers or electronic

26  devices) please make or download copies.

27   6.    As used herein, the terms "COMMUNICATION" or

28  'COMMUNICATIONS" shall mean and refer to any meeting, conversation,

A/6232155.1                              - 1 -

1  discussion, letter, facsimile, note, memorandum, correspondence, message, e-
2  mails, or other writing or occurrence whereby thoughts, opinions, data, or
3  information are transmitted.

4      7.    The term "PHOTOGRAPH" or "PHOTOGRAPHS" refers to all
5  photographs, X-ray films, video tapes, motion pictures, or electronic recordings in
6  YOUR actual or constructive possession, custody, care or control, including both
7  originals, as defined by FRE 1001(3), and duplicates, as defined by FRE 1001(4).
8  To the extent PHOTOGRAPHS exist in paperless form (including e-mails, video
9  tapes, or other data stored on computers or electronic devices) please make or
10  download copies.

11      8.    The term "AFTERMARKET MODIFICATIONS" refers to any
12  addition or replacement of non-factory (i.e. not manufactured by HYUNDAI)
13  parts, accessories, or upgrades to a motor vehicle.

14

15  **REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS**

16

17  **REQUEST FOR PRODUCTION NO. 1:**
18      YOUR TIBURON for purposes of inspection and/or non-destructive testing.
19  **REQUEST FOR PRODUCTION NO. 2:**
20      All DOCUMENTS and PHOTOGRAPHS that refer or relate to YOUR
21  TIBURON.
22  **REQUEST FOR PRODUCTION NO. 3:**
23      All DOCUMENTS and PHOTOGRAPHS that evidence, refer or relate to
24  any service, repair, or diagnosis to YOUR TIBURON.
25  **REQUEST FOR PRODUCTION NO. 4:**
26      All DOCUMENTS and PHOTOGRAPHS that evidence, refer or relate to
27  any AFTERMARKET MODIFICATIONS made, whether by YOU or a prior
28  owner, to YOUR TIBURON.

A/6232155.1     - 2 -

1  **REQUEST FOR PRODUCTION NO. 5:**

2     All DOCUMENTS and PHOTOGRAPHS that evidence, refer, or relate to

3  the purchase or lease of any manual transmission automobile by YOU.

4  **REQUEST FOR PRODUCTION NO. 6:**

5     All DOCUMENTS and PHOTOGRAPHS that evidence, refer, or relate to

6  any service, repair, modification, alteration, or upgrade of any automobile that

7  YOU have owned or leased.

8  **REQUEST FOR PRODUCTION NO. 7:**

9     All DOCUMENTS and PHOTOGRAPHS that evidence, refer, or relate to

10  any clutch, flywheel, clutch disk, clutch release, or clutch release bearing

11  problems, services, or repairs to any automobile that YOU have owned or leased.

12  **REQUEST FOR PRODUCTION NO. 8:**

13     All DOCUMENTS that refer or relate to any automobile insurance YOU had

14  on YOUR TIBURON.

15  **REQUEST FOR PRODUCTION NO. 9:**

16     All DOCUMENTS that refer or relate to any insurance claims made with

17  respect to YOUR TIBURON.

18  **REQUEST FOR PRODUCTION NO. 10:**

19     All DOCUMENTS that refer or relate to traffic tickets or citations (including

20  vehicle equipment citations) that YOU have received (excluding parking tickets or

21  tickets for an invalid or expired license or registration).

22  **REQUEST FOR PRODUCTION NO. 11:**

23     All advertising, promotional, or marketing DOCUMENTS that refer or

24  relate to the 2003 Hyundai Tiburon that YOU actually read or reviewed prior to

25  acquiring YOUR TIBURON.

26  **REQUEST FOR PRODUCTION NO. 12:**

27     a.    All DOCUMENTS that evidence, refer or relate to any lawsuits to

28  which YOU have been a party, including case number, date complaint was filed

1    and court.

2         b.    All DOCUMENTS that evidence, refer or relate to any prior litigation

3    instituted by YOU relating to a motor vehicle.

4         c.    All DOCUMENTS that evidence, refer or relate to any prior litigation

5    in which YOU were a putative class representative.

6    **REQUEST FOR PRODUCTION NO. 13:**

7        All DOCUMENTS that support YOUR contention in paragraph 4 of YOUR

8    COMPLAINT that "[t]he Flywheel System that Hyundai manufactured and/or

9    installed on the Class Vehicles was defective at the initial point of sale, in that it

10    causes abrupt powertrain failure, leading to vehicle inoperability, both during the

11    stated duration of the express warranties and the expected useful life of the system

12    itself."

13    **REQUEST FOR PRODUCTION NO. 14:**

14         a.    All DOCUMENTS that support YOUR contention in paragraph 5 of

15    the COMPLAINT that "When Tiburon owners present their vehicles for repair or

16    replacement of the Flywheel System, Hyundai fails to disclose and/or conceals that

17    the component parts of the Flywheel System are covered by the warranties."

18         b.    All DOCUMENTS that support YOUR contention in paragraph 5 of

19    the COMPLAINT that "Hyundai's policy and practice is to diagnose the Flywheel

20    System defect as normal wear and tear, or driver abuse, and to deny warranty

21    coverage."

22         c.    All DOCUMENTS that support YOUR contention in paragraph 5 of

23    the COMPLAINT that "Hyundai charges for repair or replacement of the defective

24    Flywheel System and then, in many instances, replaced the defective Flywheel

25    System with identical, defective parts."

26    **REQUEST FOR PRODUCTION NO. 15:**

27        All DOCUMENTS that support YOUR contention in paragraph 36 of the

28    COMPLAINT that "Hyundai instructs authorized Hyundai dealerships on warranty

**EXHIBIT U**
**PAGE 291**

1  policy, including what is and what is not covered under the Express Warranties,

2  what is and is not defective in material or workmanship, including instructions to

3  authorized Hyundai dealerships of the warranty policies described herein."

4  **REQUEST FOR PRODUCTION NO. 16:**

5  All DOCUMENTS that support YOUR contention in paragraph 41 of

6  YOUR COMPLAINT that "it has been and continues to be futile for Class

7  members to bring their vehicles to Hyundai dealerships to have the Flywheel

8  System defects fixed under warranty."

9  **REQUEST FOR PRODUCTION NO. 17:**

10  All DOCUMENTS that evidence, refer, or relate to any

11  COMMUNICATIONS between YOU and any authorized HYUNDAI dealership

12  about YOUR TIBURON.

13  **REQUEST FOR PRODUCTION NO. 18:**

14  Any DOCUMENTS that evidence, refer, or relate to any

15  COMMUNICATIONS between YOU and HYUNDAI about YOUR TIBURON.

16  **REQUEST FOR PRODUCTION NO. 19:**

17  Any DOCUMENTS that evidence, refer, or relate to any

18  COMMUNICATIONS by YOU about YOUR TIBURON.

19  **REQUEST FOR PRODUCTION NO. 20:**

20  Any DOCUMENTS that evidence, refer, or relate to COMMUNICATIONS

21  about the alleged defect to YOUR TIBURON'S flywheel, clutch cover and

22  housing, clutch disc assembly and/or clutch release bearing.

23  **REQUEST FOR PRODUCTION NO. 21:**

24  A true and correct copy of the original owner's manual delivered with

25  YOUR TIBURON.

26  **REQUEST FOR PRODUCTION NO. 22:**

27  A true and correct copy of the original owner's handbook delivered with

28  YOUR TIBURON.

A/6232155.1

- 5 -

1    **REQUEST FOR PRODUCTION NO. 23:**

2         A true and correct copy of YOUR driver's license.

3

4    DATED: March 2/, 2008                    BINGHAM McCUTCHEN LLP

5

6                                             By: _____

7                                                Todd E. Gordinier
                                                 Attorneys for Defendant Hyundai
8                                                Motor America

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

A/6232155.1                          - 6 -

1

## PROOF OF SERVICE

2      I am over eighteen years of age, not a party in this action, and employed in

3  Orange County, California at 600 Anton Boulevard, 18th Floor, Costa Mesa,

4  California 92626-1924. I am readily familiar with the practice of this office for

5  collection and processing of correspondence for mail delivery, and they are

6  deposited that same day in the ordinary course of business. On **March 21, 2008,** I

7  served the attached:

8      **DEFENDANT HYUNDAI MOTOR AMERICA, INC.'S FIRST SET
       OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND**
9      **THINGS TO PLAINTIFF MICHAEL PARKINSON**

10  ☐  (BY FAX) by transmitting via facsimile the document(s) listed above to the
11     fax number(s) set forth below on this date before 5:00 p.m.

12  ☒  (BY MAIL) by causing a true and correct copy of the above to be placed in
       the United States Mail at Costa Mesa, California in sealed envelope(s) with
13     postage prepaid, addressed as set forth below. I am readily familiar with this
14     law firm's practice for collection and processing of correspondence for
       mailing with the United States Postal Service. Correspondence is deposited
15     with the United States Postal Service the same day it is left for collection and
16     processing in the ordinary course of business.

17  ☐  (EXPRESS MAIL/OVERNIGHT DELIVERY) by causing a true and correct
       copy of the document(s) listed above to be delivered by _____ in
18     sealed envelope(s) with all fees prepaid at the address(es) set forth below.

19
20  ☐  (VIA EMAIL) by transmitting via email the document(s) listed above on this
       date before 5:00 p.m. PST to the person(s) at the email address(es) set forth
21     below.

22      **PLEASE SEE ATTACHED SERVICE LIST**

23      I declare that I am employed in the office of a member of the bar of this

24  court at whose direction the service was made and that this declaration was

25  executed on **March 21, 2008,** at Costa Mesa, California.

26

27                                   Julie M. Valenzuela

28

A/6232155.1

# SERVICE LIST

<u>Parkinson v. Hyundai</u>

Christine P. Bartholomew, Esq.
Finkelstein Thompson LLP
601 Montgomery Street, Suite 665
San Francisco, CA 94111
Phone: (415) 398-8700
Fax: (415) 398-8704
Email:
cbartholomew@finkelsteinthompson.com

Eric H. Gibbs, Esq.
Girard Gibbs & De Bartolomeo
601 California Street, Suite 1400
San Francisco, CA 94108
Phone: (415) 981-4800
Fax: (415) 981-4846
Email: ehg@girardgibbs.com

Robert S. Green, Esq.
Green Welling LLP
595 Market Street, Suite 2750
San Francisco, CA 94105
Phone: (415) 477-6700
Fax: (415) 477-6710
Email: rsg@classcounsel.com

Hallen D. Rosner
Rosner & Mansfield, LLP
10085 Carroll Canyon Road
Suite 100
San Diego, CA 92131-1100
Phone: (858) 348-1005
Fax: (858) 348-1150

Norman E. Siegel, Esq.
Stueve Siegel Hanson Woody LLP
330 West 47th Street
Suite 250
Kansas City, MO 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
Email: siegel@sshwlaw.com

Richard M. Volin, Esq.
Finkelstein Thompson LLP
1050 30th Street N.W.
Washington, DC 20007
Phone: (202) 337-8000
Fax: (202) 337-8090
Email:
rvolin@finkelsteinthompson.com

A/6232155.1

# EXHIBIT V

## Defendant Hyundai Motor America's Appendix A
## Variations In State Law[1]

### (1)  BREACH OF WARRANTY CLAIMS

### PRIVITY

| Privity Required | | Privity Not Required | |
|---|---|---|---|
| **Alabama** | *Barre v. Gulf Shores Turf Supply, Inc., 547 So. 2d 503, 504 (Ala. 1989)* | **Delaware** | *Cline v. Prowler Industries of Maryland, Inc., 418 A.2d 968, 974 n. 11 (Del., 1980)* |
| **Arizona** | *Seekings v. Jimmy GMC of Tucson, Inc., 638 P.2d 210, 215 (1981)* | **Florida** | *Rentas v. DaimlerChrysler Corp., 936 So. 2d 747, 751 (2006)* |
| **California** | *Blanco v. Baxter Healthcare Corp., 158 Cal. App. 4th 1039, 1058-59 (2008)* | **Illinois** | *Collins Co. v. Carboline Co., 125 Ill. 2d 498, 509-10 (1988)* |
| **Georgia** | *Ellis v. Rich's, Inc., 233 Ga. 573, 577 (1975)* | **Kansas** | Kan. Stat. Ann § 84-2-318 (2007). |
| **Indiana** | *Avery v. Mapco Gas Products, Inc., 848 F. Supp. 1388, 1397 (N.D. Ind. 1991)* | **Maine** | *Sullivan v. Young Bros. & Co., 91 F.3d 242, 249-50 (1st Cir. 1996)* |
| **Iowa** | *Nebraska Innkeepers, Inc. v. Pittsburgh Des Moines Corp., 345 N.W.2d 124, 129 (Iowa 1984)* | **Massachusetts** | *Roth v. Ray-Stel's Hair Stylists, Inc., 470 N.E.2d 137, 139 (Mass. App. Ct. 1984)* |
| **Kentucky** | *Compex Int'l Co. v. Taylor, 209 S.W.3d 462, 464-65 (Ky. 2006)* | **New Jersey** | *Henry Heide, Inc. v. WRH Products Co., 766 F.2d 105, 110 (3d Cir. 1985)* |
| **Maryland** | *Copiers Typewriters Calculators, Inc. v. Toshiba Corp., 576 F. Supp. 312, 322-23 (D.C. Md. 1983) (applying Maryland law)* | **New York** | *Shuldman v. DaimlerChrysler Corp., 1 A.D.3d 343, 344-45 (N.Y. App. Div. 2003)* |
| **Missouri** | *Teel v. American Steel Foundries, 529 F. Supp. 337, 345 (E.D. Mo. 1981)* | | |
| **Texas** | *Keith v. Stoelting, Inc., 915 F.2d 996, 999 (5th Cir. 1990)* | | |
| **Washington** | *Anderson v. Dreis & Krump Mfr. Corp., 739 P.2d 1177, 1182 (Wash. Ct. App. 1987)* | | |
| **Wisconsin** | *Twin Disc, Inc. v. Big Bud Tractor, Inc., 582 F. Supp. 208, 215 (E.D. Wis. 1984)* | | |

[1] The variations in this Appendix only demonstrates some of the variances in these claims.  There are also variances within each category for each legal issue contained in this Appendix.

APPENDIX A, Page 1 of 9

EXHIBIT V
PAGE 296

## NOTICE BEFORE FILING SUIT[2]

| | Filing Of Suit Not Sufficient | | Filing Of Suit Sufficient |
|---|---|---|---|
| *Alabama* | *Parker v. Bell Ford, Inc.*, 425 So. 2d 1101, 1102 (Ala. 1983) | *Alaska* | *Shooshanian v. Wagner*, 672 P.2d 455, 462-63 (Alas. 1983) |
| *Arkansas* | *Adams v. Wacaster Oil Co.*, 81 Ark. App. 150, 154-55 (2003) | *Colorado* | *Wallman v. Kelley*, 976 P.2d 330, 332 (Colo. App. 1998) |
| *California* | *Fieldstone Co. v. Briggs Plumbing Products, Inc.*, 54 Cal. App. 4th 357, 369-71 (1997) | *Georgia* | *Hudson v. Gaines*, 403 S.E.2d 852, 854 (Ga. Ct. App. 1991) |
| *Florida* | *General Matters v. Paramount Canning Co.*, 382 So. 2d 1262, 1264 (Fla. Dist. Ct. App. 1980) | *North Carolina* | *Maybank v. S.S. Kresge Co.*, 302 N.C. 129, 136 (1981) |
| *Illinois* | *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 494-95 (1996) | *Pennsylvania* | *Bednarski v. Hideout Homes & Realty, Inc.*, 709 F. Supp. 90, 94 (M.D. Pa. 1988) |
| *New Hampshire* | *Cheshire Medical Center v. W.R. Grace & Co.*, 764 F. Supp. 213, 218 (D.N.H. 1991) (applying New Hampshire law) | *Rhode Island* | *DiPetrillo v. Dow Chemical Co.*, 729 A.2d 677, 682-83 (R.I. 1999) |

[2] Courts are also split as to when sufficiency of notice is a question of law and when sufficiency of notice is a question of fact to be decided by the jury. *Compare, Crest Container Corp. v. R.H. Bishop Co.*, 445 N.E.2d 19, 26 (Ill.App. 1982) (holding that testimony indicating that employee of defendant visited site to determine source of problem constituted sufficient notice as a matter of law) *with Larrance Tank Corp. v. Burrough*, 476 P.2d 346, 349 (Okl. 1970) (holding that the question of whether notice was given to defendant within a reasonable time of when plaintiff should have discovered defect was question of fact for jury to decide).

A/72576565.2

EXHIBIT V
PAGE 297

## TO WHOM NOTICE MUST BE GIVEN

| Notice to Immediate Seller Sufficient | | Must Notify Manufacturer | |
|---|---|---|---|
| *California* | *Corp. of Presiding Bishop of Church of Jesus Christ of Latter Day Saints v. Cavanaugh*, 217 Cal. App. 2d 492, 514 (1963) | *Alabama* | *Parker v. Bell Ford, Inc.*, 425 So. 2d 1101, 1102-03 (Ala. 1983) |
| *Colorado* | *Palmer v. A.H. Robins Co., Inc.*, 684 P.2d 187, 205-06 (Colo. 1984) | *Oregon* | *Redfield v. Mead, Johnson & Co.*, 266 Ore. 273, 284 (1973) |
| *Connecticut* | *Tomczuk v. Cheshire*, 26 Conn. Supp. 219, 222 (Conn. Super. Ct. 1965) | *Rhode Island* | *San Antonio v. Warwick Club Ginger Ale Co.*, 248 A.2d 778, 780 (R.I. 1968) |
| *Kansas* | *Carson v. Chevron Chemical Co.*, 635 P.2d 1248, 1255-56 (Kan. App. 1981) | *Wyoming* | *Western Equip. Co. v. Sheridan Iron Works*, 605 P.2d 806, 811 (Wyo. 1980) |
| *Maryland* | *Firestone Tire & Rubber Co. v. Cannon*, 53 Md. App. 106, 118 (Md. Ct. Spec. App. 1982) | | |
| *Illinois* | *Goldstein v. G. D. Searle & Co.*, 62 Ill. App. 3d 344, 347 (1978) | | |
| *Texas* | *Vintage Homes, Inc. v. Coldiron*, 585 S.W.2d 886, 888 (Tex. App. 1979) | | |

APPENDIX A, Page 3 of 9

**EXHIBIT V**
**PAGE 298**

## RELIANCE[3]

| Reliance on Express Warranty Required | | Reliance on Express Warranty Not Required | |
|---|---|---|---|
| *California* | *Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135, 142 (1986) | *Alabama* | *Massey-Ferguson, Inc. v. Laird*, 432 So. 2d 1259, 1261-62 (Ala. 1983) |
| *Delaware* | *Dilnnio Libbey Glass Division*, 668 F. Supp. 373, 376 (D. Del. 1987) (applying Delaware law) | *Colorado* | *Lutz Farms v. Ace-High Packing Co.*, 948 F.2d 638, 645 (10th Cir. 1991) (applying Colorado law) |
| *Florida* | *Royal Typewriter Co. v. Xerographic Supplies Corp.*, 719 F.2d 1092, 1101 (11th Cir. 1983) (applying Florida law) | *Delaware* | *Pack & Process, Inc. v. Celotex Corp.*, 503 A.2d 646, 659 (Del. Super. Ct. 1985) |
| *Kansas* | *Professional Serv. Indus. v. Kimbrell*, 834 F. Supp. 1305, 1311 (D. Kan. 1993) (applying Kansas law) | *Idaho* | *Jensen v. Seigel Mobile Homes Gp.*, 668 P.2d 65, 71 (Idaho 1983) |
| *Kentucky* | *Overstreet v. Norden Laboratories, Inc.*, 669 F.2d 1286, 1288 (6th Cir. 1982) (applying Kentucky law) | *Illinois* | *Regopoulos v. Waukegan Partnership*, 608 N.E.2d 457, 461 (Ill. App. Ct. 1992). |
| *Louisiana* | *Evans v. Continental Casualty Co.*, 484 F.3d 329, 336 (5th Cir. 2007) (applying Louisiana law) | *Indiana* | *Shambaugh v. Lindsay*, 445 N.E.2d 124, 127 (Ind. Ct. App. 1983) |
| *Minnesota* | *Hendricks v. Callahan*, 972 F.2d 190, 194 (8th Cir. 1992) (applying Minnesota law) | *Missouri* | *Walker v. Woolbright Motors, Inc.*, 620 S.W.2d 451, 453 (Mo. Ct. App. 1981) |
| *Mississippi* | *Global Truck & Equip. Co. v. Palmer Machine Works, Inc.*, 628 F. Supp. 641, 652 (N.D. Miss. 1986) (applying Mississippi law) | *New Jersey* | *Gladden v. Cadillac Motor Car Div., General Motors Corp.*, 83 N.J. 320, 325 (1980) |
| *New Hampshire* | *Hagenbuch v. Snap-On Tools Corp.*, 339 F. Supp. 676, 680 (D.N.H. 1972) (applying New Hampshire law) | *New Mexico* | *C.R. Anthony Co. v. Loretto Mall Partners*, 817 P.2d 238, 246 (N.M. 1991) |
| *Pennsylvania* | *Sessa v. Riegle*, 427 F. Supp. 760, 766 (E.D. Pa. 1977) (applying Pennsylvania law) | *New York* | *CBS, Inc. v. Ziff-Davis Pub. Co.*, 75 N.Y.2d 496, 505-06 (N.Y. 1990) |
| *Rhode Island* | *Thomas v. Amway Corp.*, 488 A.2d 716, 710 (R.I. 1985) | *Washington* | *Baughn v. Honda Motor Co.*, 727 P.2d 655, 669 (Wash. 1986) |

---

[3] Several courts have taken an intermediate approach to the requirement of reliance by holding that there is a rebuttable presumption that the plaintiff relied on the written warranty. *See, e.g., Keith v. Buchanan*, 173 Cal. App. 3d 13, 24 (1985); *Torres v. Northwest Engineering Co.*, 949 P.2d 1004, 1015 (Haw. Ct. App. 1997); *Kelleher v. Marvin Lumber & Cedar Co.*, 891 A.2d 477, 502 (N.H. 2005).

APPENDIX A, Page 4 of 9

**EXHIBIT V**
**PAGE 299**

## *(2)     CONSUMER PROTECTION CLAIMS*

### SCIENTER

| Scienter Required | | Scienter Not Required | |
|---|---|---|---|
| *Arkansas* | Ark. Code Ann. § 4-88-107 (2008) | *California* | *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 242 (2001) |
| *Colorado* | Colo. Rev. Stat. § 6-1-105(1)(i) (2007); *Crowe v. Tull*, 126 P.3d 196, 204 (Colo. 2006) | *Connecticut* | *Miller v. Guimaraes*, 829 A.2d 422, 435 n. 3 (Conn. App. Ct. 2003) |
| *Illinois* | *Shannon v. Boise Cascade Corp.*, 805 N.E.2d 213, 217-18 (2004) | *Georgia* | *Marrale v. Gwinnett Place Ford*, 609 S.E.2d 659, 665 (Ga. Ct. App. 2005) |
| *Kansas* | Kan. Stat. Ann § 50-626 (2006) | *New Jersey* | *D'Ercole Sales v. Fruehauf Corp.*, 501 A.2d 990, 996-97 (N.J. Super. Ct. App. Div. 1985) |
| *Kentucky* | *Sparks v. Re/Max Allstar Realty, Inc.*, 55 S.W.3d 343, 348 (Ky. Ct. App. 2000) | *North Carolina* | N.C. Gen.Stat. § 75-1.1 (2008); *Stetser v. TAP Pharmaceutical Products, Inc.*, 598 S.E. 2d 570, 584 (N.C. Ct. App. 2004) |
| *Maryland* | *Luskin's Inc. v. Consumer Prot. Div.*, 726 A.2d 702, 717 (Md. 1999) | *Ohio* | *Walker v. Dominion Homes, Inc.*, 842 N.E.2d 570, 579 (Ohio Ct. App. 2005) |
| *Oregon* | *Rathgeber v. James Hemenway, Inc.*, 69 P.3d 710, 715 (Or. 2003) | *Maine* | *State v. Weinschenk*, 868 A.2d 200, 206 (Me. 2005) |
| *Texas* | Tex. Bus. & Com. Code Ann. § 17.45(9) (Vernon 2002) *Blue Star Operating Co. v. Tetra Technologies, Inc.*, 119 S.W.3d 916, 921 (Tex. App. 2003) | *Vermont* | *Jordan v. Nissan N. Am., Inc.*, 853 A.2d 40, 43 (Vt. 2004) |
| *Utah* | Utah Code Ann. § 13-11-4 (2008) | *Washington* | *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 535 (Wash. 1986) |

APPENDIX A, Page 5 of 9

**EXHIBIT V**
**PAGE 300**

## RELIANCE

| Reliance Required | | Reliance Not Required | |
|---|---|---|---|
| **Arizona** | *Peery v. Hansen*, 585 P.2d 574, 577 (Ariz. Ct. App. 1978) (construing Ariz. Rev. Stat. Ann. § 44-1528 (2008)) | **Connecticut** | *Hinchcliffe v. American Motors Corp*, 440 A.2d 810, 815-16 (Conn. 1981) (construing Conn. Gen. Stat. § 42-110b (2008)) |
| **California** | *O'Brien v. Camisasca Automotive Mfg., Inc.*, 161 Cal.App.4th 388, 402 (2008) (construing Cal. Bus. & Prof. Code § 17204 (West 2008) (as amended by Cal. Prop. 64 (2004)) | **Delaware** | *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983) (construing Del. Code Ann. Tit. 6, § 2513(a) (2008)) |
| **Georgia** | *Tiismann v. Linda Martin Homes Corp.*, 625 S.E.2d 32, 35-36 (Ga. Ct. App. 2005) (construing Ga. Code Ann. § 10-1-399 (2008)) | **Massachusetts** | *Iannacchino v. Ford Motor Co.*, 2008 WL 2375179, *4 n. 12 (Mass. 2008) |
| **New Jersey** | *Gross v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co.*, 696 A. 2d 793, 797 (N.J. Super. Ct. Law Div. 1997) | **New York** | *Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank*, 647 N.E.2d 741, 746 (N.Y. 1995) (construing N.Y. Gen. Bus. Law § 349 (McKinney 2008)) |
| **Pennsylvania** | *Jefferies v. Ameriquest Mortg. Co.*, 543 F.Supp.2d 368, 389 (E.D. Pa. 2008) (applying Pennsylvania law) | **Washington** | *Tallmadge c. Aurora Chrysler Plymouth, Inc.*, 605 P.2d 1275, 1277 (Wash. 1979) (construing Wash. Rev. Code § 19.86.020 (West 2008) |
| **Texas** | *Morgan Bldgs. and Spas, Inc. v. Humane Society of Southeast Texas*, 249 S.W.3d 480, 490 (Tex.App. 2008) (construing Tex. Bus. & Com. Code §§ 17.46(b), 17.50(a)(1)(B) (Vernon 2007) | **Wisconsin** | *Novell v. Migliaccio*, 749 N.W.2d 544, 550 (Wis. 2008) (construing Wis. Stat. § 100.18 (2007)) |

APPENDIX A, Page 6 of 9

**EXHIBIT V
PAGE 301**

## TREBLE DAMAGES

| Treble Damages Recoverable | | Treble Damages Not Recoverable | |
|---|---|---|---|
| *Colorado* | Colo. Rev. Stat. § 6-1-113(2)(a) (2007) | *Arizona* | Ariz. Rev. Stat. Ann. § 44-1528 (2008) |
| *Delaware* | *Grand Ventures, Inc. v. Whaley*, 632 A. 2d 63, 67-68 (Del. 1993) (construing Del. Code Ann. Tit. 6, § 2533 (2008)) | *California* | Cal. Civ. Code § 1780(a)(5) (West 2008) |
| *District of Columbia* | *Byrd v. Jackson*, 902 A.2d 778, 782-83 (D.C. 2006) | *Illinois* | 815 Ill. Comp. Stat. 510/3 (2008) |
| *Montana* | Mont. Code Ann. § 30-14-133 (2007) | *Maryland* | Md. Code Ann., Com. Law § 13-408 (West 2008) |
| *New Jersey* | N.J. Stat. Ann. 56:8-19.1 (West 2008) | *Utah* | Utah Code Ann. § 13-11-19 (2008) |
| *North Carolina* | N.C. Gen . Stat. § 75-1.1 (2008); *Stetser v. TAP Pharmaceutical Products, Inc.*, 598 S.E. 2d 570, 585 (N.C. Ct. App. 2004) | *West Virginia* | *Bostic v. Mallard Coach Co.*, 406 S.E.2d 725, 730-31 (W. Va. 1991) (construing W. Va. Code § 46A-6A-4 (2008)) |
| *Pennsylvania* | 73 Pa. Stat. Ann. § 201-9.2 (2007) | | |
| *Tennessee* | Tenn. Code Ann. § 47-18-109 (2008); *Brungard v. Caprice Records, Inc.*, 608 S.W.2d 585, 591 (Tenn. Ct. App. 1980) | | |
| *Texas* | Tex. Bus. & Com. Code Ann. § 17.50(b)(1) (Vernon 2005) | | |

A/72576565.2

EXHIBIT V
PAGE 302

## PUNITIVE DAMAGES

| Punitive Damages Recoverable | | Punitive Damages Not Recoverable | |
|---|---|---|---|
| *California* | Cal. Civ. Code § 1780(a)(4) (2008) | *Pennsylvania* | *McCauslin v. Reliance Finance Co.,* 751 A.2d 683, 685 (Pa. Super. Ct. 2000) |
| *Connecticut* | *Gargano v. Heyman,* 525 A.2d 1343, 1348 (Conn. 1987) (construing Conn. Gen. Stat. § 42-110g (2008)) | *Colorado* | *Hall v. Walter,* 969 P.2d 224, 229 n. 5 (Colo. 1998) (punitive damage award not allowed where treble damages awarded) |
| *District of Columbia* | *Etta v. Seaboard Enterprises, Inc.,* 674 F.2d 913, 920 (D.C. Cir. 1982) | *Tennessee* | *Lorentz v. Deardan,* 834 S.W.2d 316, 320 (Tenn. App. 1992) |
| *Georgia* | Ga Code Ann. § 10-1-399 (2008) | *Delaware* | *Roberts v. American Warranty Corp.,* 514 A.2d 1132, 1135 (Del. Super. Ct. 1986) (punitive damage award not allowed where treble damages awarded) |
| *Idaho* | *Mac Tools v. Griffin,* 879 P.2d 1126, 1130 (Idaho 1994) | | |
| *Illinois* | 815 Ill. Comp. Stat. 505/10a (2008) | | |
| *Vermont* | Vt. Stat. Ann. tit. 9, § 2461 (2008) | | |
| *West Virginia* | *Poling v. Motorists Mut. Ins. Co.,* 450 S.E.2d 635, 637 (W. Va. 1994) (construing W. Va. Code § 33-11-4 (2008)) | | |

APPENDIX A, Page 8 of 9

EXHIBIT V
PAGE 303

## INJUNCTIVE RELIEF

| Injunctive Relief Available | | Injunctive Relief Not Available | |
|---|---|---|---|
| *California* | *Indep. Housing Serv. of San Francisco v. Fillmore Ctr. Assoc.*, 840 F. Supp. 1328, (N.D. Cal. 1993) (construing Cal. Bus. & Prof. Code § 17200 (2008)) | *Illinois* | *Zanni v. Lippold*, 119 F.R.D. 32, 34 (C.D. Ill. 1988 (construing 121 Ill. Rev. Stat. 1/2, ¶; 267. 270a(a)) |
| *Delaware* | *Grand Ventures, Inc. v. Whaley*, 632 A. 2d 63, 67-68 (Del. 1993) (construing Del. Code Ann. Tit. 6, §§ 2533 (2008)) | *Indiana* | *Block v. Abbott Laboratories*, No. 99 C 7457, 2002 WL 485364 at *6 (N.D. Ill. 2002) (construing Ind. Code § 24-5-0.5-4 (West 2008)) |
| *Florida* | *Klinger v. Weekly World News, Inc.*, 747 F. Supp. 1477, 1479 (S.D. Fla. 1990) (construing Fla. Stat. Ann. § 501.211(1) (2008)) | *Louisiana* | *Block v. Abbott Laboratories*, No. 99 C 7457, 2002 WL 485364 at *6 (N.D. Ill. 2002) (construing La. Rev. Stat. Ann. §§ 51:1407, 51:1409 (2008)) |
| *Georgia* | *Akron Pest Control v. Radar Exterminating Co.*, 455 S.E.2d 601, 603 (Ga. Ct. App. 1995) (construing Ga. Code Ann. § 10-1-370 (2008) | | |
| *Massachusetts* | *Herman v. Home Depot,* 763 N.E.2d 512, 513 (Mass. 2002) | | |
| *Minnesota* | *Simmons v. Modern Aero, Inc.*, 603 N.W.2d 336, 339 (Minn. Ct. App. 1999) | | |
| *Texas* | *David McDavid Pontiac, Inc. v. Nix*, 681 S.W.2d 831 (Tex. App. 1984), *writ refused n.r.e.* (July 3, 1985) (construing Tex. Bus. & Com. Code Ann. § 17.50(b)(2) (Vernon 2005)) | | |
| *Hawaii* | *Wiginton v. Pacific Credit Corp.*, 634 P.2d 111, 119 (Haw. 1981) (construing Haw. Rev. Stat. § 480-13 (2007)) | | |

APPENDIX A, Page 9 of 9

**EXHIBIT V PAGE 304**

# EXHIBIT W



## - NOTICE -

WE ARE SORRY FOR ANY INCONVENIENCE CAUSED YOU DURING THE WRITE UP OF YOUR WORK ORDER. WE REQUEST YOU READ ALL THE SIGNS AND INFORMATION ON OUR FORMS REQUIRED UNDER MONTGOMERY COUNTY BILL 265-73. UNDER THE PROVISIONS OF THE MONTGOMERY COUNTY CODE, ALL CUSTOMERS ARE ENTITLED TO A WRITTEN ESTIMATE UPON REQUEST BEFORE REPAIR WORK OVER $52.00 IS BEGUN. THIS BUSINESS MUST COMPLY WITH THAT LAW. WE ARE NOT RESPONSIBLE FOR LOSS OF EQUIPMENT OR ARTICLES IN CARS.

### LABOR CHARGES
LABOR CHARGES ARE COMPUTED BY THE FLAT RATE AND ARE BASED ON OUR EXPERIENCE AND INTERPRETATION OF REPAIR TIME AVERAGES FOR SPECIFIC REPAIRS. LABOR TIME IS A UNIT OF MEASURE, NOT A CLOCK WORK.

### STORAGE CHARGES
A CHARGE OF $10.00 PER DAY WILL BE MADE, COMMENCING 48 HOURS AFTER DATE OF NOTIFICATION THAT REPAIRS OR SERVICES HAVE BEEN COMPLETED.

### ESTIMATE FEE
A CHARGE WILL BE MADE FOR THE PREPARATION OF WRITTEN ESTIMATES. THIS WILL NOT EXCEED $35.00 FOR THE SHOP WITHIN 15 DAYS, MINIMUM OF $35.00 CHARGE FOR ESTIMATE.

### ESTIMATED PRICE
A CHARGE WILL BE MADE FOR THE PREPARATION OF WRITTEN ESTIMATES. THIS WILL NOT EXCEED $35.00 FOR ANY MECHANICAL WORK REQUIRED TO MAKE DIAGNOSIS AT $35.00 PER HOUR. IF REPAIRABLE IT IS OUR POLICY TO GIVE WRITTEN ESTIMATES ONLY ON WORK WE HAVE DIAGNOSED.

### SHOP SUPPLIES
A CHARGE OF 6% OF TOTAL PARTS AND LABOR OR 5% OF TOTAL REPAIR ORDER WILL BE CHARGED ON ALL JOBS TO COVER COST OF SHOP SUPPLIES AND HANDLING DISPOSAL OF HAZARDOUS WASTE. MAXIMUM $9 95

### GUARANTEE
REPLACEMENT, REPAIR, PARTS AND LABOR, GUARANTEED 12 MONTHS OR 4000 MILES, WHICHEVER OCCURS FIRST, AGAINST DEFECTS IN MATERIALS AND WORKMANSHIP UNLESS OTHERWISE STATED.

## THANK YOU WE APPRECIATE YOUR BUSINESS.
THE STAFF AND MANAGEMENT OF FITZGERALD'S LAKEFOREST AUTO MALL.



EXHIBIT W
PAGE 306



## Fitzgerald Automotive
### Family Quality Policy

The Fitzgerald Automotive Family establishes and maintains successful business relationships with all our customers through our associates.

We strive to continually improve the effectiveness of the Fitzgerald system for satisfying customers, which includes our sales, service and parts processes.

Our organization is committed to achieve excellence, in our customer's view, while fulfilling our responsibilities to our community, employees, franchisers and to all with whom we do business.

An excellent customer experience is achieved through the efforts of all members of the Fitzgerald Automotive Family, working together.

### Quality Objectives

1. Build customer loyalty through excellent customer service.

2. Be a leader in providing community service in our market area through our child safety seat and child ID programs.

3. Maintain financial stability in order to achieve our objectives in serving customers, our community and future growth opportunities.

FitzMall.com   AUTO MALLS   Since 1966
Always Low Price

# EXHIBIT X

# Maryland's Lemon Law

# Your Rights Under
# Maryland's Lemon Law

## Maryland's Lemon Law: The Automobile Warranty Enforcement Law

In Maryland, the Lemon Law provides protection if the new vehicle you buy turns out to be a problem. When a new car, light duty truck, motorcycle or multi-purpose vehicle has been "repaired" for the same problem four or more times, or the vehicle has been out of service or at least 30 days for repairs, during the first 15 months or 15,000 miles of the warranty, you are entitled to a new vehicle or a refund for the vehicle you have bought. If the problem involves the steering or braking system, only one attempt to repair it is required.

## How to Pursue a Claim

Your owner's manual will have the specifics on how to pursue a Lemon Law claim. Your new vehicle only qualifies under this process if the problem you have with it occurs during the first 15 months or 15,000 miles of the warranty. Before the time or mileage limit is up, **you must report the problem in writing to the manufacturer by certified mail.** Request a return receipt so you have a record of the notification. After you notify the manufacturer of your problem, you must give the manufacturer the opportunity to fix it.

## What Happens Next?

**The manufacturer must fix your vehicle's problem or replace it.** The manufacturer can also refund you the full purchase price for the vehicle, less a reasonable allowance for your use of the vehicle. If you are refunded for your vehicle, the manufacturer must notify you in writing that you are entitled to the recovery of the excise taxes you paid on the vehicle. The Maryland Motor Vehicle Administration will then be able to refund your excise taxes, calculated on the amount of the refund you received.

## Need More Information?

The Consumer Protection Division of the Maryland Attorney General's Office can give you more information on the Lemon Law, and assist you in resolving a Lemon Law problem.

- **Call Our Hotline Number:**
  In the Baltimore area: 410-528-8662
  (9 A.M. to 3 P.M. Monday through Friday)
  In the D.C Metro Area: 301-470-7534
  TDD for hearing impaired persons:
  410-576-6372
- **Write:** 200 St. Paul Place, 16th Floor, Baltimore, MD 21202
- **e-mail:** consumer@oag.state.md.us
- **Visit our website at:**
  www.oag.state.md.us/consumer

_____
Owner's Signature                                                      Date

Original Copy: Dealership File        Yellow Copy: Customer         Visit our website at
                                                                    www.fitzmall.com

F1005

LTF000618

**EXHIBIT X
PAGE 308**

# NOTICE

**IMPORTANT:** If this vehicle is defective, you may be entitled under state law to a replacement or to compensation.

This notice is being provided to you pursuant to Section 1345.74(A) of the Ohio Revised Code.

You are being asked to sign the copy below as evidence you have received this form.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

# NOTICE

**IMPORTANT:** If this vehicle is defective, you may be entitled under state law to a replacement or to compensation.

This notice is being provided to you pursuant to Section 1345.74(A) of the Ohio Revised Code.

Print Name: _____

Signature: _____  Date: 5/31/03

**EXHIBIT X**
**PAGE 309**