1  Eric H. Gibbs (State Bar No. 178658)
2  Dylan Hughes (State Bar No. 209113)
   Geoffrey A. Munroe (State Bar No. 228590)
3  **GIRARD GIBBS LLP**
4  601 California Street, 14th Floor
   San Francisco, California  94108
5  ehg@girardgibbs.com
6  Telephone: (415) 981-4800
   Facsimile: (415) 981-4846
7
8  Norman E. Siegel
   Todd Hilton
9  **STUEVE SIEGEL HANSON LLP**
10 460 Nichols Road, Suite 200
   Kansas City, MO 64112
11 siegel@stuevesiegel.com
   Telephone: (816) 714-7100
12 Facsimile: (816) 714-7101
13
   *Co-Lead Class Counsel*
14

15        **UNITED STATES DISTRICT COURT**
16        **CENTRAL DISTRICT OF CALIFORNIA**
17

18 MICHAEL PARKINSON, et al., on          Case No.  SACV 06-345 AHS (MLGx)
   behalf of themselves and all others
19 similarly situated,                     **PLAINTIFFS' MEMORANDUM IN**
                                           **SUPPORT OF PRELIMINARY**
20                                         **APPROVAL OF CLASS**
              Plaintiffs,                  **SETTLEMENT**
21
        vs.                               Date:     March 1, 2010
22                                        Time:     10:00 a.m.
23 HYUNDAI MOTOR AMERICA, INC., a         Before:  Hon. Alicemarie H. Stotler
   California Corporation,
24
25            Defendant.
26
27
28

# **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................ 1

II.    SUMMARY OF THE LITIGATION AND PROPOSED SETTLEMENT ........... 2

    A.    The Litigation ......................................................................... 2

    B.    Terms of the Proposed Settlement................................................... 4

        1.    Cash Reimbursements To Class Members ............................... 4

        2.    Class Member Option For Hyundai Credit ............................. 5

        3.    The Claims Process................................................................ 5

        4.    Mutual Release ..................................................................... 6

III.    ARGUMENT........................................................................................ 7

    A.    Overview Of The Class Action Settlement Process............................ 7

    B.    The Settlement Should Be Preliminarily Approved............................. 7

        1.    The Role of Preliminary Approval ......................................... 7

        2.    The Proposed Settlement Merits Preliminary Approval. .......... 8

    C.    The Court Should Order Dissemination Of Class Notice As Proposed............ 9

        1.    The Settlement Agreement Provides for the Best Notice Practicable Under the Circumstances................................................ 9

        2.    The Proposed Form of Notice Adequately Informs Class Members of Their Rights In This Litigation............................ 10

        3.    Notice of the Settlement Will Be Provided to Appropriate Federal and State Officials. ........................................... 10

E.     The Court Should Set A Schedule For Final Approval.................................. 10

IV.   CONCLUSION .................................................................................. 11

# TABLE OF AUTHORITIES

**Cases**

*Acosta v. Trans Union*
    243 F.R.D. 377 (C.D.Cal.2007) ....................................................................... 8

*Chun-Hoon v. McKee Foods Corp*.
    2009 WL 3349549 (N.D. Cal. 2009) ............................................................... 8

*Gribble v. Cool Transports Inc.*
    2008 WL 5281665 (C.D. Cal. 2008) ............................................................... 8

*In re M.L. Stern Overtime Litigation*
    2009 WL 995864 (S.D. Cal. 2009) ................................................................. 8

*Wright v. Linkus Enterprises, Inc.*
    2009 WL 2365436 (E.D. Cal. 2009) ............................................................... 9

**Statutes**

28 U.S.C. § 1715 ................................................................................................. 10

**Rules**

Fed. R. Civ. Proc. 23 ................................................................................. 7, 9, 10

# I.   **<u>INTRODUCTION</u>**

After more than three years of litigation, Plaintiffs and Hyundai Motor America, Inc. ("Hyundai") have negotiated a settlement that, if approved by the Court, would fully resolve this action on a class-wide basis.  Under the settlement, class members can receive reimbursement for flywheel/clutch system repair expenses according to the following schedule:

- **100%** reimbursement for repair expenses incurred between 0 – 50,000 miles;
- **75%** reimbursement for repair expenses incurred between 50,001 – 75,000 miles;
- **50%** reimbursement for repair expenses incurred between 75,001 – 100,000 miles; *and*
- **Up to $150** reimbursement for any associated rental car expenses, regardless of mileage.

Because repair expenses often exceeded $1,000 per vehicle, this settlement provides substantial payments to class members—and it will do so without the risk and delay associated with trial and the appeal that would likely follow.

Plaintiffs and their counsel believe this to be an exceptional settlement for the class, and wish to begin the settlement approval process outlined in the Manual for Complex Litigation (Fourth), §§ 21.632-35.  They respectfully request that the Court review the proposed Agreement, submitted as Exhibit A to the Declaration of Eric H. Gibbs, and enter an order:

1. Granting preliminary approval of the settlement;
2. Directing that notice be given to class members as proposed; and
3. Setting a hearing date and briefing schedule for final settlement approval and Plaintiffs' fee and expense application.

MEMORANDUM IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS SETTLEMENT
CASE NO. SACV 06-345 AHS (MLGx)

## II.     SUMMARY OF THE LITIGATION AND PROPOSED SETTLEMENT

### A.     The Litigation

This case concerns an alleged defect in manual-transmission 2003 Hyundai Tiburon GT vehicles.  (*See* First Am. Consol. Compl. ("Compl."), ¶¶ 3-6, 27-42.) Plaintiffs allege that the flywheel system installed in the 2003 Tiburon —consisting of a flywheel, clutch disc, pressure plate, and release bearing—is inherently defective as it regularly fails under normal use inside of Hyundai's bumper-to-bumper and powertrain warranties.  (*Id.*, ¶¶ 3, 29.)  Typically, a Tiburon owner experiences the flywheel system defect when they are suddenly unable to engage or shift gears.  (*Id.*, ¶¶ 30, 43-49.) While the problem can appear similar to a worn-out clutch lining, the problem is much more serious and expensive to repair.  Instead of replacing only the clutch lining or disc (a low-cost repair), Plaintiffs allege that Hyundai requires its dealers to replace the entire flywheel system—a major repair that typically costs about $2,000.  (*See id.*, ¶¶ 31, 43-49.)

Plaintiffs claim that Hyundai was aware of problems with the Tiburon's flywheel system but failed to disclose the defect to Tiburon buyers at the time of sale, and so should now be required to pay Tiburon owners the cost of installing a non-defective flywheel system under California's consumer protection laws.  (*Id.*, ¶¶ 32-34, 59-74.) Plaintiffs also seek recovery under warranty law since Hyundai refused to replace Tiburon owners' defective flywheel systems free of charge; instead, Hyundai told Plaintiffs and other consumers that their problems were a result of normal wear-and-tear or owner abuse, and thus were excluded from warranty coverage.  (*Id.*, ¶¶ 35-38, 75-94.)[1]

Hyundai filed a motion to dismiss each of Plaintiffs' legal claims in October 2006, which the Court ultimately denied.  (*See* Docs. # 38, 53.)  Thereafter, both parties propounded extensive discovery and otherwise garnered support for their respective positions—with Plaintiffs taking the position that the flywheel system defect was

---

[1]     Hyundai has denied all factual allegations in the case, and does not admit any liability by this settlement.

systemic to the 2003 Tiburon, and Hyundai arguing that no such defect existed and that the clutch repairs at issue were either covered under warranty or properly denied coverage because of vehicle modifications or abusive driving.  The parties also engaged in extensive negotiations, including multiple mediation sessions, in an effort to resolve the case at an early juncture in the case, but were unable to reach a mutually agreeable settlement.  (*See* Gibbs Decl., ¶ 3.)

Plaintiffs' motion for class certification followed, and occupied much of the parties' time through 2008.  (*See, e.g.*, Docs. #83-87, 100-09, 125-27, 143, 156.)  The end result was that the Court certified Plaintiffs' consumer protection claims for class treatment on a nationwide basis and declined to certify Plaintiffs' warranty claims.  The class was defined as follows:

> All current or former owners or lessees of a manual-transmission 2003 Tiburon GT, produced on or before April 1, 2003, who paid for a replacement to the flywheel assembly, clutch disc assembly, clutch cover assembly, or clutch release bearing within the applicable warranty period.[2]

(*See* 11/6/08 Order [Doc. #159], ¶ 11.)  Hyundai petitioned for an immediate review of the Court's class certification decision, which the Ninth Circuit denied.  (*See* Doc. #180.)

Hyundai also filed a motion for summary judgment, arguing that the class's consumer protection claims should be dismissed because (a) Hyundai had no legal obligation to disclose the alleged defect since it did not unreasonably implicate class members' safety; (b) class members could not demonstrate that the alleged defect caused their repairs; and (c) the class's claims were barred by the economic loss rule because they did not assert personal injury.  (*See* Doc. #217.)  Hyundai's motion for summary judgment was scheduled to be heard September 14, 2009, with trial of the class claims to begin on November 3, 2009, if the motion was unsuccessful.  (*See* Docs. # 200, 208.)

---

2       The parties agree that "the applicable warranty period" means (a) 10 years / 100,000 miles for original purchasers and lessees, or (b) 5 years/ 60,000 miles from original delivery for used purchasers.  (*See* Agreement (I)(E).)

1    Just three months prior to trial, in August 2009, the parties began settlement
2 negotiations anew, this time with the assistance of David A. Rotman, a respected
3 mediator at Gregorio, Haldeman, Piazza, Rotma, Frank & Feder.  After a full day of
4 mediation, the parties had agreed on all material terms of a class-wide settlement and
5 executed a term sheet memorialized their agreement.  (*See* Gibbs Decl., ¶ 3.)  And, as the
6 parties reported to the Court, a dispute arose during the preparation of the formal
7 settlement documents, which Magistrate Judge Goldman ably assisted the parties in
8 resolving.  The parties have since prepared the formal Settlement Agreement now before
9 the Court for preliminary approval, which includes an attached claim form and class
10 notice.  At all times, negotiations were conducted at arm's length and without regard to
11 any award of attorneys' fees, expenses, or incentive awards to Plaintiffs or their counsel.
12 (*See* Gibbs Decl., ¶ 4.)  In fact, the parties still have yet to discuss an award of attorneys'
13 fees, expenses, or incentive awards to be paid to Plaintiffs and their counsel, which
14 Plaintiffs anticipate will be resolved by application to the Court and will not in any way
15 reduce the relief available to the class under the settlement.

16       **B.     <u>Terms of the Proposed Settlement</u>**

17            **1.     Cash Reimbursements To Class Members**

18    Under the proposed settlement, class members who submit valid claims will be
19 entitled to reimbursement for the cost of repair or replacement of their Tiburon's
20 flywheel assembly, clutch disc assembly, clutch cover assembly, and/or release bearing
21 (i.e., those parts Plaintiffs allege comprise the Tiburon's flywheel system, Hyundai refers
22 to as the clutch system, and that for the purpose of the Settlement Agreement are referred
23 to as "Flywheel/Clutch Parts").  The amount of the reimbursement will depend on the
24 mileage of the vehicle at the time of the repair, and will be paid by Hyundai (through a
25 debit card redeemable at ATMs) according to the following schedule:

26       • **100%** reimbursement for repair expenses incurred between 0 – 50,000 miles;
27       • **75%** reimbursement for repair expenses incurred between 50,001 – 75,000
28          miles; and

MEMORANDUM IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS SETTLEMENT
CASE NO. SACV 06-345 AHS (MLGx)

- **50%** reimbursement for repair expenses incurred between 75,001 – 100,000 miles.

(Agreement, (II)(A)(4)-(6), (III)(C)(1).)  The only exceptions are for repairs using non-Hyundai parts or performed at a non-Hyundai service facility; in those cases, Hyundai will calculate the class members' reimbursement based on either what the claimant actual paid or the standard costs of comparable Hyundai parts and the estimated labor price had the repair been completed at a Hyundai service facility.  (*See id.*, (II)(A)(1)-(2).)

In addition, Hyundai will reimburse class members in full for all rental car expenses they incurred in connection with their repair, up to a maximum of $150.  (*Id.*, (II)(A)(3).

## 2.    Class Member Option For Hyundai Credit

If class members plan on purchasing another Hyundai vehicle or other Hyundai goods or services, they may wish to forego cash reimbursements in favor of Hyundai credit with a higher face value.  In that case, class members can choose to receive either:

- **125%** of the cash value of their claims in the form of a non-transferrable debit card redeemable for Hyundai goods and services over the next year;
- **175%** of the cash value of their claims in the form of a voucher redeemable (by class members or their immediate family members) toward the purchase of a new Hyundai vehicle at any time over the next year.

(Agreement, (III)(C)(2).)

## 3.    The Claims Process

The process by which Tiburon owners can make a claim for repair reimbursements is designed specifically to impose a minimal burden on the class members.  The claim form is a single page that will be mailed to current and former Tiburon owners/lessees along with a notice explaining the settlement.  (*See* Agreement, Ex. A-2.)  Many if not most class members will only need to check two boxes, submit a copy of their repair receipt, and sign the following certification to qualify for a repair reimbursement under the settlement:

5

Before obtaining the repairs to my vehicle, I never:

(1)  materially modified the vehicle intending to increase its torque (unless the change was made by a Hyundai dealership), or

(2) subjected the vehicle to street or track racing.

The information on this form is true and correct to the best of my knowledge and belief.  I agree to participate in the settlement described in the Notice that accompanied this claim form.  I authorize dealerships that serviced my vehicle to release records to Hyundai to confirm or substantiate my claim.

(*See id.*)

For class members who do not have a copy of their repair receipt (and do not want to visit their repair facility to obtain a copy), the claim form will also include a postcard that class members can send to the Hyundai dealership that conducted their repair.  The pre-printed postcard requests that the Hyundai dealership send repair and payment records directly to Hyundai.  (*See id.*, Ex. A-3.)

Hyundai is also responsible for verifying a class members' eligibility to recover under the Settlement Agreement and must give class members an opportunity to cure any deficiency in their claims.  (*See id.*, (III)(B).)  Class Counsel will be informed of any tentatively rejected claims and will have an opportunity to dispute the determination and confer with Hyundai to resolve the issue.  (*See id.*)  Any class member whose claim is ultimately denied will also have the right to review by an arbitrator at Hyundai's expense (unless the arbitrator determines the class member acted in bad faith in pursuing arbitration review).  (*See id.*, (III)(F).)

**4.    Mutual Release**

In exchange for the class benefits provided by Hyundai under the proposed settlement, class members will release Hyundai and its parent company from all claims that arise from or relate to the repair of Flywheel/Clutch Parts within the applicable warranty period, with the exception of claims for personal injury, property damage (excluding damage to the Class Vehicle), and subrogation.  (*See* Agreement (IV)(D)(1).)

Likewise, Hyundai will release Plaintiffs, class members, and Plaintiffs' counsel from any claims related to the litigation or settlement of this Action.  (*Id.*, (IV)(D)(2)).

## III.   ARGUMENT

### A.   Overview Of The Class Action Settlement Process

A class action settlement like the one proposed here must be approved by the Court to be effective.  *See* Fed. R. Civ. Proc. 23(e).  The process for court approval is comprised of three principal steps:

1.   A preliminary approval hearing, at which the court considers whether the proposed settlement is the range of reasonableness possibly meriting final approval;

2.   Dissemination of notice of the proposed settlement to class members;

3.   A "formal fairness hearing," or final approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is presented.

*See* Manual for Complex Litigation §§ 21.632-34 (4th Ed. 2004).

By this motion, the Plaintiffs ask the Court to take the first step in the settlement approval process and grant preliminary approval of the settlement.  Plaintiffs also request that the Court order dissemination of class notice in the proposed form and manner and establish a schedule for the final approval process.

### B.   The Settlement Should Be Preliminarily Approved.

#### 1.   The Role of Preliminary Approval

At the final approval stage, after the class members have been notified of the proposed settlement and had an opportunity to comment, the Court will be called upon to appraise whether the parties have negotiated a settlement that is fair, reasonable, and adequate to the class.  At this preliminary approval stage, however, the Court determines only whether the settlement falls "within the range of possible approval, such that it is worthwhile to give the class notice of the settlement and proceed with a formal fairness

7

hearing.  *In re M.L. Stern Overtime Litigation*, 2009 WL 995864, *3 (S.D. Cal. 2009);
*see also Acosta v. Trans Union,* 243 F.R.D. 377, 386 (C.D.Cal.2007) ("To determine
whether preliminary approval is appropriate, the settlement need only be potentially fair,
as the Court will make a final determination of its adequacy at the hearing on Final
Approval, after such time as any party has had a chance to object and/or opt out.").

"[I]f the proposed settlement appears to be the product of serious, informed, non-
collusive negotiations, has no obvious deficiencies, does not improperly grant
preferential treatment to class representatives or segments of the class, and falls within
the range of possible approval, then the court should direct that the notice be given to the
class members of a formal fairness hearing."  *Chun-Hoon v. McKee Foods Corp*., 2009
WL 3349549, *2 (N.D. Cal. 2009).  In other words, the Court makes only a preliminary
determination of the settlement's fairness, reasonableness, and adequacy, pointing out
any settlement terms that are so unacceptable at the outset that a formal fairness hearing
would be a waste of time. *See* Manual for Complex Litigation, § 21.632; 4 Newberg,
*supra*, § 11.25.

### 2.       The Proposed Settlement Merits Preliminary Approval.

The proposed settlement in this case is well within the range of reasonableness
possibly meriting judicial approval.  The settlement was negotiated at arm's length by
counsel well versed in class litigation and is therefore entitled preliminarily to "a
presumption of fairness."  *Gribble v. Cool Transports Inc.,* 2008 WL 5281665, *9 (C.D.
Cal. 2008).  In addition, the settlement presented by the parties contains no obvious
deficiencies; it provides class relief proportionate to that sought in the complaint, does
not grant preferential treatment to the class representatives, and does not provide for
excessive attorneys' fees at the expense of the class.  *See Chun-Hoon*, 2009 WL 334959
at *2.

An objective evaluation of the settlement confirms that the relief negotiated on
behalf of the Class is reasonable.  The settlement will reimburse class members who paid
for flywheel system repairs a large portion of their cost, ranging from 50% to 100%

8

depending on mileage at the time of the repair, plus up to $150 for any associated car rental expenses.  This relief squarely addresses the fundamental consumer issues underlying this lawsuit, as the harm inherent in purchasing an allegedly defective vehicle is largely redressed through reimbursement for both the repair costs and the rental costs incurred during the repair process.  The alternative for the class would be to press their claims through trial and appeal, which offers little in the way of upside compared to the benefits available under the settlement, but carries with it delay and the risk of recovering nothing if Hyundai's arguments prove successful.

Given the favorable terms of the settlement and the manner in which these terms were negotiated, the proposed settlement should be viewed, at least preliminarily, as a fair, reasonable, and adequate compromise of the issues in dispute.  This Court should grant preliminary approval of the settlement, order dissemination of notice to the Class for comment, and proceed to a formal fairness hearing.

## C.      The Court Should Order Dissemination Of Class Notice As Proposed.

### 1.      The Settlement Agreement Provides for the Best Notice Practicable Under the Circumstances.

The federal rules require that class members be given reasonable notice of any proposed settlement; and where, as here, a Rule 23(b)(3) class has been certified, the Court should "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  *See* Fed. R. Civ. Proc. 23(e)(1), 23(c)(2)(b).

The notice proposed here will provide class members with individual notice by first class mail, and so satisfies the requirements of due process.  *See Wright v. Linkus Enterprises, Inc.*, 2009 WL 2365436, 6 (E.D. Cal. 2009).  All current or former owners or lessees of a class vehicle will be mailed notice of the settlement and a claim form at their last known address, using Hyundai's records, vehicle registration data obtained from state agencies by R.L. Polk & Company, and the U.S. Post Office's National Change of Address database.  (*See* Agreement, (III)(D)(1).)

9

### 2.    The Proposed Form of Notice Adequately Informs Class Members of Their Rights In This Litigation.

A notice provided to class members should "clearly and concisely state in plain, easily understood language" the nature of the action; the class definition; the class claims, issues, or defenses; that the class member may appear through counsel; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on class members.  Fed. R. Civ. Proc. 23(c)(2)(b).  The form of notice proposed by the parties here complies with those requirements.  (*See* Proposed Notice, Ex. A-1 to the Agreement).  It clearly and accurately informs the Class members of the material terms of the settlement and their rights pertaining to it.  (*Id.*).  Plaintiffs therefore request that the Court approve the form of notice and direct that notice be disseminated to the Class as proposed.

### 3.    Notice of the Settlement Will Be Provided to Appropriate Federal and State Officials.

Notice of the proposed settlement will also be provided to the Attorney General of the United States and regulatory officials of all 50 states, as required by the Class Action Fairness Act, 28 U.S.C. § 1715.  (*See* Agreement, (III)(D)(2).)  Within ten days of preliminary approval, Hyundai will provide these government officials with copies of all requested materials—including the proposed settlement, Class member notices, and all complaints—so that the states and the federal government may make an independent evaluation of the settlement and bring any concerns to the Court's attention prior to the final approval.  (*Id.*).

### E.    The Court Should Set A Schedule For Final Approval

The next steps in the settlement approval process are to notify the Class of the proposed settlement, allow Class members an opportunity to file any objections, and hold a final approval hearing.  Toward those ends, the parties propose the following schedule:

| Deadline to disseminate Class notice: | April 12, 2010 |
|---|---|

MEMORANDUM IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS SETTLEMENT
CASE NO. SACV 06-345 AHS (MLGx)

| Deadline to file papers in support of final approval of the settlement: | May 3, 2010 |
|---|---|
| Deadline for Plaintiffs to file an application for attorneys' fees, reimbursement of expenses, and incentive awards ("Fee Application"): | May 3, 2010 |
| Deadline for Class members to file comments in support of, or in objection to, the settlement and Fee Application: | May 17, 2010 |
| Deadline for Hyundai to oppose the Fee Application: | May 17, 2010 |
| Deadline for any party to file a reply in support of the settlement, and for plaintiffs to file a reply in support of the Fee Application: | May 31, 2010 |
| Final settlement approval hearing: | June 14, 2010, 10 a.m. |

## IV.   CONCLUSION

For the foregoing reasons, the parties respectfully request that the Court enter the accompanying Proposed Order granting preliminary approval of the proposed settlement, directing dissemination of notice to class as proposed, and setting a hearing for the purpose of deciding whether to grant final approval of the settlement.

DATED: January 29, 2010            Respectfully submitted,

**GIRARD GIBBS LLP**


By:    /s/ Eric H. Gibbs

Dylan Hughes
Geoffrey A. Munroe
601 California Street, Suite 1400
San Francisco, California 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

11

1

2          Norman E. Siegel
           Todd Hilton
3          **STUEVE SIEGEL HANSON LLP**
           460 Nichols Road, Suite 200
4          Kansas City, MO 64112
           Telephone: (816) 714-7100
5          Facsimile: (816) 714-7101

6

7          *Co-Lead Class Counsel*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS SETTLEMENT
CASE NO. SACV 06-345 AHS (MLGx)