Eric H. Gibbs (State Bar No. 178658)
ehg@girardgibbs.com
Dylan Hughes (State Bar No. 209113)
dsh@girardgibbs.com
Geoffrey A. Munroe (State Bar No. 228590)
gam@girardgibbs.com
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, California  94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

Norman E. Siegel
siegel@stuevesiegel.com
Todd Hilton
hilton@stuevesiegel.com
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, MO 64112
Telephone: (816) 714-7100
Facsimile: (816) 714-7101

*Co-Lead Class Counsel*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL PARKINSON, et al., on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br>  v.<br><br>HYUNDAI MOTOR AMERICA,  a California Corporation,<br><br>    Defendant. | Case No.  SACV 06-345 AHS (MLGx)<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES**<br><br>Date:  June 28, 2010<br>Time:  11:00 a.m.<br>Before:  Hon. Alicemarie H. Stotler |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................... 1

II.   ARGUMENT ........................................................................................... 3

    A.    Plaintiffs' Fee Application Is Governed By California Law. ..................... 3

    B.    California Law Entitles Plaintiffs To A Fee Award Under The Consumers Legal Remedies Act and Private Attorney General Statute. .... 3

        1.    The Consumers Legal Remedies Act ................................................. 3

        2.    The Private Attorney General Statute ................................................. 5

    C.    California Law Prescribes A Lodestar/Multiplier Method Of Calculating A Reasonable Fee. ........................................................... 6

    D.    A Lodestar of $4,132,535 Represents An Appropriate Valuation Of The Time Spent By Class Counsel Representing Class Members Over The Past Four Years. ...................................................................... 7

        1.    The 8,771 Hours Class Counsel Spent On The Case Is Reasonable In Light of the Case's Complexity, Intensity, and Duration. ........... 8

        2.    Class Counsel's Schedule of Hourly Rates Are Reasonable Rates For The Relevant Market. ............................................................... 14

    E.    A Lodestar Multiplier Of 2.0 Is Warranted. ........................................ 16

        1.    Class Counsel Undertook Substantial Risk In Litigating This Case And Carried That Risk For Four Years. ................................. 16

        2.    This Case Involved a Number of Both Novel and Difficult Issues That Required Substantial Skill To Litigate Effectively. ................ 18

i

3.  Class Counsel Obtained An Excellent Result For Class Members, Who Can Receive A Complete or Nearly Complete Monetary Recovery. ..................................................................... 19

4.  Class Counsel Will Spend A Considerable Amount Of Time In The Future Fulfilling Their Continuing Obligations To The Class. ..................................................................................... 20

5.  The Time Required To Litigate This Case Precluded Class Counsel From Pursuing Other Cases. ............................................... 20

6.  The Delay In Payment In This Case Exceeds Four Years. .............. 20

7.  Collectively, The Multiplier Factors Support Award of A 2.0 Multiplier On Class Counsel's Pre-Settlement Time. ..................... 21

F.  Class Counsel's Requested Award for Reimbursement of Expenses if Warranted. ............................................................................................. 22

1.  Mandatory Costs ......................................................................... 22

2.  Discretionary Costs ..................................................................... 22

3.  Prohibited Costs .......................................................................... 23

III.  CONCLUSION ................................................................................... 24

TABLE OF CONTENTS

# TABLE OF AUTHORITIES

**Case**                                                                                                        **Page**

*Bardin v. DaimlerChrysler*,
    136 Cal. App. 4th 1255 (2006) ........................................................................ 17, 18

*Broughton v. Cigna Healthplans*,
    21 Cal.4th 1066 (1999) ...................................................................................... 4

*Chavez v. Netflix*,
    162 Cal. App. 4th 43 (2008) .......................................................................... 2, 7

*City of Burlington v. Dague*,
    505 U.S. 557 (1992) .......................................................................................... 7

*Clausen v. M/V New Carissa*,
    339 F.3d 1049 (9th Cir. 2003) ........................................................................ 22

*Daugherty v. American Honda Company*,
    144 Cal. App. 4th 824 (2006) ...................................................................... 17, 18

*Erie R. Co. v. Tompkins,*
    304 U.S. 64 (1938) ............................................................................................ 3

*Exxon Mobil Corp. v. Allapattah Services, Inc.*,
    545 U.S. 546 (2005) .......................................................................................... 3

*Gezalyan v. BMW of North America, LLC,*
    2010 WL 1133427 (C.D. Cal. 2010) ................................................................. 3

Gibson v. Bobroff,
    49 Cal. App. 4th 12029 (1996) ....................................................................... 23

*Graciano v. Robinson Ford Sales, Inc.*,
    144 Cal. App. 4th 140 (2006) ........................................................................... 4

*Graham v. DaimlerChrysler Corp*.,
    34 Cal. 4th 553 (2004) ................................................................................. 5, 6

iii

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983) ................................................................................ 4

*In re Consumer Privacy Cases,*
    175 Cal. App. 4th 545 (2009) ................................................ 7, 14, 16

*In Re Tobacco II Cases,*
    46 Cal. 4th 298 (2009) .................................................................. 17, 18

*In re Vitamin Cases,*
    2004 WL 5137597 (Cal. Super. 2004) ...................................... 16

*Kamar v. Radio Shack Corp.,*
    254 F.R.D. 387 (C.D. Cal. 2008) ................................................. 6

*Ketchum v. Moses,*
    24 Cal. 4th 1122 (2001) ................................... 7, 14, 16, 18, 20

*Kim v. Euromotors West/The Auto Gallery,*
    149 Cal. App. 4th 170 (2007) ...................................................... 3, 4

*Mangold v. California Public Utilities Commission,*
    67 F.3d 1470 (9th Cir.1995) .......................................................... 3

*Maria P. v. Riles,*
    43 Cal. 3d 1281 (1987) ..................................................................... 5

*Peak-Las Positas Partners v. Bollag,*
    172 Cal. App. 4th 101 (2009) ................................................... 13

*Ryan v. California Interscholastic Federation,*
    94 Cal. App. 4th 1033 (2001) .................................................... 6

*Sav-on Drug Stores, Inc. v. Superior Court,*
    34 Cal.4th 319 (2004) ....................................................................... 6

*Science App. Int'l Corp. v. Superior Court,*
    39 Cal.App.4[th] 1095 (1995). ............................................. 22, 23

iv

TABLE OF AUTHORITIES

*Wershba v. Apple Computer, Inc.,*
    91 Cal. App. 4th 224 (2001) ....................................................................... 7

**Statutes**

28 U.S.C. § 1332(d) ............................................................................................ 3

Cal. Code Civ. Proc. § 1021.5 .................................................................... 1, 5

Cal. Code Civ. Proc. § 1033.5 ................................................................. 22, 23

Cal. Civ. Code § 1780 ................................................................................ 1, 3, 22

Fed. R. Civ. P. 23(h) ......................................................................................... 3


**Miscellaneous**

Posner, Economic Analysis of Law 534, 567 (4th ed. 1992) ............................ 20

TABLE OF AUTHORITIES

## I.    __INTRODUCTION__

Defendant Hyundai Motor America, Inc. ("Hyundai") sold its customers vehicles with flywheel systems that it knew were inherently defective.  As the flywheel systems in these 2003 Tiburon GT vehicles inevitably began to fail, Hyundai charged its customers $1,500-$2,000 or more to replace the defective flywheel system with re-designed parts, telling them that the entire repair was needed because of a burned-out component clutch and was not covered under warranty.  After more than four years of litigation, 8,771 hours in attorney and staff time, and $400,255 in out-of-pocket expenses, Class Counsel obtained complete or nearly complete relief for class members who paid for a flywheel system repair.

Hyundai fought at every stage of the litigation, and agreed to provide appropriate relief to the class only after Plaintiffs' counsel withstood a motion to dismiss, obtained class certification on a nationwide basis, successfully opposed Hyundai's petitions for immediate appellate review, completed an extended expert discovery process, fought through dilatory discovery tactics, briefed summary judgment, and participated in multiple rounds of mediation.   Now, having succeeded in their efforts on behalf of the class, Class Counsel[1] ask that the Court grant their application for an award of attorneys' fees and reimbursement of expenses.

Under California law, which governs (1) the right to a fee in this diversity case and (2) the method of calculating that fee, Plaintiffs are entitled to an award of attorneys' fees under two fee-shifting statutes:  the Consumers Legal Remedies Act (CLRA), Cal. Civ. Code § 1780, and the private attorney general statute, Cal. Code Civ. Proc. § 1021.5.  California uses a two-step method to calculate the appropriate amount of the fee.  In the first step, the Court calculates the lodestar (or touchstone) value of Class Counsel's time by multiplying the hours reasonably spent litigating the case by

---

[1]    Plaintiffs use Class Counsel throughout this brief to refer to the co-lead class counsel appointed by the Court as well as the additional plaintiffs' counsel who performed work on behalf of the class.

prevailing hourly rates for attorneys' of similar skill and experience.   Next, the Court may adjust the lodestar upward or downward, by applying a multiplier to the lodestar figure, to take into account the contingency risk associated with the case, delay in payment, and the result achieved for class members, among other things.

Applying Class Counsel's customary hourly rates (which are commensurate with the prevailing rates charged by law firms that practice complex class action litigation on a non-contingent basis) to the 8,771 hours Class Counsel spent representing class members yields a lodestar value of $4,132,535.  Class Counsel requests that $3,779,434 of that time be enhanced by a multiplier of 2.0 to account for the significant risk associated with this case as well as the other multiplier factors, which each support the award of a fee enhancement here.  Class Counsel are not seeking a fee enhancement for the $353,101 in time incurred after the parties agreed in principle to the terms of settlement, which did not carry the same contingency risk of litigation, nor are they seeking an enhancement for the time seeking an award of attorneys' fees and recovery of expenses.

In a previous consumer protection case before this Court against Hyundai, *Roy v. Hyundai Motor America, Inc.*, No. 05-00483-AHS, Doc. 87 (C.D. Cal., April 10, 2006), Hyundai agreed to, and the Court awarded, an attorneys' fee to Class Counsel enhanced by a 1.9 multiplier under the same California fee-shifting statutes that apply here.  Here, Class Counsel believe a slightly higher multiplier is appropriate to compensate for the more substantial risk associated with this case, which featured more difficult and unsettled factual and legal questions and required Class Counsel to bear the risk of non-recovery for three years longer than in the *Roy* case.  *See, e.g., Chavez v. Netflix*, 162 Cal. App. 4th 43, 66 (2008) (stating that under California case law multipliers "range from 2 to 4 or even higher").

Including the requested fee enhancement of 2.0 on the time spent on the case before the parties agreed in principle on a settlement—which reduces to 1.9 when all of Class Counsel's time is considered—Class Counsel respectfully request that the Court

MEM. IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES
CASE NO. SACV 06-345 AHS (MLGx)

award them a total $7,911,969 in attorneys' fees and $133,866.05 in reimbursement for their litigation expenses.

## II.    ARGUMENT

### A.    Plaintiffs' Fee Application Is Governed By California Law.

At the conclusion of a successful class action, class counsel may apply to the Court for an award of reasonable attorneys' fees.  *See* Fed. R. Civ. P. 23(h).  The first issue in assessing any fee application is to identify the governing law.  Here, the Court's jurisdiction arises under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), which means the Court is sitting in diversity.  *See Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 571 (2005) ("CAFA confers federal diversity jurisdiction over class actions…").  Pursuant to *Erie R. Co. v. Tompkins,* 304 U.S. 64 (1938), the Court therefore applies California state law in assessing Plaintiffs' fee application, as both the availability of a fee award and the method of calculating that award are considered substantive issues reflecting important state policy.  *See, e.g., Mangold v. California Public Utilities Commission*, 67 F.3d 1470, 1478 (9th Cir. 1995) ("The method of calculating a fee is an inherent part of the substantive right to the fee itself, and a state right to an attorneys' fee reflects a substantial policy of the state."); *Gezalyan v. BMW of North America, LLC,* 2010 WL 1133427, *1 (C.D. Cal. 2010) ("In diversity actions, federal courts look to state law in determining whether a party has a right to attorneys' fees and how to calculate those fees.").

### B.    California Law Entitles Plaintiffs To A Fee Award Under The Consumers Legal Remedies Act and Private Attorney General Statute.

#### 1.    The Consumers Legal Remedies Act

Under California law, "[t]he court shall award court costs and attorney's fees to a prevailing plaintiff in litigation filed pursuant to [the CLRA]."  Cal. Civ. Code § 1780(e).  "[A]n award of attorney fees to 'a prevailing plaintiff' in an action brought pursuant to the CLRA is mandatory, even where the litigation is resolved by a pre-trial settlement agreement."  *Kim v. Euromotors West/The Auto Gallery*, 149 Cal. App. 4th

3

170, 178-79 (2007).  This effectuates a crucial policy goal of the State:  "[T]he availability of costs and attorneys fees to prevailing plaintiffs is integral to making the CLRA an effective piece of consumer legislation, increasing the financial feasibility of bringing suits under the statute."  *Broughton v. Cigna Healthplans*, 21 Cal.4th 1066, 1085 (1999).

California courts have adopted two approaches to determining prevailing party status—each of which is satisfied here.  The first approach borrows from Code of Civil Procedure section 1032, finding that a plaintiff is a prevailing party if he or she obtained a "net monetary recovery."  *Kim*, 149 Cal. App. 4th at 179.  Under the settlement, Hyundai is obligated to reimburse Plaintiffs and class members for their flywheel system repairs, which represents a substantial monetary recovery of approximately $1,500-$2,000 per repair.  Plaintiffs and class members have thus achieved a net monetary recovery through their certified CLRA claims and are "prevailing plaintiffs" entitled to a fee award under the CLRA.

The second approach to determining prevailing party status under the CLRA is a "pragmatic approach," which analyzes "which party realized its litigation objectives." *Kim*, 149 Cal. App. 4th at 179; *see Graciano v. Robinson Ford Sales, Inc.*, 144 Cal. App. 4th 140, 153 (2006) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983)) ("[P]laintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on *any significant issue* in litigation which achieves *some of the benefit* the parties sought in bringing suit.") (emphasis added by *Graciano*).  Plaintiffs are prevailing parties under the pragmatic approach as well.  Plaintiffs brought this action to recover out-of-pocket repair expenses that they and similarly situated class members incurred due to an inherent flywheel system defect that Hyundai concealed.  (*See* First Am. Consol. Compl. [Doc. 35], ¶¶ 3-6; Mem. in Support of Class Certification [Doc. 84] at 1.)  Under the settlement, class members who incurred flywheel system repair expenses in the first 50,000 miles will receive 100% of their expenses, as well as up to $150 in car rental expenses.  Those class members who incurred flywheel system repairs

at higher mileages receive either 50% or 75% of their expenses, reflecting that certain components of the flywheel system are not under warranty at higher mileages.  Like the "net monetary recovery" test, a pragmatic assessment of whether plaintiffs realized their litigation objectives confirms that Plaintiffs are entitled to a fee award under the CLRA as prevailing plaintiffs.

### 2.    The Private Attorney General Statute

Plaintiffs are also entitled to a fee award under California's private attorney general statute, Cal. Code Civ. Proc. § 1021.5.  Under this statute, the court may award attorney's fees to a "successful party" in any action that "has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."  The fundamental objective of the statute is "to encourage suits enforcing public policies by providing substantial attorney fees to successful litigants in such cases."  *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 565 (2004).  In the context of California's private attorney general statute, the term "successful party" is synonymous with the term "prevailing party" used in the CLRA and other statutes, and requires only that the plaintiff achieve its litigation objectives, whether by judgment, settlement, or other means.  *Id.* at 576-77.  "[P]laintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefits of the parties sought in bringing suit."  *Lyons*, 136 Cal. App. 4th at 1346 (quoting *Maria P. v. Riles*, 43 Cal. 3d 1281, 1292 (1987)).  For the same reasons previously discussed, Plaintiffs and the certified class satisfy this standard.

Plaintiffs also satisfy the other delineated criteria for a fee-shifting award under the private attorney general statute.  The action conferred a significant benefit on a large class of persons by providing relief to several thousand 2003 Tiburon GT owners.  The action also conferred a significant benefit on the public by enforcing important consumer

protection rights and discouraging similar unfair and deceptive treatment of consumers. *See Graham*, 34 Cal.4th at 578 ("It is well settled that attorney fees under section 1021.5 may be awarded for consumer class action suits benefiting a large number of people.").

The necessity and financial burden of private enforcement make an award appropriate.  Without the incentive of an attorneys' fees award, Plaintiffs could not have afforded to hire counsel to pursue this case; their loss, while certainly not trivial, was only a few thousand dollars.  *See Ryan v. California Interscholastic Federation*, 94 Cal. App. 4th 1033, 1044 (2001) ("As to the necessity and financial burden of private enforcement, an award is appropriate where the cost of the legal victory transcends the claimant's personal interest; in other words, where the burden of pursuing the litigation is out of proportion to the plaintiff's individual stake in the matter.").

Finally, this is not a case where fees should in the interest of justice be paid out of class members' recovery.  The incentive of a Court-awarded fee was necessary in this case because there is no fund from which Class Counsel could be awarded those costs nor was there ever a reasonable expectation that a common fund would be generated by this litigation.  Because it is unknown how many Tiburon owners paid for a flywheel system repair or how much each class member paid for those repairs, this was a class action where after the common questions of liability were decided, class members would have to come forward (through a claims process or otherwise) to individually establish their membership in the class and amount of repair expenses.  *See Sav-on Drug Stores, Inc. v. Superior Court*, 34 Cal.4th 319, 334 (2004) (recognizing the need in certain class case for each class member to come forward and individually establish eligibility and damages); *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 399 (C.D. Cal. 2008) (citing *Sav-On*).

### C.   California Law Prescribes A Lodestar/Multiplier Method Of Calculating A Reasonable Fee.

In cases that involve fee-shifting, in which the responsibility to pay attorney fees is statutorily or otherwise transferred from the prevailing plaintiff or class to the

defendant, the primary method for establishing the amount of 'reasonable' attorney fees is the lodestar/multiplier method. *In re Consumer Privacy Cases,* 175 Cal. App. 4th 545, 556-557 (2009); *see also Ketchum v. Moses,* 24 Cal. 4th 1122, 1137 (2001) ("[T]he lodestar adjustment method, including discretion to award fee enhancements, is well established under California law.")

California's lodestar/multiplier method is a two-step process of fee calculation under which the Court first determines a lodestar value for the fees by multiplying the time reasonably spent by Plaintiffs' counsel on the case by a reasonable hourly rate. *In re Consumer Privacy Cases,* 175 Cal. App. 4th at 556-557.   The Court may then enhance or reduce the lodestar by applying a multiplier to take into account the contingent nature and risk associated with the action, as well as other factors such as the degree of skill required and the ultimate success achieved. *Id.*; *Ketchum v. Moses,* 24 Cal. 4th 1122, 1130, 1137 (2001) (holding that Court of Appeal erred when it followed *City of Burlington v. Dague*, 505 U.S. 557 (1992) and concluded that it lacked authority to enhance a prevailing party's lodestar).   The value of the multiplier lies within the Court's sound discretion.   For wholly-contingent consumer class actions like this one, California courts have approved fee awards with multipliers of 2 and even higher. *See, e.g., Wershba v. Apple Computer, Inc.,* 91 Cal. App. 4th 224, 255 (2001) ("Multipliers can range from 2 to 4 or even higher."); *Chavez*, 162 Cal. App. 4th at 66 (same).

### D.   A Lodestar of $4,132,535 Represents An Appropriate Valuation Of The Time Spent By Class Counsel Representing Class Members Over The Past Four Years.

The first part of California's lodestar/multiplier calculation is to calculate the lodestar value of class counsel's services by multiplying time reasonably spent on the litigation by appropriate hourly rates. *In re Consumer Privacy Cases,* 175 Cal. App. 4th at 556.   This calculation yields a lodestar value of $4,132,535, which is based on 8,771 hours of attorney and staff time at their customary hourly rates. (*See* Joint Declaration of Eric Gibbs and Norman Siegel In Support Of Plaintiffs' Application For Attorneys'

7

Fees and Reimbursement Of Expenses ("Joint Decl."), ¶ 108; *see also* Gibbs Decl., ¶ 14; Siegel Decl., ¶ 11; Marshall Decl., ¶ 7; Rivas Decl., ¶ 6; Mansfield Decl., ¶ 3.)

### 1.    The 8,771 Hours Class Counsel Spent On The Case Is Reasonable In Light of the Case's Complexity, Intensity, and Duration.

Class Counsel's fee application seeks compensation for 8,771 hours they spent litigating this case over the past four years.  The accompanying Joint Declaration of Eric Gibbs and Norman Siegel includes a detailed account of this time.[2]  To obtain relief for class members, Class Counsel were required to meet and overcome constant resistance from a well-financed opponent represented by highly experienced defense counsel. Hyundai pursued an aggressive defense strategy at every step, raising challenges that are rarely made even in complex class actions like this one.  It contested every element of class certification (including numerosity), challenged the model form of class notice published by the Federal Judicial Center, and raised technical objections to all of Plaintiffs' class certification evidence, including moving to strike its own statistical data as hearsay and contesting the method used to authenticate deposition transcripts.  The following summary overview of the case illustrates how much effort went into this litigation:

Factual Investigation:  Class Counsel conducted an extensive factual investigation designed to address Hyundai's ongoing contention that the Tiburon owners who were experiencing expensive repairs were simply dealing with burned-out clutches or had somehow abused their vehicles, thereby causing clutch failure.  (*See* Joint Decl., ¶¶ 5, 57.)  The factual investigation, which also included purchasing new parts and retrieving used parts, independent research into part costs, vehicle modifications, and NHTSA data, continued throughout the case and by the time of settlement, Class Counsel had

---

[2]     Should the Court wish to review the hundreds of pages of daily time records Plaintiffs' counsel kept over the course of the litigation, Class Counsel will submit those records for in camera review (these records contain information that is protected by the attorney-client and work product privileges).

compiled records from over a thousand Tiburon owners regarding their flywheel system repairs.  (*See id.*, ¶ 57.)

Consolidation:  Through the consolidation process, the claims of several separately filed Tiburon suits were joined and Class Counsel appointed to lead the case.  (*See* Doc. 34; Joint Decl., ¶¶ 8-24.)  Class Counsel worked with counsel in the related cases to present each named plaintiffs' factual allegations, refine the various legal theories pled by the existing complaints, and file a consolidated class pleading on behalf of all the plaintiffs.  (*See* Doc. 35; Joint Decl., ¶¶ 25-26.)

Pleading motion practice:  Hyundai filed a motion to dismiss each claim asserted in Plaintiffs' consolidated complaint.  After detailed briefing by both sides on a variety of legal issues, the Court denied the motion in its entirety.  (*See* Docs. 38-53; Joint Decl., ¶¶ 30, 34-35, 39.)

Settlement Negotiations:  Class Counsel engaged in several months of early settlement discussions with Hyundai between September 2007 and February 2008.  (*See* Joint Decl., ¶¶ 45, 47.)  These included multiple mediation sessions with Lew Goldfarb (a former Chrysler Associate General Counsel well-versed in litigating and resolving auto defect cases), and several exchanges of settlement proposals.  (*See id*.)  Approximately 65% of the time in this case occurred in the 18 months after these settlement negotiations broke down when Hyundai, only minutes into the parties' second formal mediation session, stated that it lacked authority to settle the case on any terms.  (*See* Joint Decl., ¶¶ 47, 111.)

Named Plaintiff Discovery:  Hyundai deposed the five named plaintiffs and conducted inspections of their vehicles in Washington, D.C.; Fort Lauderdale, Florida; San Francisco, California; Costa Mesa, California; and Cincinnati, Ohio.  (*See* Joint Decl., ¶ 54.)  Although Plaintiffs' case concerned a common course of concealing known problems with the 2003 Tiburon's flywheel system, Hyundai took the position that any problems were caused by the named plaintiffs themselves.  (*See, e.g.,* Docs. 100, 217-2.)  In essence, Class Counsel were required to defend the named plaintiffs

against abusive driving and negligence, and demonstrate that driving habits and vehicle modifications could not have been responsible for their expensive flywheel repairs.  (*See* Docs. 127, 226, 228.)

Hyundai Discovery:  Class Counsel propounded document demands and deposed Hyundai's corporate representative, where Hyundai professed complete ignorance of most everything relevant to the case, including the design of the parts of the flywheel system, any testing performed on the flywheel system, or any changes made to the flywheel systems' design.  (*See* Doc. 193 at 12; Joint Decl., ¶ 31-33, 36-37, 44.)  In other words, Hyundai chose to deny everything and produce as little relevant documentation as possible—even as Plaintiffs would learn later Hyundai was openly sharing its knowledge with its own experts.  (*See* Doc. 154; Joint Decl., ¶ 63.)  Plaintiffs were thus required to spend much more time than had Hyundai produced a series of knowledgeable witnesses and informative documents.  Plaintiffs instead had to consult extensively with an expert mechanic and automotive failure analyst; gather details from hundreds of Tiburon owners on their experiences; subpoena testing reports from Korea; and closely analyze warranty and part sales data.  (*See* Joint Decl., ¶¶ 50, 57, 63.)  All this was necessary to prove that Hyundai had actually begun implementing serial changes to the flywheel system in class vehicles even before releasing the new Tiburon to the public, that Tiburon flywheels failed at epidemic rates until Hyundai settled on a final fix that properly dissipated heat from the system, and most importantly, that Hyundai knew these material facts but chose not to disclose them to its customers.

Expert Discovery:  Expert testimony was critical, both at the class certification and summary judgment stages, to demonstrate the existence of an inherent flywheel system defect rather than driver-dependent clutch problems.  (*See* Docs. 131, 227-3, 227-4; Joint Decl., ¶¶ 59-60.)  Even more critical was Plaintiffs' successful depositions of Hyundai's experts, which required over a month of negotiations before Hyundai would even agree to produce them.  (*See* Doc. 153 at 2-3; Joint Decl., ¶¶ 62-63.)  The depositions ultimately showed that Hyundai had shared documents with those experts

10

that it had not produced to Plaintiffs, that Hyundai's experts raised many of the same points that Plaintiffs had been raising, and that Hyundai ultimately wrote the experts' reports for them.  (*See* Doc. 154; Joint Decl., ¶ 63.)

Class Certification:  The class certification motion was a microcosm of the entire litigation:  every point was fiercely litigated, with Hyundai contesting each element of Rule 23; moving to strike statistical evidence compiled from its own records; and submitting piles of evidence that it had not previously produced.  (*See* Docs. 83-87, 99-109, 114-127, 133-149, 156.)  After several months of briefing and a hearing that lasted over three hours, the Court certified the proposed class for trial of Plaintiffs' consumer protection claims.  (*See* Docs. 159-60, 175; Joint Decl., ¶¶ 57-58, 60-61; 64-65.)

Appellate Petitions:  Hyundai submitted two separate petitions to the Ninth Circuit about a month apart (one before the Court issued its written opinion explaining its order and one after), each challenging the Court's class certification order on due process grounds asking for immediate review and reversal.  (*See* Docket No. 8-80181, Docs. 1, 5.)  Class Counsel successfully opposed each petition.  (*See id.*, Docs. 2, 8; Joint Decl., ¶¶ 72, 77-78.)

Class Notice:  Even the normally straightforward process of notifying the class was highly adversarial, with Hyundai unsuccessfully challenging the form and content of Plaintiffs' proposed notice (which was modeled after the form of notice recommended by the Federal Judicial Center)—and using its papers to argue for future decertification and entry of summary judgment.  (*See* Docs. 181-83, 190-91; Joint Decl., ¶¶ 79-82.)  After the Court held a hearing approving Plaintiffs' proposed form of notice, Hyundai filed supplemental briefing in an unsuccessful attempt to carve out about 1/3 of the certified class by excluding 5-speed Tiburons from the notice program.  (*See* Docs. 196, 198-201; Joint Decl., ¶¶ 85-86.)

Motions to Compel:  Hyundai's failure to produce email and Class Counsel's discovery of unproduced evidence in the files of Hyundai's experts led to a series of discovery motions over the course of a year.  (*See* Joint Decl., ¶¶ 53, 56, 66, 70-71, 74,

11

83-84, 87-88, 92-93.)  Hyundai had initially represented to Magistrate Judge Goldman that it had "produced everything" in response to Plaintiffs' discovery responses.  (*See* Doc. 110 at 5.)  When unproduced summaries of flywheel system testing and design changes later surfaced and Plaintiffs forced their production, Hyundai represented to Judge Goldman that "[t]here is nothing else," and that Plaintiffs "*now* have everything." (Doc. 202 at 15-16 (emphasis supplied).)  When Hyundai was unable to demonstrate that it had properly searched its email systems for relevant correspondence, however, Hyundai's outside counsel admitted that, in fact, he had relied on Hyundai's in-house counsel to oversee Hyundai's document retrieval.  (Doc. 248 at 16.)  Magistrate Judge Goldman ordered that Hyundai conduct a complete search of its servers and computers, and ordered Hyundai's in-house counsel to appear in court for a continued hearing on Plaintiffs' motion to compel.  (Doc. 231.)  Hyundai avoided that obligation only by settling the case less than two weeks later.  (Doc. 243; Joint Decl., ¶ 93.)

Summary Judgment:  When Hyundai moved for summary judgment, its briefing was again voluminous and required a detailed response from Class Counsel.  (Docs. 216-17.)  In particular, because Hyundai had chosen to assert that Plaintiffs could not meet their evidentiary burden at trial, Class Counsel were required to assemble all of their evidence in support of an inherent flywheel system defect and submit it to the Court.  (*See* Docs. 235-241; Joint Decl., ¶ 91.)

Trial Preparation:  Class Counsel began trial preparation on two separate occasions.  (*See* Joint Decl., ¶¶ 67, 91.)  Before the first trial date was continued, Plaintiffs had prepared and filed their Memorandum of Contentions of Fact and Law, and Exhibit List, and Witness List.  (*See* Docs. 166-168; Joint Decl., ¶ 67.)  Class Counsel had also prepared proposed jury instructions, and as the second trial date approached, had prepared deposition excerpts and trial exhibits before the case settled. (*See* Docs. 239-241; Joint Decl., ¶¶ 67, 91.)

Settlement:  With Hyundai's in-house counsel subject to an order to appear before Magistrate Judge Goldman only a few days later, the parties returned to mediation on

August 6, 2009, and reached agreement on the principle terms of the settlement now before the Court.  (*See* Doc. 273-1; Joint Decl., ¶ 93.)  But even after the parties had reached agreement on terms and entered into a Memorandum of Understanding, the process of documenting the formal settlement agreement and presenting it to the Court for approval proved to be contentious and time-consuming.  (*See* Joint Decl., ¶¶ 96-100.) After several months of back-and-forth with Hyundai, the settlement was finalized only after a mediation session with Magistrate Judge Goldman.  (*See* Docs. 257-67; Joint Decl., ¶¶ 101-104.)  Unfortunately, negotiations as to Plaintiffs' fees were met with the same contentiousness, necessitating motion practice over the appropriate fee in this case. (*See* Joint Decl., ¶ 107.)

-------------

When Hyundai filed its joinder to Plaintiffs' motion for preliminary approval, it used the opportunity to argue that the case raised only "straightforward claims and issues" that required little work to prosecute.  (Doc. 274 at 2.)  Not once during the litigation did Hyundai characterize Plaintiffs' case as simple and straightforward.  In fact, one of Hyundai's central themes throughout the litigation was that the factual and legal issues raised by Plaintiffs' complaint were too varied and complex to resolve through a single trial.

Notwithstanding Hyundai's attempt to pre-argue this fee application by inappropriately trying to create the impression that Class Counsel did little work in this case, the objective factual record shows otherwise.  (*See* Joint Decl., ¶¶ 4-107.)  In particular, the record shows that when Hyundai walked away from the settlement table, choosing instead a scorched-earth defense strategy, the litigation that followed placed significant demands on Class Counsel, requiring them to devote 6,098 hours to achieve the successful resolution before the Court.  (*See id.*)  While Hyundai had the legal right to litigate as it did, it must now account for the burden it imposed on the process, which includes paying the attorneys' fees and costs of the prevailing party.  *Peak-Las Positas Partners v. Bollag*, 172 Cal. App. 4th 101, 114 (2009) ("A defendant cannot litigate

13

tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response.").

2.    **Class Counsel's Schedule of Hourly Rates Are Reasonable Rates For The Relevant Market.**

Class Counsel's hours are to be multiplied by a "reasonable hourly rate" to generate the lodestar figure. *In re Consumer Privacy Cases,* 175 Cal. App. 4th at 556. In determining an appropriate hourly rate, the Court should look to apply rates commensurate with the "hourly prevailing rates for private attorneys in the community conducting noncontingent litigation of the same type." *Ketchum v. Moses,* 24 Cal. 4th at 1133.

The schedule of hourly rates that Plaintiffs are seeking for their work in this case, which varies based on the experience and skill of the attorney or staff member performing the work, are fully set forth in the separate Declarations of Plaintiffs' counsel.  The hourly rates sought for the five attorneys who were predominantly responsible for the work in the case are:  Gibbs ($675), Siegel ($650), Hughes ($ 545), Hilton ($495) and Munroe ($ 445).[3]

These lawyers are experienced litigators who have offices in California and regularly litigate complex multi-party actions all across the United States including in Southern California.  A review of the 2009 National Law Journal rate survey, which includes the average, median, and range of rates amongst firms that regularly litigate complex class action cases, confirms that Class Counsel's hourly rates are consistent with the prevailing rates in the marketplace.  (*See* Joint Decl., Ex. E.)  Moreover, similar hourly rates have recently been approved as reasonable in another automobile defect case recently litigated in the central district by Class Counsel.  *Bacca v. BMW of North*

---

[3]    *See* Gibbs Decl., ¶ 14; Siegel Decl., ¶ 11.  Mr. Gibbs and Mr. Siegel are named partners in their respective firms and are co-lead class counsel in this case.  Mr. Hilton is a partner in Stueve Siegel; Mr. Hughes was an associate and now is a partner at Girard Gibbs; and Mr. Munroe is an associate at Girard Gibbs.

14

1  *America, LLC*, No. 06-06753-DDP, Doc. 62 (C.D. Cal. 2009) (attached as Ex. C to the

2  Joint Decl.).

3        As a cross check to these rates, Plaintiffs asked Professor William Rubenstein, a

4  legal scholar specializing in attorneys' fee jurisprudence, to compare the rates of these

5  five attorneys against about 150 rates reported in cases from Southern California.  (*See*

6  Rubenstein Decl. at ¶¶ 23-24.)[4]  Professor Rubenstein generated a scatter plot reflecting

7  how the submitted rates (designated with an "o", from left to right, Munroe, Hughes,

8  Hilton, Gibbs and Siegel) compare with the prevailing rates in Southern California and

9  concluded that the rates here are at or below the standard rates for attorneys of similar

10  experience.  *Id.*



21        Professor Rubenstein also applied another test of the "blended lodestar" – meaning

22  the weighted hourly rate when the total lodestar for all timekeepers is divided by the

23  aggregate hours in the case, or approximately $470 per hour.  (*See* Rubenstein Decl. ¶ 24,

24  Graph 2; *see also* Joint Decl., ¶ 108)  Again, Professor Rubenstein's conclusion was that

25  the blended lodestar was consistent with the prevailing blended rates applied in other

26  class actions in the District.  (Rubinstein Decl., ¶ 24.)

---

4       Professor Rubenstein's Declaration is attached as Ex. 1 to the Hughes Declaration.

15

**E.     A Lodestar Multiplier Of 2.0 Is Warranted.**

After Class Counsel's lodestar is calculated, the final fee to be awarded under California's fee-shifting statutes is determined by applying a lodestar multiplier based on an evaluation of several factors, including:

(1)    The risks presented by the litigation;

(2)    The novelty and difficulty of the questions involved, and the skill exhibited by plaintiffs' counsels in addressing those issues;

(3)    The results obtained on behalf of the class by the plaintiffs' counsel;

(4)    The continuing obligation of Plaintiffs' Counsel to devote time and effort to the litigation;

(5)    The extent to which the litigation precluded other employment by the attorneys; and

(6)    The delay in awarding fees.

*See, e.g., In re Consumer Privacy Cases,* 175 Cal. App. 4th at 556*; In re Vitamin Cases*, 2004 WL 5137597, *9 (Cal. Super. 2004).  Each of these factors support a fee enhancement in this case, as discussed below.

**1.     Class Counsel Undertook Substantial Risk In Litigating This Case And Carried That Risk For Four Years.**

The primary factor that should be considered in awarding a multiplier is the risk of non-recovery that counsel shouldered in taking on the case.  *See Ketchum*, 24 Cal. 4th at 1138 ("the purpose of a fee enhancement is *primarily* to compensate the attorney for the prevailing party at a rate reflecting the risk of nonpayment in contingency cases as a class") (emphasis added).  "A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions.  If he is paid no more, competent counsel will be reluctant to accept fee award cases." *Id.* at 1333 (quoting Leubsdorf, The Contingency

Factor in Attorney Fee Awards, 90 Yale L.J. 473, 480 (1981)).

The contingency risk confronted by Class Counsel in this case was substantial. The case concerned a vehicle defect that manifested itself through a sudden inability to engage the clutch, so Hyundai's explanation that abusive driving and ordinary wear-and-tear simply cause the clutch to wear out, as can happen in any vehicle, presented Plaintiffs with significant litigation risk.  Hyundai's sworn testimony that it never investigated any Tiburon flywheel system problems, never redesigned the Tiburon's flywheel system, and had made a complete document production, similarly posed difficult and risky evidentiary obstacles that Plaintiffs had to overcome.  So while Class Counsel firmly believed, based on the complaints they had received from numerous Tiburon owners, that Hyundai was treating its customers unfairly and concealing the existence of an inherent defect, there was considerable risk that they would be unable to counter Hyundai's story that individual driver abuse caused the flywheel system problems.

Plaintiffs' case featured a number of highly challenging legal hurdles.  California appellate decisions have recently made it much more difficult to pursue consumer protection claims involving component vehicle parts, and Hyundai used those cases to argue for dismissal on the pleadings and later for summary judgment.  (*See* Docs. 38, 50, 217-1 (citing, e.g., *Bardin v. DaimlerChrysler*, 136 Cal. App. 4th 1255 (2006); *Daugherty v. American Honda Company*, 144 Cal. App. 4th 824 (2006)).)  Hyundai's arguments that driving habits, vehicle maintenance, and custom modifications varied across the class posed a serious threat to Plaintiffs' ability to demonstrate commonality and typicality at class certification, particularly on a nationwide basis.   The surface appeal of the truism that parts that wear out could have resulted in no class recovery at all.  (*See* Doc. 100, 217-2.)

Even after the Court certified a nationwide class and Plaintiffs successfully opposed Hyundai's petitions for appeal, Plaintiffs still faced the substantial risk that the California Supreme Court's much-anticipated opinion in *In Re Tobacco II Cases*, 46 Cal.

4th 298 (2009), would lead to decertification.  The Court's class certification opinion recognized that if *Tobacco II* held that actual reliance was an element of UCL claims, decertification would likely be appropriate, making three years of Class Counsel's efforts all for naught.  (*See* Doc. 175 at 32.)  Class Counsel nevertheless doggedly pursued the case on behalf of the class and ultimately achieved a favorable settlement.

### 2. This Case Involved a Number of Both Novel and Difficult Issues That Required Substantial Skill To Litigate Effectively.

The existence of novel and difficult legal questions, and the skill in which they are handled are a further ground for enhancing a fee award.  To some extent, however, the extra time needed to litigate difficult issues and attorneys' experience and skill level is reflected in the lodestar, so care must be taken to avoid double counting.  *See Ketchum*, 24 Cal. 4th at 1138-39.

While it is certainly true that most class actions involve difficult legal issues, and the prevailing hourly rates for complex litigators reflect that expertise, this case involved a particularly wide array of novel and demanding legal issues that support a further fee enhancement.  As discussed in the previous section on the risk of the litigation, the recent *Daugherty/Bardin* line of cases and the passage of Proposition 64 and the related *Tobacco II* decision had created substantial uncertainty in California consumer protection law.  In successfully arguing for nationwide class certification under California law, Class Counsel also navigated novel and unsettled post-CAFA choice-of-law issues that were the subject of extensive briefing before this Court and the Ninth Circuit.  Perhaps the most novel and difficult issues of all were raised by the unique facts of this case, which involved a defect in a vehicle system consisting of some wear components and some non-wear components, which Hyundai claimed to know nothing about.  Establishing that problems existed in class vehicles far beyond typical wear and tear (especially in the face of expert testimony to the contrary), and that the existence of the problems could be demonstrated through common proof for all Tiburon owners regardless of their particular driving habits, was one of the more difficult challenges

18

Class Counsel have faced in a long history of consumer protection cases, automotive related or not.

### 3. Class Counsel Obtained An Excellent Result For Class Members, Who Can Receive A Complete or Nearly Complete Monetary Recovery.

Under any measure, the settlement is an excellent result for the individual class members, providing them with complete or nearly complete relief and vindicating important protections for automotive consumers.  The details of the monetary recovery made available through the settlement have already been discussed above (*see* Section II.B.1), and in Plaintiffs' motion for preliminary approval (*see* Doc. 272), so Plaintiffs will not repeat them here.  One non-monetary benefit of the settlement that should be mentioned, however, is the ease with which class members can obtain a recovery.  Class members will all receive a simple one-page claim form in the mail designed to make it very easy for them to obtain compensation for their past repairs.  If class members do not have a repair receipt available to substantiate their membership in the class and amount of their claim, they will be able to send a pre-printed request for records to their Hyundai dealership, who will then forward the information directly to Hyundai.

Settlement terms like this are impressive for any automotive defect case.  In its preliminary approval joinder papers, Hyundai attempted to undermine the strength of the result Class Counsel achieved by claiming that it is "essentially the same as the settlement that was being negotiated between the parties at the inception of this litigation." (Doc. 274 at 4.)   The truth is that the result ultimately obtained provides class members about *three times* the monetary recovery offered by Hyundai early in the litigation.  (*See* Joint Decl., ¶ 105.)  In earlier settlement efforts, Hyundai had insisted on onerous claim filing procedures such as submitting pictures of vehicles and had refused to reimburse Tiburon owners for *any* of the labor costs associated with flywheel system repairs, and was only willing to compensate for a percentage of some of the part costs.  (*Id.*)  Moreover, shortly after making that initial offer, Hyundai broke off settlement

19

negotiations altogether, stating that it did not have authority to negotiate a settlement on *any terms*, including on the terms of the offer it previously had made.  (*Id.*, ¶ 47.)

> **4.    Class Counsel Will Spend A Considerable Amount Of Time In The Future Fulfilling Their Continuing Obligations To The Class.**

The lodestar figure calculated from Class Counsel's time in the case does not include the substantial amount of time that will be required of Class Counsel up through and after final judgment.  This time will include communicating with class members regarding the settlement and claims process, seeking final approval and attorneys' fees on behalf of the class, monitoring administration of the settlement, and working with Hyundai to resolve disputes over class member claims.  The additional time that will be required of Class Counsel in the future, in effect, reduces the multiplier awarded by the Court, and thus supports a higher multiplier in the first instance.

> **5.    The Time Required To Litigate This Case Precluded Class Counsel From Pursuing Other Cases.**

The duration of the lawsuit required an intense commitment for Plaintiffs' counsel that precluded them from spending time on other cases—a short-term loss of profits that justifies a fee enhancement in this case.  This case was litigated primarily through the consistent work of five attorneys, so it is not a case where various attorneys from firms with excess capacity were rotated into the case.  This case required a sustained effort from each attorney, making them unavailable to pursue other opportunities.

> **6.    The Delay In Payment In This Case Exceeds Four Years.**

Class Counsel have worked for over four years now without being paid for their services.  Apart from the risk of non-recovery, which would leave them saddled with a substantial loss, Class Counsel have therefore also essentially "loaned" their services and their money (by advancing costs) to the class, which like all loans would have to be repaid with interest to be profitable.  *See Ketchum,* 24 Cal. 4th at 1132 (quoting Posner, Economic Analysis of Law 534, 567 (4th ed. 1992)) ("A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee

MEM. IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES
CASE NO. SACV 06-345 AHS (MLGx)

compensates the lawyer not only for the legal services he renders but for the loan of those services.")  To compensate Class Counsel for the time-value of money lost during the time they have been working without being paid, a further upward adjustment to the multiplier is appropriate.

### 7.   Collectively, The Multiplier Factors Support Award of A 2.0 Multiplier On Class Counsel's Pre-Settlement Time.

In assessing the extent of a lodestar multiplier to be applied, the Court should consider each of the factors just discussed, with primary emphasis placed on the contingency risk associated with the case.  In a previous case against Hyundai involving defective airbags in Elantra vehicles, Hyundai agreed to, and the Court awarded, an attorneys' fee to Class Counsel enhanced by a 1.9 multiplier under the same California fee-shifting statutes that apply here.  *See Roy v. Hyundai*, No. 05-00483-AHS, Doc. 87 (C.D. Cal., April 10, 2006) (attached as Exhibit D to Joint Decl.).  The *Roy* case involved a fair amount of risk, but the factual and legal issues were not as challenging as the issues in this case.  Based primarily on the significant risk associated with this case, which persisted from 2005 when Class Counsel began investigating the case until the parties' reach agreement in principle on a settlement in August 2009, and the lengthy delay in payment, Class Counsel believe a multiplier of 2.0 is appropriate.[5]  (*See* Joint Decl., ¶¶ 112-115; *see also* Rubenstein Decl., ¶¶ 28-33.)

Plaintiffs therefore request that the Court award Class Counsel a total fee award of $7,911,969 as compensation for the 8,771 hours spent litigating the case on behalf of Tiburon owners.  This amount reflects $3,779,434 in lodestar enhanced by a contingency multiplier of 2.0 and $353,101 in unenhanced lodestar.  (*See* Joint Decl., ¶¶ 115.)

---

[5]     Class Counsel are not seeking a fee enhancement for that portion of the lodestar incurred after the parties executed the Memorandum of Understanding on August 6, 2009, which includes their lodestar devoted to seeking payment of attorneys' fees and recovery of costs.  (*See* Joint Decl., ¶¶ 114)

MEM. IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES
CASE NO. SACV 06-345 AHS (MLGx)

### F.   Class Counsel's Requested Award for Reimbursement of Expenses if Warranted.

Class Counsel incurred $400, 254.53 in unreimbursed costs and expenses prosecuting this case on behalf of the Class.  (*See* Joint Decl., ¶ 119; Ex. F.)  The CLRA expressly provides that: "[t]he court shall award court costs and attorney's fees to a prevailing plaintiff."  Cal. Civ. Code § 1780(d).  Because Class Counsel's claim for reimbursement of costs arises under California substantive law, the Court applies California law on costs rather than Local Rule 54-4.  *Clausen v. M/V New Carissa,* 339 F.3d 1049, 1064 (9th Cir. 2003).

### 1.   Mandatory Costs

General costs.   Cal. Code Civ. Proc. § 1033.5(a)(1), (4) and (7) state that the Court must award costs for court fees, fees for service of process, and witness fees.  Class Counsel seeks those general costs.

Deposition costs .  Cal. Code Civ. Proc. § 1033.5(a)(3) states that the Court must award deposition related costs for transcribing, recording, and travel. Class counsel took or defended 12 depositions, including the depositions of Plaintiff Schroeder in Washington, D.C., Mr. Gorman in Fort Lauderdale, Florida, Mr. Sano in San Francisco, California, Mr. Matuschek in Costa Mesa, California, and Parkinson in Cincinnati, Ohio. (*See* Joint Decl., ¶ 54.)  Class Counsel seeks reimbursement for transcribing, airfare, hotel and meal expenses.  *See also* Local Rule 54-4.6.

Class Counsel incurred $56,085.35 in unreimbursed mandatory costs and expenses prosecuting this case on behalf of the Class.  (*See* Joint Decl., ¶ 119; Ex. F.)

### 2.   Discretionary Costs

Cal. Code Civ. Proc. § 1033.5(c) gives the Court discretion to award costs for "Items not mentioned in this section" if the costs are "reasonably necessary to the conduct of the litigation, rather than merely convenient or beneficial to its preparation." *Science App. Int'l Corp. v. Superior Court*, 39 Cal.App.4[th] 1095, 1103 (1995).

MEM. IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES
CASE NO. SACV 06-345 AHS (MLGx)

<u>Class notice costs.</u>  Prior to settlement, the Court certified the litigation class and ordered Class Counsel to provide notice to the class.  In so doing, Class Counsel retained and paid R.L. Polk & Co $21,925 to obtain the names and addresses of class members. (Gibbs Decl., ¶ 18; Siegel Decl. ¶ 17.)

<u>Travel costs.</u>   This case is a consolidated action that combined similar cases originally filed in different California venues.  (*See* Joint Decl., ¶¶ 7, 9, 14, 20, 24.) Class counsel were required to undertake substantial travel for depositions, hearings, meetings, and mediations because Class Counsel, class members, and fact and expert witnesses lived and worked throughout California and the country.  (*See* Joint Decl., ¶ 54.)  For Class Counsel to effectively and efficiently pursue this case, it was necessary for one or more of Class Counsel in this case to travel for meetings with co-counsel and defense counsel, hearings, court appearances, and depositions.  Class Counsel seeks non-deposition travel expenses related to hearings at this Court, to attend mediation, and for meetings with experts.

<u>Mediation costs.</u>   The parties retained two separate and independent mediators during the litigation – Lew Goldfarb and David Rotman.  (See Joint Decl., ¶¶  47, 93.) The parties split the cost of mediation 50/50.  The settlement in this case arose directly out of the mediation conducted in August 2009 by David Rotman.  (See Joint Decl., ¶ 93.)   See, e.g., Gibson v. Bobroff, 49 Cal. App. 4th 1202, 1209 (1996) (awarding the costs of court-ordered mediation).

Class Counsel incurred $77,780.70 in unreimbursed discretionary costs and expenses prosecuting this case on behalf of the Class.  (*See* Joint Decl., ¶ 119; Ex. F.)

### 3.    Prohibited Costs

Cal. Code Civ. Proc. § 1033.5(b) states that the Court is not to award certain categories of costs.  *Science App. Int'l Corp. v. Superior Court*, 39 Cal.App.4th 1095, 1103 (1995).  Class Counsel nevertheless identifies these costs because the Court should be aware of the non-recoverable costs when the Court evaluates Class Counsel's requested multiplier related to attorneys' fees.

1        <u>Expert costs.</u>  This case involved technical issues regarding automobile design and
2    manufacturing.  This required Class Counsel to retain experts to educate Class Counsel,
3    to inform Hyundai about the strength of the claims, and to provide evidence for the
4    Court.  Class Counsel retained Robert Waters, a Certified Master Automotive Technician,
5    and Dr. Anand Kasbekar, an expert regarding failure analysis of both metals and plastics
6    in automotive parts.

7        <u>Other expenses.</u>  Class Counsel incurred significant expenses related to postage,
8    delivery, telephone, copying, transcripts of court proceedings not ordered by the Court,
9    factual investigation and online research.

10       Class Counsel incurred $265,781.79 in non-recoverable costs and expenses
11   prosecuting this case on behalf of the Class.  (*See* Joint Decl., ¶ 119; Ex. F.)

12   **III.   CONCLUSION**

13       For the reasons stated above, Plaintiffs respectfully request that the Court grant
14   their fee application and award Class Counsel $7,911,969 in attorneys' fees, as well as
15   $133,866.05 in allowable expenses.

17   DATED:  May 3, 2010                         Respectfully submitted,

18       **GIRARD GIBBS LLP**

19       By:   /s/ Eric H. Gibbs

20
21       Geoffrey A. Munroe
         601 California Street, 14th Floor
22       San Francisco, California   94108
23       Telephone:  (415) 981-4800
         Facsimile:  (415) 981-4846
24
25       Norman E. Siegel
         Todd Hilton
26       **STUEVE SIEGEL HANSON LLP**
27       460 Nichols Road, Suite 200
         Kansas City, Missouri 64112
28       Telephone:  (816) 714-7100

1

Facsimile:  (816) 714-7101

2

*Co-Lead Class Counsel*

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEM. IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES
CASE NO. SACV 06-345 AHS (MLGx)