1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Eric H. Gibbs (State Bar No. 178658)
ehg@girardgibbs.com
Dylan Hughes (State Bar No. 209113)
dsh@girardgibbs.com
Geoffrey A. Munroe (State Bar No. 228590)
gam@girardgibbs.com
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, California  94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

Norman E. Siegel
siegel@stuevesiegel.com
Todd Hilton
hilton@stuevesiegel.com
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, MO 64112
Telephone: (816) 714-7100
Facsimile: (816) 714-7101

*Co-Lead Class Counsel*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL PARKINSON, et al., on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br>          v.<br><br>HYUNDAI MOTOR AMERICA,  a California Corporation,<br><br>                    Defendant. | Case No.  SACV 06-345 AHS (MLGx)<br><br>**JOINT DECLARATION OF ERIC H. GIBBS AND NORMAL E. SIEGEL IN SUPPORT OF CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**<br><br>Date:  June 28, 2010<br>Time:  11:00 a.m.<br>Before:  Hon. Alicemarie H. Stotler |

Pursuant to 28 U.S.C. § 1746, Eric H. Gibbs and Norman E. Siegel declare as follows:

1.      I, Eric H. Gibbs, am a member in good standing of the State Bar of California and a partner in Girard Gibbs LLP ("Girard Gibbs"), one of the two law firms appointed by this Court to serve as Class Counsel in this action.  In March 2010, the Court granted preliminary approval of the proposed settlement of this class action.  I make this declaration in support of Plaintiffs' Motion For Attorneys' Fees and Reimbursement Of Expenses.  The following statements are based on my personal knowledge and review of the files in this case and, if called on to do so, could and would testify competently thereto.

2.      I, Norman E. Siegel, am a member in good standing of the State Bar of Missouri and a partner with the law firm Stueve Siegel Hanson LLP ("Stueve Siegel"), one of the two law firms appointed by this Court to serve as Class Counsel in this action.  I have been admitted *pro hac vice*.  I make this declaration in support of Plaintiffs' Motion For Attorneys' Fees and Reimbursement Of Expenses.  The following statements are based on my personal knowledge and review of the files in this case and, if called on to do so, could and would testify competently thereto.

3.      The events described in this Declaration reflect a chronological summary of the litigation.  Although we submit this single Declaration for ease of reference, it is not intended to suggest that we both handled all tasks referenced in the Declaration.  To the contrary, throughout the litigation we worked to divvy up work between and among each other and, where appropriate, other Plaintiffs' Counsel to ensure that this action was at all times efficiently and effectively managed.   Part I of the Declaration provides a detailed history of the litigation and the work performed by Plaintiffs' Counsel.  Part II of the declaration provides a summary of the time submitted by Plaintiffs' counsel for the Court's consideration.

DECL. OF GIBBS AND SIEGEL RE MOTION FOR ATTYS' FEES AND COSTS
CASE NO. SACV 06-345 AHS (MLGx)

# I.    TIMELINE OF EVENTS AND WORK PERFORMED.

### A.    August 2005 to February 2006:  Investigation of case and filing of initial complaint

4.    This case concerns the 2003 model year Hyundai Tiburon GT automobiles equipped with manual transmissions, distributed in the United States by Hyundai Motor America, Inc. ("HMA").  Plaintiffs allege that HMA violated its warranties and California's consumer protection statutes by failing to disclose material facts in connection with the sale of the Tiburon—namely, that Hyundai knew, but failed to disclose, the flywheel system installed in class vehicles suffered from serious design problems that would likely result in premature failure.

5.    Around August 2005, we began investigating a possible case on behalf of Plaintiff Sano, a Tiburon GT owner, over the allegedly defective flywheel system.  For the next several months, we investigated the design of the flywheel system and problems reported by other Tiburon GT owners, researched legal issues raised by the circumstances, and formulated potential claims that could be asserted.

6.    At the time, Girard Gibbs and Stueve Siegel had already amassed a considerable amount of experience in pursuing automotive-defect cases on a class basis, including other suits against HMA.  For example, Girard Gibbs and Stueve Siegel worked together in litigating a class action against Hyundai in 2003-2005 alleging Hyundai overstated horsepower in its vehicles.  The case was settled and administered in Orange County, and over 1 million notices related to the settlement were mailed to Hyundai owners.  The firms received scores of complaints from Hyundai owners related to other alleged problems with Hyundai vehicles, but we collectively rejected all but two complaints – the issues raised here and those litigated earlier in this Court in *Roy v. Hyundai Motor America*, a case dealing with faulty air bag sensors in Hyundai Elantra vehicles.  Accordingly, only after thoroughly considering the relevant facts and law did we decide to file a putative class action concerning the Tiburon GT flywheel system on

2

DECL. OF GIBBS AND SIEGEL RE MOTION FOR ATTYS' FEES AND COSTS
CASE NO. SACV 06-345 AHS (MLGx)

behalf of Plaintiff Sano and others similarly situated.  We finished our pre-filing
investigation and research, determined the claims to be asserted, and prepared a
complaint.

     7.    On February 3, 2006, Girard Gibbs and Stueve Siegel filed the action
*Sano v. Hyundai Motor America,* Case No. RG06-243921, in the California Superior
Court for Alameda County.  The complaint asserted claims against HMA on behalf of
Plaintiff Sano and a nationwide class of Tiburon GT owners and lessees.

### B.   March 2006 to early August 2006:  Filing of related actions; continued discovery; consolidation of cases; appointment of interim class counsel

     8.    On March 22, 2006, the Alameda County Superior Court issued an order
designating the *Sano* action as complex, and setting forth various procedural
requirements governing the case going forward.

     9.    The same day, March 22, 2006, the law firm Green Welling LLP filed a
similar action in the California Superior Court for Orange County:  *Parkinson v.
Hyundai Motor America,* Case No. 06CC00052.

     10.    On March 29, 2006, we filed a first amended complaint in *Sano*.  Based on
conversation with defense counsel, we understood that Hyundai intended to remove the
*Sano* and *Parkinson* actions.  Believing that efficiency and economy could be achieved
by centralizing the related actions in a single federal court, we amended the *Sano*
complaint, at least in part, to allege that Hyundai had sold at least 5,000 2003 Tiburon
vehicles and that the flywheel repairs cost between $1,000 and $2,000.  The allegation
provided a basis for Hyundai's removal of *Sano* to federal court.

     11.    On April 3, 2006, HMA removed *Sano* to the United States District Court
for the Northern District of California, asserting that the federal court had original
jurisdiction of the action under 28 U.S.C. § 1332(d)(2), and that the action was
removable under 28 U.S.C. §§ 1441(b) and 1453(b).  The case was assigned to United
States District Judge Samuel Conti.

     12.    While the cases were being centralized, we sought to advance the *Sano*

DECL. OF GIBBS AND SIEGEL RE MOTION FOR ATTYS' FEES AND COSTS
CASE NO. SACV 06-345 AHS (MLGx)

case and develop the record.  On April 4, 2006, Plaintiff Sano served HMA with a first set of document requests.

13.     Also on April 4, 2006, HMA removed *Parkinson* to the United States District Court for the Central District of California.  Upon removal, the action was assigned to this Court.

14.     On April 26, 2006, the law firm Finkelstein Thompson & Loughran filed another Tiburon flywheel case in this District, *Gorman v. Hyundai Motor America*.

15.     The Northern District of California was an appropriate venue for *Sano*, as Mr. Sano was and is a resident of that District.  Nevertheless, with HMA headquartered in Orange County and the filing of *Parkinson* and *Gorman*, we concluded that the "center of gravity" of the litigation would be in the Central District of California.  Accordingly, on April 26, 2006, the parties in *Sano* submitted a stipulation and proposed order that would transfer *Sano* to this District.

16.     In order to avoid the procedural delays with transfer of *Sano* to this District, on April 27, 2006, Girard Gibbs and Stueve Siegel filed another Tiburon flywheel case in this District, *Schroeder v. Hyundai Motor America*.

17.     The following day (April 28, 2006) we filed a motion on behalf of Plaintiff Schroeder for appointment of Girard Gibbs and Stueve Siegel as interim class counsel under Rule 23(g) of the Federal Rules of Civil Procedure.  On May 10, 2006, the United States District Court for the Central District of California issued a notice that *Sano* had been transferred to the Central District.

18.     On May 2, 2006, we met with Hyundai's in house counsel, Jason Erb, and outside counsel, Todd Gordinier at Mr. Gordinier's office in Orange County.  The purpose of the meeting was to discuss the subjects required by Rule 26 and the possibility of early resolution of the case.

19.     On May 5, 2006, Green Welling LLP, on behalf of Plaintiff Parkinson, responded with their own motion for appointment as interim class counsel, and for consolidation of *Sano*, *Parkinson*, *Gorman*, and *Schroeder*.

4

DECL. OF GIBBS AND SIEGEL RE MOTION FOR ATTYS' FEES AND COSTS
CASE NO. SACV 06-345 AHS (MLGx)

20.     Over the next few weeks, the parties filed various motions and responses concerning the issues of consolidation and appointment of interim class counsel. All parties agreed that consolidation was appropriate. The Finkelstein Thompson firm, representing Plaintiff Gorman, supported appointment of Green Welling as interim class counsel. On May 23, 2006, the law firm Rosner Law & Mansfield LLP filed another Tiburon flywheel case in this District, *Stark v. Hyundai Motor America*, and also voiced support for Green Welling. HMA took no position on the question of interim class counsel.

21.     Concurrently, we forged ahead with discovery. On May 11, 2006, Plaintiff Sano issued document subpoenas to LuK USA LLC, an automotive-components manufacturer, and six Hyundai dealerships located across the United States. In the ensuing weeks, we followed up on the subpoenas by calling the recipients and securing production of the requested documents. We also continued to investigate the facts of the case, including obtaining and analyzing consumer complaints about the Tiburon flywheel problem, and discussing the matter with class members. In addition, we sent a Freedom of Information Act request to the National Highway Traffic Safety Administration seeking information on complaints, investigations, or recalls concerning the Tiburon flywheel issue.

22.     By minute order dated June 1, 2006, the Court took appointment of interim class counsel under submission without oral argument.

23.     On July 14, 2006, Plaintiff Schroeder and Defendant HMA filed a Corrected Joint Rule 26(f) Report. On July 19, 2006, we served initial disclosures under Rule 26(a)(1) on behalf of Plaintiffs Sano and Schroeder.

24.     On August 7, 2006, the Court issued an in-chambers order consolidating *Sano*, *Parkinson*, *Gorman*, *Schroeder*, and *Stark* for all purposes and appointing Girard Gibbs and Stueve Siegel as interim class counsel.

DECL. OF GIBBS AND SIEGEL RE MOTION FOR ATTYS' FEES AND COSTS
CASE NO. SACV 06-345 AHS (MLGx)

**C.**   **Early August 2006 to early September 2006:  Continuing investigation and filing of consolidated complaint**

25.   Now serving as interim Class Counsel, we continued to investigate the facts during the rest of August 2006.  Among other things, we continued to obtain and analyze consumer complaints and speak with class members, and obtained and examined new and used examples of the flywheel and other parts at issue.  We also looked into qualified individuals to serve as potential expert witnesses.  Furthermore, we consulted with the other plaintiffs' counsel, reviewed the circumstances of their clients' claims, and prepared a consolidated complaint to be filed on behalf of all clients.

26.   On September 7, 2006, we filed a First Amended Consolidated Complaint on behalf of existing named plaintiffs Sano, Parkinson, Gorman, Schroeder, and Stark, new named plaintiff Matuschek, and a nationwide class of Tiburon GT owners and lessees.

**D.**   **Early September 2006 to late March 2007:  Entry of protective order; meeting and conferring over HMA's responses to first set of document requests; opposition to HMA's motion to dismiss; HMA's production of documents; denial of HMA's motion to dismiss**

27.   After filing the consolidated complaint, we continued our investigation, speaking with class members and researching the parts at issue.

28.   HMA insisted on having a protective order in place, governing information claimed to be confidential, before it would produce any documents in response to Plaintiffs' discovery requests.  With the help of other plaintiffs' counsel, we negotiated, prepared, and submitted a proposed protective order on September 12, 2006.  The order was signed the next day by Magistrate Judge Marc L. Goldman.

29.   Starting in mid-September 2006, we met and conferred extensively with HMA's counsel over the joint statement to be filed with the Court under Rule 26(f).  On September 25, 2006, the parties filed their Joint Consolidated Rule 26(f) Report.

6

DECL. OF GIBBS AND SIEGEL RE MOTION FOR ATTYS' FEES AND COSTS
CASE NO. SACV 06-345 AHS (MLGx)

30.     On October 2, 2006, HMA filed a motion to dismiss the consolidated complaint.  We immediately began analyzing the arguments raised by HMA, researching the relevant law, and formulating a response.  Given the importance of the outcome of the motion, we spent a substantial amount of time on the matter over the next month and a half.

31.     Also on October 2, 2006, HMA served its objections and responses to Plaintiffs' first set of document requests.  On October 5, 2006, we served initial disclosures under Rule 26(a)(1) on behalf of Plaintiff Matuschek.

32.     Plaintiffs' first set of document requests contained 31 requests.  Except for several requests seeking only a limited set of documents concerning the named Plaintiffs themselves, owner's manuals, and warranty-related materials, HMA refused to produce any documents in response to any other request.  Consumer complaints and internal documents concerning the Tiburon flywheel problem, advertising materials for the Tiburon, design or manufacturing specifications or engineering data for the flywheel system, results of field tests relating to its durability or design, quality control procedures or test results for the system, communications between HMA and dealerships concerning the system or its failures, etc.—HMA refused to produce any of it, raising boilerplate objections and claims of confidentiality (even though a protective order had already been entered in the case at HMA's insistence).  HMA also asserted that the discovery was "impermissible pre-class certification discovery," even though discovery had not been bifurcated into class-related and merits phases or otherwise stayed or restricted.

33.     We initiated meet-and-confer efforts by preparing and sending HMA's counsel a seven-page letter dated October 25, 2006 discussing HMA's objections in detail.  HMA responded by letter dated November 10, 2006.

34.     Meanwhile, working with the other counsel in the case, we continued to research and prepare Plaintiffs' opposition to HMA's motion to dismiss.  On November 20, 2006, we filed the opposition.

7

35.   On November 27, 2006, HMA filed a reply in support of its motion to dismiss.  We analyzed the reply and all arguments raised by HMA to date in support of its motion to dismiss, in preparation for an anticipated hearing on the motion.

36.   We also resumed our meet-and-confer efforts concerning HMA's responses to Plaintiffs' first set of document requests.  HMA initially produced documents on January 7, 2007.  By mid-June 2007, HMA had produced approximately 13,500 pages of documents to Plaintiffs that we loaded into an electronic database, reviewed, coded and analyzed.  Over the course of the litigation, HMA produced approximately 64,000 pages of documents, all of which were reviewed by Class Counsel.

37.   On March 19, 2007, after a preliminary review of the documents, Plaintiffs served a notice of HMA's deposition under Rule 30(b)(6), seeking testimony on various specified topics.

38.   During this same period, we were formulating class certification theories and gathering evidence to support the class certification motion we planned to file if the Court denied HMA's motion to dismiss.

39.   The Court took HMA's motion to dismiss under submission without oral argument.  By order filed March 28, 2007, the Court denied the motion in its entirety.

**E.   Late March 2007 to early September 2007:  Plaintiffs' continuing investigation; formulation of class certification theories and discovery strategies; Rule 30(b)(6) deposition of HMA; initial settlement discussions**

40.   As the Court had denied HMA's motion to dismiss in its entirety, we decided to seek class certification for all of Plaintiffs' claims, and formulated our arguments for the class certification motion accordingly.  We also drew up a discovery plan for the case going forward.

41.   On April 20, 2007, HMA filed its answer to the consolidated complaint.

42.   On May 22, 2007, we served an amended notice of HMA's deposition

8

DECL. OF GIBBS AND SIEGEL RE MOTION FOR ATTYS' FEES AND COSTS
CASE NO. SACV 06-345 AHS (MLGx)

1   under Rule 30(b)(6).

2   43.   On June 8, 2007, HMA served objections to Plaintiffs' Rule 30(b)(6)

3   deposition notice.

4   44.   On June 19 and 20, 2007, we deposed HMA's Rule 30(b)(6) designee,

5   Steve Johnson, in Costa Mesa, California.  Testifying through Mr. Johnson, HMA

6   professed complete ignorance of virtually everything related to the Tiburon flywheel

7   system, including the designing of the parts, any testing of the system, and any changes

8   made to the design of the system.  Although we were stonewalled in our attempt to

9   elicit meaningful deposition testimony from HMA, we set the matter aside for the

10  moment, as the parties were then engaged in extensive settlement discussions.

11  45.   Shortly after the denial of HMA's motion to dismiss on March 28, 2007,

12  the parties started exploring the possibility of settling the case on a class basis.  For

13  almost a year, the parties conducted negotiations in person, over the phone, and by letter

14  and e-mail, and exchanged settlement proposals.  The parties met July 31, 2007 at the

15  offices of HMA's counsel in Orange County to discuss a possible settlement.  The

16  parties agreed to participate in a mediation session to be held September 5 and 6, 2007

17  in New York City by Lew Goldfarb, a former Associate General Counsel at Chrysler

18  and a frequent mediator in automotive-defect cases.  Although the mediation session did

19  not result in a settlement, the parties continued to dialogue through Mr. Goldfarb about

20  possible resolution.

21  46.   On January 8, 2008, we served HMA with a second set of document

22  requests; a first set of interrogatories; and a first set of requests for admissions.

23  **F.   Early September 2007 to mid-February 2008:  Continuation and then**
24  **termination of settlement discussions**

25  47.   The parties continued to negotiate possible settlement terms and exchange

26  proposals and eventually agreed to attend another mediation session to be held

27  February 15, 2008 before Mr. Goldfarb in Orange County.  Additionally, the parties

28  continued by stipulation several pretrial deadlines in order to focus attention on

DECL. OF GIBBS AND SIEGEL RE MOTION FOR ATTYS' FEES AND COSTS
CASE NO. SACV 06-345 AHS (MLGx)

1   resolving the case.  *See, e.g.*, Docs. 61, 62.  Based on the parties' dealings to date, we

2   went to the session believing there was a good chance it would result in a settlement.

3   As reported to us by Mr. Goldfarb, however, shortly after the start of the session,

4   HMA's counsel abruptly told him they had no authority to negotiate a settlement on any

5   terms that day, and that HMA was withdrawing all previous settlement proposals.

6          48.   On February 20, 2008, just a few days after the settlement discussions

7   ended, HMA served its objections and responses to the discovery requests and requests

8   for admissions.

9         **G.**   **Mid-February 2008 to early November 2008:  Continuing discovery;**

10           **HMA's inspections of Plaintiffs' cars and depositions of Plaintiffs;**

11           **Plaintiffs' first motion to compel; class certification proceedings;**

12           **initial ruling on class certification**

13         49.   After the negotiations collapsed at the February 2008 mediation, we

14  resumed prosecuting the case in earnest.  Because much of the trial preparation had

15  been deferred in favor of focusing our energies on possible resolution, the 18 months

16  commencing with February 2008 represented the most active part of the litigation.

17  Thus, as explained in more detail below, the period from February 2008 through the

18  signing of the term sheet settling the case accounted for the vast majority of our time in

19  the case.

20         50.   As discussed above, HMA had claimed ignorance on a host of crucial

21  issues at its Rule 30(b)(6) deposition in June 2007.  Accordingly, one important early

22  task following the end to settlement negotiations included seeking the relevant

23  information from HMA's Korean parent, Hyundai Motor Company.  On March 19,

24  2008, we issued a document subpoena to Hyundai Motor Company.  On May 6, 2008,

25  HMA's counsel served objections and responses to the subpoena on behalf of Hyundai

26  Motor Company.

27         51.   We also had to respond to HMA's efforts to take discovery of Plaintiffs.

28  On March 21, 2008, HMA served first sets of document requests and first sets of

DECL. OF GIBBS AND SIEGEL RE MOTION FOR ATTYS' FEES AND COSTS
CASE NO. SACV 06-345 AHS (MLGx)

1  interrogatories directed to each named Plaintiff individually, i.e., Michael Sano,

2  Michael Parkinson, Wesley Gorman, Donn Schroeder, Christian Stark, and Eric

3  Matuschek.  Furthermore, on April 14, 2008, HMA served notices of the depositions of

4  all named Plaintiffs.

5          52.     We and other Plaintiffs' counsel prepared objections and responses to

6  HMA's written discovery requests on behalf of each named Plaintiff and served the

7  objections and responses from April 23 to 30, 2008.

8          53.     On April 30, 2008 we met and conferred with HMA in an attempt to

9  resolve various issues we had with HMA's responses to our written discovery.   During

10  the parties' meet and confer, HMA's counsel stated that HMA was not withholding any

11  documents based on its objections and that HMA had produced all responsive

12  documents.  Plaintiffs asked HMA to provide supplemental responses in accordance

13  with Rule 26(e) of the Federal Rules of Civil Procedure that removed the objections and

14  further stated it was not withholding any responsive documents.  HMA refused.

15  Accordingly, on May 21, 2008, we filed a motion to compel, along with a joint

16  stipulation setting forth the dispute and the parties' respective positions.  On June 10,

17  2008, we filed a supplemental memorandum in support of the motion.

18          54.     In May and June 2008, we and other Plaintiffs' counsel produced five of

19  the named Plaintiffs for deposition by HMA.  On May 16, 2008, HMA deposed

20  Plaintiff Schroeder in Washington, D.C.  On May 20, HMA deposed Plaintiff Gorman

21  in Fort Lauderdale, Florida.  On May 23, HMA deposed Plaintiff Sano in San

22  Francisco, California.  On June 4, HMA deposed Plaintiff Matuschek in Costa Mesa,

23  California.  On June 6, 2008, HMA deposed Plaintiff Parkinson in Cincinnati, Ohio.

24          55.     Each deposition typically lasted approximately half a day.  Before each

25  deposition, Plaintiffs' counsel met and spoke with the deponent several times to prepare

26  him for the experience and go over his documents.  Moreover, the day before each

27  deposition, Plaintiffs' counsel provided HMA's engineers with access to each client's

28  Tiburon and failed parts (if available) for inspection.  Each inspection typically took

---

DECL. OF GIBBS AND SIEGEL RE MOTION FOR ATTYS' FEES AND COSTS
CASE NO. SACV 06-345 AHS (MLGx)

approximately half a day.

56.     On June 24, 2008, Magistrate Judge Marc Goldman heard our motion to compel.  At the hearing, HMA's counsel represented that his client had produced "all" responsive documents.  As Magistrate Judge Goldman credited counsel's statement as a truthful representation by an officer of the court, we withdrew our request for a written affirmation that no documents were being withheld despite HMA's outstanding objections, with the express understanding that we would seek relief if it became necessary.

57.     In the meantime, we continued work on our class certification motion.  We spent a considerable amount of time preparing the written arguments for the opening, reply and supplemental reply class certification papers.  To develop and draft the class certification papers we worked with our experts in developing our theories for the root cause of the flywheel system defect.  This included multiple in person meetings, identifying key technical documents produced by HMA, providing necessary background documents such as technical service bulletins, warranty manuals, repair receipts, as well as procuring the newly released improved flywheel and finding and buying used flywheels from junkyards across the United States for testing and analysis.  We also interviewed hundreds of consumers who contacted us, reviewed NHTSA and other sources of complaints on the internet, statistically analyzed and compiled HMA interrogatory responses concerning part sales and warranty data, analyzed 2004 Tiburon flywheel system complaints as well as the complaint rates for other vehicle makes, analyzed the average mileage at failure and typical flywheel system repair costs, and reviewed technical specification documents and drawings, HMA's manufacturing, testing and design, HMA's memorandums and other such documents related to re-design of the flywheel system.

58.     On May 27, 2008, we filed the motion seeking class certification and the voluminous supporting papers.

59.     On June 9, 2008, we disclosed the identities of Plaintiffs' experts—Anand

DECL. OF GIBBS AND SIEGEL RE MOTION FOR ATTYS' FEES AND COSTS
CASE NO. SACV 06-345 AHS (MLGx)

Kasbekar, a mechanical engineer and Robert Waters, a master automotive technician—their opinions in the case, and the bases for those opinions.  HMA also disclosed the same information for its experts, Roger Brown, Travis Gorsuch, and Dirk Starksen.  From early June until approximately the end of July 2008, the parties exchanged various expert disclosures and rebuttal opinions.

60.    On June 27, 2008, HMA filed its 35-page opposition to the class certification motion and a motion to strike supporting evidence submitted by Plaintiffs.  On August 1, 2008, we filed a motion to strike and objections to the declaration of HMA's in-house counsel, submitted by HMA in opposition to the class certification motion.  On August 4, 2008, we filed an opposition to HMA's motion to strike.  On August 5, 2008, we filed reply papers in support of Plaintiffs' class certification motion.

61.    By minute order dated August 6, 2008, the Court continued the hearings on the class certification motion and the parties' motions to strike.

62.    Over the next weeks, we analyzed the opinions rendered by HMA's experts Brown, Gorsuch, and Starksen, consulted with our experts and prepared to take the depositions of HMA's experts.  On September 3 and 4, 2008, we deposed all three experts in Costa Mesa, California.  Although Plaintiffs had sought to take those depositions since July 10, 2008, Hyundai would not allow that discovery to proceed until September.

63.    During the depositions of HMA's experts, Plaintiffs uncovered new facts and previously undisclosed documents that undercut the experts' declarations as well as arguments HMA made in its opposition.  For instance, Hyundai had provided Mr. Brown with an annotated chart describing the numerous changes Hyundai had made to the 2003 Tiburon's flywheel system and the reason for those changes, and had provided translated testing documents to Mr. Starksen and Mr. Gorsuch, none of which had been produced to Plaintiffs.  Mr. Starksen also admitted that he was not an expert with regard to dual mass flywheels and that Hyundai's in-house lawyer had drafted both his expert declaration and expert report.  Accordingly on September 15, 2008, we filed an

DECL. OF GIBBS AND SIEGEL RE MOTION FOR ATTYS' FEES AND COSTS
CASE NO. SACV 06-345 AHS (MLGx)

application for leave to file a supplemental reply as well as our reply in support of the motion to strike.

64.     By order filed September 17, 2008, the Court granted our application for leave to file a supplemental reply, and ordered the proposed supplemental reply filed. The Court also allowed HMA to file a supplemental opposition.

65.     On October 20, 2008, the Court held a lengthy hearing on Plaintiffs' class certification motion.  By order filed November 6, 2008, the Court granted the class certification motion in part and denied it in part.  Through an in-chambers order that noted a formal opinion could follow, the Court certified the proposed class for Plaintiffs' claims under the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq*., and the California unfair-competition statute, Cal. Bus. & Prof. Code § 17200 *et seq*.  The Court denied class certification with respect to the claims under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*., and for breach of express warranty.  The Court also denied the parties' respective motions to strike.

**H.    Early November 2008 to late January 2009:  Readying the case for trial; HMA's unsuccessful petition for permission to appeal class certification**

66.     As stated above, the depositions of HMA's experts revealed responsive documents in HMA's possession that it had failed to produce before.  Accordingly, on November 18, 2008, we filed a renewed motion to compel HMA to produce discovery, which asked the Court to reconsider its denial of Plaintiffs' previous motion to compel pursuant to Local Rule 7-18.

67.     During this same time frame, plaintiffs were also attempting to engage HMA in the pretrial Rule 16 process in preparation for the upcoming December 15, 2008 final pretrial conference.  To this end we researched and drafted extensive jury instructions and sent HMA a letter concerning pretrial issues, an exhibit list, a witness list and a list of proposed stipulated facts.  HMA, however, never engaged in the pretrial process.  Instead, on November 20, 2008, HMA requested *ex parte* that the Court stay

14

DECL. OF GIBBS AND SIEGEL RE MOTION FOR ATTYS' FEES AND COSTS
CASE NO. SACV 06-345 AHS (MLGx)

the case pending the outcome of its petition to the Ninth Circuit for permission to appeal the Court's class certification order.  HMA also took the position that the *ex parte* motion had relieved it of its pretrial obligations.

68.     On November 20, 2008, HMA filed its petition with the Ninth Circuit. On November 21, we filed an opposition to HMA's *ex parte* application to stay the case.

69.     On November 24, 2008, we filed a memorandum of contentions of fact and law, exhibit list, and witness list, as required by the local rules.

70.     On November 25, 2008, HMA filed its opposition to our renewed motion to compel.  By minute order dated November 26, 2008, Magistrate Judge Goldman denied the renewed motion to compel, without prejudice to refiling the motion in compliance with the Local Rule 37.  (Plaintiffs had filed the motion as a motion for reconsideration pursuant to Local Rule 7-18 in light of the fact that the Court had previously considered the issue and that the discovery motion deadline had passed before Plaintiffs' learned of the new evidence on which their motion was based).

71.     That same day, on November 26, 2008, in response to Judge Goldman's Order, we provided HMA's counsel with a letter concerning the discovery dispute. HMA's counsel did not substantively respond to that letter.  We nonetheless were able to set up a telephone conference to further discuss the discovery dispute with HMA's counsel on December 8, 2008.

72.     On December 5, 2008, we filed an opposition to HMA's petition to the Ninth Circuit for permission to appeal from the Court's order certifying the class.

73.     During the December 8, 2008 discovery telephone conference, Plaintiffs' counsel attempted to discuss their discovery dispute with HMA's counsel, but HMA's counsel refused to answer any questions regarding HMA's documents, and stated that HMA would only respond to written requests.

74.     On December 12, 2008, we provided HMA's counsel with a comprehensive letter identifying each and every discovery dispute, the reasons for the

DECL. OF GIBBS AND SIEGEL RE MOTION FOR ATTYS' FEES AND COSTS
CASE NO. SACV 06-345 AHS (MLGx)

disputes, the evidence and documents that had been withheld, and the questions and concerns that HMA's conduct raised, as well as the specific relief Plaintiffs were requesting.

75.    Also on December 12, 2008, the Court issued a memorandum opinion setting forth in detail the reasoning for its previous rulings on Plaintiffs' class certification motion.

76.    On December 22, 2008, HMA filed a supplemental Application for Permission to Appeal this Court's Opinion granting class certification in this case. Again, Plaintiffs opposed Hyundai's second application.

77.    On December 23, 2008, HMA issued subpoenas for documents and deposition testimony to Plaintiffs' experts Kasbekar and Waters.  On January 6, 2009, we served objections and responses to the subpoenas.  On January 9, 2009, we filed an opposition to the Supplemental Application.

78.    On January 22, 2009, the United States Court of Appeals for the Ninth Circuit denied HMA's petitions for permission to appeal from this Court's ruling concerning class certification.

I.    **Late January 2009 to late July 2009:  Further disputes over class certification; HMA's motion for summary judgment**

79.    On February 2, 2009, we filed a motion for an order directing that notice of the case be given to the certified class.

80.    On February 23, 2009, HMA filed its opposition to Plaintiffs' motion concerning class notice.

81.    On March 2, 2009, we filed a reply in support of Plaintiffs' motion concerning class notice.

82.    On March 9, 2009, the Court held a hearing on Plaintiffs' motion for an order directing that notice of the case be given to the certified class.  By minute order of the same date, the Court granted the motion.  The Court also issued a formal order granting the motion, filed March 10, 2009.

DECL. OF GIBBS AND SIEGEL RE MOTION FOR ATTYS' FEES AND COSTS
CASE NO. SACV 06-345 AHS (MLGx)

83.     Furthermore, on March 3, 2009, we filed another motion to compel HMA to provide discovery, and the parties filed a joint stipulation setting forth the dispute and their respective positions.  On March 10, 2009, the parties filed their respective memoranda in support of and in opposition to the motion.  As stated above, the motion was prompted by our learning, at the depositions of HMA's experts, that HMA possessed responsive documents it had not produced.

84.     On March 24, 2009, Magistrate Judge Goldman held a hearing on Plaintiffs' motion to compel.  Magistrate Judge Goldman granted the motion in part, ordering HMA to determine whether it had produced all responsive documents, produce any additional responsive documents within 21 days, and submit a declaration by a competent witness averring that all responsive documents had been produced and identifying the steps taken to search for and obtain responsive documents.

85.     Despite this Court's orders of March 9 and 10, 2009 directing that notice be given to the class, HMA tried yet again to derail the process.  On March 25, 2009, HMA filed a memorandum objecting to the definition of the class in Plaintiffs' proposed form of class notice.  We filed a responding memorandum the next day.

86.     By supplemental order dated March 31, 2009, the Court denied HMA's request to change the class definition in the notice and approved certain other changes agreed on by the parties.

87.     On April 14, 2009, HMA served us with a declaration by its in-house counsel Jason Erb, describing steps it had taken to search for documents responsive to Plaintiffs' discovery requests.  We concluded the declaration showed that HMA had not conducted any electronic searches of its emails or email files, which finally explained the absence of email correspondence in HMA's document production to date.

88.     On April 27, 2009, after consulting with a computer database expert, we requested via letter that HMA conduct a complete search of its computer systems for responsive email correspondence and amend its declaration to include a description of that search within 14 days.

DECL. OF GIBBS AND SIEGEL RE MOTION FOR ATTYS' FEES AND COSTS
CASE NO. SACV 06-345 AHS (MLGx)

89.    On May 27 and 28, 2009, we produced and HMA deposed Plaintiffs' experts Anand Kasbekar and Robert Waters.

90.    On June 16, 2009, after exhausting the meet and confer process and complying with the local rules, we filed a motion to compel HMA to search its computer systems for emails responsive to Plaintiffs' first and second sets of document requests, and the parties filed a joint stipulation setting forth the dispute and their respective positions.  On July 14, the parties filed their respective memoranda in support of and in opposition to the motion to compel.

91.    During this period, we also had to devote much time to litigating the merits.  On June 25, 2009, HMA filed a motion for summary judgment.  During the next few weeks, we prepared a lengthy opposition and assembled the evidence necessary to establish genuine issues of material fact.  On July 23, 2009, we filed our opposition that included a detailed 82-page Statement of Genuine Issues of Material Fact as well as 33 exhibits.  The hearing on HMA's motion for summary judgment was set before this Court on September 14, and the Final Pretrial Conference scheduled for September 28.  With the first of Plaintiffs' Local Rule 16 obligations approaching August 19, 2009, we had again began to prepare for trial.

**J.     Late July 2009 to early August 2009:  Granting of Plaintiffs' motion to compel; resumed settlement negotiations; agreement on settlement in principle**

92.    On July 28, 2009, Magistrate Judge Goldman held a hearing on Plaintiffs' motion to compel a search of HMA's computer system for responsive e-mails.  Judge Goldman ordered that HMA conduct a complete and thorough search of its computers and servers for emails sent or received by Steve Johnson, one of the key HMA employees in this case.  The Court set a continued hearing on the matter for August 4 or 11, depending on the availability of HMA's in-house counsel Jason Erb, and ordered Mr. Erb to attend the continued hearing.

93.    Prior to the date by which Mr. Erb was to appear before Magistrate Judge

DECL. OF GIBBS AND SIEGEL RE MOTION FOR ATTYS' FEES AND COSTS
CASE NO. SACV 06-345 AHS (MLGx)

Goldman to account for the email search undertaken by HMA, the parties participated in a mediation session on August 6, 2009, with neutral David Rotman of the mediation firm Gregorio, Haldeman, Piazza, Rotman, Frank & Feder.  That session resulted in the parties reducing to writing an agreement in principle on a proposed settlement.

**K.**   **Early August 2009 to early March 2010:  Memorializing the settlement; settlement-related dispute; preliminary settlement approval**

94.   On August 7, 2009, the parties submitted a stipulation reporting that they had reached a proposed settlement and agreeing to vacate all pending hearing dates and deadlines, subject to the Court's approval.

95.   By order filed August 10, 2009, the Court vacated all pending hearing dates and deadlines, and directed the parties to file a motion for preliminary settlement approval by September 18, 2009.

96.   Although the parties had entered into a Memorandum of Understanding at the August 6th mediation, the ensuing months were devoted to a contentious and time-consuming process of documenting a final settlement agreement.  On September 16, 2009, the parties submitted a stipulation to extend the deadline for filing the preliminary-approval motion to October 16, 2009, subject to the Court's approval, because of the additional time required by HMA to obtain approval of the proposed settlement from its Korean parent company.  By order filed September 18, 2009, the Court extended the deadline for filing the preliminary-approval motion to October 16, 2009.

97.   On October 14, 2009, the parties submitted a stipulation to extend the deadline for filing the preliminary-approval motion to October 23, 2009, subject to the Court's approval.  By order filed October 16, 2009, the Court extended the deadline for filing the preliminary-approval motion to October 23, 2009.

98.   On October 23, 2009, the parties submitted a stipulation to extend the deadline for filing the preliminary-approval motion to November 13, 2009, subject to

19

DECL. OF GIBBS AND SIEGEL RE MOTION FOR ATTYS' FEES AND COSTS
CASE NO. SACV 06-345 AHS (MLGx)

the Court's approval.  By order filed October 23, 2009, the Court extended the deadline for filing the preliminary-approval motion to November 13, 2009.

99.   Because of a continuing dispute over a certain aspect of the settlement, the parties were unable to file a preliminary-approval motion by November 13, 2009.  By minute order filed November 18, 2009, the Court set a status conference for December 14, 2009, and directed the parties to file a joint report on the status of the settlement.

100.   On December 7, 2009, the parties filed a joint status report concerning their dispute and asking for mediation of the matter by Magistrate Judge Goldman.  By minute order and a separate order filed December 8, 2008, the Court approved the parties' request for mediation and vacated the status conference.

101.   On January 6, 2010, Magistrate Judge Goldman held a conference with the parties to mediate their dispute.  With Magistrate Judge Goldman's assistance, the parties were able to reach a resolution, enabling them to finalize the settlement documents and prepare a motion for preliminary settlement approval.

102.   On January 15, 2010, the parties filed a joint status report stating that they had resolved their settlement-related dispute, and suggesting that they file their preliminary-approval motion by January 22, 2010.

103.   On January 22, 2010, the parties filed a further joint status report stating that they had not yet finalized the settlement documents, and that Plaintiffs expected to file their preliminary-approval motion by January 29, 2010.

104.   On January 29, 2010, we filed the motion for preliminary approval of the proposed settlement.

105.   On February 22, 2010, HMA filed a Joinder to Plaintiffs' motion.  In that joinder, HMA stated that "the settlement that has been reached is essentially the same as the settlement that was being negotiated between the parties at the inception of this litigation."  (*See* Doc. 274 at 4.)  The settlement now before the Court actually provides class members about three times the monetary recovery offered by HMA early in the

20

litigation.  In the earlier settlement efforts described above, HMA had insisted on onerous claim filing procedures such as submitting pictures of vehicles and had refused to reimburse Tiburon owners for any of the labor costs associated with flywheel system repairs, and was only willing to compensate for a percentage of some of the part costs.

106.   On March 1, 2010, the Court held a hearing on preliminary settlement approval.  By minute order filed March 1, 2010 and a separate order filed March 3, 2010, the Court granted preliminary settlement approval, directed that notice be given to the class, and set a final fairness hearing for June 28, 2010.

### L.   **Early March 2010 to present**

107.   At no point in the course of discussing or negotiating a settlement did the parties discuss or agree on any award of attorneys' fees to Plaintiffs' counsel or any incentive award to the named Plaintiffs.  The parties discussed HMA's payment of attorneys' fees and costs only after the Court had granted preliminary settlement approval.  Pursuant to the parties' request, Magistrate Judge Goldman held a conference on April 16, 2010 to mediate the matter.  Despite Magistrate Judge Goldman's assistance, the parties were unable to reach agreement on a proposed fee award.

## II.   **SUMMARY OF TIME AND THE REQUESTED FEE AWARD**

### A.   **Summaries of the Aggregate Time Submitted by Plaintiffs' Counsel**

108.   Class Counsel have collected the time records of all Plaintiffs' counsel seeking fees by this motion.  *See* Separate Declarations of Eric H. Gibbs for Girard Gibbs, Norman E. Siegel for Stueve Siegel, Charles Marshall for Green Welling, Rosemary Rivas for Finkelstein Thompson, and Alan Mansfield for the Consumer Law Group of California.  The total lodestar for all Plaintiffs' counsel is $4,132,535 reflecting 8,771 hours of work.  The weighted average hourly rate for all timekeepers reporting time is $471.

109.   To provide the Court with some context as to how this time was allocated over the course of the 4 year litigation, we asked that each firm submit time in 12 different categories reflecting different litigation guideposts.  The individual time for

DECL. OF GIBBS AND SIEGEL RE MOTION FOR ATTYS' FEES AND COSTS
CASE NO. SACV 06-345 AHS (MLGx)

each firm is reflected in the chart attached as Exhibit A.  The aggregate time for all firms during these time periods is as follows:

| | TIME PERIOD | TOTAL TIME | TOTAL LODESTAR |
|---|---|---|---|
| 1 | Date Counsel began investigation of case until the date the initial Complaint was filed. | 330.79 | $127,077.73 |
| 2 | Date of Complaint – 8/7/2006 Date the initial Complaint was filed until the date of Appointment of Interim Counsel. | 692.47 | $305,483.08 |
| 3 | 8/8/2006 – 9/7/2006 Date of Appointment of Interim Counsel until the date the First Amended Consolidated Complaint was filed. | 111.55 | $52,632.92 |
| 4 | 9/8/2006 – 3/28/2007 Date the First Amended Consolidated Complaint was filed until the date the Court denied Hyundai's Motion to Dismiss. | 586.59 | $221,706.02 |
| 5 | 3/29/2007 – 9/5/2007 Date the Court denied Hyundai's Motion to Dismiss until the date of the initial Mediation Conference. | 448.45 | $240,730.30 |
| 6 | 9/6/2007 – 2/15/2008 Date of the initial Mediation Conference until the end of the Mediation process. | 242.03 | $135,374.25 |
| 7 | 2/16/2008 – 11/6/2008 Date of the end of the Mediation process until the date of the Court's initial ruling Granting Class Certification. | 3050.65 | $1,431,012.06 |
| 8 | 11/7/2008 – 1/22/2009 Date of the Court's initial ruling Granting Class Certification until the date the United States Court of | 914.35 | $434,349.25 |

DECL. OF GIBBS AND SIEGEL RE MOTION FOR ATTYS' FEES AND COSTS
CASE NO. SACV 06-345 AHS (MLGx)

| | | | |
|---|---|---|---|
| | Appeals for the Ninth Circuit denied all of Hyundai's various Applications for Permission to Appeal. | | |
| 9 | 1/23/2009 – 7/23/2009<br>Date the United States Court of Appeals for the Ninth Circuit denied all of Hyundai's various Applications for Permission to Appeal until the date Plaintiffs filed their opposition to Hyundai's Motion for Summary Judgment. | 1504.16 | $721,888.67 |
| 10 | 7/24/2009 – 8/6/2009<br>Date Plaintiffs filed their opposition to Hyundai's Motion for Summary Judgment until the date the parties signed the Settlement Term Sheet. | 206.25 | $109,179.75 |
| 11 | 8/7/2009 – 3/3/2010<br>Date the parties signed the Settlement Term Sheet until the date this Court entered its Order of Preliminary Approval. | 422.39 | $216,809.52 |
| 12 | 3/4/2010 – present<br>Date this Court entered its Order of Preliminary Approval until the present. | 261.73 | $136,292.37 |

110.   The data in these 12 periods can be further summarized by looking at four key time periods in the litigation – (1) the period between the commencement of investigating the claims to the naming of Class Counsel on August 7, 2006 (reflected above in rows 1 and 2); (2) the naming of Class Counsel through the collapse of settlement negotiations on February 15, 2008 (reflected in rows 3 through 6); (3) the collapse of settlement negotiations through the execution of the term sheet on August 6, 2009 (reflected in rows 7 through 10); and (4) the execution of the term sheet through today, covering time spent on executing the logistics of the settlement including preparing the final settlement agreement, class notice and the claim form, preliminary

23

1   approval, and this fee motion (reflected in rows 11 and 12).  These time intervals are

2   summarized graphically on Exhibit B – *Timeline of Key Events*.

3       111.   The data contained in Exhibits A and B reveal that approximately 65% of

4   the time on the case was spent during the 18 months following the failure of the

5   mediation process in February 2008.  This time period alone accounts for $2,696,429 of

6   the lodestar, and as detailed in paragraphs 49-93 *supra*, reflect a compressed effort at

7   dealing with scores of litigation hurdles and roadblocks following the failed efforts at

8   early mediation.

9       **B.   The Requested Fee**

10      112.   In considering this fee motion, including the multiplier to be applied, Class

11  Counsel reviewed a variety of factors and objective benchmarks so that the requested

12  fee was high enough to appropriately compensate Plaintiffs' counsel for achieving an

13  outstanding result in a difficult case with substantial risk, but not so high as to be

14  considered punitive or unreasonable.  As a cross-check on its own analysis of an

15  appropriate fee, Class Counsel engaged the services of Professor William Rubenstein, a

16  legal scholar specializing in attorneys' fee jurisprudence.  Professor Rubenstein has

17  prepared and submitted a declaration that is consistent with the fee analysis presented

18  here.  (*See* Rubenstein Decl., attached as Ex. 1 to Hughes Decl.).

19      113.   Because of the risk in the litigation that existed prior to the execution of the

20  term sheet, Plaintiffs seek a multiplier on the time in the first three categories of time

21  reflected on Exhibit B (summarized from rows 1-10 on Exhibit A).  This includes all

22  time from the investigation of the allegations at the outset of the case through the

23  signing of the term sheet on August 6, 2009.  The total lodestar for this period is

24  $3,779,434.  Plaintiffs seek a multiplier under California law of 2 for this time yielding

25  a total of $7,558,868 for this time period.

26      114.   Because the time following the execution of the term sheet had

27  substantially lower risk for non-payment (because it followed a settlement), Plaintiffs

28  only seek reimbursement of their lodestar for the time spent on the settlement

DECL. OF GIBBS AND SIEGEL RE MOTION FOR ATTYS' FEES AND COSTS
CASE NO. SACV 06-345 AHS (MLGx)

agreement, class notice, the associated claim form, the logistics of the settlement, preliminary approval and this fee motion (reflected in rows 11 and 12). The total requested for this time period is $353,101.

115.   Plaintiffs therefore request a total fee of $7,911,969 ($3,779,434 x2 + $353,101). This reflects an effective multiplier of 1.91 on the time in the case. ($7,911,969 ÷ 4,132,535). Despite the fact that this case exposed Plaintiffs' counsel to significantly more risk as compared to *Roy*, Plaintiffs seek an effective multiplier in par with *Roy* to provide the Court with another objective benchmark in considering this fee motion.

116.   Attached hereto as Exhibit C is a true and correct copy of Order Granting Plaintiff's Application For An Award Of Attorney Fees, Reimbursement of Expenses, and Incentive Award to the Class Representative, filed August 10, 2009 in *Bacca v. BMW of North America, LLC*, Case No. CV 06-06753 DDP (AJWx).

117.   Attached hereto as Exhibit D is a true and correct copy of Order Granting Plaintiff's Application For:  (1) Award Of Attorney Fees; (2) Reimbursement of Expenses; and (3) Incentive Award to the Class Representative Plaintiff, filed April, 10, 2006 in *Roy v. Hyundai Motor America, Inc.*, SACV 05-483 AHS (MLGx).

118.   Attached hereto as Exhibit E is a true and correct copy of *The National Law Journal's* Billing Survey of the Nation's 250 Largest Law Firms, dated December 7, 2009.

**C.   Reimbursable Costs and Expenses**.

119.   The individual declarations of Plaintiffs' counsel reflect the costs and expenses incurred by each firm in litigating the case. Thus, in addition to expending professional time on behalf of class members, the individual declarations submitted by Plaintiffs' Counsel reflect that Plaintiffs incurred $400, 254.53 in expenses litigating this case on behalf of class members. Of these expenses, Class Counsel incurred $56,085.35 in unreimbursed mandatory costs and expenses prosecuting this case on behalf of the Class; $77,780.70 in unreimbursed discretionary costs and expenses

DECL. OF GIBBS AND SIEGEL RE MOTION FOR ATTYS' FEES AND COSTS
CASE NO. SACV 06-345 AHS (MLGx)

prosecuting this case on behalf of the Class; and $265,781.79 in non-recoverable costs and expenses prosecuting this case on behalf of the Class.  Plaintiffs seek recovery of $133,866.05 in expenses that are allowable under California Code of Civil Procedure section 1033.5(a) and in expenses that are potentially allowable under California Code of Civil Procedure § 1033.5(c), all of which were reasonably necessary to the conduct of the litigation.  Plaintiffs are not seeking to recover the $265,781.79 in non-recoverable costs and expenses.

120.   The expenses described in paragraph 119 are reflected in an expense chart, which is attached hereto as Exhibit F.  We prepared the expense chart, which is a compilation of the amount and category of expenses of Plaintiffs' counsel, as reported in the accompanying Gibbs, Siegel, Mansfield, Marshall, and Rivas declarations.  We note that there is a $179 discrepancy within the Marshall declaration.  We have reduced the expenses sought by $179 to account for the discrepancy.

DECL. OF GIBBS AND SIEGEL RE MOTION FOR ATTYS' FEES AND COSTS
CASE NO. SACV 06-345 AHS (MLGx)

1    I declare under penalty of perjury that the foregoing is true and correct.  Executed

2  May 3, 2010, at San Francisco, California.

3

4  _____

5  Eric H. Gibbs

6

7    I declare under penalty of perjury that the foregoing is true and correct.  Executed

8  May 3, 2010, at Kansas City, Missouri

9

10  _____

11  Norman E. Siegel

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

## Hyundai Flywheel Lodestar Analysis by Time Range

| Firm | Girard Gibbs Time | Lodestar | Stueve Siegel Time | Lodestar | Finkelstein Thompson Time | Lodestar | Green Welling Time | Lodestar | Mansfield Time | Lodestar |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 67.97 | $ 33,965.15 | 10.00 | $ 6,500.00 | 18.9 | $ 10,031.50 | 233.92 | $ 76,581.08 | 0.00 | $ - |
| 2 | 286.77 | $ 130,956.65 | 126.10 | $ 80,823.75 | 46.3 | $ 16,165.50 | 217.90 | $ 71,706.50 | 15.40 | $ 5,830.68 |
| 3 | 59.75 | $ 29,041.00 | 25.70 | $ 13,992.50 | 12.10 | $ 5,083.00 | 12.50 | $ 3,948.50 | 1.50 | $ 567.92 |
| 4 | 256.59 | $ 121,044.65 | 256.90 | $ 75,073.75 | 7.70 | $ 2,973.50 | 44.90 | $ 14,852.50 | 20.50 | $ 7,761.62 |
| 5 | 68.35 | $ 36,505.25 | 336.60 | $ 187,091.00 | 16.90 | $ 7,092.00 | 15.80 | $ 5,953.00 | 10.80 | $ 4,089.05 |
| 6 | 98.43 | $ 49,395.90 | 124.40 | $ 77,636.00 | 4.00 | $ 2,294.00 | 5.70 | $ 2,451.50 | 9.50 | $ 3,596.85 |
| 7 | 1788.2 | $ 827,107.25 | 851.10 | $ 434,905.00 | 330.20 | $ 143,077.00 | 70.90 | $ 22,042.00 | 10.25 | $ 3,880.31 |
| 8 | 561.95 | $ 275,211.50 | 339.80 | $ 153,939.25 | 3.80 | $ 1,826.00 | 2.30 | $ 911.50 | 6.50 | $ 2,461.00 |
| 9 | 865.01 | $ 410,254.40 | 561.20 | $ 277,467.00 | 68.50 | $ 30,561.50 | 1.70 | $ 671.50 | 7.75 | $ 2,934.27 |
| 10 | 108.05 | $ 51,827.75 | 96.00 | $ 56,868.00 | 2.20 | $ 484.00 | 0.00 | $ - | 0.00 | $ - |
| 11 | 280.49 | $ 135,920.60 | 127.50 | $ 75,210.50 | 10.60 | $ 4,499.00 | 2.30 | $ 611.50 | 1.50 | $ 567.92 |
| 12 | 113.53 | $ 54,744.75 | 144.80 | $ 80,786.50 | 2.40 | $ 382.50 | 0.00 | $ - | 1.00 | $ 378.62 |
| | 4555.09 | $ 2,155,974.85 | 3000.10 | $ 1,520,293.25 | 523.60 | $ 224,469.50 | 607.92 | $ 199,729.58 | 84.70 | $ 32,068.74 |

| | Totals by Event Range | Time | Lodestar | Percent |
|---|---|---|---|---|
| 1 | Investigation to Filing of Initial Complaint | 330.79 | $127,077.73 | 3.77% |
| 2 | Filing to 8/7/2006 - Appointment of Class Counsel | 692.47 | $305,483.08 | 7.89% |
| 3 | 8/8/2006 to 9/7/2006 - Filing of Consolidated Complaint | 111.55 | $52,632.92 | 1.27% |
| 4 | 9/8/2006 to 3/28/2007 - Hyundai Motion to Dismiss Denied | 586.59 | $221,706.02 | 6.69% |
| 5 | 3/29/2007 to 9/5/2007 - First Mediation Session | 448.45 | $240,730.30 | 5.11% |
| 6 | 9/6/2007 to 2/15/2008 - Mediation Terminates | 242.03 | $135,374.25 | 2.76% |
| 7 | 2/16/2008 to 11/6/2008 - Class Certification Granted | 3050.65 | $1,431,012.06 | 34.78% |
| 8 | 11/7/2008 to 1/22/2009 - Ninth Circuit denies 23(f) Appeals | 914.35 | $434,349.25 | 10.42% |
| 9 | 1/23/2009 to 7/23/2009 - Opp. to Summary Judgement | 1504.16 | $721,888.67 | 17.15% |
| 10 | 7/24/2009 to 8/6/2009 - Term Sheet Signed | 206.25 | $109,179.75 | 2.35% |
| 11 | 8/7/2009 - 3/3/2010 - Preliminary Approval | 422.39 | $216,809.52 | 4.82% |
| 12 | 3/4/2010 - Present - Continued Settlement Efforts | 261.73 | $136,292.37 | 2.98% |

These totals aggregate the time for all firms for each date range from the table above.

Totals - | | 8771.41 | $4,132,535.92 | 100.00% |

**Blended Lodestar =** $ 471.14 (total lodestar ÷ total hours)

| | Aggregate Totals by Litigation Guidepost | Time | Lodestar | Percent | Lodestar | Multiply | Total |
|---|---|---|---|---|---|---|---|
| 1-2 | Start to Lead Counsel Appointment | 1023.26 | $432,560.81 | 11.67% | $ 432,560.81 | 2X | $ 865,121.62 |
| 3-6 | Lead Counsel Appt. to Mediation Failure | 1388.62 | $650,443.49 | 15.83% | $ 650,443.49 | 2X | $ 1,300,886.98 |
| 7-10 | Mediation Failure to Term Sheet | 5675.41 | $2,696,429.73 | 64.70% | $ 2,696,429.73 | 2X | $ 5,392,859.46 |
| 11-12 | Term Sheet through Present Filing | 684.12 | $353,101.89 | 7.80% | $ 353,101.89 | (1X) | $ 353,101.89 |
| | | 8771.41 | $4,132,535.92 | 100.00% | | | |

These totals aggregate the time further down to four key litigation events.

| | | |
|---|---|---|
| Total Request at 2X for time to Signing Term Sheet | | $ 7,558,868.06 |
| Total Request at 1X for time After Term Sheet | | $ 353,101.89 |
| **Total Fee Request** | | **$ 7,911,969.95** |
| **Effective Multiplier ($7,911,969.95 ÷ $4,132,535.92)** | | **1.914555639** |

# EXHIBIT B

# Timeline of Events

## *Parkinson v. Hyundai Motor America, et. al*

### Case No. 8:06-cv-00345-AHS-MLG

**Early 2006**
Cases consolidated before Judge Stotler

**8/7/2006**
GG and SSH appointed co-lead counsel

**3/28/2007**
Order denying Motion to Dismiss

**9/5/2007**
First mediation with Lew Goldfarb

**2/15/2008**
Hyundai walks away from second mediation

**11/6/2008**
Order granting class certification

**8/6/2009**
Term Sheet signed

**3/3/2010**
Preliminary approval Order entered

| 2006 | 2007 | 2008 | 2009 | 2010 |
|------|------|------|------|------|

Counsel investigated complaints related to the flywheel system in Hyundai Tiburons and cases were filed and later consolidated before Judge Stotler.  GG and SSH were appointed co-lead counsel after a competitive process under Rule 23(g).

After the Court denied Hyundai's Motion to Dismiss, Plaintiffs deposed Hyundai's corporate representative over two days. The parties then focused on attempts at potential resolution, including mediating the case on two occasions and exchanging several settlement offers and demands.  At the second mediation in Orange County, Hyundai terminated the process before it began, telling the mediator it did not have authority to negotiate and withdrawing its prior proposals.

After Hyundai walked away from negotiations, Plaintiffs hired experts, produced plaintiffs for depositions, briefed summary judgment, pressed discovery, won class certification, litigated two appeals of the class certification order in the 9th Circuit, handled motion practice over discovery and prepared and submitted pretrial papers. The parties returned to mediation with a trial date three months out, settling the case with the assistance of mediator David Rotman.

Following execution of the Term Sheet, the parties worked to complete the Settlement Agreement.  Differences over the claim process resulted in yet another mediation before Judge Goldman. Plaintiffs will also continue to work on final settlement issues and administration following final approval.

Lodestar through appt of lead counsel:
**$432,560**
(11.67% of total)

Lodestar from appt of lead counsel through termination of mediation:
**$650,443**
(15.83% of total)

Lodestar from termination of mediation through execution of Term Sheet:
**$2,696,429**
(64.70% of total)

Lodestar from execution of Term Sheet to present:
**$353,101**
(7.80% of total)

# EXHIBIT C

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC BACCA, an individual, and on behalf of all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>BMW OF NORTH AMERICA, LLC.,<br><br>　　　　　　Defendants. | CASE NO. CV 06-06753 DDP (AJWx)<br><br>Honorable Dean D. Pregerson<br><br>**ORDER GRANTING PLAINTIFF'S APPLICATION FOR AN AWARD OF ATTORNEY FEES, REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARD TO THE CLASS REPRESENTATIVE** |

The Court has granted final approval of the proposed class action settlement resolving the above action. Pursuant to Rule 23(h) of the Federal Rules of Civil Procedure, the law firms of Girard Gibbs LLP and Wasserman, Comden & Casselman, L.L.P., appointed by this Court as Class Counsel upon preliminary approval of the Settlement, have applied for a total award of $1,122,500 for attorneys' fees and reimbursement of expenses and an incentive award of $2,500 for the Class Representative Plaintiff. Plaintiff's counsel's fee application is made pursuant to the Settlement Agreement reached with BMW and under California Civil Code section 1780(e) of the California Consumers Legal Remedies Act ("CLRA"), one of the claims in

this lawsuit, and the private attorney general doctrine, codified at California Code of Civil Procedure section 1021.5.  The Court, having considered all papers submitted and oral argument presented, hereby finds and orders as follows:

1)     The Court finds that Plaintiff is a prevailing plaintiff under Section 1780(e) and is entitled to an award of attorneys' fees and costs.  The Court also finds that Plaintiff meets the requirements set forth in Section 1021.5 for an award of attorneys' fees. Plaintiff's lawsuit resulted in the enforcement of important public rights affecting the public's interest, including those underlying California's consumer protection statutes, while at the same time conferring significant benefits, both pecuniary and non-pecuniary, on a large class of persons.  Further, the financial burden of private enforcement is such as to make it appropriate to award attorneys' fees under Section 1021.5.  The necessity of pursuing this lawsuit placed a burden on Plaintiff out of proportion to his individual stake in the matter.

2)     Pursuant to the declarations of Eric H. Gibbs and Melissa M. Harnett and supporting exhibits attached thereto, Class Counsel has spent approximately 1,501 hours in prosecuting this action.  Based on Class Counsel's hourly rates, as presented in their declarations, Class Counsel's attorney's fees are $743,412.01.  The Court finds that these fees are reasonable under the facts and procedural posture of this case.

3)     In light of the favorable settlement benefits Class Counsel obtained for the settlement class, as set forth in the detail in the Settlement Agreement, and based on the positive responses of class members to the settlement, the Court finds that a multiplier of 1.48 as requested by Class Counsel is reasonable and appropriate.  Thus, the Court hereby awards attorney's fees of $1,122,500 to Class Counsel.

///
///
///

2

ORDER GRANTING APPLICATION FOR ATTORNEYS' FEES AND EXPENSES
CASE NO. CV 06-06753 DDP (AJWx)

4)     The Court also finds that an incentive award of $2,500 for the Class Representative Plaintiff is appropriate for his efforts in bringing and prosecuting this action and for devoting time and effort to keeping himself informed of the litigation.

**IT IS SO ORDERED.**

Dated: August 10, 2009

The Honorable Dean D. Pregerson
United States District Judge

ORDER GRANTING APPLICATION FOR ATTORNEYS' FEES AND EXPENSES
CASE NO. CV 06-06753 DDP (AJWx)

# EXHIBIT D

Eric H. Gibbs (State Bar No. 178658)
Dylan Hughes (State Bar No. 209113)
**GIRARD GIBBS & De BARTOLOMEO LLP**
601 California Street, Suite 1400
San Francisco, California 94108
ehg@girardgibbs.com
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

Norman E. Siegel (Admitted *pro hac vice*)
**STUEVE SIEGEL HANSON WOODY LLP**
330 W. 47th Street, Suite 250
Kansas City, Missouri 64112
Telephone: (816) 714-7170
Facsimile: (816) 714-7101

Attorneys for Individual and Representative
Plaintiff Timothy A. Roy

FILED
CLERK, U.S. DISTRICT COURT

APR 1 0 2006

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY A. ROY, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HYUNDAI MOTOR AMERICA, INC., a California Corporation, et al.,<br><br>Defendants. | Case No. SACV 05-483 AHS (MLGx)<br><br>~~[PROPOSED]~~ ORDER GRANTING PLAINTIFF'S APPLICATION FOR:<br><br>**(1) AWARD OF ATTORNEYS' FEES;**<br><br>**(2) REIMBURSEMENT OF EXPENSES; AND**<br><br>**(3) INCENTIVE AWARD FOR THE CLASS REPRESENTATIVE PLAINTFF.**<br><br>Date: April 10, 2006<br>Time: 10:00 a.m.<br>Before: Honorable Alicemarie H. Stotler |

DOCKETED ON CM

1 0 2006

BY _____ 082

[PROPOSED] ORDER RE ATTORNEYS' FEES— SACV 05-483 AHS (MLGx)

The Court has granted final approval of the proposed class action Settlement resolving the above action. Pursuant to Rule 23(h) of the Federal Rules of Civil Procedure, the law firms of Girard Gibbs & De Bartolomeo LLP and Stueve Siegel Hanson Woody LLP, appointed by this Court as Class Counsel upon preliminary approval of the Settlement, applied for a total award of $1.2 million for attorneys' fees and reimbursement of expenses and an incentive award of $5,000 for the Class Representative Plaintiff ("Fee Application," filed March 17, 2006). The Court has now considered all papers submitted and oral argument presented in support of the Fee Application and all comments from Class members in opposition thereto. The Court orders as follows:

Plaintiff's counsel have applied for attorneys' fees pursuant to the Settlement Agreement reached with Hyundai and under California Civil Code section 1780(d) of the California Consumers Legal Remedies Act ("CLRA"), one of the claims in this lawsuit, and the private attorney general doctrine, codified at California Code of Civil Procedure section 1021.5. In a diversity action such as this one where attorneys' fees are awarded under state law, state law applies in calculating the amount of the attorneys' fee award. *See Mangold v. California Public Utilities Commission* (9th Cir.1995) 67 F.3d 1470, 1478 (applying California law in calculating the amount of attorneys' fees awarded under Cal. Gov. Code § 12940 *et seq.*).

The Court finds that Plaintiff is the prevailing party under Section 1780(d) and is entitled to an award of attorneys' fees and costs. The Court also finds that Plaintiff meets the requirements set forth in Section 1021.5 for an award of attorneys' fees. Plaintiff's lawsuit resulted in the enforcement of important public rights affecting the public's interest, including public safety and the enforcement of California's consumer protection statutes, while at the same time conferring significant benefits, both pecuniary and non-pecuniary, on a large class of persons. Further, the financial burden of private enforcement is such as to make it appropriate to award attorneys' fees under Section 1021.5. The necessity of pursuing this lawsuit placed a burden on Plaintiff out of

1  proportion to his individual stake in the matter.

2       In calculating the attorneys' fee award, California courts follow the lodestar-

3  multiplier approach. *See Serrano v. Priest* ("Serrano III") (1977) 20 Cal.3d 25, 48-49.

4  Under this approach, "[t]he lodestar (or touchstone) is produced by multiplying the

5  number of hours reasonably expended by counsel by a reasonable hourly rate." *Lealao v.*

6  *Beneficial California* (2000) 82 Cal.App.4th 19, 26. "Once the court has fixed the

7  lodestar, it may increase or decrease that amount by applying a positive or negative

8  'multiplier' to take into account a variety of other factors, including the quality of the

9  representation, the novelty and complexity of the issues, the results obtained, and the

10  contingent risk presented." *Id.; see also Serrano III*, 20 Cal.3d at 48-49; *Ramos v.*

11  *Countrywide Home Loans, Inc.* (2000) 82 Cal.App.4th 615, 622.

12       The declarations of Eric H. Gibbs and Norman E. Siegel and the supporting

13  exhibits thereto establish that Plaintiff's counsel have spent approximately 1,894 hours in

14  the litigation and two related actions filed against Defendant Hyundai in Illinois and

15  Pennsylvania, entitled *Schreibstein v. Hyundai*, Case No. 2935, pending in the

16  Philadelphia Common Pleas ("*Schreibstein*") and *Tucci v. Hyundai*, Case No. 04-L-488,

17  pending in the Circuit Court of St. Clair County, State of Illinois ("*Tucci*").

18       Declarations as to time spent, even if only estimates, are sufficient to support a fee

19  award in California. *See Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224,

20  255. Based on the declarations and exhibits thereto submitted, the Court finds that the

21  amount of time spent by Plaintiff's counsel in this action and the *Schreibstein* and *Tucci*

22  actions, Plaintiff's counsel's hourly rates, and their collective lodestar of $618,391, are

23  reasonable under the circumstances.

24       The Court also finds that the requested multiplier of approximately 1.90 is

25  warranted in this case. Plaintiff's counsel skillfully presented Class members' claims

26  while opposed by a large and sophisticated company represented by experienced

27  litigators. In pursuing the litigation, Class Counsel bore a substantial amount of risk,

28  with no guarantee of compensation or reimbursement.

1    Further, Plaintiff's counsel achieved a favorable result here. Under the terms of

2    the Settlement, Hyundai will send Class members a Mailer explaining (1) the operation of

3    the occupant classification system ("OCS") in their Elantra vehicles, and (2) that Hyundai

4    will reprogram, at no cost, the OCS in the vehicles of each Class member who desires

5    such reprogramming. Hyundai will also provide Class members with a replacement

6    vehicle, at no cost, while Hyundai reprograms the OCS. For those who have already had

7    reprogramming, Hyundai will reimburse them for reasonable, out-of-pocket

8    transportation-related costs incurred while Hyundai was reprogramming the vehicle.

9    If Hyundai cannot reprogram the OCS to a Class member's satisfaction, Hyundai

10   will participate in an alternative dispute resolution program, at no cost to Class members.

11   As part of that program, if Hyundai is unable to reprogram the OCS so that it correctly

12   identifies a repeat passenger, the Class member will be entitled to a refund or a new car at

13   the Class member's option, subject to mileage offsets based on California's Lemon Law.

14   Several Class members from around the country have taken the time to write Class

15   Counsel in support of the litigation and the Settlement and to thank them for their efforts.

16   In contrast, only 486 out of 233,223 Class members opted out and only three Class

17   members filed objections to the Settlement with the Court. Thus, the Settlement has the

18   overwhelming support of the Class, further meriting the requested multiplier of 1.90.

19   The requested 1.90 multiplier is below those typically applied by California courts

20   in similar circumstances. *See Wershba*, 91 Cal.App.4th at 255 ("Multipliers can range

21   from 2 to 4 or even higher."). Moreover, the additional work required of Class Counsel

22   since March 17, 2006 and under the Settlement going forward is likely to reduce the

23   multiplier below 1.90. Since March 17, 2006, Plaintiff's Counsel have devoted

24   significant time and efforts providing written and oral argument in support of the

25   Settlement and in responding to Class members who have questions regarding the

26   Settlement. Class Counsel will continue to devote significant time responding to Class

27   members and in monitoring Hyundai's compliance with the Settlement. Accordingly, the

28   Court finds that a 1.90 multiplier is reasonable.

---

1    In addition, the declarations submitted establish that Plaintiff's counsel have
2    incurred approximately $28,475 in expenses in this litigation and the *Schreibstein* and
3    *Tucci* actions.  The Court finds these expenses reasonable.

4          The Court also finds that an incentive award of $5,000 for the Class Representative
5    Plaintiff is appropriate in light of his efforts in the case.  Mr. Roy took the initiative to
6    build a website devoted to the Elantra airbag problem, voluntarily assumed the
7    responsibilities of bringing and prosecuting this action on behalf of himself and all others
8    similarly situated, and devoted time and effort to keeping himself informed of the
9    litigation.  Mr. Roy also reviewed and authorized the filing of the complaint, appeared for
10   deposition, and submitted to the physical inspection and testing of his Hyundai vehicle,
11   including making his wife available so that she could sit in the passenger seat while
12   Hyundai's lawyers and other employees inspected his vehicle.  In light of Mr. Roy's
13   efforts, the Court finds that the requested incentive award in the amount of $5,000 is
14   reasonable.

15         The Court has also considered the comments of Kevin and Becky Olvaney,
16   Carmine Vitale, and Robert and Mary Jean Allen, who submitted comments to Plaintiff's
17   counsel but did not file objections with the Court in accordance with the terms of the
18   Settlement.  The Court finds that their comments relating to the Fee Application lack
19   merit.  Plaintiff's counsel negotiated the attorneys' fees provision with Hyundai only
20   after the parties reached an agreement as to all the material terms of the relief for the
21   Class.  Thus, the resulting agreement is the product of non-collusive, adversarial
22   negotiation in light of the work devoted by Plaintiff's counsel and governing California
23   law.  Accordingly, the Court grants Plaintiff's Fee Application in full.
24   //
25   //
26   //
27   //
28   //

---

[PROPOSED] ORDER RE ATTORNEYS' FEES — SACV 05-483 AHS (MLGx)

4

1    Pursuant to this Order and the terms of the Settlement, Plaintiff's counsel shall

2  receive an award of $1.2 million for attorneys' fees and expenses, and the Class

3  Representative Plaintiff shall receive an award of $5,000, to be paid by Hyundai

4  separately from the relief available to the Class.

5    **IT IS SO ORDERED.**

6

7  Dated: __APR. 1 0. 2006__ , 2006

8                                    Honorable Alicemarie H. Stotler
                                     United States District Court Judge
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT E

# A nationwide sampling of law firm billing rates

*The National Law Journal* asked the respondents to its 2009 survey of the nation's 250 largest law firms to provide a range of hourly billing rates. Firms that supplied the information—including some not in the NLJ 250—are listed in alphabetical order.

| FIRM NAME | FIRMWIDE | | PARTNER | | | | ASSOCIATE | | | | BY ASSOCIATE CLASS YEAR | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | AVERAGE | MEDIAN | HIGH | LOW | AVERAGE | MEDIAN | HIGH | LOW | AVERAGE | MEDIAN | 1ST | 2D | 3D | 4TH | 5TH | 6TH | 7TH | 8TH |
| Adams and Reese | 252.38 | 255 | 500 | 245 | 333.26 | 325 | 310 | 185 | 219.78 | 215 | | | | | | | | |
| Adorno & Yoss | 308 | 300 | 525 | 225 | 354 | 350 | 300 | 155 | 255 | 225 | | | | | | | | |
| Alston & Bird | 491 | 485 | 860 | 450 | 602 | 590 | 555 | 265 | 388 | 385 | | 350 | 387.5 | 415 | 445 | 482.5 | 502.5 | |
| Arent Fox | | | 755 | 420 | | | 485 | 260 | | | | | | | | | | |
| Armstrong Teasdale | | | 450 | 320 | | | 315 | 175 | | | | | | | | | | |
| Baker, Donelson, Bearman, Caldwell & Berkowitz | 302 | 295 | 595 | 236 | 349 | 340 | 315 | 160 | 218 | 215 | | | | | | | | |
| Barnes & Thornburg | 345 | 350 | 615 | 375 | 396 | 395 | 390 | 210 | 246 | 245 | 210 | 220 | 230 | 245 | 250 | 260 | 270 | 280 |
| Best Best & Krieger | 310 | 300 | 550 | 310 | 421 | 425 | 380 | 185 | 245 | 245 | | | | | | | | |
| Bond, Schoeneck & King | 278 | 290 | 465 | 200 | 319 | 320 | 275 | 150 | 191 | 195 | | | | | | | | |
| Bowman and Brooke | | | 500 | 250 | | | | | | | | | | | | | | |
| Briggs and Morgan | 373 | 390 | 500 | 290 | 432 | 440 | 315 | 210 | 240 | 235 | | | | | | | | |
| Brinks Hofer Gilson & Lione | 407 | 405 | 725 | 335 | 530 | 550 | 425 | 190 | 292 | 300 | 240 | 260 | 280 | 305 | 335 | 360 | 385 | 405 |
| Broad and Cassel | 307 | 295 | 475 | 260 | 372 | 375 | 350 | 175 | 247 | 256 | | | | | | | | |
| Brownstein Hyatt Farber Schreck | 377 | 370 | 795 | 280 | 446 | 425 | 340 | 185 | 247 | 250 | 185 | | | | | | | |
| Bryan Cave | 448 | 430 | 765 | 355 | 541 | 530 | 550 | 160 | 331 | 330 | 160 | 252.5 | 265 | 312.5 | 322.5 | 370 | 387.5 | 402.5 |
| Buchalter Nemer | 399 | 400 | 625 | 270 | 467 | 475 | 430 | 195 | 311 | 300 | | | | | | | | |
| Buchanan Ingersoll & Rooney | | | 1,020 | 310 | | | 580 | 200 | | | | | | | | | | |
| Burr & Forman | 314 | 325 | 490 | 275 | 352 | 350 | 325 | 200 | 247 | 300 | 200 | | | | | | | |
| Butzel Long | | | 700 | 310 | | | 335 | 200 | | | | | | | | | | |
| Carlton Fields | 393 | 395 | 750 | 325 | 457 | 455 | 365 | 195 | 278 | 285 | | | | | | | | |
| Cozen O'Connor | 415 | 390 | 800 | | 488 | 460 | 695 | 225 | 320 | 320 | | | | | | | | |
| Curtis, Mallet-Prevost, Colt & Mosle | 522 | 515 | 785 | 675 | 730 | 730 | 575 | 290 | 434 | 435 | 152 | 157.5 | 173.5 | 184 | 194.5 | 203 | 216.5 | 22? |
| Davis Wright Tremaine | 346 | 355 | 775 | 310 | 474 | 465 | 445 | 210 | 300 | 305 | | | | | | | | |
| Day Pitney | 411 | | 750 | 385 | 507 | 495 | 465 | 230 | 310 | 295 | | | | | | | | |
| Dickinson Wright | | | 575 | 275 | | | | | | | 185 | 190 | 205 | 215 | 225 | 235 | 250 | |
| Dickstein Shapiro | 520 | 518 | 950 | 500 | 633 | 630 | 515 | 265 | 403 | 415 | 277.5 | 342.5 | 342.5 | 392.5 | 437.5 | 437.5 | 487.5 | 487 |
| Dinsmore & Shohl | 286 | 270 | 525 | 200 | 345 | 340 | 295 | 165 | 204 | 200 | 175 | 185 | 200 | 215 | 225 | 235 | 245 | 25? |
| Dorsey & Whitney | 335 | 310 | 795 | 245 | 520 | 520 | 545 | 165 | 315 | 300 | | | | | | | | |
| Duane Morris | 463.46 | 472.5 | 795 | 325 | 527.26 | 515 | 450 | 225 | 334.67 | 337.5 | | | | | | | | |
| Dykema Gossett | | | 595 | 295 | | | 440 | | 290 | 290 | | | | | | | | |
| Edwards Angell Palmer & Dodge | 447 | 450 | 750 | 325 | 547 | 545 | 495 | 170 | 321 | 305 | 245 | 265 | 277.5 | | | | | |
| Epstein Becker & Green | 434 | 425 | 855 | 350 | 523 | 500 | 475 | 180 | 332 | 325 | | | | | | | | |
| Fitzpatrick, Cella, Harper & Scinto | | | 810 | 470 | | | 440 | | | 385 | 275 | 300 | 325 | 350 | 370 | 395 | 405 | 42? |
| Foley & Lardner | 530 | 540 | 1,035 | | | 631 | 620 | | 275 | 422 | 400 | | | | | | | |
| Ford & Harrison | 391 | 420 | 595 | 340 | 466 | 468 | 370 | 245 | 290 | 300 | 260 | | | | | | | |
| Fowler White Boggs | 325 | 325 | 535 | 295 | 378 | 370 | 325 | 195 | 240 | 238 | | | | | | | | |
| Fox Rothschild | 383 | 395 | 675 | 310 | 451 | 450 | 440 | 225 | 276 | 250 | | | | | | | | |
| Frost Brown Todd | 274 | 275 | 490 | 200 | 317 | 310 | 245 | 160 | 191 | 185 | | | | | | | | |
| Gardere Wynne Sewell | 400 | 400 | 775 | 380 | 512 | 500 | 445 | 210 | 302 | | 210 | 230 | 260 | 290 | 300 | 320 | 340 | 3? |
| Gibbons | | | 700 | 365 | | | 425 | 220 | | | | | | | | | | |
| Godfrey & Kahn | | | 485 | 310 | | | 300 | 180 | | | | | | | | | | |
| GrayRobinson | | | 750 | 170 | | | 300 | 300 | | | | | | | | | | |
| Greenberg Traurig | 442 | 450 | 850 | 345 | 534 | 545 | 575 | 200 | 328 | 340 | 150 | 160 | 170 | | | | | |
| Greenebaum Doll & McDonald | 252 | 330 | 505 | 225 | 300 | 365 | 235 | 150 | 170 | 195 | 150 | 160 | 170 | | | | | |
| Harris Beach | | | 475 | 250 | | | 275 | 140 | | | 147.5 | 170 | 200 | 210 | 230 | 230 | 250 | |
| Hiscock & Barclay | 313 | 311 | 650 | 195 | 352 | 347 | 430 | 150 | 235 | 217 | 245 | 265 | 262.5 | 262.5 | 262.5 | 277.5 | 277.5 | 3? |
| Hodgson Russ | 318 | 310 | 665 | 225 | 365 | 360 | 450 | 165 | 233 | 225 | | | | | | | | |

SEE SAMPLING, PA[...]

THE NATIONAL LAW JOURNAL/WWW.NLJ.COM | DECEMBER 7, 2009

BILLING SURVEY

SAMPLING, FROM PAGE 14

| FIRM NAME | HIGHEST | | PARTNER | | | | ASSOCIATE | | | | BY ASSOCIATE CLASS YEAR | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | AVERAGE | MEDIAN | HIGH | LOW | AVERAGE | MEDIAN | HIGH | LOW | AVERAGE | MEDIAN | 1ST | 2D | 3D | 4TH | 5TH | 6TH | 7TH | 8TH |
| Hogan & Hartson | 540 | | 990 | 385 | 675 | 660 | 550 | 150 | 420 | 405 | 300 | 340 | 370 | 405 | 435 | 465 | 495 | 525 |
| Holland & Hart | 349 | 345 | 615 | 235 | 412 | 405 | 360 | 175 | 266 | 268 | 215 | 235 | 255 | 275 | 295 | 305 | 320 | 325 |
| Holme Roberts & Owen | 355 | 345 | 635 | 285 | 415 | 410 | 530 | 170 | 295 | 265 | | | | | | | | |
| Hughes Hubbard & Reed | | | 925 | 650 | | | 695 | 295 | | | | | | | | | | |
| Husch Blackwell Sanders | 319.23 | 318 | 777 | 220 | 375.57 | 368 | 399 | 168 | 219.6 | 205 | | | | | | | | |
| Jackson Kelly | 256.27 | 250 | 445 | 220 | 288.79 | 255 | 250 | 145 | 180.09 | 180 | 160 | 175 | 185 | 195 | 205 | 215 | | |
| Jackson Lewis | 360 | 350 | 715 | 245 | 425 | 425 | 425 | 150 | 282 | 275 | | | | | | | | |
| Jenner & Block | | | 1,000 | 525 | 635 | 675 | 535 | 325 | 409 | 400 | 325 | 370 | 400 | 435 | 475 | 495 | 505 | 525 |
| Jones, Walker, Waechter, Poitevent, Carrère & Denègre | | | 620 | 185 | | | 260 | 170 | | | | | | | | | | |
| Kelley Drye & Warren | | | 875 | 450 | | | 545 | 265 | | | 295 | 330 | 355 | 400 | 420 | 440 | 470 | 495 |
| Kilpatrick Stockton | 425 | 425 | 700 | 375 | 515 | 495 | 425 | 225 | 310 | 295 | 270 | 295 | 320 | 345 | 375 | 385 | 395 | |
| Knobbe, Martens, Olson & Bear | | | 680 | 390 | 492 | 480 | 380 | 270 | 280 | 240 | 270 | 295 | 320 | 345 | 370 | | | |
| Lane Powell | 337 | 365 | 575 | 340 | 420 | 415 | 350 | 225 | 272 | 280 | | | | | | | | |
| Lathrop & Gage | | | 490 | 255 | | | 265 | 180 | | | | | | | | | | |
| Lewis, Rice & Fingersh | | | 450 | 250 | | | 210 | 140 | | | 170 | 195 | 230 | 255 | 275 | 290 | 300 | 310 |
| Lindquist & Vennum | 320 | 340 | 600 | 275 | 386 | 390 | 300 | 200 | 236 | 225 | | | | | | | | |
| Littler Mendelson | 361 | 340 | 685 | 270 | 433 | 425 | 435 | 125 | 278 | 275 | | | | | | | | |
| Locke Lord Bissell & Liddell | 458.06 | 480 | 1,045 | 375 | 562.95 | 560 | 525 | 200 | 310.11 | 295 | | | | | | | | |
| Loeb & Loeb | 566 | 575 | 950 | 475 | 667 | 650 | 550 | 285 | 400 | 425 | 317.5 | 367.5 | 405 | | | | | |
| Lowenstein Sandler | | | 785 | 425 | | | 500 | 210 | | | | | | | | | | |
| Luce, Forward, Hamilton & Scripps | 410 | 420 | 650 | 360 | 496 | 490 | 540 | 240 | 304 | 290 | | | | | | | | |
| Manatt, Phelps & Phillips | 531 | 550 | 850 | 495 | 625 | 620 | 505 | 290 | 383 | 410 | 290 | 290 | 325 | 365 | 410 | 440 | 470 | 505 |
| Marshall, Dennehey, Warner, Coleman & Goggin | | | 400 | 140 | | | 310 | 125 | | | | | | | | | | |
| McAndrews, Held & Malloy | | | | | | | 290 | 220 | | | | | | | | | | |
| McCarter & English | 396 | 395 | 700 | 350 | 472 | 468 | 395 | 205 | 307 | 315 | | | | | | | | |
| McDonnell Boehnen Hulbert & Berghoff | | | 670 | 295 | | | 270 | 225 | | | | | | | | | | |
| McElroy, Deutsch, Mulvaney & Carpenter | 200 | 215 | 500 | 295 | 275 | 250 | 250 | 145 | 185 | 170 | 145 | 170 | 180 | 190 | 195 | 200 | 205 | 215 |
| McKenna Long & Aldridge | | | 775 | 350 | 471 | | 470 | 220 | 284 | | | | | | | | | |
| Michael Best & Friedrich | 305 | 300 | 620 | 235 | 383 | 375 | 305 | 190 | 235 | 225 | | | | | | | | |
| Miller, Canfield, Paddock and Stone | 358 | 375 | 640 | 240 | 431 | 440 | 400 | 175 | 254 | 245 | | | | | | | | |
| Miller & Martin | 305 | 350 | 610 | 220 | 330 | 375 | 315 | 180 | 235 | 230 | | | | | | | | |
| Montgomery, McCracken, Walker & Rhoads | 396 | | 605 | 370 | 452 | | 375 | 215 | 266 | | 220 | 230 | 250 | 270 | 285 | 305 | 330 | 355 |
| Moore & Van Allen | 359 | 350 | 770 | 265 | 437 | 420 | 355 | 180 | 259 | 250 | | | | | | | | |
| Morris, Manning & Martin | 424 | 415 | 760 | 365 | 492 | 490 | 425 | 200 | 353 | 360 | 200 | 265 | 310 | 340 | 365 | 390 | 415 | 425 |
| Nelson Mullins Riley & Scarborough | 340 | 325 | 850 | 275 | 394 | 380 | 405 | 190 | 248 | 245 | | | | | | | | |
| Nexsen Pruet | | | 500 | 220 | | | 250 | 175 | | | | | | | | | | |
| Nixon Peabody | 436 | 435 | 865 | 455 | 583 | 600 | 570 | 230 | 386 | 370 | 290 | 329 | 359 | 379 | 405 | 429 | 466 | 447 |
| Ogletree, Deakins, Nash, Smoak & Stewart | 347 | | 525 | 400 | | 386 | 290 | 195 | 281 | | | | | | | | | |
| Patton Boggs | 521 | 520 | 990 | 400 | 650 | 625 | 540 | 200 | 396 | 400 | 290 | 315 | 340 | 370 | 400 | 450 | 470 | 480 |
| Pepper Hamilton | | | 820 | 420 | | | 450 | 240 | | | | | | | | | | |
| Perkins Coie | 424 | | 815 | 265 | 518 | 515 | 525 | 195 | 337 | | 272 | 286 | 313 | 322 | 347 | 355 | 396 | 419 |
| Phelps Dunbar | 212.62 | 252.50 | 450 | 170 | 255.87 | 255 | 250 | 130 | 170.30 | 165 | | | | | | | | |
| Phillips Lytle | 250 | 255 | 475 | 240 | 340 | 335 | 415 | 150 | 235 | 230 | | | | | | | | |
| Polsinelli Shughart | | | 600 | 250 | | | 275 | 185 | | | | | | | | | | |
| Quarles & Brady | 353 | 365 | 625 | 285 | 422 | 425 | 375 | 200 | 252 | 245 | 204 | 220 | 238 | 249 | 260 | 275 | 304 | 301 |
| Robinson & Cole | 325 | 360 | 650 | 320 | 445 | 450 | 525 | 210 | 262 | 360 | 210 | 230 | 240 | 260 | 265 | 285 | 300 | |
| Roetzel & Andress | 307 | 319 | 550 | 250 | 347 | 350 | 300 | 180 | 227 | 230 | | | | | | | | |
| Rutan & Tucker | | | 635 | 335 | | | 400 | 225 | | | | | | | | | | |
| Saul Ewing | 387 | 375 | 800 | 315 | 464 | 450 | 585 | 205 | 294 | 260 | 225 | 237.5 | 245 | 247.5 | 252.5 | 270 | 282.5 | 322.5 |
| Schulte Roth & Zabel | | | 680 | 710 | | | 670 | 265 | | | 320 | 435 | 485 | 545 | 565 | 565 | 585 | 605 |
| Schwabe, Williamson & Wyatt | 305 | 300 | 540 | 290 | 410 | 400 | 440 | 195 | 260 | 250 | | | | | | | | |
| Sedgwick, Detert, Moran & Arnold | 343 | 335 | 670 | 315 | 418 | 415 | 655 | 225 | 302 | 295 | | | | | | | | |

SEE SAMPLING, PAGE 16

Case 2:06-cv-00345-AHS-MLG   Document 288   Filed 05/04/10   Page 47 of 49   Page ID #:6665

**BILLING SURVEY**

SAMPLING, FROM PAGE 15

| FIRM NAME | FIRMWIDE AVERAGE | FIRMWIDE MEDIAN | PARTNER HIGH | PARTNER LOW | PARTNER AVERAGE | PARTNER MEDIAN | ASSOCIATE HIGH | ASSOCIATE LOW | ASSOCIATE AVERAGE | ASSOCIATE MEDIAN | 1ST | 2D | 3D | 4TH | 5TH | 6TH | 7TH | 8TH |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Sheppard, Mullin, Richter & Hampton | | | 715 | 495 | | | 525 | 285 | | | 285 | 320 | 350 | 390 | 405 | 430 | 450 | 470 |
| Shumaker, Loop & Kendrick | 309 | 330 | 515 | 225 | 341 | 340 | 395 | 165 | 231 | 235 | 195 | | | | | | | |
| Smith, Gambrell & Russell | | | 740 | 325 | | | 440 | 195 | | | | | | | | | | |
| Snell & Wilmer | 381 | | 775 | 315 | 473 | | 480 | 175 | 300 | | 205 | 240 | 260 | 267.5 | | | | |
| Stinson Morrison Hecker | 333 | 345 | 680 | 275 | 391 | 380 | 305 | 195 | 232 | 228 | | | | | | | | |
| Stoel Rives | 369 | 375 | 600 | 310 | 430 | 425 | 375 | 190 | 267 | 265 | | | | | | | | |
| Strasburger & Price | 331 | | 610 | 325 | | | 365 | 210 | | | | | | | | | | |
| Sullivan & Worcester | 520 | 525 | 800 | 470 | 629 | 618 | 560 | 255 | 373 | 365 | 285 | 300 | 325 | 345 | 365 | 385 | 435 | |
| Sutherland Asbill & Brennan | 403 | 390 | 800 | 420 | 563 | 550 | 480 | 220 | 332 | 320 | | | | | | | | |
| Taft, Stettinius & Hollister | | | 475 | 200 | 346 | | 370 | 160 | 212 | | | | | | | | | |
| Thompson Coburn | | | 595 | 320 | | | 390 | 190 | | | | | | | | | | |
| Thompson & Knight | 471 | 458 | 825 | 410 | 560 | 560 | 500 | 255 | 358 | 365 | 300 | 330 | 365 | 385 | 405 | 425 | 44 | |
| Townsend and Townsend and Crew | 351 | 360 | 750 | 280 | 530 | 560 | 460 | 260 | 360 | 360 | 260 | 290 | 325 | 350 | 390 | 420 | 450 | 47 |
| Ulmer & Berne | 265 | | 550 | 245 | 340 | | 320 | 180 | 215 | | 180 | | | | | | | |
| Vedder Price | 406 | 410 | 700 | 375 | 469 | 455 | 450 | 245 | 312 | 300 | 245 | 245 | 260 | 280 | 300 | 315 | 335 | 35 |
| Venable | 457 | 460 | 975 | 470 | 556 | 550 | 450 | 275 | 336 | 325 | | | | | | | | |
| Wiggin and Dana | | | 710 | 360 | | | 410 | 220 | | | | | | | | | | |
| Williams Mullen | | | 710 | 315 | 417.01 | | 380 | 220 | 273.64 | | | | | | | | | |
| Winstead | 395 | | 655 | 350 | 462 | | 385 | 215 | 285 | | 215 | 230 | 290 | 320 | 330 | 340 | 35 | |
| Winston & Strawn | 498 | 480 | 995 | 400 | 638 | 630 | 670 | 210 | 372 | 345 | 295 | 312.5 | 337.5 | 372.5 | 410 | 447.5 | 482.5 | 51 |
| Womble Carlyle Sandridge & Rice | 212.8 | 130 | 750 | 300 | 461.7 | 465.1 | 415 | 140 | 284.6 | 280.9 | 130 | | | | | | | |
| Wyatt, Tarrant & Combs | 284 | 305 | 475 | 250 | 350 | 355 | 285 | 190 | 218 | 220 | | | | | | | | |

Earn Up To...21.5 CLE Credits I 3 Ethics Credits I 4.5 Complimentary CLE Credits    Follow us on Twitter at #LTNY & join the LegalTech Linkedin group

**WHERE CAN YOU...**
Hear from industry leaders on the *hottest topics*?
Test the *newest products* in the industry?
Network with your peers? Earn *CLE* credits?

# LEGALTECH

*THE MOST IMPORTANT LEGAL TECHNOLOGY EVENT OF THE YEAR!*
**FEBRUARY 1-3, 2010 I THE HILTON NEW YORK**

FEBRUARY 1 — OPEN TO ALL
Don't Build Your eDiscovery Program on a Digital Landfill
Russell Stalters
Information Technology & Services (IT&S) Head, Information & Records Architecture
BP America Inc.
SPONSORED BY: Guidance SOFTWARE — KPMG

FEBRUARY 2 — OPEN TO ALL
Perspectives on Corporate eDiscovery and Social Media
Mark Howitson
Deputy General Counsel Facebook
SPONSORED BY: CaseCentral

FEBRUARY 3 — OPEN TO ALL
Intelligent Information and the Post-Recession Economy
CLE approved
SPONSORED BY: THOMSON REUTERS

KEYNOTE ADDRESS

**REGISTER TODAY FOR THIS MUST-ATTEND EVENT!**
www.legaltechshow.com 212.457.7905
For exhibiting/sponsorship opportunities please contact: Rob Hafiz (212) 457-7940 • rhafiz@alm.com
When registering use priority code: RNP

Earn a Kroll Ontrack ESI Technology Certificate
KROLL ONTRACK



# EXHIBIT F

| | Girard Gibbs LLP | Stueve Siegel Hanson LLP | Finkelstein Thompson LLP | Green Welling P.C. | Consumer Law Group | Total Numbers |
|---|---|---|---|---|---|---|
| Total Expenses | $ 241,440.02 | $ 145,031.54 | $ 6,981.51 | $ 5,631.49 | $ 1,169.97 | $ 400,254.53 |
| Plaintiffs Seek Recovery Of Number | $ 36,981.90 | $ 89,044.70 | $ 2,020.01 | $ 4,809.91 | $ 1,009.53 | $ 133,866.05 |
| Allowable Expenses | $ 13,264.27 | $ 35,171.63 | $ 2,020.01 | $ 4,619.91 | $ 1,009.53 | $ 56,085.35 |
| Potentially Allowable Expenses | $ 23,717.63 | $ 53,873.07 | | $ 190.00 | | $ 77,780.70 |
| | | | | | | |
| **§1033.5(a) Allowed Costs** | | | | | | |
| Filing | $ 5,045.53 | $ 370.00 | $ 830.00 | $ 870.00 | $ 472.50 | $ 7,588.03 |
| Service | $ 1,009.00 | - | $ 114.26 | $ 1,052.27 | $ 537.03 | $ 2,712.56 |
| Travel to Deposition | $ 3,908.82 | $ 20,742.83 | $ 309.81 | $ 1,950.85 | - | $ 26,912.31 |
| Deposition/video transcript | $ 3,300.92 | $ 14,058.80 | $ 765.94 | $ 746.79 | | $ 18,872.45 |
| Total Allowed | $ 13,264.27 | $ 35,171.63 | $ 2,020.01 | $ 4,619.91 | $ 1,009.53 | $ 56,085.35 |
| | | | | | | |
| **§1033.5(c) Maybe Allowed** | | | | | | |
| Travel to Hearings/Litigation | $ 4,574.16 | $ 9,781.74 | - | - | - | $ 14,355.90 |
| Travel to Mediation/Settlement | $ 8,180.97 | $ 7,871.68 | - | - | - | $ 16,052.65 |
| | | | | | | |
| Notice of Class Costs | $ 10,962.50 | $ 10,962.50 | - | - | - | $ 21,925.00 |
| | | | | | | |
| Mediation/Arbitration | $ - | $ 25,257.32 | - | - | - | $ 25,257.32 |
| | | | | | | |
| Press Releases | | | | $ 190.00 | | |
| Total Discretionary | $ 23,717.63 | $ 53,873.24 | | $ 190.00 | | $ 77,780.87 |
| | | | | | | |
| **Risk Factor - Potential Allowable Costs** | | | | | | |
| Photo Copying (In-House/Outside) | $ 62,221.53 | $ 13,929.30 | $ 3,869.40 | $ 365.57 | $ 128.52 | $ 80,514.32 |
| Telephone | $ 707.94 | $ 229.08 | $ 23.52 | $ 57.81 | $ 30.60 | $ 1,048.95 |
| Online Research | $ 6,678.30 | $ 9,615.92 | $ 664.43 | $ 6.19 | - | $ 16,964.84 |
| Postage | $ 326.16 | $ 17.20 | $ 40.19 | $ 114.01 | $ 1.32 | $ 498.88 |
| Overnight Delivery/Delivery | $ 10,740.17 | $ 594.92 | $ 335.96 | $ - | | $ 11,671.05 |
| Facsimile/Scanning | $ 633.00 | $ 1,994.76 | $ 28.00 | $ 88.00 | | $ 2,743.76 |
| Investigation/Evidence | $ 31,961.00 | | | $ - | | $ 31,961.00 |
| Expert Fees | $ 87,619.08 | $ 29,605.66 | $ - | $ - | | $ 117,224.74 |
| Meals - In Town | $ 1,881.62 | | | | | $ 1,881.62 |
| Hotel - In Town | $ 494.43 | | | | | $ 494.43 |
| Ground Transportation - In Town | $ 778.20 | | | | | $ 778.20 |
| Miscellaneous | $ 416.69 | | | $ 190.00 | | $ 606.69 |
| | | | | | | |
| Total of Risk Factor | $ 204,041.43 | $ 55,986.84 | $ 4,961.50 | $ 631.58 | $ 160.44 | $ 265,781.790 |
| | | | | | | |
| GRAND TOTAL | | | | | | $ 400,254.70 |