Eric H. Gibbs (State Bar No. 178658)
Dylan Hughes (State Bar No. 209113)
Geoffrey A. Munroe (State Bar No. 228590)
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, California  94108
ehg@girardgibbs.com
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

Norman E. Siegel
Todd Hilton
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
siegel@stuevesiegel.com
Telephone: (816) 714-7100
Facsimile: (816) 714-7101

*Co-Lead Class Counsel*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL PARKINSON, et al., on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>  vs.<br><br>HYUNDAI MOTOR AMERICA, INC., a California Corporation,<br><br>    Defendant. | Case No.  SACV 06-345 AHS (MLGx)<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**<br><br>Date: June 28, 2010<br>Time: 11:00 a.m.<br>Before:  Hon. Alicemarie H. Stotler |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ....................................................................................1

II.   BACKGROUND ......................................................................................3

    A.    The Litigation..................................................................................3

    B.    Terms of the Proposed Settlement ................................................5

        1.    Cash Reimbursements To Class Members ........................5

        2.    Class Member Option For Hyundai Credit........................6

        3.    The Claims Process...........................................................7

        4.    Mutual Release .................................................................8

III.  ARGUMENT.............................................................................................8

    A.    The Proposed Settlement Meets The Standard for Final Approval...............8

        1.    The Strength of Plaintiffs' Case ......................................10

        2.    The Risk, Expense, Complexity, and Likely Duration of Further Litigation...........................................................11

        3.    The Risk of Maintaining Class Action Status Throughout The Trial...............................................................................13

        4.    The Amount Offered In Settlement .................................14

        5.    The Extent of Discovery Completed and the Stage of the Proceedings ....................................................................15

        6.    The Experience and Views of Counsel.............................16

        7.    The Presence of a Governmental Participant...................16

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

8.   The Reaction of the Class Members To The Proposed
Settlement ........................................................................17

IV.   CONCLUSION ....................................................................20

ii

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page**

*Clemens v. DaimlerChrysler Corp.*,
    534 F.3d 1017 (9th Cir. 2008) ...................................................................10

*Curtis-Bauer v. Morgan Stanley & Co.*,
    2008 WL 4667090 (N.D. Cal. 2008) ...................................................11

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993)...............................................................................12

*Dukes v. Wal-Mart Stores, Inc.*,
    603 F.3d 571 (9th Cir. 2010). ...............................................................13

*Falk v. General Motors*,
    496 F.Supp.2d 1088 (N.D. Cal. 2007) ..................................................10

*Garner v. State Farm Mut. Auto. Ins. Co.*,
    2010 WL 1687832 (N.D. Cal. 2010) ..............................................11, 20

*Gribble v. Cool Transports Inc.*,
    2008 WL 5281665 (C.D. Cal. 2008) .....................................................16

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) .......................................................passim

*In re TD Ameritrade Accountholder Litigation*,
    2009 WL 6057238 (N.D. Cal. 2009) .......................................................9

*Kamar v. Radio Shack Corp.*,
    254 F.R.D. 387 (C.D. Cal. 2008)....................................................12, 13

*National Rural Telecommunications Cooperative v. DIRECTV, Inc.*
    221 F.R.D. 523 (C.D. Cal. 2004) ..........................................................19

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ...........................................................8, 11

*Pella Corp. v. Saltzman*,
 2010 WL 1994653 ............................................................................................13

*Protective Comm. for Independent Stockholders of TMT Trailer Ferry Inc. v. Anderson*,
 390 U.S. 414 (1968)............................................................................................9

*Rodriguez v. West Publ'g Corp.*,
 563 F.3d 948 (2009)............................................................................8, 12, 13, 15

*Sav-on Drug Stores, Inc. v. Superior Court*,
 34 Cal.4th 319 (2004) ......................................................................................12


**<u>Statutes</u>**

 *See* 28 U.S.C. § 1715 ......................................................................................17


**<u>Miscellanious</u>**

Manual for Complex Litigation (Fourth) (2004) ..................................................9

TABLE OF AUTHORITIES

# I.   **INTRODUCTION**

After several years of litigation, Plaintiffs and Hyundai Motor America, Inc. ("Hyundai") reached a settlement that, if approved by the Court, will reimburse owners and lessees of 2003 Hyundai Tiburons for flywheel/clutch repairs according to the following schedule:

- **100%** reimbursement for repair expenses incurred between 0 – 50,000 miles;
- **75%** reimbursement for repair expenses incurred between 50,001 – 75,000 miles;
- **50%** reimbursement for repair expenses incurred between 75,001 – 100,000 miles; *and*
- **Up to $150** reimbursement for any associated rental car expenses, regardless of mileage.

The Court preliminarily approved the proposed settlement on March 3, 2010, finding that it appeared sufficiently fair to solicit class members' reaction and proceed to a formal fairness determination.  (*See* Doc. 279.)  Over 32,000 potential class members have now been informed of the proposed settlement and given their chance to opt out of or comment on the settlement.  Only one class member objected to the settlement, asking to be awarded 100% of his repair costs rather than 75%, even though that class member did not purchase his used Tiburon from Hyundai and so likely would have a tenuous individual claim for damages.  (*See* Doc. 300; *compare* Doc. 305 (used purchaser supporting settlement).)  And only nine Hyundai owners have chosen to opt out of the settlement, with many or all of those being people who are not in the class in the first place.

On the other side of the coin, 867 class members have already submitted claims, with almost five months remaining in the claims period.  A number of class members have taken the time to write Class Counsel and express their support for the settlement. For example, class member Eric Q. wrote:

1

On December 2, 2008, I brought my 2003 Tiburon in to Lester Glenn Hyundai in Toms River, NJ. It had also been purchased there. The car had 45,932 miles on it, and it would not shift or get stuck in gear. There was already enough information on line to suggest that Hyundai was being deceptive about the actual problem. I did speak to the service manager who said that the problem was caused by the way the car was driven. That was the end of the discussion, and I had to pay for all the repairs. I did, however, keep all of the paperwork and the receipts from the car rental, in the hopes that justice would be served. I urge the court to approve this settlement.

Other class members have expressed similar sentiments:

Inevitably, after a few short months and not a lot of mileage the clutch, flywheel and throw bearing all went out at the same time (something I've never heard of happening all at once before). I've never heard of damaging a flywheel from driving at highway speeds shifting from 4th to 5th gear. Clearly something had been wrong all along. The repair costs were extensive for a car that was still in its infancy, and was tough to deal with especially when you think you are covered on everything for 100,000 miles. It's nice to see a settlement has been proposed and one that I would be happy with should it go through. It seems fair to me.

--Gregg T.

I am writing this letter to the court and I am asking that the court grants this Class Action Suit against Hyundai. I was a single mom at the time that I needed my clutch repaired It was very hard for me to collect the money to pay for such a big expense. When I went to Huffins Hyundai repair center and told them that there was something wrong with my clutch and was it not warranted under my 100,000 miles, I was told by them, no, because that was considered wear and tear on my car and that I probably did not know how to drive with a clutch. I had a 2000 Hyundai Tiburon with a clutch and it had 165,000 miles on that car and I never had to replace my clutch. For all of the person or persons who had to deal with Hyundai over the clutch that they built wrong, I am asking that you grant this Class Action.

--Rhonda W.[1]

---

[1]      Excerpts from other class member comments appear in Section (III)(A)(8) below, with the full compilation of written correspondence received by Class Counsel attached as Exhibits 3-8 to the Declaration of Eric H. Gibbs.

2

MEMO. ISO MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT
CASE NO. SACV 06-345 AHS (MLGx)

Plaintiffs and Class Counsel share these class members' enthusiasm for the settlement, believing that it provides class members with long-awaited relief, vindicates important consumer rights, and readily satisfies the "fair, reasonable, and adequate" standard required for final approval.  They ask that the Court approve the proposed settlement and enter final judgment in this case.

## II.   BACKGROUND

### A.   The Litigation

This case concerns an alleged defect in manual-transmission 2003 Hyundai Tiburon GT vehicles.  (*See* First Am. Consol. Compl. ("Compl."), ¶¶ 3-6, 27-42.) Plaintiffs allege that the flywheel system installed in the 2003 Tiburon —consisting of a flywheel, clutch disc, pressure plate, and release bearing—is inherently defective as it regularly fails under normal use inside of Hyundai's bumper-to-bumper and powertrain warranties.  (*Id.*, ¶¶ 3, 29.)  Typically, a Tiburon owner experiences the flywheel system defect when they are suddenly unable to engage or shift gears.  (*Id.*, ¶¶ 30, 43-49.) While the problem can appear similar to a worn-out clutch lining, the problem is much more serious and expensive to repair.  Instead of replacing only the clutch lining or disc (a relatively low-cost repair), Plaintiffs allege that Hyundai requires its dealers to replace the entire flywheel system—a major repair that typically costs about $2,000.  (*See id.*, ¶¶ 31, 43-49.)

Plaintiffs claim that Hyundai was aware of problems with the Tiburon's flywheel system but failed to disclose the defect to Tiburon buyers at the time of sale, and so should now be required to pay Tiburon owners the cost of installing a non-defective flywheel system under California's consumer protection laws.  (*Id.*, ¶¶ 32-34, 59-74.) Plaintiffs' complaint also sought recovery under warranty law since Hyundai refused to replace Tiburon owners' defective flywheel systems free of charge; instead, Hyundai told Plaintiffs and other consumers that their problems were a result of normal wear-and-tear or owner abuse, and thus were excluded from warranty coverage.  (*Id.*, ¶¶ 35-38, 75-94.)

Hyundai filed a motion to dismiss each of Plaintiffs' legal claims in October 2006,

3

1   which the Court ultimately denied.  (*See* Docs. 38, 53.)  Thereafter, both parties

2   propounded extensive discovery and otherwise garnered support for their respective

3   positions—with Plaintiffs taking the position that the flywheel system defect was

4   systemic to the 2003 Tiburon, and Hyundai arguing that no such defect existed and that

5   the clutch repairs at issue were either covered under warranty or properly denied

6   coverage because of vehicle modifications or abusive driving.  The parties also engaged

7   in extensive negotiations, including multiple mediation sessions, in an effort to resolve

8   the case at an early juncture in the case, but were unable to reach a mutually agreeable

9   settlement.  (*See* Gibbs Decl., ¶ 3.)

10       Plaintiffs' motion for class certification followed, and occupied much of the

11   parties' time through 2008.  (*See, e.g.*, Docs. 83-87, 100-09, 125-27, 143, 156.)  The end

12   result was that the Court certified Plaintiffs' consumer protection claims for class

13   treatment on a nationwide basis and declined to certify Plaintiffs' warranty claims.  The

14   class was defined as follows:

15
16       All current or former owners or lessees of a manual-transmission 2003
         Tiburon GT, produced on or before April 1, 2003, who paid for a
17       replacement to the flywheel assembly, clutch disc assembly, clutch cover
18       assembly, or clutch release bearing within the applicable warranty period.[2]

19   (*See* 11/6/08 Order [Doc. 159], ¶ 11.)  Hyundai petitioned for an immediate review of the

20   Court's class certification decision, which the Ninth Circuit denied.  (*See* Doc. 180.)

21       Hyundai also filed a motion for summary judgment, arguing that the class's

22   consumer protection claims should be dismissed because (a) Hyundai had no legal

23   obligation to disclose the alleged defect since it did not unreasonably implicate class

24   members' safety; (b) class members could not demonstrate that the alleged defect caused

25   their repairs; and (c) the class's claims were barred by the economic loss rule because

26

27   _____
     2   The parties agree that "the applicable warranty period" means (a) 10 years /
28   100,000 miles for original purchasers and lessees, or (b) 5 years/ 60,000 miles from
     original delivery for used purchasers.  (*See* Agreement (I)(E).)

they did not assert personal injury.  (*See* Doc. 217.)  Hyundai's motion for summary judgment was scheduled to be heard September 14, 2009, with trial of the class claims to begin on November 3, 2009, if the motion was unsuccessful.  (*See* Docs. 200, 208.)

Just three months prior to trial, in August 2009, the parties began settlement negotiations anew, this time with the assistance of David A. Rotman, a respected mediator at Gregorio, Haldeman, Piazza, Rotman, Frank & Feder.  After a full day of mediation, the parties had agreed on all material terms of a class-wide settlement and executed a term sheet memorialized their agreement.  (*See* Gibbs Decl., ¶ 3.)  The parties have since prepared a formal Settlement Agreement, which was preliminarily approved by the Court on March 3, 2010, and is now before the Court for final approval.  (*See id.*, Ex. 1.)

The settlement was negotiated at arm's length at all times, without regard to any award of attorneys' fees or other payments to Plaintiffs or their counsel.  (*See id.*)  Plaintiffs have separately moved for an award of attorneys' fees pursuant to California statutory fee-shifting provisions, which will be resolved by the Court independently of this motion and will not in any way reduce the relief available to the class under the settlement.  (*See* Docs. 286-295.)[3]

**B.    Terms of the Proposed Settlement**

**1.    Cash Reimbursements To Class Members**

Under the proposed settlement, class members who submit valid claims will be entitled to reimbursement for the cost of repair or replacement of their Tiburon's flywheel assembly, clutch disc assembly, clutch cover assembly, and/or release bearing (i.e., those parts Plaintiffs allege comprise the Tiburon's flywheel system, Hyundai refers to as the clutch system, and that for the purpose of the Settlement Agreement are referred to as "Flywheel/Clutch Parts").  The amount of the reimbursement will depend on the

---

[3]    Plaintiffs' fee application includes a detailed account of each step of the litigation. (*See* Doc. 287 at 8-13; Doc. 288 at 2-21.)

MEMO. ISO MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT
CASE NO. SACV 06-345 AHS (MLGx)

mileage of the vehicle at the time of the repair, and will be paid by Hyundai (through a debit card redeemable at ATMs) according to the following schedule:

- **100%** reimbursement for repair expenses incurred between 0 – 50,000 miles;
- **75%** reimbursement for repair expenses incurred between 50,001 – 75,000 miles; and
- **50%** reimbursement for repair expenses incurred between 75,001 – 100,000 miles.

(Agreement,[4] (II)(A)(4)-(6), (III)(C)(1).)  The only exceptions are for repairs using non-Hyundai parts or performed at a non-Hyundai service facility; in those cases, Hyundai will calculate the class members' reimbursement based on either what the claimant actually paid or the standard costs of comparable Hyundai parts and the estimated labor price had the repair been completed at a Hyundai service facility.  (*See id.*, (II)(A)(1)-(2).)

In addition, Hyundai will reimburse class members in full for all rental car expenses they incurred in connection with their repair, up to a maximum of $150.  (*Id.*, (II)(A)(3).

### 2.  Class Member Option For Hyundai Credit

If class members plan on purchasing another Hyundai vehicle or other Hyundai goods or services, they may wish to forego cash reimbursements in favor of Hyundai credit with a higher face value.  In that case, class members can choose to receive either:

- **125%** of the cash value of their claims in the form of a non-transferrable debit card redeemable for Hyundai goods and services over the next year;
- **175%** of the cash value of their claims in the form of a voucher redeemable (by class members or their immediate family members) toward the purchase of a new Hyundai vehicle at any time over the next year.

(Agreement, (III)(C)(2).)

---

[4]     The parties' Settlement Agreement is attached as Exhibit 1 to the Declaration of Eric H. Gibbs.

### 3.   The Claims Process

The process by which Tiburon owners can make a claim for repair reimbursements is designed specifically to impose a minimal burden on the class members.  The claim form is a single page that has been mailed to current and former Tiburon owners/lessees along with a notice explaining the settlement.  (*See* Agreement, Ex. A-2.)  Many if not most class members will only need to check two boxes, submit a copy of their repair receipt, and sign the following certification to qualify for a repair reimbursement under the settlement:

Before obtaining the repairs to my vehicle, I never:

(1)   materially modified the vehicle intending to increase its torque (unless the change was made by a Hyundai dealership), or

(2)   subjected the vehicle to street or track racing.

The information on this form is true and correct to the best of my knowledge and belief.  I agree to participate in the settlement described in the Notice that accompanied this claim form.  I authorize dealerships that serviced my vehicle to release records to Hyundai to confirm or substantiate my claim.

(*See id.*)

For class members who do not have a copy of their repair receipt (and do not want to visit their repair facility to obtain a copy), the claim form also includes a postcard that class members can send to the Hyundai dealership that conducted their repair.  The pre-printed postcard requests that the Hyundai dealership send repair and payment records directly to Hyundai.  (*See id.*, Ex. A-3.)

Hyundai is also responsible for verifying a class members' eligibility to recover under the Settlement Agreement and must give class members an opportunity to cure any deficiency in their claims.  (*See id.*, (III)(B).)  Class Counsel will be informed of any tentatively rejected claims and will have an opportunity to dispute the determination and confer with Hyundai to resolve the issue.  (*See id.*)  Any class member whose claim is ultimately denied will also have the right to review by an arbitrator at Hyundai's expense

(unless the arbitrator determines the class member acted in bad faith in pursuing arbitration review).  (*See id.*, (III)(F).)

### 4.  Mutual Release

In consideration for the class benefits provided by Hyundai under the proposed settlement, class members will release Hyundai and its parent company from all claims that arise from or relate to the repair of Flywheel/Clutch Parts within the applicable warranty period, with the exception of claims for personal injury, property damage (excluding damage to the Class Vehicle), and subrogation.  (*See* Agreement (IV)(D)(1).)  Likewise, Hyundai will release Plaintiffs, class members, and Plaintiffs' counsel from any claims related to the litigation or settlement of this Action.  (*Id.*, (IV)(D)(2)).

## III.  ARGUMENT

### A.  The Proposed Settlement Meets The Standard for Final Approval

A proposed class action settlement may be approved if the Court, after allowing absent class members an opportunity to be heard, finds that the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  In making this determination, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (2009) (quoting *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir. 1998)); *see also Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("voluntary conciliation and settlement are the preferred means of dispute resolution.  This is especially true in complex class action litigation…")).

The decision of whether to approve the parties' proposed settlement is committed to the sound discretion of the trial judge, and will not be overturned except upon a strong showing of a clear abuse of discretion.  *Hanlon*, 150 F.3d at 1026-1027.  The Ninth Circuit has, however, set forth a list of non-exclusive factors that a district court should

8

balance in deciding whether to grant final approval, namely:

(1)   The strength of plaintiffs' case;

(2)   The risk, expense, complexity, and likely duration of further litigation;

(3)   The risk of maintaining class action status throughout the trial;

(4)   The amount offered in settlement;

(5)   The extent of discovery completed, and the stage of the proceedings;

(6)   The experience and views of counsel;

(7)   The presence of a governmental participant; and

(8)   The reaction of the class members to the proposed settlement.

*Id.* at 963 (referred to hereafter as the "*Hanlon* factors").

"Basic to the process of deciding whether a proposed settlement is fair, reasonable and adequate is the need to compare the terms of the compromise with the likely rewards of litigation."  *In re TD Ameritrade Accountholder Litigation*, 2009 WL 6057238, *4 (N.D. Cal. 2009) (quoting from *Protective Committee for Independent Stockholders of TMT Trailer Ferry Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968)) (brackets and ellipsis removed).  The first four *Hanlon* factors are designed to assist the Court in making this comparison.  By evaluating the strength of the Plaintiffs' case; the risk, expense, complexity, and delay associated with further proceedings; and the risk of maintaining class certification through trial, the Court can get a good idea of the value of class members' claims.  The Court can then evaluate the amount offered by the parties' proposed settlement in context to determine whether it provides fair compensation for those claims—or, stated another way, "whether the interests of the class are better served by the settlement than by further litigation."  Manual for Complex Litigation (Fourth) § 21.61 (2004).  The remaining *Hanlon* factors offer additional perspective on whether the amount offered by the settlement is fair, with the fifth factor designed to ensure that the parties and the Court have sufficient information to intelligently assess the value of class members' claims, the sixth and eighth factors taking into account class counsel's and individual class members' opinions about the settlement, and the seventh factor accounting for the position or views of any governmental participant.

A thorough evaluation of the *Hanlon* factors in this case shows that the proposed

9

MEMO. ISO MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT
CASE NO. SACV 06-345 AHS (MLGx)

settlement provides excellent value to class members without the risk and delay associated with further litigation, and should be approved as a fair, adequate, and reasonable resolution of their claims against Hyundai.

### 1.     The Strength of Plaintiffs' Case

In many class action settlements, the parties expound on the weaknesses of the plaintiffs' case to justify the compromise before the Court.  Here, in a case that was speculative from the outset and hotly contested throughout, Plaintiffs pressed through Hyundai's constant resistance to develop a relatively strong case that Hyundai is liable for concealing an inherent defect in their vehicles.  Without reciting the entire record, Plaintiffs developed extensive expert and factual evidence that the flywheel system in class vehicles suffered from an inherent defect that often required replacement within the applicable warranty period; that Hyundai learned during pre-production testing that the flywheel system was often unable to withstand the normal operating temperatures generated by the 2003 Tiburon GT's new V6 engine; and that Hyundai secretly began redesigning the flywheel system to fix the problem of excessive heat build-up, yet decided to introduce the new 2003 Tiburon GT to the public anyway.  (*See* Doc. 226 at 3-6.)  Under these circumstances, the strength of the case led to the substantial recovery ultimately negotiated for class members.  Or, in short, the strength of Plaintiffs' case (at least on liability) is demonstrated by the strength of the settlement itself.

Even though Plaintiffs had shifted Hyundai's risk of liability to their favor by the time they negotiated a settlement on the class's behalf, Plaintiffs' claims still faced a number of obstacles that could reduce or even eliminate class members' ultimate recovery after trial and appeal.  For example, under the consumer protection law applicable to Plaintiffs' claims, a known defect that manifests itself *within the applicable warranty period* is generally considered a material fact that manufacturers like Hyundai are required to disclose.  *See, e.g., Clemens v. DaimlerChrysler Corp.,* 534 F.3d 1017, 1026 (9th Cir. 2008); *Falk v. General Motors*, 496 F.Supp.2d 1088, 1095-96 (N.D. Cal. 2007).  The fact that the flywheel system at the heart of this case included parts with

MEMO. ISO MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT
CASE NO. SACV 06-345 AHS (MLGx)

varying warranty periods could therefore prove problematic for class members—especially those at higher mileages when not all of the flywheel system's components were under warranty and when wear and tear becomes a more plausible explanation.  It is not unusual for a vehicle's clutch lining to wear down and require replacement between 50,000 and 100,000 miles, resulting in a repair expense of a few hundred dollars. Whether high-mileage class members' recovery would be reduced by this expense (which may well have occurred anyway) or by the part costs and labor of the other flywheel system parts no longer under warranty were material barriers to recovery at trial.

Other concerns that could reduce or eliminate class members' recovery are discussed in the ensuing sections and warrant consideration.  But without reaching any ultimate conclusions, there is at least a fair likelihood that had the case proceeded through a liability and damages phase, as well as through further appellate proceedings, Plaintiffs and at least some class members would have been entitled to a recovery for their flywheel system repair costs.  *See Officers for Justice*, 688 F.2d at 625 (At the final approval stage, "[n]either the trial court nor [an appellate] court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.").  The strong possibility of at least partial success on liability at trial justifies robust settlement payments to class members, which is exactly what Class Counsel have negotiated here.

### 2.    The Risk, Expense, Complexity, and Likely Duration of Further Litigation

The second *Hanlon* factor recognizes that "[s]ettlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class."  *Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832, * 10 (N.D. Cal. 2010) (quoting *Curtis-Bauer v. Morgan Stanley & Co.*, 2008 WL 4667090, *4 (N.D. Cal. 2008).  Assessing the fair

11

settlement value of class members' claims therefore requires the Court to assess the complexity, delay, risk, and expense associated with prosecuting those claims through a final judgment and discount the potential recovery accordingly.

The risk of non-recovery for class members is not so great as it was four years ago, but significant hurdles remain that should be taken into account in evaluating the fairness of the settlement. First, Hyundai has moved for summary judgment on three grounds, including that Plaintiffs cannot make a prima facie case that the flywheel systems in 2003 Tiburon GTs suffer from an inherent defect. Prior to trial, Hyundai almost certainly would have also moved to exclude Plaintiffs' expert testimony under *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993), to exclude Plaintiffs' statistical evidence as irrelevant hearsay, and for other *in limine* remedies. Notwithstanding Plaintiffs' well-developed evidentiary record, their experts' strong qualifications, and the presence of hearsay exceptions, Hyundai's motions carry with them appreciable risks. *See Rodriguez,* 563 F.3d at 966 (approval under second *Hanlon* factor warranted where significant procedural hurdles, such as summary judgment, *Daubert* motions, and bifurcation issues, remained). Likewise, the possibly that Hyundai would prevail at the liability phase of trial, and successfully convince a jury that it did not conceal a material fact from Tiburon buyers in violation of California consumer protection law, must be taken into account in valuing class members' claims.

Most significantly, even after a successful liability phase of trial, class members would still have to bear the risk and expense associated with the damages phase. Because it is unknown how many Tiburon owners paid for a flywheel system repair or how much each class member paid for those repairs, this is a case where after the common questions of liability were decided, class members would have had to come forward to individually establish their membership in the class and amount of compensable repair expenses. *See Sav-on Drug Stores, Inc. v. Superior Court*, 34 Cal.4th 319, 334 (2004) (recognizing the need in certain class case for each class member to come forward and individually establish eligibility and damages); *Kamar v.*

*Radio Shack Corp.*, 254 F.R.D. 387, 399 (C.D. Cal. 2008) (citing *Sav-On*); *see also Pella Corp. v. Saltzman*, 2010 WL 1994653, *3-4 (affirming trial court order contemplating a class-wide liability phase followed by an individualized damages phase in a case concerning defective windows installed in residences).  A settlement that allows for class members to recover through a streamlined claims process rather than through individual jury or administrative proceedings is far more convenient for class members.

> 3.      **The Risk of Maintaining Class Action Status Through Trial**

Although Plaintiffs' consumer protection claims were certified for class treatment in November 2008, the Court maintained discretion to revisit its certification decision throughout the legal proceedings and to modify or even decertify the class.  *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 579 (9th Cir. 2010).  For instance, as trial proceeded, the Court may well have decided that used purchasers—especially those who did not purchase from a Hyundai dealership—should be excluded from the class.  Class members who did not incur repairs until reaching higher mileages could also have been carved out, owing to the complexities discussed above.  Hyundai might even have convinced the Court during trial that Plaintiffs' case had become totally unmanageable on a class-wide basis and required decertification.

Out-of-state purchasers bore even greater risks of finding themselves excluded from the class and thus unable to recover anything through this litigation.  Hyundai had previously petitioned the Ninth Circuit to immediately review the nationwide scope of the Court's certification order and surely would have pursued similar arguments through a post-judgment appeal.  Notably, the Ninth Circuit is expected to take up the issue of nationwide certification of UCL and CLRA claims in *Mazza v. American Honda Motor Co.,* No. 09-55376, Doc. 47 (oral argument scheduled for June 9, 2010).  Properly calibrating the efficiencies to be gained from nationwide certification with due process and choice-of-law issues continues to be one of the most active and hotly disputed topics of class action jurisprudence, meaning that nationwide classes virtually always bear some risk of modification.  *See Rodriguez*, 563 F.3d at 966 (decertification risk posed by

1  nationwide scope of the class weighed in favor of settlement approval).

2          **4.**     **The Amount Offered In Settlement**

3         The first three *Hanlon* factors give the Court a perspective from which to assess

4  the fourth and most important factor:  the amount offered by the settlement.  A review of

5  the compensation offered by the settlement negotiated by Class Counsel in this case

6  shows that it provides class members with excellent value, well attuned to the strength of

7  their claims and especially attractive in light of the risks, expense, and delay that class

8  members will no longer have to bear.

9         Class members who incurred flywheel system repair expenses within their

10  Tiburon's first 50,000 miles can receive a 100% cash recovery under the settlement;

11  those who incurred repair expenses between 50,001 miles and 75,000 miles can receive a

12  75% cash recovery; and those who incurred repair expenses between 75,001 miles and

13  100,000 miles can receive a 50% cash recovery.  In all instances, class members can

14  instead opt to receive a debit card redeemable at Hyundai service centers worth 25%

15  more than the cash payment they would otherwise be entitled to, or they can opt for a

16  voucher redeemable on a new Hyundai vehicle worth 75% more.

17         The settlement provides for these recoveries without the risk of a liability phase of

18  trial or delay of a subsequent appeal.  Even more importantly, it provides for these

19  recoveries without the need for class members to appear for a damages phase of trial

20  (either before a second jury or appointed referee) and demonstrate their membership in

21  the class and amount of compensable damages.  The settlement allows class members to

22  forego this process by simply signing a pre-printed attestation that they did not race their

23  Tiburon or modify their Tiburon with the intent of increasing its torque, and then

24  submitting a repair receipt for reimbursement.  Class members can submit claims for

25  multiple repairs, they can recover car rental expenses up to $150, and if they did not

26  retain their receipts, they can send a pre-printed postcard to their Hyundai dealership

27  requesting that a copy of the receipt be submitted on their behalf.   And unlike many

28  class actions, where administrative costs and attorneys' fees are paid out of class

14

1   members' recovery, class members here are receiving the benefit of their legal

2   representation and a streamlined claims process in addition to their cash reimbursements.

3        The reason that class members who incurred repair expenses at higher mileages

4   are receiving a lower recovery has to do with the strength of these class members'

5   damages claims.  As discussed above, Hyundai can be held liable only for the

6   consequences of failing to disclose material information to customers, and whether a

7   known defect constitutes material information often depends on whether the defect

8   ultimately manifests itself inside of the applicable warranty period.  At higher mileages

9   some components of the flywheel system remain under warranty but others do not,

10  meaning that some of the part costs and most of the labor costs associated with a high-

11  mileage repair likely would not be recoverable.  In addition, the higher the mileage on

12  the vehicle, the more likely a portion of the repair expense (namely replacing the worn

13  clutch lining) would have been required due to ordinary wear and tear.

14       The proposed settlement thus offers fair, adequate, and reasonable compensation

15  for all class members' claims and does so in a way rationally related to the strength of

16  their claims.  In light of the certain and substantial recoveries provided by the settlement,

17  there is little to no upside to continued litigation with all its attendant risk, complexity,

18  delay, and expenses.  The class's interests are instead best served by approving and

19  implementing the settlement now before the Court.

20       **5.**     **The Extent of Discovery Completed and the Stage of the**

21              **Proceedings**

22       The fifth *Hanlon* factor exists to ensure that the amount of discovery and extent of

23  litigation was sufficient to allow Plaintiffs' counsel to intelligently weigh the strength

24  and potential value of class members' claims prior to negotiating their settlement.  *See*

25  *Rodriguez*, 563 F.3d at 967.  For that reason, as well as the added protections that exist

26  when class representatives and class counsel have been appointed by the Court,

27  settlements negotiated after formal class certification are entitled to a higher presumption

28  of fairness.  *See Hanlon*, 150 F.3d at 1026.

1   This case had proceeded past class certification, through fact discovery, expert
2   discovery, and summary judgment briefing, and was approaching trial when the class-
3   wide settlement was reached.  (*See also* Doc. 287 at 8-11 (describing the scope of
4   Plaintiffs' investigation and discovery).)  Class Counsel was thus able to negotiate based
5   on a full evidentiary record and a thorough understanding of the strengths and
6   weaknesses of class claims.  The advanced procedural stage of this case thus weighs in
7   favor of final approval.

### 6.   The Experience and Views of Counsel

9   Class Counsel recommend this settlement without hesitation as in the best interests
10  of the class they have been appointed to represent.  *See Gribble v. Cool Transports Inc.*,
11  2008 WL 5281665, *9 (C.D. Cal. 2008) ("Great weight is accorded to the
12  recommendation of counsel, who are most closely acquainted with the facts of the
13  underlying litigation.")  Class Counsel specialize in class action litigation and have
14  extensive experience with automotive defect actions like this one, including the *Roy v.*
15  *Hyundai* airbag case that was successfully resolved before this Court in 2006 and the
16  *Bacca v. BMW* sub-frame case that was resolved before Judge Pregerson last year.  The
17  monetary payments offered to individual class members is about as favorable as Class
18  Counsel have seen in this type of case, providing class members with all or very close to
19  what they could expect to receive after a successful verdict, but without the uncertainty
20  and delay associated with reaching that point.  Class members' ability to recover for car
21  rental expenses is a particularly favorable term that seldom can be negotiated on behalf
22  of class members in automotive defect cases.  In addition, the claims process is very
23  consumer friendly, providing every incentive for class members to participate in the
24  settlement and offering a much easier process than if a formal damages phase of trial
25  were required.

### 7.   The Presence of a Governmental Participant

27  There is no governmental entity involved in this litigation.  However, the United
28  States Attorney General, the 50 state attorney generals, and the attorney general of the

District of Columbia were all notified of the proposed settlement pursuant to the Class Action Fairness Act.  *See* 28 U.S.C. § 1715.  None of these state or federal officials have raised any objection or concern regarding the settlement.

**8.     The Reaction of the Class Members To The Proposed Settlement**

The final *Hanlon* factor is concerned with class members' reaction upon learning of the proposed settlement and their opportunity to comment or object.  Pursuant to the Court's preliminary approval order, Hyundai identified 32,449 current and form owners of 2003 manual-transmission Tiburon GTs[5] and mailed these potential class members notice of the settlement and claim form.  In addition, Class Counsel have emailed notice of the settlement to about 2,500 Hyundai owners who contacted Class Counsel over the past five years to share their experiences and ask to be kept apprised of the litigation.

The class's reaction to the settlement has been quite positive.  Consider, for example, the following excerpts from class members who took the time to write to Class Counsel and express their support for the settlement.

> I purchased a 2003 Hyundai Tiburon GT V6 in august of 2003, and had to replace the clutch and flywheel at around 30,000 miles.  I then had to do this again about a year – year and a half later.  I have been told about the possible settlement, and I think the idea of people in this situation being compensated for the cost of this is fair and am happy to hear this news.
>
> --Michael B.

> I want to thank all you guys for standing up for all of us in this matter.  After over looking the settlement at hand I myself th[i]nk it's very fair.
>
> --Stephen C.

> Thank you for your efforts in this class action settlement.
>
> --Patrick O.

---

[5]     Altogether, Hyundai sold 12,652 of these vehicles.

17

Thank you for doing this.  I didn't think there was anything I could do other than make sure no one I know ever buys a Hyundai after my experience with them and their "service."

--Troy B.

I just wanted to express how happy I am that there has been a decision to move forward on the Tiburon clutch issue.

--Tracey J.

I am very happy to have received information regarding the Hyundai class action lawsuit and I am happy that I was not the only victim in that situation.

-- Edwin H.

I just want to say how pleased I am to know that Hyundai will finally be held accountable for their actions.

--Alex A.

Thank you for the good news and your excellent work on behalf of Tiburon owners.

--David T.

Thank you so much.  About time!

--Holly V.

All told, over a hundred Hyundai owners have taken the time to call or write to Class Counsel, sharing their experiences and asking how they can participate in the settlement.  (*See* Gibbs Decl., Exs. 3-6 for the written correspondence.)  Class Counsel have been pleased to hear from so many people who they've been fighting for over the past few years, and pleased that their reaction to the settlement and to our work has been so positive.  Even hearing from people who are not in the class certified by the Court and so will not benefit from the settlement—typically they have a different Hyundai vehicle or their repair occurred completely outside of warranty—shows that this is a desirable settlement that people want to be a part of.

With almost five months remaining in the claims period, 867 class members have already submitted claims for reimbursement under the settlement.  (*See* Gibbs Decl., ¶

MEMO. ISO MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT
CASE NO. SACV 06-345 AHS (MLGx)

14.)  And out of all the people who have been notified of the settlement, only nine have chosen to opt out of the settlement.  (*See id.*, Ex. 8.)[6]  Only one class member has objected to the settlement.  (*See* Doc. 300.)[7]  That class member, Mr. Watase, purchased a used Tiburon in April 2007, and six months later paid for a flywheel replacement as well as for other repair work.  It is questionable whether Mr. Watase could prove on an individual basis that Hyundai owed him any legal duty under California consumer protection law, as he did not buy his Tiburon from a Hyundai dealer but from a third party, who he notes likely "would have recognized" that the flywheel and clutch needed to be replaced.  Mr. Watase is entitled under the negotiated settlement to recover 75% of the cost of his flywheel system repair, but objects on the basis that he would like 100% reimbursement.  In contrast, another class member who purchased a used Tiburon wrote to the Court saying, "I fully recommend that this case be settled in favor of the class." (*See* Doc. 305.)  The 75% reimbursement for cars with over 50,000 miles is reasonable in light of the difficulties of proving damages identified above, and Mr. Watase's case only serves to illustrate that fact.  If this case were tried and Mr. Watase required to come forward to establish his claim during the damages phase, he very well may not have been awarded anything.

The fact that Mr. Watase is the sole objecting class member speaks well of the proposed settlement.  *See National Rural Telecommunications Cooperative v. DIRECTV, Inc.* 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption

---

[6]     It appears that most if not all of these people did not actually incur a flywheel system repair, and so are not part of the class in the first place.  Nevertheless, to ensure that these nine people will not be bound by the settlement, they are specifically excluded from the proposed final judgment pursuant to Rule 23(c)(3).

[7]     One other class member, Michael Snay, wrote to the Court to say that he "accept[s] the outcome of this settlement," but also "ask[s] the court to examine for increased payout to those whom have endured additional stress, emotional harm."  (*See* Doc. 298.) "If additional compensation is not available in the most expeditious manner," Mr. Snay continues, "the court may disregard this request for additional compensation."

19

1  that the terms of a proposed class settlement action are favorable to the class members.");

2  *Garner,* 2010 WL 1687832 at *14 ("[T]he Court may appropriately infer that a class

3  action settlement is fair, adequate, and reasonable when few class members object to it.")

4  (internal quotation marks omitted).  When Mr. Watase's isolated concerns are weighed

5  against the enthusiastic support of other class members, the interest and intent to

6  participate shown by so many who have filed claims or contacted Class Counsel, and the

7  rest of the *Hanlon* factors, it is clear that the proposed settlement should be approved as a

8  fair, adequate, and reasonable resolution to the litigation.

9  **IV.   CONCLUSION**

10      For the foregoing reasons, the parties respectfully request that the Court grant final

11  approval of the proposed settlement and enter the Proposed Final Order and Judgment

12  submitted herewith.

13

14  DATED: June 4, 2010               Respectfully submitted,

15                                    **GIRARD GIBBS LLP**

16

17                                    By:   /s/ Eric H. Gibbs

18                                    Dylan Hughes

19                                    Geoffrey A. Munroe

20                                    601 California Street, Suite 1400
                                      San Francisco, California 94108

21                                    Telephone: (415) 981-4800

22                                    Facsimile: (415) 981-4846

23                                    Norman E. Siegel

24                                    Todd Hilton

25                                    **STUEVE SIEGEL HANSON LLP**
                                      460 Nichols Road, Suite 200

26                                    Kansas City, MO 64112

27                                    Telephone: (816) 714-7100
                                      Facsimile: (816) 714-7101

28

                                      *Co-Lead Class Counsel*

                                        20