1  BINGHAM McCUTCHEN LLP
   Todd E. Gordinier (SBN 82200)
2  todd.gordinier@bingham.com
   Jason H. Anderson (SBN 172087)
3  jason.anderson@bingham.com
   Craig A. Taggart (SBN 239168)
4  craig.taggart@bingham.com
   600 Anton Boulevard, 18th Floor
5  Costa Mesa, CA  92626-1924
   Telephone:  714.830.0600
6  Facsimile:  714.830.0700

7  HYUNDAI MOTOR AMERICA
   Jason R. Erb (SBN 180962)
8  jasonerb@hmausa.com
   10550 Talbert Ave.
9  P.O. Box 20850
   Fountain Valley, CA  92728-0850
10 Telephone:  714.965.3393
   Facsimile:   714.965.3815

11
   Attorneys for Defendant
12 HYUNDAI MOTOR AMERICA

13              UNITED STATES DISTRICT COURT

14             CENTRAL DISTRICT OF CALIFORNIA

15 | MICHAEL PARKINSON, et al. on | Case No. SACV 06-345 AHS (MLGX)
16 | behalf of themselves and all others
   | similarly situated, | Hon. Alicemarie H. Stotler
17 |                          Plaintiffs, | **DEFENDANT HYUNDAI MOTOR
18 |        v. | AMERICA'S OPPOSITION TO
   |          | PLAINTIFFS' MOTION FOR AN
19 | HYUNDAI MOTOR AMERICA, a | AWARD OF ATTORNEYS' FEES
   | California Corporation, | AND EXPENSES**
20 |                          Defendant. | Date:         June 28, 2010
21 |          | Time:         11:00 a.m.
   |          | Ctrm:         10A
22
23
24
25
26
27
28

1

## TABLE OF CONTENTS

2

Page

3 I.     INTRODUCTION ....................................................................1

4 II.    FACTUAL BACKGROUND ......................................................3

5        A.    Brief History Of Case..................................................3

6        B.    Update On The Claims Process ....................................4

7 III.   PLAINTIFFS' ATTORNEYS' FEES REQUEST IS EXCESSIVE

8        AND SHOULD BE SUBSTANTIALLY REDUCED ..................4

9        A.    Legal Standard For Calculating Amount Of Attorneys' Fees ............4

10       B.    Plaintiffs Fail To Provide Sufficient Documentation For Their

11             Attorneys' Fees Request .....................................................6

12       C.    Plaintiffs' Lodestar Calculation Is Inflated.........................8

13             1.    The Amount Of Hours Claimed To Have Been Expended

14                   Is Not Reasonable In Light Of The Litigation In This

15                   Case..................................................................8

16             2.    The Hourly Rates That Plaintiffs Are Seeking Under The

17                   Loadstar Are Not Reasonable ...................................12

18       D.    The Court Should Apply A Negative Multiplier After It Adjusts

19             Plaintiffs' Lodestar Calculation .........................................15

20             1.    The Lack Of Benefit To The Class Requires The Use Of

21                   A Negative Multiplier Because Plaintiffs' Requested

22                   Fees Significantly Exceed The Amount Of The Class

23                   Recovery ..............................................................15

24             2.    The Other Factors Do Not Outweigh The Lack Of

25                   Benefit To The Class .............................................18

26             3.    Plaintiffs' Citation To *Roy* In Support Of Their

27                   Multiplier Is Grossly Misleading..............................19

28

-i-

TABLE OF CONTENTS
(continued)

Page

E.  Cross-Checking The Lodestar Calculation To The Amount Of
    Class Recovery Confirms That A Negative Multiplier Should
    Be Applied..........................................................................................20

IV.  PLAINTIFFS' COST REQUEST SHOULD BE SUBSTANTIALLY
     REDUCED .........................................................................................22

     A.  Plaintiffs Provide Insufficient Documentation For Their Costs ........22

     B.  Plaintiffs Seek Costs That Are Not Recoverable Under
         California Law....................................................................................23

V.  CONCLUSION .........................................................................................25

A/73377308.5

1

2

## <u>TABLE OF AUTHORITIES</u>

3

**Page(s)**

4

**FEDERAL CASES**

5

*Alticor, Inc. v. Nat'l Union Fire Ins. Co. of Pa.*,
    No. 1:07-CV-522, 2008 WL 4057845 (W.D. Mich. Aug. 28, 2008).................6

6

7

*Brown v. Pro Football, Inc.*,
    839 F. Supp. 905 (D.C.C. 1993) ......................................................................14

8

9

*Create-A-Card, Inc. v. Intuit, Inc.*,
    No. C 07-06452, 2009 WL 3073920 (N.D. Cal. Sept. 22, 2009).....3, 4, 5, 15, 16

10

*Davis v. Los Angeles W. Travelodge*,
    No. CV08-08279, 2009 WL 5227897 (C.D. Cal. Dec. 21, 2009).......................7

11

12

*Fischer v. SJB-P.D. Inc.*,
    214 F.3d 1115 (9th Cir. 2000) ...........................................................................7

13

14

*Fleury v. Richemont N. Am., Inc.*,
    No. C-05-4525 EMC, 2008 WL 3287154 (N.D. Cal. Aug. 6, 2008).................4

15

16

*Hensley v. Eckhart*,
    461 U.S. 424 (1983)........................................................................................7, 9

17

18

*In re Washington Pub. Power Supply Sys. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) .............................................................................8

19

20

*Intel Corp. v. Terabyte Int'l, Inc.*,
    6 F.3d 614 (9th Cir. 1993) ........................................................................1, 7, 8

21

22

*Jane L. v. Bangerter*,
    61 F.3d 1505 (10th Cir. 1995) ...........................................................................8

23

24

*JPmorgan Chase Bank, N.A. v. PT Indah Kiat Pulp & Paper Corp. Tbk*,
    No. 02 C 6240, 2010 WL 1611017 (N.D. Ill. Apr. 21, 2010) ...........................6

25

26

*Mangold v. Cal. Pub. Utils. Comm'n*,
    67 F.3d 1470 (9th Cir. 1995) .............................................................................6

27

28

*Masimo Corp. v. Tyco Healthcare Group, L.P.*,
    No. CV 02-4770, 2007 WL 5279897, (C.D. Cal. Nov. 5, 2007) .....................14

-iii-

*McIntosh v. McAfee, Inc.*,
   No. C06-07694 JW, 2009 WL 673976 (N.D. Cal. Mar. 13, 2009).............20, 21

*Mogck v. Unum Life Ins. Co. of Am.*,
   289 F. Supp. 2d 1181 (S.D. Cal. 2003) ..............................................7

*Page v. Something Weird Video*,
   960 F. Supp. 1438 (C.D. Cal. 1996).................................................24

*Shakey's, Inc. v. Covalt*,
   704 F.2d 426 (9th Cir. 1983) ..........................................................6

*Simon v. Toshiba Am.*,
   No. C 07-06202 MHP, 2010 WL 1757956 (N.D. Cal. April 30, 2010).......16, 17

*Stewart v. Gates*,
   987 F.2d 1450 (9th Cir. 1993) .........................................................7

*Suzuki v. Hitachi Global Storage Techs., Inc.*,
   No. C 06-7289 MHP, 2010 WL 956896 (N.D. Cal. Mar. 12, 2010) ...................
   .....................................................................................12, 17, 21, 22

*Taco Bell Corp. v. Continental Casualty Co.*,
   388 F.3d 1069 (7th Cir. 2004) ....................................................6, 22

*Thompson v. Barrett*,
   599 F. Supp. 806 (D.D.C. 1984).....................................................14

*True v. Am. Honda Motor Co.*,
   No. EDCV 07-0287, 2010 WL 707338, at *20 (C.D. Cal. Feb. 26, 2010)...........
   ....................................................................................4, 16, 17

*U.S., ex rel. Glumac v. Don Todd Associates, Inc.*,
   No. C 09-01442 WHA, 2010 WL 545839 (N.D. Cal. Feb. 11, 2010) ..............22

*Vasquez v. Coast Valley Roofing, Inc.*,
   266 F.R.D. 482 (E.D. Cal. 2010)...................................................6, 21

*Vizcaino v. Microsoft, Corp.*,
   290 F.3d 1043 (9th Cir. 2002) .......................................................21

*Welch v. Metro. Life Ins. Co.*,
   480 F.3d 942 (9th Cir. 2007) ..........................................................7

-iv-

*Winterrowd v. Am. Gen. Annuity Ins. Co.*,
  556 F.3d 815 (9th Cir. 2009) ...................................................................... 6

*Zucker v. Occidental Petroleum Corp.*,
  192 F.3d 1323 (9th Cir. 1999) ................................................................. 2, 5

**STATE CASES**

*Chavez v. Netflix, Inc.*,
  162 Cal. App. 4th 43 (2008) ............................................................. 3, 6, 21

*Gorman v. Tassajara Dev. Corp.*,
  178 Cal. App. 4th 44 (2009) ....................................................................23

*In re Consumer Privacy Cases*,
  175 Cal. App. 4th 545 (2009) ............................................................. 5, 20

*Ketchum v. Moses*,
  24 Cal. 4th 1122 (2001) ........................................................................... 9

*Ladas v. Cal. State Auto. Ass'n*,
  19 Cal.App.4th 761 (1993) ......................................................................23

*Lealao v. Beneficial Cal., Inc.*,
  82 Cal. App. 4th 19 (2000) ......................................................................20

*Thayer v. Wells Fargo*,
  92 Cal. App. 4th 819 (2001) ..................................................................... 5

**FEDERAL STATUTES**

Fed. R. Civ. P. 23(h) ...................................................................... 3, 4, 6

**STATE STATUTES**

Cal. Civ. Code § 1033.5....................................................................24, 25

**RULES**

Local Rule 54-3...........................................................................22, 23

A/73377308.5

## I.  INTRODUCTION

Plaintiffs' attorneys' fees request is grossly excessive by any measure.  The motion, in its present form, cannot be granted as Plaintiffs' request is neither factually nor legally supportable under the circumstances of this case.  Specifically, Plaintiffs' fee request is not accompanied by anything close to adequate documentation.  Most fundamentally, Plaintiffs' fee request would, in derogation of well settled and controlling authority, bestow upon these attorneys a dollar amount equal to at least three or four times the entire recovery to the class in this case.

As this Court well knows, there is a substantial question about whether the "Flywheel System" of the 2003 Hyundai Tiburon is defective at all.  More than three quarters of the owners of this vehicle encountered no problems whatsoever.  Notwithstanding its views on the merits of this action, Hyundai has reached an agreement with the Plaintiff class which, among other things, preserves the good will and customer satisfaction Hyundai has worked so hard to achieve with its owners.  That settlement, however, would be dwarfed by the windfall that counsel for Plaintiffs seek by this application, and this Court has the obligation to exercise its discretion to prevent such a windfall from taking place.

Plaintiffs' factual submission in support of this motion fails to provide the material necessary to enable this Court (or Hyundai) to, at a minimum, assess the reasonableness of the hours Plaintiffs claim they spent or the rates they seek to recoup as it does not include any of the bills Plaintiffs' counsel claims to have generated.  The Ninth Circuit Court of Appeals has made it clear that the party challenging a fee application is "entitled to see just what was charged and why." *Intel Corp. v. Terabyte Int'l, Inc.,* 6 F.3d 614, 623 (9th Cir. 1993).  Even without Plaintiffs' time records, there is little doubt that both the hours submitted and the rates claimed are not supportable and would result in a substantial windfall to Plaintiffs' attorneys.  By way of example, the hours submitted by Plaintiffs' vague

-1-

1  and indecipherable charts far exceed (almost double) the hours spent by Hyundai

2  in defending this matter.  Moreover, this request seeks to have this Court award

3  Plaintiffs' counsel their 2010 rates for the entire period this litigation was pending

4  rather than the rates when the time was actually incurred.  While Plaintiffs claim

5  that the average rate is $471 for paralegals and all attorneys, this Court itself knows

6  from declarations submitted by these same firms in the *Roy* matter in March 2006

7  (around the time this case was initiated), that Mr. Siegel's hourly rate at that time

8  was $475, Mr. Gibbs' hourly rate was $450, and Mr. Hughes' hourly rate was

9  $300.  Thus, the top rate for Messrs. Gibbs and Siegel when this action was

10  initiated now becomes the ***average*** rate for the fees these same firms are now

11  claiming for this case.

12       Compounding this improper and unreasonable "inflation" is the

13  accompanying request for a multiplier to double the lodestar calculation.  There is

14  no legal support for this request under the circumstances of this case.  To date there

15  have been 1,043 claims (out of the 11,693 vehicles sold) at an average dollar value

16  of approximately $1,181.  It is a simple mathematical calculation to see that when

17  this claim rate is applied to the terms of the Settlement Agreement---which

18  provides that the actual amount reimbursed will depend upon the vehicle's mileage

19  and will range from 50% to 100%----the entire class recovery is not likely to

20  exceed $2 million (at best).  That means, in turn, that the amount requested here

21  will be more than four times the entire class recovery in this litigation - *far more*

22  *than the benchmark in this Circuit of 25% of the total amount of class recovery.*

23       It is plain that Plaintiffs' attorneys are overreaching and this fee request

24  must, at a minimum, be substantially reduced.  As this Court well knows, "whether

25  the attorneys' fees come from a common fund or are otherwise paid, the district

26  court must exercise its inherent authority to assure that the amount and mode of

27  payment . . . ***are fair and proper***."  *Zucker v. Occidental Petroleum Corp.*, 192

28  F.3d 1323, 1328 (9th Cir. 1999) (emphasis added).  Indeed, "[i]t is clearly within

-2-

1   the Court's discretion to award less in fees than the amount sought by counsel,

2   even absent defendant's objection to the requested amount." *Create-A-Card, Inc.*

3   *v. Intuit, Inc.*, No. C 07-06452, 2009 WL 3073920, at *2 (N.D. Cal. Sept. 22,

4   2009).

5         Significantly, "[e]mpirical studies show that, <u>regardless whether the</u>

6   <u>percentage method or the lodestar method is used,</u> <u>fee awards in class actions</u>

7   <u>average around one-third of the recovery</u>." *Chavez v. Netflix, Inc.*, 162 Cal. App.

8   4th 43, 66 n.11 (2008) (citation omitted) (emphasis added).  Furthermore, the

9   advisory committee notes for Rule 23(h) expressly recognize that, '[i]n some cases,

10   it may be appropriate to defer some portion of the fee award until actual payouts to

11   class members are known." Fed. R. Civ. P. 23(h), 2003 advisory committee notes.

12         For the reasons set forth herein, Hyundai respectfully suggests that the Court

13   deny this motion as presented and defer a ruling on Plaintiffs' fee application until

14   the entire amount of claims can be determined and until Plaintiffs' counsel submits

15   bills, showing not only the hours incurred as they were incurred, but the rate

16   applicable at the time the work was done.

17   **II.**    **FACTUAL BACKGROUND**

18        **A.**   <u>**Brief History Of Case**</u>

19         Plaintiffs filed their First Amended Complaint in this case in September

20   2006 asserting five claims for relief based on allegations that there was a defect in

21   the "Flywheel System" in the 2003 Hyundai Tiburon ("Class Vehicle").  As this

22   Court well knows, Hyundai presented evidence demonstrating that the purported

23   Flywheel System failures in the named-plaintiffs' vehicles were due to extraneous

24   factors (e.g., modifications, abusive driving, etc.) and not the manifestation of any

25   purported defect.

26         Plaintiffs conducted very little discovery during this case.  Plaintiffs <u>took</u>

27   <u>only one fact witness deposition</u> and Plaintiffs propounded only two sets of

28   document requests, one set of special interrogatories and one set of requests for

1  admissions.  (Taggart Decl., ¶ 13.)  On November 6, 2008, the Court issued its

2  order denying class certification as to three out of these five claims; granting it as

3  to Plaintiffs' CLRA and UCL claims.  (*Id.*, ¶¶ 26-27.)

4      It should also be noted that although Plaintiffs attempt to portray this as a

5  complicated case, they argued precisely the opposite when they asked this Court to

6  appoint them lead counsel: "This is a relatively uncomplicated case involving a

7  single vehicle defect.  The legal issues will be straightforward and factual

8  discovery contained."  (Taggart Decl., Ex. B.)

9      **B.    Update On The Claims Process**

10     The Preliminarily Approved Settlement in this case sets up a claims process

11 to reimburse class members that had to pay to repair or replace their Flywheel

12 Systems within the agreed upon warranty period.  Depending on the mileage at the

13 time of repair, qualifying class members may receive anywhere from 50% to 100%

14 reimbursement.  There are 11,693 Class Vehicles.  (Erb Decl., ¶ 2.)

15     To date there have been 1,043 claims (out of the 11,693 vehicles sold) at an

16 average dollar value of approximately $1,181.  (Erb Decl., ¶ 3.)

17 **III.  PLAINTIFFS' ATTORNEYS' FEES REQUEST IS EXCESSIVE AND**

18     **SHOULD BE SUBSTANTIALLY REDUCED**

19     **A.    Legal Standard For Calculating Amount Of Attorneys' Fees**

20     Federal Rule of Civil Procedure 23(h) provides that, "[i]n a certified class

21 action, the court may award reasonable attorney's fees and nontaxable costs that

22 are authorized by law or by the parties agreement."  Fed. R. Civ. P. 23(h).  Because

23 Plaintiffs' claims are California state law claims, California law governs the

24 availability of attorneys' fees and costs.  *Create-A-Card, Inc. v. Intuit, Inc*., No. C

25 07-06452, 2009 WL 3073920, at *1 (N.D. Cal. Sept. 22, 2009).

26     Under both California and federal law, "the Court has the discretion to use

27 either a percentage or lodestar method in awarding fees . . . ."  *True v. Am. Honda*

28 *Motor Co*., No. EDCV 07-0287-VAP (OPx), 2010 WL 707338, at *20 (C.D. Cal.

-4-

1   Feb. 26, 2010); *Fleury v. Richemont N. Am., Inc.*, No. C-05-4525 EMC, 2008 WL

2   3287154, at *1 (N.D. Cal. Aug. 6, 2008) (same).  "[W]hether the attorneys' fees

3   come from a common fund or are otherwise paid, the district court must exercise

4   its inherent authority to assure that the amount and mode of payment ***are fair and***

5   ***proper***."  *Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1328 (9th Cir.

6   1999) (emphasis added).  Indeed, "[i]t is clearly within the Court's discretion to

7   award less in fees than the amount sought by counsel, even absent defendant's

8   objection to the requested amount." *Create-A-Card*, 2009 WL 3073920, at *2.

9        Plaintiffs are seeking an award under the lodestar method.  The lodestar

10  amount is "calculated by multiplying the number of hours worked by a reasonable

11  rate . . . ." *Create-A-Card*, 2009 WL 3073920, at *2.  "Once the lodestar has been

12  calculated by multiplying the number of hours worked by a reasonable rate, courts

13  have discretion to adjust the award 'upward or ***downward*** to account for several

14  factors including the quality of the representation, the benefit obtained for the

15  class, the complexity and novelty of the issues presented, and the risk of non-

16  payment.'" *Id.* (emphasis added) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d

17  1011, 1029 (9th Cir. 1998)).[1]  Furthermore, where the lodestar method is applied,

18  "[i]t may be appropriate in some cases, assuming the class benefit can be

19  monetized with a reasonable degree of certainty, to 'cross-check' or adjust the

20  lodestar in comparison to a percentage of the common fund to ensure that the fee

21  awarded is reasonable and within the range of fees freely negotiated in the legal

22  marketplace in comparable litigation."  *In re Consumer Privacy Cases*, 175 Cal.

23  App. 4th 545, 557 (2009) (citing *Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th

24  19, 49-50 (2000)).  In common fund cases, the "typical range of acceptable

25

26  [1] *See also Thayer v. Wells Fargo*, 92 Cal. App. 4th 819, 840 (2001) ("[O]ur
27  Supreme Court has repeatedly observed that a lodestar figure may be adjusted not just upward but also, where appropriate, *downward*.").

28

attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010) (citation omitted).

Significantly, "[e]mpirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery." *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 n.11 (2008) (citation omitted). Furthermore, the advisory committee notes for Rule 23(h) expressly recognize that, "[i]n some cases, it may be appropriate to defer some portion of the fee award until actual payouts to class members are known." Fed. R. Civ. P. 23(h), 2003 advisory committee notes.

## B.   Plaintiffs Fail To Provide Sufficient Documentation For Their Attorneys' Fees Request

While state law governs the right of attorneys' fees in diversity actions, "requirements of proof *are governed by federal rather than state law*." *Taco Bell Corp. v. Continental Casualty Co.*, 388 F.3d 1069, 1076 (7th Cir. 2004) (emphasis added); *Shakey's, Inc. v. Covalt*, 704 F.2d 426, 435 (9th Cir. 1983) ("The decision to hold an evidentiary hearing when making an attorney's fee award is a matter of procedure, and is therefore governed by federal law under the *Erie* doctrine."); *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) (noting that state substantive law governs award of fees in diversity actions, but federal law governs the procedure for obtaining the fees); *JPmorgan Chase Bank, N.A. v. PT Indah Kiat Pulp & Paper Corp. Tbk*, No. 02 C 6240, 2010 WL 1611017, *6 (N.D. Ill. Apr. 21, 2010) ( "[T]he requirements of proof of reasonableness of attorneys' fees are procedural matters governed by federal law.") [2]

---

[2] *Alticor, Inc. v. Nat'l Union Fire Ins. Co. of Pa.*, No. 1:07-CV-522, 2008 WL 4057845, *3 (W.D. Mich. Aug. 28, 2008) (*vacated in part on other grounds*, 345 Fed.Appx. 995 (6th Cir. 2009)) ("Furthermore, while substantive law governs diversity disputes, federal law governs the procedures controlling the award of

(Footnote Continued on Next Page.)

-6-

1  "The fee applicant bears the burden of documenting the appropriate hours

2  expended in the litigation and must submit evidence in support of those hours

3  worked." *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007); *Mogck*

4  *v. Unum Life Ins. Co. of Am.*, 289 F. Supp. 2d 1181, 1191 (S.D. Cal. 2003) ("In

5  determining reasonable hours, the party requesting fees bears the burden of

6  submitting detailed time records justifying the hours claimed to have been

7  expended.").  "Where the documentation of hours is inadequate, the district court

8  may reduce the award accordingly." *Hensley v. Eckhart*, 461 U.S. 424, 433 (1983)

9  (emphasis added); *Fischer v. SJB-P.D. Inc*., 214 F.3d 1115, 1121 (9th Cir. 2000)

10  (holding that a district court may reduce hours to offset "poorly documented"

11  billing.  In fact, "***it is an abuse of discretion to award fees for hours not properly***

12  ***documented***." *Stewart v. Gates*, 987 F.2d 1450, 1452-53 (9th Cir. 1993) (emphasis

13  added).  Furthermore, the Ninth Circuit Court of Appeals has made it clear that the

14  party challenging a fee application is "***entitled to see just what was charged and***

15  ***why***." *Intel Corp. v. Terabye Int'l, Inc.*, 6 F.3d 614, 623 (9th Cir. 1993) (reversing

16  attorney fee award where time sheets were not submitted) (emphasis added).[3]

17      Courts routinely deny fee requests or substantially reduce the amount of the

18  application where the prevailing party does not submit sufficient documentation in

19  support of the amount of fees requested.  *See, e.g*., *Davis v. Los Angeles W.*

20  *Travelodge*, No. CV08-08279, 2009 WL 5227897, *1 (C.D. Cal. Dec. 21, 2009)

21  (denying motion for attorneys' fees because defendant "failed to submit any

22

23  (Footnote Continued from Previous Page.)

24  attorney fees in federal court.") (citation omitted).  *But see Winterrowd v. Am. Gen.*
    *Annuity Ins. Co.*, 556 F.3d 815, 827 (9th Cir. 2009) (holding that "[s]tate law

25  establishes the required showing for attorney's fees in an action in diversity.").

26  [3] *Stewart*, 987 F.2d at 1452-53 (finding that "[t]o the extent illegibility of [fee
    applicant's] time records prevented a fair adversary process in which [fee

27  opponents] could challenge the fee request or prevented detailed findings on the
    reasonable number of hours expended by him, the court should have reduced his

28  claimed hours accordingly or required an appropriate supplemental submission").

-7-

1  documentation, such as an invoice, enumerating the legal services provided and

2  tasks completed by [attorneys and paraprofessionals]" and reasoning that while

3  defendant "may redact confidential information contained in such invoices,

4  Defendant must provide some evidence to corroborate the number of hours

5  specified in Defendant's Motion").[4]

6        Recognizing that they cannot support the exorbitant amount of time they

7  claim to have spent on this case, Plaintiffs withheld their bills and timesheets and,

8  instead, merely submitted vague and unintelligible summaries of time over various

9  time periods.  As presented, this material does not provide any detail as to how

10 much time was spent completing various tasks.  It also makes it impossible to

11 determine whether there was needless duplication of hours between Plaintiffs'

12 firms.  The importance of permitting the Court and Hyundai a chance to review the

13 billing is significant here where Plaintiffs are seeking a lodestar calculation of

14 $4,132,535 based on 8,771 hours.[5]

15        **C.**     **Plaintiffs' Lodestar Calculation Is Inflated**

16              1.     The Amount Of Hours Claimed To Have Been Expended Is

17                    Not Reasonable In Light Of The Litigation In This Case

18 The United States Supreme Court has held that, as to the number of hours

19

_____

20 [4] *In re Washington Pub. Power Supply Sys. Litig.*, 19 F.3d 1291, 1305 (9th Cir.
21 1994) (finding that the district court did not abuse its discretion in reducing the
   lodestar because the computer-generated summaries of all hours expended on the
22 litigation were "remarkably deficient"); *Jane L. v. Bangerter*, 61 F.3d 1505, 1510
   (10th Cir. 1995) (affirming district court's reduction of an attorney's fee award by
23 35% on the basis of imprecise time records and stating that "[p]laintiffs' rather
   sloppy and imprecise time records failed to document adequately how plaintiffs'
24 attorneys utilized large blocks of time.").

25 [5] While Plaintiffs state in a footnote that they will submit their invoices to the
   Court *in camera* if the Court requests them, this does not provide Hyundai its due
26 process right to examine the bills and see "just what was charged and why."  *Intel*
   *Corp.*, 6 F.3d at 623.  Plaintiffs' failure to submit their bills is at best, a tacit
27 acknowledgment that their fee request is inflated and that their bills cannot
   withstand scrutiny.  This alone requires a denial or deferral of Plaintiffs' fee
   motion.

28

-8-

1  reasonably expended, a fee application "should make a good-faith effort to exclude

2  . . . hours that are excessive, redundant or otherwise unnecessary." *Hensley v.*

3  *Eckerhart*, 461 U.S. 424, 434 (1983).  Similarly, "[i]n referring to 'reasonable'

4  compensation, [the California Supreme Court] indicated that trial courts must

5  carefully review attorney documentation of hours expended; 'padding' in the form

6  of inefficient or duplicative efforts is not subject to compensation." *Ketchum v.*

7  *Moses*, 24 Cal. 4th 1122, 1132 (2001).   "A fee request that appears unreasonably

8  inflated is a special circumstance permitting the trial court to reduce the award or

9  deny one altogether." *Id.* at 1137 (citation omitted).

10      Plaintiffs' attorneys claim to have spent approximately 8,771 hours of time

11  on this case.  Given the amount of work that was actually done in this case, this

12  number is unfathomable.  In an effort to prevent Hyundai from challenging these

13  hours, Plaintiffs have withheld the actual timesheets and, instead, merely submitted

14  vague, unintelligible and meaningless charts of their purported time spent on this

15  case during various time periods.  Despite Plaintiffs' effort to prevent any

16  meaningful challenge to their excessive hours, it is clear from the little evidence

17  that Plaintiffs do submit that the amount of hours they claim were expended is

18  significantly inflated.  For instance, Plaintiffs spent approximately 3,700 more

19  hours than Hyundai did on this case.  (Taggart Decl., ¶¶ 58-60, Ex. P.)  In fact,

20  Plaintiffs' hours were almost double that of Hyundai for almost every single time

21  period.  (*Id.*)[6]

22      Aside from a comparison to Hyundai's hours, the hours spent during certain

23  time periods appear to be extremely excessive.  For instance, Plaintiffs claim that

24  _____

25  [6] For instance, from September 8, 2006 to March 28, 2007, from the time that
Plaintiffs filed their First Amended Complaint to the date Hyundai's Motion to

26  Dismiss was denied, Hyundai expended approximately 267 hours, while Plaintiffs
expended 586.59 hours -- more than double.  (*Id.*)  Whether this reflects inflated

27  hours, or needless duplication of hours, there is little question that Plaintiffs' hours
are excessive.

28

they spent 3,050 hours during a time period from February 2008 to November 2008.  This amounts to two attorneys working full time on this case, and each billing over forty hours per week for this entire nine-month time period.  Given the work conducted during this time period, this is unsupportable.  Similarly, from January 2009 to July 2009, Plaintiffs claim to have spent 1,504 hours on this case.  However, other than responding to Hyundai's Motion for Summary Judgment and defending the depositions of their experts (which could support perhaps 300 of these hours at most), it is unclear what Plaintiffs claim to have spent their time on to support the rest of the hours.

Attempting to support their extravagant request, Plaintiffs exaggerate the amount of work that they conducted on various tasks and the complicated legal issues.  (*See* Taggart Decl., ¶¶ 3-57.)  Plaintiffs argued precisely the opposite when they sought to have this Court appoint them as lead counsel.  Plaintiffs initially observed that "[t]his is a relatively uncomplicated case involving a single vehicle defect.  The legal issues will be straightforward and factual discovery contained." (Taggart Decl., Ex. B.)  Indeed, the amount of discovery Plaintiffs conducted and work performed confirms Plaintiffs' statements that this case was "straightforward" and "uncomplicated."

• **Pleading Motion Practice**.  Unlike many class action cases where there are several rounds of pleadings, Hyundai filed only one motion to dismiss in this case.  Plaintiffs filed one opposition to Hyundai's motion to dismiss, which cannot possibly support the approximately 600 hours Plaintiffs claim to have spent during this time period.

• **Fact Discovery**.  The amount of discovery conducted in this case was small in comparison to the average class action.  In fact, Plaintiffs took only one fact witness deposition in the entire case.  There was also very little written discovery exchanged between the parties.  Not a single motion to compel was filed until after discovery was closed and not a single document was ever found to have

-10-

been improperly withheld.  Plaintiffs mischaracterize their work as respects

Hyundai Motor America's parent Hyundai Motor Company as well.  (Taggart

Decl., ¶¶ 11-15.)

- **Class Certification**.  Plaintiffs' class certification motion was nothing out of the ordinary except for its notable lack of success.  Indeed, Plaintiffs obtained class certification on only two out of the five claims that they asserted in this litigation.  The only two claims that were certified were the CLRA and UCL claims and, as a result, the only tenable class claim was an alleged failure to disclose.  Moreover, Plaintiffs filed unnecessary supplemental briefing based on their *false* contentions that Hyundai did not produce discoverable materials. (Taggart Decl., ¶¶ 20-27.)

- **Motions to Compel**.  Most of the motion practice in this case related to four untimely and meritless motions to compel that generated no benefit to the class.  At least one of these motions was denied without a hearing because Plaintiffs failed to read and follow the Local Rules.  At the end of the day, as Hyundai repeatedly informed Plaintiffs throughout the entire process, there were no documents that were withheld from Plaintiffs.  (Taggart Decl., ¶¶ 17-19, 22, 37-42.)

- **Trial Preparation**.  Plaintiffs' assertion that they prepared for trial on two separate occasions is unbelievable.  Indeed, Plaintiffs ignored the deadline for the pretrial meeting of the parties and refused to engage Hyundai in the pretrial process.  Plaintiffs' pretrial documents submitted to this Court were substantially deficient and nothing more than a post hoc attempt to portray that they were ready for trial while Hyundai was seeking to have the Court's class certification order stayed pending the California Supreme Court's decision in the *In re Tobacco* case. (Taggart Decl., ¶¶ 29-36.)

- **Mediation**.  Plaintiffs' characterization of the mediation process is simply false.  Without divulging the mediation discussions, Hyundai has from the

1  outset had proposals on the table substantially similar to the agreement now

2  presented for approval.[7]

3       Aside from overstating the amount of work that was done, Plaintiffs

4  improperly attach a legal brief disguised as an expert report by Professor

5  Rubenstein in an attempt to land further credence to their excessive hours request.

6  Mr. Rubenstein's entire declaration should be stricken as set forth in Hyundai's

7  concurrently filed Motion to Strike.  However, it should be noted that Mr.

8  Rubenstein never looked at the actual time entries and bills in this case, and

9  therefore he has no foundation to render his purported "expert" opinion on the

10 reasonableness of the hours expended.[8]

11            2.    The Hourly Rates That Plaintiffs Are Seeking Under The

12                  Loadstar Are Not Reasonable

13      In addition to the excessive and inflated hours, the rates that Plaintiffs are

14 seeking for the lodestar calculation are also excessive.  "Reasonable hourly rates

15 are determined by prevailing market rates charged by comparable attorneys in the

16 relevant community."  *Suzuki v. Hitachi Global Storage Techs., Inc.*, No. C 06-

17 7289 MHP, 2010 WL 956896, at *3 (N.D. Cal. Mar. 12, 2010).  "Generally, the

18 forum district is the relevant community."  *Id.*

19      Plaintiffs' own analysis shows that the rates charged are excessive.  For

20 example, Dylan Hughes, who billed far more hours than anyone on this case and

---

[7] Indicative of the duplication of efforts in this case, Plaintiffs were represented by as many as four counsel at mediation.

[8] The absurdity and lack of foundation for Mr. Rubenstein's opinion is demonstrated by, among other things, his comparison between the *Roy* case the instant case where he argues: "If the quantity if those billings in that modest case (*Roy*) were so acceptable as to be uncontested by the defendant, and easily approved by this Court, logic would dictate that the quantity of hours billed here is similarly unobjectionable and should be approved."  (Hughes Decl., Ex. 1 ¶ 26(c).)  Nonsense.  A cap on the fees in *Roy* were negotiated during the settlement, which was taken into consideration by Hyundai in agreeing to the settlement.  This does not mean that the hours spent on that case, viewed in isolation, were "acceptable" or "unobjectionable."

-12-

1   only became a partner after this litigation had already settled, is seeking a rate of

2   $545 per hour.  However, in the nationwide sampling of law firm billing rates that

3   Plaintiffs attached to their brief, only three out of the 121 firms listed had a low

4   end partner rate (presumably junior partner rate), and only 19 out of the 121 firms

5   had a median rate, that equaled or exceeded Mr. Hughes rate.  (*See* Joint Decl., Ex.

6   E.)  Thus, Mr. Hughes, who only became a partner after this case already settled, is

7   seeking a higher rate than most partners at some of the elite firms in the country.

8   Furthermore, Mr. Gibbs' rate exceeds the median partner rate of all of the 121

9   firms listed.  The other rates requested are also excessive.

10          Furthermore, Plaintiffs' attempt to use Mr. Rubenstein's advocacy brief in

11   support of their rates is also misplaced.  Setting aside the fact that his Declaration

12   should be stricken, it is also grossly misleading.  First, Mr. Rubenstein purports to

13   rely on the National Law Journal article, which, as shown above, demonstrates

14   Plaintiffs' rates are excessive.  Yet, he never notes this fact in his analysis.

15   Second, Mr. Rubenstein claims that he adds to his analysis "the only two area law

16   firms (Knobbe . . . and Manatt . . .) in that survey for which billing rates based on

17   years out of law school could be extracted."  (Hughes Decl., Ex. 1 ¶ 24 n. 30.)

18   This is plainly untrue.  Presumably, Mr. Rubenstein cites these two firms because

19   they are two of the select few out of the 121 that support Plaintiffs' excessive rates.

20   The truth is that most of the firms on that list have offices in this district, including

21   several of which have offices in Orange County (e.g., Bryan Cave, Snell &

22   Wilmer, Buchalter Nemer, etc.).  Third, most of the cases Mr. Rubenstein looked

23   at, *as he admits*, are common fund cases, where the recovery is based on a

24   percentage of the common fund -- not a multiplication of the hourly rate under the

25   lodestar method.  Such cases are grossly misleading.  Finally, although Mr.

26   Rubenstein inserts a graph that purports to demonstrate the reasonableness of the

27   rates, it is evident that he only plots a select few of the 150 firms that he

28   purportedly looked at.  In fact, the plots are nothing more than black dots on a

-13-

1   piece of paper with no explanation of what firms they are from, what cases they are

2   from, or the backgrounds of the attorneys the dots represent.  It is utterly

3   meaningless.[9]

4        Equally important to Plaintiffs' inflated 2010 rates is the fact that Plaintiffs

5   are seeking to have this Court apply their inflated 2010 rates to work that was

6   completed in 2006, 2007, 2008 and 2009.  Such application would result in a

7   substantial windfall to Plaintiffs.  For example, in a Declaration filed in 2006 in

8   support of their attorneys' fees request in the *Roy* case, Eric Gibbs' rate is listed at

9   $440.00 per hour and Dylan Hughes' rate is listed as $300.00 per hour.  (Taggart

10  Decl., ¶¶ 61-64, Ex. Q.)  In their current application, Eric Gibbs' rate is listed at

11  $675.00 and Dylan Hughes' rate is listed at $545.00, which amounts to a 51% and

12  81% respective increase in rates over the life of this lawsuit.  (Gibbs Decl., ¶ 14.)

13  Furthermore, taking the amount of time spent in 2006 (approximately 1,426 hours)

14  also demonstrates the unfairness of applying the 2010 rates.[10]

15       In sum, Plaintiffs' rates are extremely inflated and must be substantially

16  reduced to arrive at a reasonable lodestar calculation.

17  _____

18  [9] In an attempt to further bolster their rates, Plaintiffs assert that their hourly rates
    were recently approved in another automobile defect case in the Central District of
19  California.  This claim is misleading.  The fee in that case was agreed to between
    the parties and, therefore, is entitled to a presumption of reasonableness.

20  [10] If this time was spent by Mr. Hughes (which, of course is unclear because no
    records have been submitted) it would amount to $427,800 based on his 2006 rate
21  and $777,170 based on his 2010 rate -- almost double.  Notably, only about 5% of
    the fees requested is for time conducted in 2010.  Thus, because the use of only
22  current rates would result in a substantial windfall, the Court needs to apply
    Plaintiffs' rates at the time the work was done.  *Masimo Corp. v. Tyco Healthcare*
23  *Group, L.P.*, No. CV 02-4770 MRP (AJWx), 2007 WL 5279897, at *8 (C.D. Cal.
    Nov. 5, 2007) ("To permit Masimo to collect for all of Mr. Seltzer's work at his
24  current rate would enhance the award 55% for his work in 2002 and 42% for his
    work in 2004 . . . this enhancement would push the award for his work in this case
25  well outside the range of reasonableness . . . ."); *Thompson v. Barrett*, 599 F. Supp.
    806, 813-14 (D.D.C. 1984) (*abrogated in part on other grounds by Brown v. Pro*
26  *Football, Inc.*, 839 F. Supp. 905, 910 n. 14 (D.C.C. 1993)) (noting that application
    of historic rates in lengthy case proper because use of current rates for attorneys'
27  current experience would produce a windfall).

28

-14-

1

2

**D.      The Court Should Apply A Negative Multiplier After It Adjusts Plaintiffs' Lodestar Calculation**

3    Not only do Plaintiffs present this Court with an inflated and unreasonable

4  lodestar calculation, but they audaciously request that it be **doubled** to arrive at the

5  so-called "reasonable" attorneys' fees that they claim should be paid.  The request

6  for any multiplier, let alone a multiplier of 2.0, is unsupportable given the results

7  achieved and the amount of the likely total class recovery.  Plaintiffs do not and

8  cannot cite a single class action case where a court has awarded a multiplier where

9  the lodestar calculation was already more than the total class benefit.  The facts and

10  the case law support the use of a negative, not a positive, multiplier in this case.[11]

11    Under the lodestar method, "[o]nce the lodestar has been calculated by

12  multiplying the number of hours worked by a reasonable rate, courts have

13  discretion to adjust the award 'upward or **downward** to account for several factors

14  including the quality of the representation, the benefit obtained for the class, the

15  complexity and novelty of the issues presented, and the risk of non-payment.'"

16  *Create-A*-Card, 2009 WL 3073920, at *2 (citation omitted) (emphasis added).

17  These factors weigh heavily in favor of a negative or no multiplier.

18

19

20

1.      The Lack Of Benefit To The Class Requires The Use Of A Negative Multiplier Because Plaintiffs' Requested Fees Significantly Exceed The Amount Of The Class Recovery

21    Plaintiffs' fee request should be substantially reduced and a negative

22  multiplier should be assessed because the total amount of class recovery is likely to

23  be significantly less than Plaintiffs' lodestar calculation.  In analyzing the factors

24  _____

25  [11] Plaintiffs assert that "[f]or wholly contingent consumer class actions like this

26  one, California courts have approved multipliers of 2 and even higher."  (Mot. at 7 [citations omitted].)  However, the cases that Plaintiffs cite that apply multipliers

27  are common fund cases where the lodestar calculation is only a small percentage of the amount of recovery, and therefore the multiplier is awarded to raise the fees to

28  an amount that would be freely negotiated in the marketplace.

-15-

A/73377308.5

1   for applying a positive or negative multiplier, courts have held that the

2   "determinative factor" on the use of a multiplier "is the benefit to the class . . . ."

3   *Create-A*-Card, 2009 WL 3073920, at *3; *Simon v. Toshiba Am.*, No. C 07-06202

4   MHP, 2010 WL 1757956, at *3 (N.D. Cal. April 30, 2010) ("[A]ttorneys' fees

5   must be 'reasonable in relation to the results obtained.'")  Indeed, courts have held

6   that fees sought by plaintiffs "are not 'fair and reasonable'" where "the total

7   amount recovered by class members is significantly less than the requested fees."

8   *Create-A*-Card, 2009 WL 3073920, at *2.

9       *Create-A-Card* and *True* are instructive on how district courts assess

10  attorneys' fees applications in class action cases under California law.  In *Create-*

11  *A-Card*, the parties settled an action on behalf of a class of users of a software

12  program called Quickbooks 2006 for Mac.  The case involved numerous claims,

13  including claims for violations of California Business & Professions Code.  *Id*. at

14  *1.  The plaintiffs requested approval of $550,000 in fees under the lodestar

15  method, but the court determined that "[t]he excessive amount of attorneys' fees

16  requested . . . is out of proportion to the benefit conferred."  *Id*. at *1 (emphasis

17  added).  In fact, the court determined that the "'results obtained' by the settlement

18  justify a downward adjustment to counsel's requested fee award."  *Id*. at *3.

19  There, the court looked at the number of claims that were actually made by the

20  class and the amount of benefit actually conferred on the class.  The court noted:

21  "By the end of the claims period, 566 claim forms had been received

22  (approximately one percent of all potential class members). . . .  [T]he total

23  recovery will be approximately $491,357.68 --- significantly less than counsel

24  seeks to collect here."  *Id*.  The court went on to explain:

25          Despite class counsel's efforts in this action, the class response rate

26          was extremely low.  If the response rate had been higher, presumably

27          the higher fee award would be justified.  But it is unreasonable for

28          class counsel to be compensated for hypothetical recovery that never

                                    -16-

took place.  **The key consideration in determining a fee award is reasonableness in light of benefits *actually conferred*.**  *Id*. at *3; *Simon*, 2010 WL 1757956, at *4 (holding that the extremely low response rate for claims "warrants a downward departure").

Similarly, in *True*, the court denied approval of the plaintiffs' motion for attorneys fees in a case brought under the UCL.  *True v. Am. Honda Motor Co*., No. EDCV 07-0287-VAP (OPx), 2010 WL 707338, at *20 (C.D. Cal. Feb. 26, 2010).  In denying the fees request, the court noted: "While the lodestar method of awarding fees is permissible under CAFA, the Court has the discretion to use either a percentage or lodestar method in awarding fees, and is particularly wary of using the lodestar method here."  *Id*.  The court further noted: "Under the terms of the settlement, there is no certainty that class members will receive any cash payments or rebates at all, but class counsel will receive a three million dollar payment regardless of whether one or 10,000 class members file valid claims. Since there is no guarantee that AHM will pay *any* money out of the settlement to either class members or a cy pres beneficiary, to award three million dollars to class counsel who may have achieved no financial recovery for the class would be unconscionable."  *Id*. (emphasis added); *see also Suzuki v. Hitachi Global Storage Techns., Inc*., No. C 06-7289 MHP, 2010 WL 956896, at *5 (N.D. Cal. Mar. 12, 2010) (reducing plaintiffs' lodestar calculation of $317,480 in attorneys' fees to $55,000 in fees by creating a constructive common fund and applying the benchmark of 25% of that fund).

Here, the amount of attorneys' fees Plaintiffs are requesting is also grossly excessive considering that the lodestar calculation alone is likely to substantially exceed the class benefit that the class members will receive under the settlement. Hyundai mailed out notice to current or former owners of the 11,693 vehicles. Plaintiffs alleged in their First Amended Complaint that the cost consumers paid to fix the failed Flywheel System was approximately $2,000.  Under the Settlement

1   Agreement, *qualifying* class members will receive anywhere from 50% to 100%

2   reimbursement.

3        The claims process to date generated 1,043 claims, with an average

4   reimbursement of $1,181 for those that have been analyzed and processed.  (Erb

5   Decl., ¶ 3.)  Thus, in total, the recovery has amounted to only $1.2 million so far.

6   Plaintiffs' fee request amounts to almost ***seven times*** this amount.  Even after all

7   claims are submitted, Plaintiffs' fee request is likely to exceed three or four times

8   (at a minimum) the amount of the total benefit to the class.[12]

9        In sum, Plaintiffs' lodestar calculation alone will be far more than the

10   amount of the class' recovery, and Plaintiffs' lodestar plus multiplier calculation

11   will be about three or four times the amount of the class' likely recovery.  Under

12   *either* calculation, the amount requested is far more than the 25% benchmark in the

13   Ninth Circuit.  Plaintiffs have cited no California or federal authority that permits

14   such excessive fees in relation to the class' recovery.

15            2.   The Other Factors Do Not Outweigh The Lack Of Benefit To

16                 The Class

17        Plaintiffs do not cite a single case where a court has awarded a multiplier

18   where the lodestar calculation alone was already more than the total class benefit.

19   Plaintiffs claim that the time they spent on this precluded them from pursing other

20   cases, yet they cite no evidence for this claim, and simply visiting their websites

21   belies any such claim.  Plaintiffs do not state this fact in their declarations, and they

22   do not cite a single case that they were precluded from taking.

23

24   ───────────────

25   [12] This is not a case where a fee award can be based on the total amount of
     potential recovery because Plaintiffs do not claim that the defect affected every
26   single class vehicle, and class members would not have been allowed
     reimbursement if their Flywheel System had failed after the warranty period.  The
27   only way to calculate the benefit to the class (i.e., the number of people affected by
     the purported defect) is to calculate the total number of claims submitted.

28

1    There was also very little risk to Plaintiffs in this case.[13]  Hyundai mediated

2    this case from the beginning and settlement negotiations were ongoing throughout

3    this litigation.  The settlement at the end of the case is not very different than the

4    settlement that the parties were discussing at the outset of this case.

5          Plaintiffs also greatly overstate the novelty and complexity of this case.

6    Indeed, during the actual litigation of this case, Plaintiffs asserted that "[t]his is a

7    relatively uncomplicated case involving a single vehicle defect.  The legal issues

8    will be straightforward and factual discovery contained."  (Taggart Decl., Ex. B.)

9    Plaintiffs' case was initially premised on misrepresentation and breach of warranty

10   claims.  After the Court denied certification on three out of the five claims that

11   Plaintiffs were left with nothing more than a concealment case under the CLRA

12   and UCL.  Accordingly, none of these factors overcome the lack of benefit to the

13   class or justify Plaintiffs' request for a fee award that is more than the total class

14   benefit under the Settlement.

15              3.    <u>Plaintiffs' Citation To *Roy* In Support Of Their Multiplier Is</u>

16                    <u>Grossly Misleading</u>

17         In support of their request for a multiplier, Plaintiffs assert that in a previous

18   case "Hyundai agreed to, and the Court awarded, an attorneys' fee to Class

19   Counsel enhanced by a 1.9 multiplier under the same fee-shifting statutes that

20   apply here."  (Mot. at 21 [citing *Roy v. Hyundai*, No 05-00483-AHS, Doc. 87

21   (C.D. Cal. April 10, 2006)].)  However, the facts of *Roy* were substantially

22   different to those in the present case.

23         The parties negotiated the fee provision in *Roy*, which is entitled to a

24   presumption of reasonableness and, in fact, in that case these same counsel

25   represented that the fee request to be made was based on actual hours -- there was

26   _____

27   [13] Plaintiffs' counsel advertised on its website that a class had been certified long
     before the Court issued its Order.

28

A/73377308.5

1  never any discussion of, let alone agreement about, any multiplier.  In this case,

2  there is no agreement from Hyundai not to oppose Plaintiffs' fee request.

3  Furthermore, the *Roy* class consisted of approximately 233,000 class members, and

4  the alleged Settlement affected every single vehicle.  In contrast, in this case,

5  Hyundai mailed out notice to over 32,000 current or former owners of the 11,693

6  vehicles even though more than 3/4's of these experienced no clutch issues.

7      Thus, unlike here, the total recovery in *Roy* exceeded the attorneys' fees

8  requested by the Plaintiffs' attorneys (before and after the multiplier).

9  Furthermore, unlike here, the amount of fees awarded in *Roy* was likely nothing

10  more than a percentage of the total benefit to the class instead of several times the

11  amount of the class' recovery.

12      **E.    Cross-Checking The Lodestar Calculation To The Amount Of**

13          **Class Recovery Confirms That A Negative Multiplier Should Be**

14          **Applied**

15      It is well established in California that "[i]t may be appropriate in some

16  cases, assuming the class benefit can be monetized with a reasonable degree of

17  certainty, to 'cross-check' or adjust the lodestar in comparison to a percentage of

18  the common fund to ensure that the fee awarded is reasonable and *within the range*

19  *of fees freely negotiated in the legal marketplace in comparable litigation*."  *In re*

20  *Consumer Privacy Cases*, 175 Cal. App. 4th 545, 557 (2009) (emphasis added)

21  (citing *Lealao*, 82 Cal. App. 4th at 49-50); *McIntosh v. McAfee, Inc*., No. C06-

22  07694 JW, 2009 WL 673976, at *4 (N.D. Cal. Mar. 13, 2009) (even in cases where

23  there is a significant benefit to the class, courts applying the lodestar method

24  usually cross-check the lodestar amount "against a percentage of the class recovery

25  to determine whether a multiplier is necessary to ensure the propriety of the

26  award.")  To be sure, Plaintiffs' counsel has argued in other cases that "we believe

27  California law does require a cross-check against the value conferred to the class,

28  and we believe *Lealao* spells that out."  (Taggart Decl., Ex. S [Horsepower

-20-

1   Litigation Transcript 22:26-23:2].)[14]

2         "Empirical studies show that, regardless whether the percentage method or

3   the lodestar method is used, fee awards in class actions average around one-third of

4   the recovery."  *Chavez.*, 162  Cal. App. 4th at 66 n.11 (citation omitted); *McIntosh*,

5   2009 WL 673976, at *4 ("the Lodestar award should typically be no more than

6   25% of the common fund.").  "In performing this cross-check, courts use the Ninth

7   Circuit benchmark of 25% for awards of attorney fees in common fund cases."

8   *McIntosh*, 2009 WL 673976, at *4 (emphasis added); *Vasquez v. Coast Valley*

9   *Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010) (stating that in common fund

10   cases, "the typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to

11   33 1/3% of the total settlement value, with 25% considered the benchmark.")

12         *Suzuki*, 2010 WL 956896, at *5, is instructive on this issue.  In *Suzuki*, the

13   plaintiff sought fees under California law following the class settlement.  After

14   acknowledging that the hours expended on the case were reasonable and

15   documented, the court cross-checked the lodestar calculation against the

16   percentage-of-the-recovery method.  The court acknowledged that there was no

17   common fund, but reasonably estimated the common fund.  The court then used

18   the constructive common fund and applied the 25% benchmark to arrive at the

19   amount of reasonable attorneys' fees for the class, which was substantially less

20

21       [14] Hyundai suspects that Plaintiffs, as they have done in the past, will argue that
22   *Vizcaino v. Microsoft, Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) supports their
     multiplier request and that it stands for the proposition that an average multiplier of
23   "3.32", the study referenced in the case is based on common fund cases.  However,
     in such cases, the courts award the plaintiffs a percentage of the common fund as
24   attorneys' fees and then cross-check that with the lodestar method.  The principle
     guiding the award of attorneys' fees in the study cited in *Vizcaino* is the percentage
25   of the common fund (of which the Ninth Circuit applies a 25% benchmark), *not the*
     *multiplier*.  The multiplier is only used to cross-check the percentage award in
26   cases where there are large settlements to ensure that the plaintiffs come close to a
     reasonable percentage of the total amount of class recovery.  Importantly, the
27   average percentage recovery in the study was approximately 25% of the common
     fund, with no case over 40%.

28

-21-

1    than the lodestar calculation. *Suzuki,* 2010 WL 956896, at *5.

2          In this case, the Court can also create a constructive common fund by

3    looking at the total amount of recovery for the class based on the number of claims

4    submitted.  To date, the total value to date is approximately $1.2 million.  (Erb

5    Decl., ¶¶ 2-3.)  The total value is unlikely to exceed $2 million (at best).  Applying

6    the 25% benchmark to this amount would result in a maximum attorneys' fees

7    award of $500,000.  Thus, the cross-check confirms that Plaintiffs' lodestar request

8    must be substantially reduced and, at a minimum, no positive multiplier can be

9    assessed.

10   **IV.   PLAINTIFFS' COST REQUEST SHOULD BE SUBSTANTIALLY**

11          **REDUCED**

12         In addition to their excessive fee request, Plaintiffs also request $133,866.05

13   in costs for this case.  This amount must also be substantially reduced because (1)

14   Plaintiffs provide insufficient documentation for their costs, and (2) Plaintiffs

15   request costs that are not recoverable under California or federal law.

16         **A.      Plaintiffs Provide Insufficient Documentation For Their Costs**

17         Similar to attorneys' fees, while California law provides the types of costs

18   that are recoverable, the procedure for obtaining the costs is governed by federal

19   law under the *Erie* Doctrine.  *See, e.g.*, *Taco Bell Corp. v. Cont'l Cas. Co.*, 388

20   F.3d 1069, 1076 (7th Cir. 2004).  Where costs are not sufficiently documented,

21   costs should be denied.  *See, e.g.*, *U.S., ex rel. Glumac v. Don Todd Associates,*

22   *Inc.*, No. C 09-01442 WHA, 2010 WL 545839, at *5 (N.D. Cal. Feb. 11, 2010)

23   (denying request for costs under California law where insufficient documentation

24   submitted).

25         In the Central District of California, Local Rule 54-3 governs the procedure

26   for obtaining costs as a prevailing party.  Local Rule 54-3 requires the prevailing

27   party to file a "Bill of Costs on Form CV-59."  Furthermore, Form CV-59 directs

28   the party seeking costs to "[a]ttach to the bill of costs an itemization and

1  documentation supporting **all** requested fees and costs.  Documentation includes

2  receipts, orders and stipulations.  All receipts must be self-explanatory."

3  (emphasis added).

4        In this case, Plaintiffs submit no documentation for any of the costs they are

5  seeking.  Rather, Plaintiffs lump their costs into broad categories and request that

6  the Court rubber stamp the amount they are requesting.  For example, the Stueve

7  Siegel firm seeks $20,742.83 for purported travel to and from depositions.

8  However, there is no detail as to what this includes.  Is this first class travel?  Does

9  this include meals?  How much are the meals they are requesting reimbursement

10  for?  Plaintiffs simply do not provide any information for either Hyundai or the

11  Court to determine whether the requested costs are permitted or reasonable.

12  Accordingly, the Court should deny Plaintiffs request for costs based on

13  insufficient documentation or, at a minimum, require Plaintiff to supplement their

14  request for costs to provide the basic detail required under Local Rule 54-3.

15      **B.**     **Plaintiffs Seek Costs That Are Not Recoverable Under California**

16            **Law**

17        Even without any documentation, Hyundai suspects that Plaintiffs'

18  purported costs include a significant number of items that are not recoverable.

19        Plaintiffs appear to list a substantial amount costs that are not recoverable as

20  "mandatory costs."  For instance, although only 12 depositions were taken in this

21  case, Plaintiffs are seeking $45,784.76 in costs in connection with the depositions.

22  Plaintiffs provide no detail as to how they arrived at this number.  Plaintiffs claim

23  that this includes "reimbursement for transcribing, airfare, hotel and meal

24  expenses."  (Mot. at 22.)  However, meals are not recoverable costs.  *Gorman v.*

25  *Tassajara Dev. Corp.*, 178 Cal. App. 4th 44, 71-73 (2009) (holding that meals

26  were not recoverable as deposition costs under CCP § 1033.5(a)(3)); *Ladas v. Cal.*

27  *State Auto. Ass'n*, 19 Cal.App.4th 761, 774 (1993) (holding that Section 1033.5

28  does not allow recovery for "meals eaten while attending local depositions").

1   Furthermore, it is unclear whether the meals included in Plaintiffs' request were

2   "reasonable in amount."  Cal. Civ. Code § 1033.5(c)(3).

3          Plaintiffs' excessive travel time should not be included.  Plaintiffs needlessly

4   duplicated deposition efforts by having attorneys from both Girard Gibbs and

5   Stueve Siegel attend most of the depositions.  This was unnecessary and resulted in

6   the exorbitant of travel costs that the Stueve Siegel firm is seeking for flying back

7   and forth from Missouri to California.  Cal. Civ. Code § 1033.5(c)(2) (stating that

8   "[a]llowable costs shall be reasonably necessary to the conduct of the litigation . . .

9   .").  Furthermore, it is unclear whether this travel time included first class travel or

10  excessive hotel expenses that are not "reasonable in amount."  *Page v. Something*

11  *Weird Video*, 960 F. Supp. 1438, 1447 (C.D. Cal. 1996).  Hyundai suspects that

12  this amount does include first class travel considering that Plaintiffs' expert

13  witness testified that he traveled first class from North Carolina to San Francisco to

14  attend his deposition.[15]

15         Moreover, it also appears that Plaintiffs' travel costs may have included the

16  unnecessary and unreasonable cost that they spent in bringing a court reporter with

17  them from Missouri to Orange County for purposes of their depositions.  Such

18  costs are clearly unreasonable as there are plenty of capable local court reporters.

19         Plaintiffs also seek $77,780.87 in purported "discretionary costs."  The

20  Court should also deny these amounts.  Most of this amount consists of Plaintiffs'

21  exorbitant travel costs, which Hyundai should not be forced to pay for considering

22  that Plaintiffs unnecessarily duplicated efforts at hearings and depositions.

23  Furthermore, Plaintiffs provide no documentation for these costs, and, therefore, it

24  is impossible for Hyundai or the Court to determine whether each specific cost was

25  _____

26  [15] It is also unclear whether Plaintiffs are seeking to have Hyundai pay for the transportation and expenses pertaining to their experts or any other experts in this
27  case.  Such costs are not recoverable.  Cal. Civ. Code § 1033.5(b)(1).

28

-24-

"reasonably necessary to the conduct of the litigation" and "reasonable in amount." Cal. Civ. Code §§ 1033.5(c)(2) & (3)

.[16]

In sum, Plaintiffs provide insufficient documentation to support their request for costs.  Furthermore, there appears to be a significant amount of costs included that may not be recoverable.  Accordingly, the Court should deny or substantially reduce the costs requested.

## V.        CONCLUSION

For the foregoing reasons, Hyundai respectfully requests that Plaintiffs' request for attorneys' fees and costs be denied as presented and the Court defer a ruling on this request until the entire amount of claims can be determined and until Plaintiffs' counsel submit bills showing not only the hours incurred but the rate applicable at the time the work was done.

DATED:  June 7, 2010                    Respectfully submitted,

                                        BINGHAM McCUTCHEN LLP


                                        By:  /S/
                                             Todd E. Gordinier
                                             Attorneys for Defendant
                                             HYUNDAI MOTOR AMERICA

---

[16] Since Plaintiffs concede that the other $265,781.79 in costs are "non-recoverable costs and expenses" and are not seeking reimbursement for such costs, Hyundai will not address those costs.

-25-