Eric H. Gibbs (State Bar No. 178658)
ehg@girardgibbs.com
Dylan Hughes (State Bar No. 209113)
dsh@girardgibbs.com
Geoffrey A. Munroe (State Bar No. 228590)
gam@girardgibbs.com
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, California  94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

Norman E. Siegel
siegel@stuevesiegel.com
Todd Hilton
hilton@stuevesiegel.com
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, MO 64112
Telephone: (816) 714-7100
Facsimile: (816) 714-7101

*Co-Lead Class Counsel*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL PARKINSON, et al., on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br> v. <br><br> HYUNDAI MOTOR AMERICA,  a California Corporation, <br><br> Defendant. | Case No.  SACV 06-345 AHS (MLGx) <br><br> **REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES** <br><br> Date:  June 28, 2010 <br> Time:  11:00 a.m. <br> Before:  Hon. Alicemarie H. Stotler |

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................. 1

II.   ARGUMENT ....................................................................................... 2

    A.    California Law Recognizes That Appropriate Fee Awards To Consumer
        Protection Attorneys Will Often Exceed Consumers' Total Recovery........ 2

    B.    Class Counsel's Lodestar Figure Is Reasonable And Well-Supported. ....... 4

        1.    Class Counsel Have Met Their Burden of Proof. ............................... 5

        2.    The Time Class Counsel Spent On This Case is Reasonable............. 6

            a)    Hyundai's Time Comparison Does Not Account For The
                Substantial Contribution of Its In-House Counsel................... 6

            b)    Class Counsel Staffed The Case Appropriately. ...................... 9

            c)    Class Counsel Have Supported Their Time In The Case
                With  Expert Testimony........................................................... 11

        3.    Class Counsel's Hourly Rates Are Reasonable. ............................... 12

    C.    Class Counsel's Requested Lodestar Multiplier Is Appropriate. ............... 14

        1.    The Results Obtained Weigh In Favor Of A Fee Enhancement. ...... 14

            a)    The Cases Hyundai Cites Had Poor Individual Recoveries
                Or Very Low Claim Rates. ...................................................... 16

            b)    A Cross-Check Based On Total Class Recovery Is
                Inappropriate In This Case...................................................... 17

        2.    The Fee Multiplier Should Take Into Account All Factors.............. 19

i

D.    Class Counsel's Expense Request Is Reasonable And Should Be Granted.................................................................................23

1.    Class Counsel Have Sufficiently Documented Their Expenses.......23

2.    Class Counsel's Expenses Are Recoverable Under California Law. .................................................................................24

III.    CONCLUSION.................................................................................25

TABLE OF CONTENTS

<u>**TABLE OF AUTHORITIES**</u>

<u>**Case**</u>                                                                                           <u>**Page**</u>

*Beasley v. Wells Fargo Bank,*
   235 Cal. App. 3d 1407 (1991) ...................................................................3

*Chamberlan v. Ford Motor Company*,
   No. 03-2628-CW (N.D. Cal. October 7, 2005) ........................................10

*Clausen v. M/V New Carissa,*
   339 F.3d 1049 (9th Cir. 2003) ..................................................................23

*Coles v. City of Oakland*,
   2007 WL 39304 (N.D. Cal. 2007) ............................................................12

*Create-A-Card, Inc. v. Intuit, Inc.*,
   2009 WL 3073920 (N.D. Cal. 2009) ..........................................13, 16, 19

*Fleury v. Richemont North America, Inc.*,
   2009 WL 1010514 (N.D. Cal. 2009). ..........................................................3

*Fleury v. Richemont North America, Inc.*,
   2008 WL 3287154 (N.D. Cal. 2008). ..........................................................3

*Glumac v. Don Todd Assocs., Inc.*,
   2010 WL 545839 (N.D. Cal. 2010) ...........................................................24

*Graciano v. Robinson Ford Sales, Inc.*,
   144 Cal. App. 4th 140 (2006) ...............................................................3, 19

*Graham v. DaimlerChrysler Corp.*,
   34 Cal. 4th 553 (2004) ...................................................................3, 12, 13

*Hayward v. Ventura Volvo*,
   108 Cal. App. 4th 509 (2003) ...............................................................3, 19

*In re Consumer Privacy Cases*,
   175 Cal. App. 4th 545 (2009) ...........................................................4, 15, 18

TABLE OF AUTHORITIES

*In re Vitamin Cases*,
    2004 WL 5137597 (Cal. Super. 2004) ................................................. 15

*Jefferson v. Chase Home Finance*,
    2009 WL 2051424 (N.D. Cal. 2009) ........................................... 2, 9, 19

*Jones v. Dumrichob*,
    63 Cal. App. 4th 1258 (1998) .................................................... 24

*Ketchum v. Moses*,
    24 Cal. 4th 1122 (2001) ............................................................. 20

*Lealao v. Beneficial California, Inc.*,
    82 Cal. App. 4th 19 (2000) .................................................. 2, 18, 19

*Martino v. Denevi*,
    182 Cal. App. 3d 553 (1986) ................................................. 5, 6, 12

*McIntosh v. McAfee, Inc.*,
    2009 WL 673976 (N.D. Cal. 2009). .......................................... 20

*Moreno v. City of Sacramento*,
    534 F.3d 1106 (9th Cir. 2008) .................................................. 10

*Nelson v. Anderson*,
    72 Cal. App. 4th 111 (1999) ..................................................... 24

*Olson v. Auto. Club of S. Calif.*,
    42 Cal. 4th 1142 (2008) ............................................................... 3

*Six (6) Mexican Workers v. Arizona Citrus Grower*,
    904 F.2d 1301 (9th Cir. 1990) ..................................................... 2

*Suzuki v. Hitachi Global Storage Technologies, Inc.*,
    2010 WL 956896 (N.D. Cal. 2010) ............................................ 16

*Taco Bell Corp. v. Cont'l Cas. Co.*,
    388 F.3d 1069 (7th Cir. 2004) .................................................. 24

iv
TABLE OF AUTHORITIES

*Thiebes v. Wal-Mart Stores, Inc.*,
   220 Fed. Appx. 750 (9th Cir. 2007)..........................................................11

*True v. Am. Honda Motor Co.*,
   2010 WL 707338 (C.D. Cal. 2010) ................................................16, 17

*Vo v. Las Virgenes Mun. Water Dist.*,
   79 Cal. App. 4th 440 (2000) ........................................................................3

*Winterrowd v. American General Annuity Ins. Co.*,
   556 F.3d 815 (9th Cir. 2009) ..........................................................5, 6, 12

*Yeagley v. Wells Fargo & Co.*,
   2008 WL 171083 (N.D. Cal. 2008) ......................................................16


**<u>Statutes</u>**

Cal. Civ. Proc. § 1780(e) .............................................................................2

Code of Civ. Proc. § 1021.5..........................................................................2


**<u>Miscellaneous</u>**

Tiffany Allen, *Anticipating Claims Filing Rates in Class Action Settlements*,
Nov. 2008..........................................................................................................17

*Newberg on Class Actions* .........................................................................11

TABLE OF AUTHORITIES

# I.   **INTRODUCTION**

In opposing Class Counsel's application for an award of attorneys' fees and reimbursement of certain expenses, Hyundai's principal argument is that the benefit Class Counsel have conferred does not warrant the compensation they seek.  Class members certainly seem to value what counsel have worked over four years to deliver, however.  After being notified of the settlement negotiated by Class Counsel, over 1,000 class members (out of a class Hyundai estimates is about 2,900 in size) have filed claims in the first five weeks of the claims period, with an average claim value of $1,181. Many class members have gone out of their way to express their appreciation to Class Counsel for the work they have done.  (*See* Doc. 308 at 17-18; Doc. 309-3.)  And although it is often difficult for class members to understand how much work goes into class litigation and why the lawyers are being paid so much, in this case not one class member has objected to Class Counsel's fees.

The fact that 2003 Tiburon GT owners are now receiving an average of $1,100 in reimbursement for their flywheel system repairs is owing to Class Counsel's efforts in this case.  That result required a lot of hard work and perseverance, not to mention over $400,000 in expert fees and litigation expenses and the willingness to risk never receiving any compensation at all.  Under California fee-shifting statutes, Class Counsel are now entitled to recover the value of their services from Hyundai, as well as an enhancement for the contingency risk they bore.  They have followed California law and supported their application with a thorough evidentiary record and expert testimony. Hyundai's own time records (which omit the thousands of hours spent by its in-house counsel on the case) show that it mounted an unremitting defense that required every bit of Class Counsel's resources to overcome.  Based on the substantial factual record before it, Class Counsel ask that the Court grant their fee application and award them the amounts requested.

1

## II.   ARGUMENT

### A.   California Law Recognizes That Appropriate Fee Awards To Consumer Protection Attorneys Will Often Exceed Consumers' Total Recovery.

Hyundai begins its legal analysis by acknowledging that "[b]ecause Plaintiffs' claims are California state law claims, California law governs the availability of attorneys' fees and costs." (Opp. at 4.)  But Hyundai repeatedly draws on federal law to argue that Class Counsel are requesting "far more than the benchmark in this Circuit of 25% of the total amount of class recovery." (Opp. at 2, 18.)  That 25% benchmark was established for federal common fund cases, where counsel is requesting to be paid directly from class members' recovery.  *See Six (6) Mexican Workers v. Arizona Citrus Grower*, 904 F.2d 1301, 1311 (9th Cir. 1990).  It does not apply where, as here, Class Counsel is seeking an award under California fee-shifting statutes, which will come directly from the defendant and will not reduce class members' recovery at all.  *See Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19, 26-27 (2000).  Instead, fee awards under California fee-shifting statutes are calculated using the lodestar-multiplier method, which bases the fee to be awarded on the value of Class Counsel's services rather than on a percentage of any recovery.  *Id.*

Plaintiffs' fee application is based on two California fee-shifting statutes: California's Consumers Legal Remedies Act, Cal. Civ. Proc. § 1780(e), and California's private attorney general statute, Code of Civ. Proc. § 1021.5.  Hyundai does not dispute that Plaintiffs are prevailing parties and entitled to a fee award under these statutes, but continuously argues that the amount of that fee cannot exceed what class members will receive from Hyundai.  (*See, e.g.,* Opp. at 1-2, 15-18.)  Numerous courts have held otherwise.  For instance, Judge Henderson recently rejected a similar argument in the Northern District of California, concluding that "the state courts are clear in explaining that consumer protection may require precisely the outcome that Defendant challenges of a disproportionate award."  *Jefferson v. Chase Home Finance*, 2009 WL 2051424, *3 (N.D. Cal. 2009) (awarding fees of 8.8 times total recovery).  As the *Jefferson* opinion

points out, "California courts have approved attorneys' fees where there is a significant disparity between the Plaintiffs' recovery and the lodestar fee award." *Id.* (citing *Vo v. Las Virgenes Mun. Water Dist*., 79 Cal. App. 4th 440, 448 (2000) (fees 12.5 times total recovery)); *see also Hayward v. Ventura Volvo*, 108 Cal. App. 4th 509, 512 (2003) (fees 6.5 times compensatory damages). Even one of the cases cited by Hyundai, *Fleury v. Richemont North America, Inc*., granted a fee award of 7 times class members' recovery—and that recovery was in the form of $100 credits rather than cash. *See* 2009 WL 1010514, *1, n.2, *5 (N.D. Cal. 2009); *see also* 2008 WL 3287154, *2 (N.D. Cal. 2008).

Awarding fees that exceed the aggregate class recovery reflect the judiciary's acknowledgement that the California Legislature considers consumer protection extremely important and wants to ensure that it is economically feasible for private attorneys to enforce those laws through the courts. As the California Court of Appeals has explained, the CLRA's fee provision "allows consumers to pursue remedies in cases as here, where the compensatory damages are relatively modest." *Hayward*, 108 Cal. App. 4th at 512. "To limit the fee award to an amount less than that reasonably incurred in prosecuting such a case, would impede the legislative purpose underlying [the CLRA]," as attorneys would no longer be willing to pursue those cases and consumers who have been victims of unfair or deceptive business practices would have no effective recourse. *Id.*; *see also Graciano v. Robinson Ford Sales, Inc.*, 144 Cal. App. 4th 140, 153 (2006) (same). Likewise, California' private attorney general statute exists to incentivize counsel to take on consumer protection cases and other public interest litigation where the total expected recovery is relatively small. *See Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 565 (2004) ("the fundamental objective ... is to encourage suits enforcing important public policies by providing substantial attorney fees to successful litigants in such cases"); *Beasley v. Wells Fargo Bank,* 235 Cal. App. 3d 1407, 1415 (1991), disapproved on a different point in *Olson v. Auto. Club of S. Calif.,* 42 Cal. 4th 1142, 1151-53 (2008) (private attorney general fee awards are

REPLY MEM. IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES
CASE NO. SACV 06-345 AHS (MLGx)

appropriate where the expected value of the case otherwise would not provide sufficient incentive to litigate).

This case is a prime example of the type of litigation contemplated by California's consumer protection statutes. By concealing a known defect in the 2003 Hyundai Tiburon and then systematically passing the $1,500 to $2,000 repair costs off as driver abuse, Hyundai engaged in unfair and deceptive business practices that would go unchecked if not for lawyers willing to take on the contingency risk necessary to address Hyundai's wrongful conduct. The fact that Hyundai victimized "only" a few thousand consumers does not make those consumers any less deserving of a remedy. But it does mean that the total payout to the class would be relatively modest, even in the case of the nearly complete recovery achieved here. Unless assured by California consumer protection law that they would be compensated for the work required to prevail against an automotive behemoth like Hyundai, it would have been economically impossible for Class Counsel to spend over 8,000 hours in professional time and over $400,000 in expert and other litigation costs, all with no assurance of ever being paid for their services. California consumer protection law recognizes this reality, which is why it ensures that prevailing attorneys who prosecute these cases on a contingency basis are appropriately compensated using a lodestar-multiplier approach.

## B. Class Counsel's Lodestar Figure Is Reasonable And Well-Supported.

The first step of the lodestar-multiplier method is to multiply the hours reasonably spent by Class Counsel litigating the case by prevailing hourly rates to generate the lodestar figure. *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 556 (2009). Class Counsel have submitted a lodestar figure of $4,132,535, representing 8,771 hours at Class Counsel's current hourly rates. Hyundai challenges all aspects of this calculations, arguing that (1) Class Counsel have not submitted sufficient proof of their time in the case; (2) Class Counsel's reported time is inflated and unreasonable; and (3) Class Counsel's hourly rates are also inflated and unreasonable. Class Counsel responds to each argument in turn.

### 1.   Class Counsel Have Met Their Burden of Proof.

Last year, the Ninth Circuit unequivocally established the proof elements Plaintiffs must present to support a motion for fees under California law:  "Under California law, 'to enable the trial court to determine whether attorney fees should be awarded and in what amount, an attorney should present (1) evidence, documentary and oral, of the services actually performed; and (2) expert opinion, by the applicant and other lawyers, as to what would be a reasonable fee for such services.'"  *Winterrowd v. American General Annuity Ins. Co.*, 556 F.3d 815, 827 (9th Cir. 2009) (quoting *Martino v. Denevi*, 182 Cal. App. 3d 553, 558-59 (1986)). [1]

Class Counsel met this standard.   Mr. Gibbs and Mr. Siegel submitted a 26-page joint declaration detailing the services Class Counsel performed on behalf of class members, and also devoted several pages of their opening memorandum to a discussion of their major litigation activities.  (*See* Doc. 288; Doc. 287 at 8-13.)  Each of the law firms involved in the case have also submitted separate declarations setting forth the total hours and hourly rates for each attorney and paralegal who worked on the case. (*See* Docs. 289, 291-294.)  In addition, Class Counsel summarized this information for the Court in a "Lodestar Analysis by Time Range" and "Timeline of Events" format. (*See* Doc. 288, Ex. A-B.)  Finally, Class Counsel submitted an expert opinion as to what would be a reasonable fee for their services.  (*See* Doc. 290.)

Hyundai nonetheless disputes that Class Counsel have met their burden of proof, arguing that federal authority, not California law, controls whether Plaintiffs have submitted sufficient evidence to support an award of attorneys' fees.  The Ninth Circuit has recently confirmed, however, that "*[s]tate law* establishes the required showing for attorneys' fees in an action in diversity" *Winterrowd*, 556 F.3d at 827 (emphasis added). *Winterrowd* also addresses what typically should *not* be considered as an element of proof—Class Counsels' detailed time records:

---

[1]     Despite the fact that *Winterrowd* controls numerous aspects of Plaintiffs' fee application, Hyundai buries the case in a footnote, and does not address its holdings.

5

> While "[s]ome federal courts require that an attorney maintain and submit
> 'contemporaneous, complete and standardized time records' ...., [i]n
> California, an attorney need not submit contemporaneous time records in
> order to recover attorney fees." [*Martino*, 182 Cal. App. 3d] at 559, 227
> Cal. Rptr. 354. "Testimony of an attorney as to the number of hours worked
> on a particular case is sufficient evidence to support an award of attorney
> fees, even in the absence of detailed time records." *Id.*

*Winterrowd*, 556 F.3d at 827.

Especially in a case like this, hotly litigated by a team of attorneys over the course of more than four years, it is more useful for Class Counsel to review their time records and present a detailed sworn summary of their work than for the Court to slog through hundreds of pages of the individual time records kept by each attorney and paralegal who contributed to the case.  This, along with the Court's own observations, will allow for an informed decision about the value of Class Counsel's services.  *See Martino*, 182 Cal. App. 3d at 559.  And, should the Court wish to examine the compilation of daily time records, Class Counsel will gladly make them available for in camera review.

### 2.    The Time Class Counsel Spent On This Case is Reasonable.

Hyundai's main challenge to Class Counsel's time is a quantitative comparison between the 8,771 hours Class Counsel spent on this case and the 5,077 hours spent by Hyundai's outside counsel, Bingham McCutchen LLP ("Bingham").  (Opp. at 9-10.) Although Hyundai intends the comparison to demonstrate that Class Counsel's time is inflated, a closer examination shows that Hyundai is offering incomplete time data and that the enormous resources marshaled by Hyundai to defend this case required Class Counsel to spend the time that they did fighting for class members.

### a)    Hyundai's Time Comparison Does Not Account For The Substantial Contribution of Its In-House Counsel.

The fundamental problem with Hyundai's comparison of time is its failure to include the substantial time spent by Hyundai's in-house legal team, led by Assistant General Counsel Jason Erb.  (*See* Taggart Decl., ¶ 58 (testifying that Hyundai's hours only include time records regularly prepared and maintained by Bingham).)  The record

1   here shows Mr. Erb and his staff took a laboring oar in many time-consuming

2   substantive parts of the litigation including working directly with Hyundai's experts in

3   creating expert reports, handling most of Hyundai's discovery responses, and conducting

4   background investigations of the named plaintiffs.  Mr. Erb also took one of the

5   plaintiff's depositions and attended others.  (*See* Suppl. Siegel Decl., ¶ 27.)

6          Trying to quantify Hyundai's in-house hours is no easy task, but can be gleaned

7   from both direct and indirect sources in this case.  For example, the document

8   productions made by Hyundai's experts—Mr. Dirk Starksen and Mr. Roger Brown—

9   reveal that Mr. Erb and his team were primarily or exclusively responsible for drafting

10  Mr. Starksen's and Mr. Brown's expert reports and preparing them to testify.  Numerous

11  emails between Hyundai's experts and Mr. Erb (with no copies reflected to lawyers at

12  Bingham) show Mr. Erb supplying the experts with research and other materials related

13  to this case.  (*See id*., Ex. I.)  At least in Mr. Starksen's case, these emails culminate in

14  Mr. Erb transmitting the expert report directly to the expert, again with no apparent copy

15  to Bingham.  (*See id*., Ex. J.)  Not a moment of Mr. Erb's time or that of his staff in

16  providing information or preparing the expert reports is captured in Hyundai's time

17  comparison.  In contrast, while Plaintiffs didn't draft the reports for their experts, they

18  devoted hundreds of hours researching potential experts, providing documents and other

19  materials to their experts, preparing them to testify, and defending their depositions.

20         Mr. Erb also submitted numerous declarations in the case where he explains in his

21  own words his contributions to numerous additional aspects of the case.  For example, in

22  his declaration submitted in support of Hyundai's Opposition to Plaintiffs' Motion for

23  Class Certification, Mr. Erb states:  "Over the course of various days from March 2008

24  through June 2008, I, and others with whom I work and whose work I oversee in the

25  HMA Legal Department, reviewed, logged, and caused to be printed certain

26  user/member profile information from websites."  (*See id.*, Ex. K [Doc. 107] at 1.)  Mr.

27  Erb goes on to state that "each member's profile was reviewed, one-by-one" on each of

28  the sites in an effort to "capture the evidence of vehicle modification and/or excessive

7

driving displayed on each member's profile page." (*Id*. at 1-2.)  Mr. Erb explains his on-line investigation in painstaking detail, all in an effort to support Hyundai's claim that class members often modified or raced their vehicles.  (*Id*. at 1-4.)  Again, none of this time was recorded in the 5,077 hours reported by Hyundai's outside counsel.

Mr. Erb's deep involvement with discovery to the exclusion of Bingham was revealed in his declaration submitted in response to Judge Goldman's March 24, 2009 Order Granting, in part, Plaintiffs' Motion to Compel:  "Since the inception of this matter, I have overseen HMA's efforts to identify, collect, and produce those documents in HMA's possession, custody, or control reasonably believed to be responsive to plaintiffs' numerous requests for production of documents, as well as HMA's Rule 26 disclosures."  (*See* Suppl. Siegel Decl., Ex. L [Doc. 210-1 at 100-103].)  Again, Mr. Erb explains in detail—at least 13 distinct steps are identified—the efforts he and his in-house team brought to bear in purportedly satisfying its discovery obligations.  (*Id*.)  Later in the litigation, when Plaintiffs challenged Hyundai's representation that it had no relevant emails to produce despite the fact that Hyundai's 30(b)(6) witness admitted communicating by email, Judge Goldman challenged Bingham regarding who was responsible for the search:  "it's unclear to me now whether or not you really conducted a search or Mr. Erb conducted the search of the e-mail servers." (Doc. 248 at 20.)  Judge Goldman concluded Mr. Erb was responsible, and ordered him to appear in Court and explain why no email had been produced.  (*See* Doc. No. 231.)  Hyundai's Opposition simply omits all of this substantial time spent by its in-house team on discovery.

Finally, when Hyundai filed its Motion for Summary Judgment in June 2009, Mr. Erb filed yet another declaration explaining how he cold-called 2003 Tiburon owners to survey them about their experiences with their vehicle.  (*See* Suppl. Siegel Decl., Ex. M [Doc. 217-4].)  Hyundai omits all of this time from its Opposition, as well.

Even on this limited record—Plaintiffs are obviously not privy to all of the tasks undertaken by Mr. Erb and his staff—it is apparent that Hyundai's reported total of 5,077 hours is missing thousands of hours spent on the case by Hyundai's in house legal

8

1    team.  There is nothing wrong with a client absorbing litigation costs by handling some

2    matters in-house, but Plaintiffs have no in-house legal team to defray the costs of these

3    tasks, and any relative comparison of time must account for Hyundai's in-house efforts.

4           **b)**      **Class Counsel Staffed The Case Appropriately.**

5           Most if not all of the disparity between Class Counsel's time can be explained by

6    the omission of Mr. Erb's substantial contributions to the case.  A further explanation for

7    the time disparity is in the earliest portions of the case, when Plaintiffs were involved in

8    their initial investigations, complaint filings, lead counsel applications, and coordination

9    proceedings, while Hyundai had scarcely appeared in the litigation.  (*See* Taggart Decl.,

10    Ex. P, #1-3; Suppl. Gibbs Decl., ¶¶ 10-16.)  Hyundai ignores both of these explanations,

11    however, and insists that Class Counsel must have over-staffed the case and engaged in

12    duplicative work.  (*See* Opp. at 8-12.)  The evidentiary record shows, however, that the

13    vast majority of work in the case was accomplished by five attorneys at the two law

14    firms appointed to serve as co-lead class counsel, and that each was chiefly responsible

15    for different facets of the litigation.  (*See* 5/4/10 Gibbs Decl. [Doc. 289], ¶¶ 8-10, 14;

16    5/4/10 Siegel Decl. [Doc. 292], ¶¶ 6-7, 11); *compare Jefferson*, 2009 WL 2051424 at *4

17    ("Although Chase is correct that multiple staff were used, because the bulk of the hours

18    spent were from a few attorneys, this does not appear unreasonable.").

19           Despite all of its rhetoric, Hyundai points to only one event that it claims was

20    overstaffed, which was the mediation where the parties reached settlement.  Along with

21    the two lead counsel, two of the lawyers most familiar with the factual record and

22    particular class member experiences also attended.  The mediation was held within

23    walking distance from their office and their contributions were important in reaching the

24    best possible result for the class.  (Suppl. Gibbs Decl., ¶ 24; Ex. 9 (chart showing Class

25    Counsel's staffing at each hearing, deposition, and mediation).)

26           Besides its misplaced attack on that lone mediation, Hyundai fails to address the

27    actual record before the Court, which reflects that Class Counsel thoroughly examined

28    their time records and exercised billing judgment to avoid duplicative time and exclude

hours that may have been inefficient or unnecessary.  For example, the time associated with Plaintiffs' December 2008 motion to compel that Hyundai complains about is *not* included in Plaintiffs' lodestar figure.  (*See* Doc. 289, ¶ 13 (describing write-offs).)  The 8,771 hours that Class Counsel are seeking compensation for is not only thoroughly detailed in the record, it compares well with the more than 12,000 hours of time spent on a somewhat similar case, *Chamberlan v. Ford Motor Company*, which the Court referenced in its order granting class certification.  (Doc. 175 at 29-31.)  That case was litigated over about three years and, like this case, included hard-fought class certification proceedings, a battle of experts over the alleged automotive defect in question, and extensive summary judgment briefing.  After the case settled on the eve of trial, the court approved class counsel's fee application, finding the substantial time they spent pursuing the class's interests over Ford's opposition to be reasonable and compensable.  *Chamberlan*, No. 03-2628-CW, Doc. 479 (N.D. Cal. October 7, 2005).

   The Ninth Circuit has also acknowledged the economics of contingency litigation weigh in favor of relying on Class Counsel's sworn representations regarding the effort required in bringing about a successful result:  "It must also be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee."  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).  For that reason, the Ninth Circuit has advised, "By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker."  *Id.*  In Class Counsel's case, their interest was to work the case as efficiently as possible—minimizing risk while maximizing the chance of a class-wide recovery.  Had Class Counsel not spent the time they did, and worked to fight through each of Hyundai's factual and legal contentions, they could not have achieved the result that they did.

   For example, Hyundai speculates that Plaintiffs should have spent no more than 300 hours during the time period between January 2009 and July 2009.  Yet during that

same time period, Hyundai's outside counsel spent 1,000 hours, with Hyundai's in-house counsel contributing additional time toward its defense efforts.  *See Thiebes v. Wal-Mart Stores, Inc.*, 220 Fed. Appx. 750, 751 (9th Cir. 2007) ("Litigation has something of the tennis game, something of war, to it; if one side hits the ball or shoots heavy artillery, the other side necessarily spends time hitting the ball or shooting heavy artillery back…. When a defendant employs a scorched earth strategy, unreasonably increasing a plaintiff's litigation expenses, the defendant can expect to pay for the attorney fees it forces the plaintiff to incur.")  The record before the Court reflects the many activities that were required of Plaintiffs' counsel over this time period to resist Hyundai's heavy artillery as well as to move the case forward and prepare it for trial. (*See* 5/4/10 Gibbs/Siegel Decl. [Doc. 288], ¶¶ 79-91; *see also* Suppl. Gibbs Decl., ¶¶ 21-23.)  Suffice it to say, had Class Counsel slacked off during this time period, the settlement achieved in early August either would not have been possible or would not have been nearly as favorable.  As it was, Plaintiffs had secured an order requiring Mr. Erb to appear in person before Magistrate Goldman, had set forth comprehensive evidence of a flywheel system defect in response to Hyundai's summary judgment motion, and were on the verge of mailing class notice and advancing to trial.  That superior litigation position, which led directly to complete or nearly complete relief for class members, did not come without a lot of work.  (*See* Doc. 288, ¶¶ 4-93; Suppl. Gibbs Decl., ¶¶ 7-23 (compiling and re-compiling Class Counsel's litigation activity).)

### c)   Class Counsel Have Supported Their Time In The Case With  Expert Testimony.

Prior to making their fee application, Class Counsel asked Professor William B. Rubenstein, a leading class action scholar and the author of *Newberg on Class Actions*, to review their work in the case.  (*See* Doc. 290, Ex. 1.)  He analyzed Class Counsel's time and found it to be reasonable in light of what was required of them to effectively litigate the case over the past four years.  (*See id.* at 5-7, 19-22.)  In moving to strike Prof. Rubenstein's opinion, Hyundai claims that expert testimony is not appropriate on

REPLY MEM. IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES
CASE NO. SACV 06-345 AHS (MLGx)

1   the subject.  California law, however, endorses expert testimony as to what would be a

2   reasonable fee for Class Counsel's services, which necessarily includes the

3   reasonableness of their time spent and hourly rates.  *Winterrowd,* 556 F.3d at 827 (citing

4   *Martino*, 182 Cal. App. 3d at 558-59).   For example, when Bingham served as class

5   counsel in another case, it submitted the expert opinion of Richard M. Pearl, who

6   testified that Bingham's time in the case and hourly rates were reasonable.  *See L.H. v.*

7   *Schwarzenegger*, No. 06-02042-LKK, Doc. 452 (E.D. Cal. October 20, 2008).

8          Hyundai also claims that Prof. Rubenstein's opinion should be excluded because

9   he did not review the hundreds of pages of daily time records kept by class counsel.  But

10  daily time records are not necessarily the best way to get a sense of what Plaintiffs

11  accomplished and are not required to be submitted under California law.  Prof.

12  Rubenstein reviewed the record in the case and accurately sets forth Class Counsel's

13  major litigation activities.  (*See* Doc. 290, Ex. 1 at 6-7.)  As the author of the leading

14  class action treatise, of a monthly column in the Class Action Attorney Fee Digest, and

15  one of the foremost scholars of class action law, Prof. Rubenstein has studied and

16  reviewed as many class actions over the last twenty years as just about anyone in the

17  world.  He has an ideal understanding of what is required to successfully pursue class

18  action litigation and how much time is required to do so.  His perspective in this

19  complex and ever-evolving field is valuable and entitled to weight, especially in the

20  absence of any contravening expert testimony.

21          **3.     Class Counsel's Hourly Rates Are Reasonable.**

22          In addition to claiming that Class Counsel's time is inflated and unreasonable,

23  Hyundai also claims that Class Counsel's hourly rates are inflated and unreasonable.  To

24  start with, Hyundai argues that Class Counsel is impermissibly using their current rates

25  to calculate their lodestar.  "Under [California] state fee-shifting statutes, however, a fee

26  applicant may be awarded a lodestar amount reflecting their present hourly rate, rather

27  than the lesser rate applicable when the services were rendered."  *Coles v. City of*

28  *Oakland*, 2007 WL 39304, *6 (N.D. Cal. 2007) (citing *Graham,* 34 Cal. 4th at 584).

1  "Awarding fees at the higher rate serves to compensate a fee applicant for delay in

2  receiving payment for services 'rendered long in the past[, which] deprives the eventual

3  recipient of the value of the use of the money in the meantime.' *Id.* (quoting *Graham,*

4  34 Cal. 4th at 584).  The alternative is to apply a higher multiplier to the lodestar to

5  compensate Class Counsel for the lost time value of money, but calculating the lodestar

6  using current rates is more common.  For example, Bingham has stated that when it

7  serves as class counsel in cases, it is its usual practice to use current billing rates when

8  applying for attorneys' fees.  (*See* Suppl. Gibbs Decl., Ex. 5, ¶ 23 ("Consistent with our

9  usual practice and because we have received no compensation to date, except as noted

10  above, we use our 2008 hourly rates in this motion for attorneys' fees to compensate for

11  delay in payment.")  Class Counsel should note, however, as they neglected to do so in

12  their opening memorandum, that if the Court adopts Class Counsel's lodestar calculation

13  using current rates, it should not take into account delay in payment in assigning a

14  multiplier (but of course may still consider the risk that those fees would never be

15  collected at all).  *See Graham,* 34 Cal. 4th at 584.

16       Hyundai also complains that Class Counsel's current hourly rates are too high.

17  While Hyundai is willing to offer Bingham's *hours* for comparison purposes, it is

18  unwilling to offer Bingham's *hourly rates*.  If the hourly rates of other Bingham

19  attorneys are any indication, the rates Bingham charged Hyundai in this case are likely

20  to be higher than what Class Counsel is requesting here.  *See In re LandAmerica*

21  *Financial Group*, *Inc.*, *et al.*, No. 08-35994-KRH (Bankr. E.D. Va.) (requesting $1.63

22  million for 2,690 hours expended between 9/1/09 and 12/6/09, for an average hourly rate

23  of $605).  Class Counsel $471 is much lower, comparing instead to the $486 average

24  hourly rate recently approved for consumer class action attorneys in the *Create-A-Card*

25  case cited by Hyundai throughout its brief.  *See Create-A-Card, Inc. v. Intuit, Inc.*, 2009

26  WL 3073920, *2 (N.D. Cal. 2009).

27       In particular, Hyundai complains that the hourly rates of Girard Gibbs attorneys

28  Eric Gibbs and Dylan Hughes are too high and have increased too much since their 2006

REPLY MEM. IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES
CASE NO. SACV 06-345 AHS (MLGx)

hourly rates reported in *Roy v. Hyundai*.  Attorneys' hourly rates typically increase at a rate of about 10% per year.  (*See* Suppl. Gibbs Decl., Ex. 6, ¶ 5 (testifying that Bingham attorneys' hourly rates "increased by an average of approximately ten percent for 2009"); Suppl. Siegel Decl., ¶ 9 (rates increased 10% a year since *Roy*).)   Mr. Gibbs's hourly rate has increased at an average of 11.2% per year since 2006, while the hourly rate for Mr. Hughes, who was elevated to partner last year, increased at an average of 16.1% per year.  The 2006 rates were below or in the bottom range of published rates for attorneys' of similar skill and experience; that discrepancy has been corrected through above-average annual increases.  (*See* Suppl. Gibbs Decl., ¶ 3.)  Over the last four years, Mr. Gibbs's and Mr. Hughes's hourly rates have been approved as reasonable by numerous courts and have never been reduced.  (*See id.*, ¶¶ 3-4.)

Prof. Rubenstein has reviewed the hourly rates of Mr. Gibbs and Mr. Hughes, as well as those of Mr. Siegel, Mr. Hilton and Mr. Munroe.  In each case, he found the hourly rate to be reasonable and well within the range of published hourly rates for attorneys in the Southern California area with similar experience.  (*See* Doc. 290, Ex. 1 at 16-17.)  He also found Class Counsel's overall blended rate to be consistent with rates approved by courts in the Central District over the past several years.  (*See id.* at 18.)  Although Bingham has relied on expert testimony in the past to support its position on attorneys' fees, it has not offered an expert opinion to support Hyundai's argument that the rates charged by Class Counsel are too inflated and unreasonable.  And while it attempts to undercut Prof. Rubenstein's conclusion by claiming that he did not disclose the cases from which he drew his data (*see* Opp. at 14), Prof. Rubenstein explains his methods thoroughly in his report and lists each of the cases his data is drawn from.  (*See id.* at 16-18, Exs. C, D.)

   **C.   Class Counsel's Requested Lodestar Multiplier Is Appropriate.**

         **1.    The Results Obtained Weigh In Favor Of A Fee Enhancement.**

The fee to be awarded under California's fee-shifting statutes is reached by first calculating the lodestar and then adjusting it upward or downward based on the Court's

14

evaluation of the following factors:

(1)     The risks presented by the litigation;

(2)     The novelty and difficulty of the questions involved, and the skill exhibited by plaintiffs' counsels in addressing those issues;

(3)     The results obtained on behalf of the class by the plaintiffs' counsel;

(4)     The continuing obligation of Plaintiffs' Counsel to devote time and effort to the litigation;

(5)     The extent to which the litigation precluded other employment by the attorneys; and

(6)     The delay in awarding fees.

*See, e.g., In re Consumer Privacy Cases*, 175 Cal. App. 4th at 556; *In re Vitamin Cases*, 2004 WL 5137597, *9 (Cal. Super. 2004).

In their opening memorandum, Class Counsel submitted that these factors supported their requested multiplier of 2.0.  Hyundai disagrees, focusing its opposition primarily on the fourth factor and arguing that "the lack of benefit to the class requires the use of a negative multiplier because Plaintiffs' requested fees significantly exceed the amount of class recovery."  (Opp. at 15.)

Plaintiffs have previously addressed the benefits of the settlement in their final approval papers and in their opening fee memorandum, and Class Counsel have provided the Court with a comprehensive record of class members' reaction to the settlement.  At this point, the Court is well situated to determine whether Class Counsel's efforts have resulted in a substantial benefit to class members, or whether Hyundai is correct that there is a lack of benefit to the class.  Two points of reply are worth emphasizing, however, and are discussed further below.  The first is that the cases that Hyundai analogize to involved recoveries (such as coupons) that were relatively poor or undesirable at the individual level, and as a result few class members chose to file claims.  The settlement here is different, as it is providing over $1,000 on average to

15

individual class members and has been greeted with a high claims rate.   The second point is that, as previously discussed, the CLRA and private attorney general statute recognize that the total class recovery may often be significantly less than the attorneys' fees in consumer protection cases.   Reducing the attorneys' fees on proportionality grounds, as Hyundai urges, runs contrary to the purpose of these statutes and would mean that relatively small groups of consumers (like the 2003 Hyundai Tiburon owners here) would have no effective redress against unfair and deceptive business practices.

### a)   The Cases Hyundai Cites Had Poor Individual Recoveries Or Very Low Claim Rates.

Hyundai principally cites three cases support of its position that Class Counsel's fees should be reduced for failing to confer a substantial benefit:   *Create-A-Card, Inc. v. Intuit, Inc.*, 2009 WL 3073920 (N.D. Cal. 2009); *True v. Am. Honda Motor Co.*, 2010 WL 707338 (C.D. Cal. 2010); and *Suzuki v. Hitachi Global Storage Technologies, Inc.*, 2010 WL 956896 (N.D. Cal. 2010).   In each case the individual benefit offered to class members was of dubious value or otherwise not attractive to class members.   For example, in *Create-A-Card*, only 1% of class members chose to file a claim and participate in the settlement.  2009 WL 3073920 at *3.  In *Suzuki*, the court found that counsel had conferred "virtually-non-existent results" on class members, as the only consequence of the early settlement they negotiated was that future hard-drive packaging would include the technical clarification that 1 gigabyte equals one billion bytes and 1 terabyte equals 1,000 gigabytes.  2010 WL 956896 at *5, *1, n. 1.[2]  And in *True*, the

---

[2]      Although the settlement did not create a common fund, the *Suzuki* court opted to independently value the settlement and treat it as a constructive common fund for the purpose of evaluating fees—an approach not recognized under California law, but one that Hyundai cites with approval.  2010 WL 956896 at *5.  Another Northern District judge had previously taken a similar approach to an injunctive-relief settlement he similarly deemed a "virtually worthless settlement."  *See Yeagley v. Wells Fargo & Co.*, 2008 WL 171083, *6-7 (N.D. Cal. 2008).  The Ninth Circuit recently reversed, finding the district court's constructive common fund approach inappropriate and remanding for calculation using the lodestar method.  *Yeagley*, 2010 WL 601460 (9th Cir. 2010).

REPLY MEM. IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES
CASE NO. SACV 06-345 AHS (MLGx)

coupons and educational DVDs offered by the proposed settlement were of so little value that a number of class members and 26 states successfully urged the court to deny final approval. 2010WL 707338 at *24-25. The court accordingly denied counsel's motion for attorneys' fees without prejudice as premature. *Id.* at *26.

In contrast to cases such as *True*, where there was "no guarantee that [Honda] will pay *any* money out of the settlement," Hyundai has already received 1,043 claims from class members, with an average claim value of $1,181. (*See* Erb Decl. [Doc. 310-1] at 2.) Hyundai has estimated that the class consists of about 2,900 people,[3] which if accurate, means that in the month since class members learned of the proposed settlement, 36% of the class have already submitted claims. *See* Tiffany Allen, *Anticipating Claims Filing Rates in Class Action Settlements*, Nov. 2008 [Doc. 314 at 14] (typical consumer settlements draw between 2 and 20 percent claims rates). Even if there are twice as many class members as Hyundai estimates, the claims data still shows that class members value the settlement and consider it beneficial. Hyundai suggests delaying an attorneys' fee award until all claims are in, but under the settlement, class members can continue to make claims for future repairs until about 2012 or 2013 (10 years after they purchased their vehicle). (*See* Doc. 309-1 at 3, (I)(D).) Given the substantial record before the Court and the lack of class member objections to Class Counsel's attorneys' fees, there is little reason to further delay compensation to Class Counsel, who have already devoted four years of professional time and hundreds of thousands of dollars to this case.

### b) A Cross-Check Based On Total Class Recovery Is Inappropriate In This Case.

The essence of Hyundai's argument is that the "results" factor in this case should not be evaluated with respect to the $1,000+ recoveries that individual class members are receiving or high claims rate, but with regard to the aggregated class recovery, which

---

[3]     There were 11,693 potential class vehicles sold, and Hyundai estimates that about 25% of these underwent flywheel system repairs. (*See* Erb Decl. at 2; Opp. at 1, 20.)

17

REPLY MEM. IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES
CASE NO. SACV 06-345 AHS (MLGx)

Hyundai places at about $2 million.  To support its position, Hyundai observes that beginning with *Lealao*, 82 Cal. App. 4th at 49-50, California law has authorized a percentage cross-check, under which a court may "adjust the lodestar in comparison to a percentage of the common fund to ensure that the fee awarded is reasonable and within the range of fees freely negotiated in the legal marketplace in comparable litigation.  *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 557 (2009) (citing *Lealao*). California law also stresses, however, that the Court should consider a percentage cross-check only where "it is not otherwise inappropriate," *Lealao*, 82 Cal. App. 4th at 49, and that doing so is "not required."  *In re Consumer Privacy*, 175 Cal. App. 4th at 557.  And even where a percentage cross-check is appropriate, assessing how much weight that factor should carry is a difficult question left to the Court's discretion.  *Lealao*, 82 Cal. App. 4th at 53.

In this case, a percentage cross-check is inappropriate for two related reasons. First, "permitting the amount of the recovery to influence the fee is most justified where the amount of the recovery is not due primarily to the size of the class"; otherwise, the total paid out to the class is not an "authentic indication of the value of counsel's contribution."  *See Lealao*, 82 Cal. App. 4th at 53.  That is the case here, where while a typical class member will recover $1,000-$2,000, representing a complete or nearly complete monetary recovery for his or her loss, the total amount paid out to the class will be impacted by the relatively small size of the class.  So while Class Counsel achieved about the most successful outcome as it could, because there are "only" a few thousand class members, the total class recovery will not be extremely large.  Looking at the total class recovery is therefore not a good indication of quality of the results achieved by Class Counsel.  The better barometer is the recovery that individual class members are receiving in relation to their loss, and the class's reaction to the settlement.

The second reason that a percentage cross-check is inappropriate in this case is that it would run afoul of California consumer protection policy to reduce the fee award because the size of the aggregate recovery is relatively modest.  The goal of the

percentage cross-check is to "ensure that the fee awarded is within the range of fees freely negotiated in the legal marketplace in comparable litigation." *Lealao*, 82 Cal. App. 4th at 50.  But as previously discussed, the stated goal of California's CLRA and private attorney general fee-shifting statutes is to fill the gap where the legal marketplace would not otherwise allow relatively modest consumer protection cases to be prosecuted. *See Hayward*, 108 Cal. App. 4th at 512 ("The provision for recovery of attorney's fees allows consumers to purse remedies as cases as here, where the compensatory damages are relatively modest.  To limit the fee award to an amount less than that reasonably incurred in prosecuting such a case, would impeded the legislative purpose …"). Accordingly, as the district court ruled in *Jefferson* a downward adjustment based on a relatively small total class recovery is inappropriate:  "Under California consumer protection law, the size of Plaintiffs' recovery as compared to the fees award sought does <u>not</u> determine whether a deduction should be taken from the lodestar; on the contrary, the state courts are clear in explaining that consumer protection may require precisely the outcome that Defendant challenges of a disproportionate award."  *Jefferson*, 2009 WL 2051424 at *3; *see also Graciano*, 144 Cal. App. 4th at 164 (finding marketplace rationale of *Lealao* inapplicable and reversing trial court's 0.3 "negative" multiplier; "the legislative policies are in favor of Graciano's recovery of all attorney fees reasonably expended, without limiting the fees to a proportion of her actual recover").

### 2. The Fee Multiplier Should Take Into Account All Factors.

Even if Hyundai were correct that the "result" factor should be evaluated based on the total class recovery, a fee enhancement would nonetheless be appropriate based on the other multiplier factors, such as the significant risk associated with the case, the difficulty of the legal and factual questions raised by the litigation, and the 4-year delay in payment.  For instance the, *Create-A-Card* and *McIntosh* cases that Hyundai claims support a fee reduction due to poor results actually awarded plaintiffs' counsel a fee *enhancement* after considering all of the relevant factors.  The *Create-A-Card* court concluded that the results factor counseled for a downward adjustment of the lodestar, as

19

did other factors, such as short duration between the filing of the complaint and
settlement and the small amount of discovery and motion practice conducted.  *See id.*
Yet the district court nonetheless found that the risk associated with the case (modest as
it was) supported an upward adjustment.  *See* 2009 WL 3073920 at *3.  Based on an
evaluation of *all* the factors, the court enhanced counsel's lodestar from $463,000 to
$490,000.  *See id.* at *2, 4.  Likewise, in *McIntosh*, the court found that only one of the
four factors it evaluated (the contingency risk of the case) supported an upward
multiplier while the others (the results achieved, the novelty of the issues and skill
displayed in addressing them, and the extent to which counsel was precluded from other
employment) did not.  *See McIntosh v. McAfee, Inc.*, 2009 WL 673976, *3-4 (N.D. Cal.
2009).  The court nonetheless found that a modest multiplier of 1.2 was appropriate—a
far cry from the severe fee reduction that Hyundai maintains is appropriate here.  *See id.*

Hyundai spends little time evaluating anything other than the result factor,
disposing of the other multiplier factors in less than a page.  (*See* Opp. at 18 ("The other
factors do not outweigh the lack of benefit to the class").)  The California Supreme
Court has emphasized that the contingency risk borne by Class Counsel is the primary
factor that the Court should consider in deciding whether and by how much to enhance
their fee award above lodestar.  *Ketchum v. Moses,* 24 Cal. 4th 1122, 1138 (2001) ("the
purpose of a fee enhancement is primarily to compensate the attorney for the prevailing
party at a rate reflecting the risk of nonpayment in contingency cases as a class").  Class
Counsel discussed the many risk points presented by this case, as well as the long
duration over which they had to financially carry that risk, in their opening
memorandum.  (*See* Doc. 287 at 16-21.)  Hyundai still maintains that Plaintiffs' case
should have been dismissed and never certified, devoting much of its brief and
supporting declaration to arguing matters it already lost.  (*See, e.g.*, Opp. at 1, 10-11;
Taggart Decl. at 4-13.)  Hyundai's assertion that there was "very little risk to Plaintiffs in
this case," is thus inconsistent with the rest of its presentation and is premised entirely on
two untrue and unsupported factual contentions.  (Opp. at 19.)

The first contention is that Class Counsel "advertised on its website that a class had been certified long before the Court issued its Order." (Opp. at 19, n. 13.)  Although Hyundai attorney Craig Taggart is willing to say a great many things about Class Counsel under oath,[4] he is unwilling to support this assertion except to say that he was "informed and believed" that it is true.  (*Id.* at 7.)  Class Counsel do not know what Hyundai is referring to, but they are well aware that class certification is an uncertain endeavor and would never predict certain success or tell class members that a class has been certified when it has not.  (*See* Suppl. Gibbs Decl., ¶ 28; Suppl. Siegel Decl., ¶ 38.)

The second contention that Hyundai makes to support its claim of very little risk is that "[t]he settlement at the end of the case is not very different than the settlement the parties were discussing at the outset of the case." (Opp. at 19; *see also id.* at 11-12 ("Hyundai has from the outset had proposals on the table substantially similar to the agreement now presented for approval.").)  Again, Mr. Taggart is unwilling to state this under oath (nor is Mr. Erb or Mr. Gordinier, Hyundai's lead counsel).  As Class Counsel previously stated under oath in a concise attempt to correct similar misrepresentations made by Hyundai in its preliminary approval joinder, the settlement now before the Court provides class members with about three times the monetary recovery offered by Hyundai early in the litigation.  (*See* Gibbs/Siegel Decl. [Doc. 288] at 20, ¶ 105.)  To correct Hyundai's now repeated misrepresentations in this regard, Class Counsel have submitted additional testimony confirming that their efforts in this case have generated about three times the monetary relief for class members, and have also made possible a convenient, streamlined claims process without the onerous burdens that Hyundai wanted to impose (which would have included a requirement that class members submit

---

[4]  Among Mr. Taggart's sworn assertions are that:  "Plaintiffs concoct[ed] a discovery dispute to cover-up their lack of evidence and drive up fees"; "Plaintiffs misle[d] the Court at the hearing on the motion for class certification"; Class Counsel have "attempt[ed] to support their excessive hours by falsely asserting that they prepared for trial"; and "[e]ach of Plaintiffs' four motions to compel was based on a false recitation of the facts."  (Taggart Decl. [Doc. 310-2] at 4, 6, 8, 11.)

21

REPLY MEM. IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES
CASE NO. SACV 06-345 AHS (MLGx)

1   photographs of their vehicle to recover).  (*See* Suppl. Siegel Decl., ¶¶ 12-20.)  Under

2   Hyundai's previous proposal, for example, plaintiff and class member Donn Schroder

3   would have received only about $582 for his November 2005 flywheel system repair.

4   He will now receive $1,892.

5       Contingency risk is the most important factor supporting Class Counsel's

6   requested multiplier, but Plaintiffs' opening memorandum also assess the other

7   multiplier factors and explains why they also weigh in favor of a fee enhancement in this

8   case.  For example, Class Counsel have already spent 170 hours over the last three

9   months communicating with class members regarding the settlement, answering their

10  questions, and assisting them in filing claims.  (*See* Suppl. Gibbs Decl., ¶ 26.)  Class

11  Counsel will also be fulfilling their ongoing obligations to class members by carefully

12  reviewing any rejected claims, monitoring claim payouts, and mediating and/or

13  arbitrating any claim disputes with Hyundai.  This additional time, which will continue

14  to accrue all at least until class members can no longer submit claims in 2013 and is not

15  accounted for in Class Counsel's lodestar, supports an award of additional fees in the

16  form of a slightly higher multiplier.  In addition, the thousands of hours that Class

17  Counsel have spent representing the class is time that was unavailable to pursue other

18  class cases, which would have carried less risk and great chance of a reward, and is thus

19  a factor that courts consider for fee enhancements.  (*See* Rubenstein Decl. [Doc. 290, Ex.

20  1] at 25-26.)

21      Finally, while Class Counsel acknowledged that the novelty involved with this

22  case and the skill required to litigate it were largely reflected in their lodestar, they also

23  made the case that the particular combination of novel questions—involving, for

24  example, post-CAFA choice-of-law issues, pre-*Tobacco* reliance issues, post-

25  *Daugherty*/*Bardin* omissions issues, and the unique issues presented by a defect in a

26  vehicle system consisting of both wear and non-wear components—warranted

27  consideration.  Hyundai responds by pointing to Class Counsel Rule 23g filing, which

28  referred to the case as a "relatively uncomplicated case involving a single vehicle

REPLY MEM. IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES
CASE NO. SACV 06-345 AHS (MLGx)

defect." (Taggart Decl., Ex. B.)  Class Counsel were correct that the case did not require two sets of lead counsel and that it involved only one vehicle and one alleged defect, but of course, assembling the proof of and combating Hyundai's creative and hard-driving defense strategy proved to be anything but uncomplicated.  Hyundai spent over 5,000 hours of outside counsel time and thousands of hours of its in-house counsel's time aimed at denying the existence of any defect and instead emphasizing the myriad different ways that people drive and maintain their vehicles, along with the various factors that influence clutch wear and theoretically might cause a flywheel system failure (if the problem were an isolated occurrence at least).  When a well-financed defendant is committed enough to emphasizing the differences between class members and the litany of things that could be (but weren't) responsible for the injury in question, conveying the overriding and relatively straightforward issues at the heart of class members' claims can be one of the more novel and difficult tasks in litigation—as it was here.

### D.   Class Counsel's Expense Request Is Reasonable And Should Be Granted.

Contrary to Hyundai's unsubstantiated arguments, Class Counsel's requested award for reimbursement of $133,866.05 of the $400,254.53 in out-of-pocket expenses they incurred prosecuting this case should be granted.

#### 1.   Class Counsel Have Sufficiently Documented Their Expenses.

Similar to their attorneys' fee argument, Hyundai incorrectly claims that the required evidence for expense reimbursements should be governed by federal law.  In doing so, Hyundai once again ignores controlling Ninth Circuit law.  As *Clausen v. M/V New Carissa*, 339 F.3d 1049, 1064 (9th Cir. 2003) explains, because Class Counsel's claim for reimbursement of expenses arises under California substantive law, the Court must apply California law on expenses rather than Local Rule 54-3 or Form CV-59.

Under California law, an initial verification is sufficient to establish the reasonableness and necessity of the expenses claimed.  There is no requirement that copies of bills, invoices, statements, or any other such documents be attached to a

verified memorandum of expenses under California law.  *Jones v. Dumrichob*, 63 Cal. App. 4th 1258, 1267 (1998).  If the items appear to be proper charges, counsel's verification is prima facie evidence that the expenses were necessarily incurred, and the burden of showing that an item is not properly chargeable or is unreasonable is upon the objecting party.  *Nelson v. Anderson*, 72 Cal. App. 4th 111, 131 (1999).  Here, Class Counsel has submitted detailed declarations showing that their expenses were reasonable and necessary.  In fact, Class Counsel's sworn declarations are clear that nearly 2/3 of all of the expenses in the case have already been eliminated from Class Counsel's expense request because they were not permitted as recoverable under California law.  The declarations are also clear that the remaining 1/3 of all the expenses (namely, the $133,866.05 that Class Counsel are requesting) were reasonable and necessary expenses associated the efficient prosecution of this action.  Hyundai's unsupported and purely speculative objections are insufficient to shift this burden of proof under California law.

Neither of the federal cases cited by Hyundai even discusses the required evidence for expenses.  *Taco Bell Corp. v. Cont'l Cas. Co.*, 388 F.3d 1069, 1076 (7th Cir. 2004), simply provides that the decision whether to hold an evidentiary hearing regarding an attorneys' fee award is procedural and governed by federal law.  Further, in *U.S., ex. rel. Glumac v. Don Todd Assocs., Inc.*, 2010 WL 545839, *5 (N.D. Cal. 2010), the plaintiff did not submit *any* document detailing the costs incurred, and the court simply instructed them to "submit a proper explanation of the requested amount."  Simply put, Hyundai cannot twist these cases to establish that Class Counsel is required to submit all bills and invoices for all expense reimbursements under California law.

### 2.    Class Counsel's Expenses Are Recoverable Under California Law.

Hyundai's last argument—that Class Counsel's costs are not recoverable under California law—is again only supported by incorrect assumptions and rhetoric.  Rather than restate the law set forth in their previously filed Memorandum in Support of Attorneys' Fees and Expenses, Class Counsel simply refer the Court to that document.  Suffice to say, however, none of Hyundai's factual assumptions are true.  Hyundai is

24

1   wrong to suspect that Class Counsel flew first class—they *never* did.  (*See* Suppl. Siegel

2   Decl. ¶ 32; Suppl. Gibbs Decl., ¶ 27.)  Class Counsel's requested expenses do not

3   include any local meals, per California law.  (*See* Doc. 287 at 23-24; Doc. 288, Ex. F.)

4   Class Counsel has also not requested reimbursement of any expenses associated with

5   experts—whether it be expert time or for expenses related to travel or meals.  (*Id.*)  And

6   Class Counsel did not pay extra for their court reporter's travel expenses.  (Suppl. Siegel

7   Decl., ¶ 34.)

8        Class Counsel's requested award for reimbursement of costs—asking for only

9   $133,866.05 of their $400,254.53 out-of-pocket expenses—is both appropriate under the

10   law and well-deserved in a contingency fee case such as this.

11   **III.   <u>CONCLUSION</u>**

12        For the reasons stated above and in their opening memorandum, Plaintiffs

13   respectfully request that the Court enter their Proposed Order Awarding Attorneys' Fees

14   and Expenses.

15   DATED:  June 14, 2010                      Respectfully submitted,

16                                             **GIRARD GIBBS LLP**

17                                             By:  __/s/ Eric H. Gibbs_____

18

19                                             Geoffrey A. Munroe
20                                             601 California Street, 14th Floor
                                               San Francisco, California   94108
21                                             Telephone:  (415) 981-4800
22                                             Facsimile:  (415) 981-4846

23                                             Norman E. Siegel
24                                             Todd Hilton
                                               **STUEVE SIEGEL HANSON LLP**
25                                             460 Nichols Road, Suite 200
26                                             Kansas City, Missouri 64112
                                               Telephone:  (816) 714-7100
27                                             Facsimile:  (816) 714-7101

28                                             *Co-Lead Class Counsel*

                                               25

REPLY MEM. IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES
CASE NO. SACV 06-345 AHS (MLGx)