UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | | |
|---|---|---|
| MICHAEL PARKINSON, et al., | ) | SA CV 06-345 AHS (MLGx) |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | ORDER GRANTING PLAINTIFFS' |
| | ) | MOTION FOR AN AWARD OF |
| HYUNDAI MOTOR AMERICA, et al., | ) | ATTORNEYS' FEES AND EXPENSES |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

**I.**

**<u>OVERVIEW</u>**

The prevailing plaintiffs request $7,911,969 in attorneys' fees for 8,771 hours worked in a settled, non-common-fund class action.  The amount of the fee award, if any, applicable substantive law, and sufficiency of the records substantiating the fee request are vigorously contested.

By this order, the Court rules:  (1) the availability and amount of an attorneys' fee award is a substantive issue to be determined under California law; (2) use of current billing rates is permissible so long as they meet prevailing market rates for attorneys of similar skill and experience working on similar

1  cases; (3) state law does not require the Court to examine

2  detailed billing records, but prevailing plaintiffs must meet

3  their burden of proving that time expended was reasonable; (4)

4  courts have discretion to apply either the lodestar or percent-

5  of-recovery calculation methods, but, while permissible, no

6  cross-check is required under California law.

7  **II.**

8  **<u>BACKGROUND</u>**

9  **A.       Factual Summary**

10           This class action was filed on behalf of 2003 Hyundai

11  Tiburon GT owners due to an alleged defect in the vehicle's

12  manual transmission.  When customers brought the vehicle to

13  Hyundai dealerships for repair, they were told that the source of

14  the problem was a component no longer under warranty.  Plaintiffs

15  believe Hyundai knew of the alleged defect, concealed it from

16  consumers, and instructed dealers to replace the defective

17  components while telling consumers that the problem was caused by

18  something else.

19           The past four years of litigation have involved various

20  strategies by plaintiffs to vindicate the class members and

21  various attempts by Hyundai Motor America ("Hyundai") to defeat

22  the claims.  The parties participated in on-again off-again

23  mediation, beginning early in the case and resuming more

24  recently, culminating in a settlement.

25           After the parties finalized the settlement, the Court

26  granted plaintiffs' motion for preliminary approval of settlement

27  on March 3, 2010 and granted final approval of the settlement on

28  June 28, 2010.  The settlement provides reimbursement from 50-

100% for repair expenses, with the value varying based on mileage at the time of repair.  The settlement protects class members with up to 100,000 miles on their car at the time of repair. Rental car reimbursement is also available.

At the June 28, 2010 proceeding, the Court heard plaintiffs' presentation regarding the fairness, reasonableness, and adequacy of the settlement reached on behalf of the class members.  Upon conclusion thereof and without opposition by Hyundai, the Court granted plaintiffs' Motion for Order for Final Settlement Approval.  The final judgment was issued on June 28, 2010, reserving for separate determination the issue of attorneys' fees and costs.

**B.        Pending Motion**

Pursuant to the schedule set out in the preliminary approval, plaintiffs filed a motion for an award of attorneys' fees and expenses on May 4, 2010.  In support of their motion, plaintiffs submitted the expert declaration of William B. Rubenstein.  On June 7, 2010, Hyundai filed opposition.  Hyundai also filed its "Objections and Motion to Strike Professor Rubenstein's Declaration."  Plaintiffs replied on June 14, 2010 and filed a response to Hyundai's objections to the Rubenstein declaration.  During the June 28, 2010 hearing, the Court overruled Hyundai's objections to the Rubenstein declaration. Upon conclusion of oral argument, the Court ruled that a fee award would be made and took the motion under submission.  The sole issue is the amount of attorneys' fees and costs to be awarded.

//

C.          **Procedural History**

The initial complaint was filed on March 22, 2006.  The cases were consolidated and class counsel appointed on August 7, 2006.  The first amended consolidated complaint ("FACC") was filed on September 7, 2006.  Plaintiffs alleged claims for:  (1) violation of the Consumers Legal Remedies Act ("CLRA"), (2) unlawful, unfair, and fraudulent business practices under California's Unfair Competition Law ("UCL"), (3) violation of the Magnuson-Moss Warranty Act, (4) breach of express warranty, and (5) declaratory relief.

Hyundai filed a motion to dismiss the FACC on October 2, 2006, which plaintiffs opposed.  The Court denied the motion on March 28, 2007.  Plaintiffs filed a motion to certify class on May 27, 2008, which Hyundai opposed.  In conjunction with the motion, Hyundai filed a motion to strike plaintiffs' purported statistical data (denied November 6, 2008) and plaintiffs filed a motion to strike and objections to the Erb declaration (denied November 6, 2008).  The Court granted nationwide class certification on November 6, 2008, but only as to the CLRA and UCL claims.  On February 2, 2009, plaintiffs filed a motion to permit dissemination of class notices, which was granted on March 10, 2009.

On June 25, 2009, Hyundai filed a motion for summary judgment ("MSJ"), or in the alternative, partial summary judgment.  Plaintiffs filed opposition on July 23, 2009.  The parties then resumed mediation and notified the Court on August 7, 2009 that they reached a settlement.  The next day, pursuant to stipulation, the Court vacated all case management dates.

**III.**

<u>**SUMMARY OF PARTIES' CONTENTIONS**</u>

**A.        Plaintiffs' Motion for Attorneys' Fees & Costs**

California law provides for recovery of fees and costs under (1) the fee-shifting statute of the CLRA, Cal. Civ. Code § 1780, because plaintiffs are the prevailing parties; and (2) under the private attorney general statute, Cal. Civ. P. Code § 1021.5, because the action resulted in the enforcement of an important right affecting the public interest.  Plaintiffs seek reimbursement for fees and costs incurred during the course of litigation, including a fee enhancement for work performed from the early stages of the case until the August 2009 settlement. In total, plaintiffs request fees of $7,911,969 and costs of $133,866.05.  Plaintiffs' attorneys' fees are calculated by multiplying (1) the number of hours reasonably spent (2) by the prevailing hourly rates of attorneys working on the case. Plaintiffs calculate a total of 8,771 hours spent with a lodestar value of $4,132,535.  Plaintiffs request a multiplier of 2.0 applied to $3,779,434 ($7,558,868), the lodestar representing the time expended from the preliminary stages of the case to the settlement in August 2009 because of the significant contingency risk carried by counsel until the settlement was reached.

Without the incentive of a fee award, plaintiffs, such as the class in this case, could not afford to hire counsel to vindicate their rights.  Based on Hyundai's "scorched earth" litigation strategy, plaintiffs' counsel were forced to actively litigate every stage of the proceedings in order to protect their clients' claims.  Specifically, plaintiffs withstood a motion to

1   dismiss, obtained class certification, opposed Hyundai's petition

2   for interim appellate review, completed discovery/expert

3   discovery, opposed Hyundai's MSJ, and participated in multiple

4   rounds of mediation.

5        Plaintiffs cite this Court's approval of fees in <u>Roy v.</u>

6   <u>Hyundai Motor Am., Inc.</u>, No 05-00483-AHS, Dkt. No. 87, (C.D. Cal.

7   Apr. 10, 2006) in support of the instant fee request.   In <u>Roy</u>,

8   the Court approved a 1.9 multiplier under the same California

9   fee-shifting statutes.   Plaintiffs also point out that similar

10  hourly rates have recently been approved by Judge Pregerson in

11  this District.   <u>See</u> <u>Bacca v. BMW of North Am., LLC.</u>, No. 06-

12  06753-DDP, Dkt. No. 62 (C.D. Cal. 2009) (attached as Ex. C to the

13  Joint Gibbs/Siegel Decl.).

14       Plaintiffs do not provide daily time records to support

15  their fee request, but they offer to produce these records for an

16  *in-camera* review if the Court so requests.   In lieu of daily time

17  sheets, plaintiffs provide a summary of all work undertaken at

18  each stage of the litigation, supported by declarations from co-

19  lead class counsel, as well as the other law firms involved in

20  this case.

21       As noted, plaintiffs also submit the declaration of

22  Professor Rubenstein, a legal scholar specializing in class

23  action and attorneys' fees jurisprudence, who compares the rates

24  charged in this case with approximately 150 cases in Southern

25  California.   He concludes that the rates charged by plaintiffs

26  are at or below the standard rates for attorneys of similar

27  experience.   (Hughes Decl., Ex. 1 (Rubenstein Decl. ¶¶ 23-24).)

28       A lodestar multiplier of 2.0 is warranted based on the

risks presented by the litigation, the novelty and difficulty of the case and the skill exhibited by counsel in addressing the difficult issues, the favorable results obtained on behalf of the class, the ongoing work counsel will be required to perform on this case, and the fact that working on this case precluded other employment.  The most important factor is the risk of nonpayment, which was significant in this contingency class action.

In discussing the complete or near-complete cash recovery offered to qualified class members, plaintiffs note that they negotiated a simple claims process to ease the way for class members to obtain reimbursement.  Counsel also maintain that the settlement achieved is approximately three times the monetary recovery offered by Hyundai early in the litigation.  (See Joint Gibbs/Siegel Decl. ¶ 105.)

Plaintiffs seek recoverable costs under Cal. Civ. P. Code § 1033.5(a)(1), (4), and (7) and deposition costs under (a)(3) to cover court fees, witness fees, deposition costs, etc., for a cost request of $56,085.35.  In addition, plaintiffs seek discretionary costs under Cal. Civ. P. Code § 1033.5(c) for certain expenses reasonably necessary to the conduct of this case (e.g., class notice costs, travel costs, mediation costs) in the amount of $77,780.70, for a total of $133,866.05.  They do not seek reimbursement for another approximately $266,000 in non-recoverable costs.

To recap, plaintiffs seek $3,779.434 under a lodestar formula for the period from initial investigation/filing of the complaint to the August 2009 settlement, which is multiplied by two, equaling $7,558,868, to which is added the lodestar figure

of $353,101.89 for the period after August 2009 to filing of this
motion (with no multiplier), for a total fee request of
$7,911.969.

**B.        Hyundai's Opposition**

Plaintiffs' fee request is "grossly excessive by any
measure."  (Opp. at 1.)  The fee request cannot be granted
because it is not accompanied by adequate documentation and would
result in an award 3-4 times the amount of class recovery
(estimated by Hyundai to be $2 million, at best).  This is far
above the Court of Appeals for the Ninth Circuit's benchmark of
25% of total class recovery.[1]  The hours submitted by plaintiffs
are almost double the hours spent by Hyundai on this case.  And,
during certain periods of relative quiet, plaintiffs claim
excessive billing hours.  Plaintiffs seek reimbursement
improperly based on their current hourly rates rather than the
lower hourly rates applicable during each of the past four years
of litigation.

Hyundai suggests that plaintiffs did not perform as
much work as they claim (or, in any event, should not have billed
as many hours).  For example, plaintiffs had to respond to only
one motion to dismiss, took only a single fact witness
deposition, accomplished only partial class certification (two
claims out of five), wasted time on four motions to compel, filed
deficient Rule 16 documents, and achieved a settlement that was

_____

[1]  Hyundai agrees that California law applies to a
determination of attorneys' fees, but the requirements of proof
are governed by federal law.  Because plaintiffs' fee request is
not properly supported under federal law, the request cannot be
granted.

"substantially similar" to "proposals on the table" from the outset.  (Opp. at 12.)

The Court should take note of class counsel's brief in support of appointment as interim counsel, wherein counsel claims the case is "relatively uncomplicated" with "straightforward" legal issues and "contained" factual discovery, all of which contradicts plaintiffs' current claims.  (Taggart Decl., Ex. B (Response re Mot. for Appt. of Interim Class Counsel).)

In contrast to plaintiffs' request for a lodestar multiplier of 2.0, Hyundai argues for a downward reduction of the lodestar calculation, especially because a "cross-check" of comparing the requested fees to the amount of class recovery suggests the fees should be drastically reduced.  Because the benefit actually conferred on the class is weak, plaintiffs' fees are not justified.  Hyundai bases this argument on the fact that out of 11,693 vehicles sold, only 1,043 claims with an average reimbursement of $1,181 have been submitted.[2]  With a total current class recovery of only $1.2 million, the requested fees amount to nearly seven times the total benefit to the class. Even after all claims are filed, the fee request will exceed the total benefit to the class by 3-4 times.

Because mediation began early in the case, Hyundai dismisses the other lodestar factors, stating that there was "very little risk to [p]laintiffs in this case."  (Opp. at 19.) Plaintiffs' reliance on the fee award in Roy is ill-founded

---

[2]  At the hearing, it was reported that the number of class members responding had increased to 1,200.

1   because the fee award there was part of the settlement agreement.

2       Hyundai's "Objections to and Motion to Strike Decl. of

3   William B. Rubenstein" argues that the declaration is nothing

4   more than an improper legal brief attempting to circumvent the

5   Court's duty to be the arbiter of the law – it is inappropriate

6   for experts to opine on legal matters before the court.   The

7   declaration is improper because Rubenstein was never disclosed as

8   an expert, and it lacks foundation/is unreliable because

9   Rubenstein did not look at actual billing records before he

10  opined on the reasonableness of fees.   Rubenstein's analysis is

11  flawed because he consulted common fund cases to conclude that

12  the fee award should have a multiplier applied to the lodestar.

13      The fee motion as presented should be denied and any

14  ruling on the application should be deferred until (1) the total

15  amount of class recovery can be determined, and (2) plaintiffs

16  submit detailed bills showing work performed and rates charged.

17  Costs should also be substantially reduced because (1) plaintiffs

18  provide insufficient documentation for their costs, and (2) some

19  of the costs are not recoverable under California law.[3]

20  Moreover, some of plaintiffs' costs are duplicative (e.g.,

21  multiple attorneys at depositions) and unreasonable (bringing

22

23  _____

24      [3]  Hyundai objects that plaintiffs did not comply with L.R.
    54-3 to substantiate their request for costs.  Hyundai also
25  argues that meals, under deposition costs, are not recoverable
    under California law, citing <u>Gorman v. Tasajara Dev. Corp.</u>, 178
26  Cal. App. 4th 44, 71-73 (2009) (holding that meals are not
    recoverable under Cal. Civ. P. Code § 1033.5(a)(3).)  Plaintiffs'
27  submissions suggest that no meals were billed while taking local
    depositions.  <u>See</u> Dkt. No. 287 at 23-24 (Memo ISO Atty Fees);
28  Dkt. 288, Ex. F (Joint Gibbs/Siegel Decl., chart of costs).

1 Missouri reporter to Orange County depositions).  (Opp. at 24.)

2       Even if plaintiffs submit their invoices and billing

3 records to the Court *in camera*, this will not accord Hyundai its

4 due process right to examine the bills and see what was charged

5 and why.  Plaintiffs' failure to provide these records is a tacit

6 acknowledgment that their fee request is inflated and cannot

7 withstand scrutiny.

8 **C.**      **Plaintiffs' Reply**

9       Hyundai's focus on the benefit conferred on the class -

10 to the near exclusion of the other multiplier factors - is

11 improper.  Moreover, Hyundai's characterization that the benefit

12 to the class is not strong is unwarranted.  Many class members

13 have gone out of their way to express their appreciation for

14 counsel's work, and none has directly objected to class counsel's

15 fees.  The fact that Hyundai "victimized 'only'" a few thousand

16 customers does not make these customers less deserving of a

17 remedy under the CLRA and/or California's private attorney

18 general statute.  Further, if the Court uses Hyundai's estimate,

19 that about 25% of the 11,693 potential class vehicles sold

20 underwent repairs, this translates to a class size of about 2,900

21 people, of which 1,043 have already submitted claims - an

22 impressive response rate of 36%.[4]  Plaintiffs find Hyundai's

23 contention that this case presented little risk inexplicable.

24 Plaintiffs attest to the fact that they did not prematurely

25 announce on their website that they had obtained class

26 certification.  And, plaintiffs provide sworn testimony regarding

27

28     [4] <u>See</u> n.2, <u>supra</u>.

11

1  the improvements achieved from the initial proposed settlement to
2  the final settlement (e.g., consumers would have had to submit
3  pictures, lower mileage brackets for full recovery).

4          Hyundai's relative-hours' comparison (i.e., defense
5  counsel's hours compared with class counsel's hours), yielding a
6  supposed disparity, is explained in great part by the fact that
7  Hyundai does not include any hours expended by in-house counsel,
8  Mr. Erb, who was very involved in the litigation.

9          Hyundai's reliance on federal law setting forth a 25%
10 benchmark from common funds is inapplicable because the fee award
11 in this case is governed by California law.  That law makes clear
12 that the evidence submitted by plaintiffs in support of their fee
13 application is sufficient; detailed time records are not
14 required.  Plaintiffs also point out that defense counsel has
15 used expert testimony in support of its own fee application in
16 another case, contrary to their argument that doing so here is
17 improper.

18         Plaintiffs clarify that if the Court uses plaintiffs'
19 fee calculation, using counsel's current billing rates, it should
20 not separately take into account the delay in payment when
21 calculating a multiplier (i.e., because the rates have gone up
22 over time, this is the equivalent of a built-in interest rate).
23 (Reply at 13.)  In addition, applying the percentage "cross-
24 check" in this case is inappropriate because while a payout of
25 $1,000-$2,000 is a complete or near-complete recovery to a class
26 member, the size of the class does not equate with a large
27 overall recovery such that the fees expended to achieve this
28 result can be cross-checked against a hypothetical overall

12

1  payout.  This kind of arbitrary reduction runs afoul of the

2  policy behind California consumer protection laws.

3        As to costs, California law applies rather than the

4  procedures found under L.R. 54-3 or Form CV-59.  Under California

5  law, an initial verification is sufficient to establish the

6  reasonableness and necessity of allowable expenses.  Lastly, none

7  of the inflated costs Hyundai assumes in its brief are actually

8  present (e.g., no first class flights, no local meals per

9  California law, no expenses related to experts, no extra costs

10  for court reporter's travel expenses).

11        California law favors consideration of an expert

12  opinion in determining the reasonableness of fee applications.

13  Professor Rubenstein did not need to be disclosed under Rule

14  26(a)(2) because that rule applies to trial experts.  Hyundai had

15  a month after receiving the Rubenstein Declaration to hire its

16  own expert in opposition, but chose not to do so.  Furthermore, a

17  motion to strike is improper, as this is not a motion under Rule

18  12.  Professor Rubenstein's Declaration is reliable and should be

19  considered.  (See Dkt. No. 319.)

20                              **IV.**

21                          **DISCUSSION**

22  **A.        Plaintiffs' Motion for Attorneys' Fees**

23        **1.   Legal Standard & Applicable Law**

24        Federal Rule 23(h) provides for an award of reasonable

25  attorneys fees and nontaxable costs that are authorized by law or

26  agreement of the parties.  Fed. R. Civ. P. 23(h).  Because there

27  is no agreement regarding fees, the Court, sitting in diversity

28  adjudicating state law claims, turns to applicable California

1   law.   Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470,

2   1478-79 (9th Cir. 1995) ("The method of calculating a fee is an

3   inherent part of the substantive right to the fee itself, and a

4   state right to an attorneys' fee reflects a substantial policy of

5   the state.").   "State law [also] establishes the required showing

6   for attorney's fees in an action in diversity."   Winterrowd v.

7   Am. Gen. Annuity Ins. Co., 556 F.3d 815, 827 (9th Cir. 2009).

8        Under California law, to enable the trial court to

9   determine an appropriate fee award, the attorney seeking the

10  award should present:   "(1) evidence, documentary and oral, of

11  the services actually performed; and (2) expert opinion, by the

12  applicant and other lawyers, as to what would be a reasonable fee

13  for such services."   Id. (internal alterations and quotations

14  omitted).   While some federal courts require detailed time

15  records, "in California an attorney need not submit

16  contemporaneous time records in order to recover attorney fees."[5]

17  Id. ("Testimony of an attorney as to the number of hours worked

18  on a particular case is sufficient evidence to support an award

19  of attorney fees, even in the absence of detailed time records.")

20

21

22        [5]   Intel Corp. v. Terabyte Int'l, Inc., 6 F.3d 614, 623 (9th

23  Cir. 1993), on which Hyundai relies, is inapposite.   Intel was a
    Lanham Act case governed by the Federal Rules of Evidence and

24  standards of proof therein.   In that non-class action case, the
    district court made no finding that the hours expended were

25  reasonable and/or that the hourly rates were customary.   As
    discussed above, under California law, plaintiffs need not submit

26  detailed time records.   Winterrowd, 556 F.3d at 827.   See also

27  Chavez v. Netflix, Inc., 162 Cal. App. 4th 43, 64 (Cal. App.
    2008) ("detailed time sheets are not required of class counsel to

28  support fee awards in class action cases").

### a.   Section 1780(e)

Under Cal. Civ. Code § 1780(e), the Court shall award costs and attorneys' fees to a prevailing plaintiff in an action under the CLRA.  A plaintiff is the prevailing party if he or she obtained a "net monetary recovery" or "realized its litigation objectives," including pursuant to a settlement agreement.  <u>Kim v. Euromotors West/The Auto Gallery</u>, 149 Cal. App. 4th 170, 178-79 (2007).

### b.   Section 1021.5

Under Cal. Civ. P. Code § 1021.5, California's private attorney general statute, the Court may award fees to a "successful party" in any action that "has resulted in the enforcement of an important right affecting the public interest if:  (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

Similar to California's fee-shifting statute, the private attorney general statute makes a plaintiff a "successful party" if it achieves its litigation objectives.  An award is appropriate under this section where the burden of pursuing litigation is out of proportion to the individual plaintiff's stake in the matter.  <u>Ryan v. California Interscholastic Federation</u>, 94 Cal. App. 4th 1033, 1044 (2001).

//

//

1          **c.   Fee Calculation**

2               **i.   Lodestar**

3          Under both Ninth Circuit and California law, courts

4    have discretion to use the lodestar method in calculating

5    attorneys' fees.   Id.   Because there is no "common fund" in this

6    case, the percentage-of-recovery ("POR") method need not be used

7    to calculate attorneys' fees.   Create-A-Card, Inc. v. Intuit,

8    Inc., 2009 WL 3073920, *1 (N.D. Cal. Sept. 22, 2009).

9          Calculating a fee award under the lodestar is a two-

10   step approach.   First, the Court multiplies the number of hours

11   reasonably expended by a reasonable hourly rate.   Id. at *2.

12   Second, this lodestar figure may be adjusted upward or downward

13   to account for several factors, including:  (1) the contingent

14   nature of the fee award, (2) the results obtained and the number

15   of people that have benefitted from them, (3) the novelty and

16   complexity of the questions involved and the skill displayed in

17   presenting them, and (4) the extent to which the nature of the

18   litigation precluded other employment.   Graham v. DaimlerChrysler

19   Corp., 34 Cal. 4th 553, 579 (Cal. 2004).

20          In a class action, the district court "must exercise

21   its inherent authority to assure that the amount and mode of

22   payment of attorneys' fees are fair and proper."   Zucker v.

23   Occidental Petrol. Corp., 192 F.3d 1323, 1328-29 (9th Cir. 1999).

24   Where appropriate, multipliers may range from 1.2 to 4 or even

25   higher.   See, e.g., McIntosh v. McAfee, Inc., 2009 WL 673976, *2

26   (N.D. Cal. 2009) (recognizing a range from "2 to 4 or even

27   higher," and applying a multiplier of 1.2); Winterrowd v. Am.

28   Gen. Annuity Ins. Co., 2:00-cv-00677-CAS(RCx), Dkt. No. 193 (C.D.

1  Cal. Oct. 20, 2004) (applying multiplier of 1.25), affirmed by

2  Winterrowd, 556 F.3d at 827.  However, where the total fees

3  sought are significantly more than the total recovered by class

4  members, then those fees may not be "fair and reasonable."

5  Create-A-Card, 2009 WL 3073920 at *2.

6                    **ii. Percentage of Recovery**

7          In common-fund cases, the district court has the

8  discretion to use either a POR method or the lodestar method to

9  calculate attorneys' fees.  Suzuki v. Hitachi Global Storage

10 Techs., Inc., 2010 WL 956896, *1 (N.D. Cal. 2010).  Under the POR

11 method, the fees are calculated as a percentage of the common

12 fund.  Id. at *2.  An award of 25% of the common fund is the

13 established benchmark in the Ninth Circuit.  Id.  In light of

14 various criticisms of the lodestar method, including cheap and/or

15 collusive settlements compromising class recovery in exchange for

16 a high fee award, many federal courts have indicated a preference

17 for the POR method.  Id.  "The Ninth Circuit has indicated

18 approval of [the POR] method even in cases lacking a distinct,

19 traditional common fund."  Id. (citing Wing v. Asarco, Inc., 114

20 F.3d 986, 989-90 (9th Cir. 1997) (no error in estimating

21 settlement value, especially where parties agreed on value)).

22         **2.   Analysis**

23              **a.  Plaintiffs qualify for an award**

24         Both statutes authorize recovery of attorneys' fees in

25 this case.  Although 1,200 claimants, or even a final total of

26 2,900 claimants, do not amount to a "large" class of persons by

27 today's standards in class action cases, the number is not

28 without significance and the plaintiffs have surely achieved

                                17

their litigation objectives.  Because plaintiffs obtained a
favorable settlement recovery for class members in the form of
cash reimbursement, up to and including full reimbursement
(depending on vehicle mileage), plaintiffs are the prevailing
party under the CLRA fee-shifting statute.  Cal. Civ. Code §
1780(e).  Thus, the Court "shall" award attorneys' fees and costs
to plaintiffs.  Id.  Similarly, plaintiffs are the successful
party under California's private attorney general statute.  Cal.
Civ. P. Code § 1021.5.  Plaintiffs qualify for an award of fees
under this statute because a significant pecuniary benefit,
including up-to-full reimbursement, has been conferred on a large
class of persons, namely, owners of 2003 Hyundai Tiburons who
undertake a clutch/flywheel repair.  Id.  The necessity and
financial burden of private enforcement are such that the award
is appropriate because an individual plaintiff seeking to
vindicate a $1,000-$2,000 repair could not be expected to
litigate against Hyundai's demonstrably robust and resourceful
defenses.  In accordance with the interest of justice, the fee
award should not be paid out of class members' recovery.

### 3.  Reasonableness of hours and hourly rate

#### a.  Calculation Method

Although this is not a common fund case, the Court may
reasonably approximate total recovery by multiplying the average
claim amount by the estimated class size.  Based on Hyundai's
average reimbursement amount of $1,181 multiplied by 1,200 claims
received, the current class recovery may be approximated at $1.4
million.  By the same token, if all class members in the
estimated class of 2,900 responded, total recovery would increase

18

1   to approximately $3.42 million.  In light of the disparity

2   between potential total recovery and plaintiffs' fee request of

3   approximately $4.13 million (without a multiplier), it would be

4   within the Court's discretion to find the fee request unfair and

5   unreasonable.  See Create-A-Card, 2009 WL 3073920 at *2 (one per

6   cent of class members responding, fee award reduced to

7   approximately same as total amount of recovery).

8          However, in light of several factors, the Court

9   declines to use a constructive common fund or POR method in this

10  case.  First, given the nature of repairs and relatively small

11  size of potential class, it is not unusual that overall recovery

12  would seem "low."  This in and of itself does not necessarily

13  mean the attorneys' fees award should be arbitrarily reduced.

14  See Jefferson v. Chase Home Finance, 2009 WL 2051424, *3 (N.D.

15  Cal. 2009) (state court decisions are clear that consumer

16  protection may require a disproportionate award).  Moreover,

17  while the Court has discretion to perform a "cross-check" against

18  the total class recovery, it is not required.  In re Consumer

19  Priv. Cases, 175 Cal. App. 545, 557 (Cal. App. 2009).

20         Second, "[o]ne-way fee shifting statutes encourage

21  litigation in cases that are not likely candidates to produce

22  high-dollar judgments, either because relief sought is

23  non-monetary or because only modest amounts of money are at

24  stake."  James R. Maxeiner, Cost and Fee Allocation in Civil

25  Procedure, American 58 Am. J. Comp. L. 195, 201 (2010).

26  California's fee-shifting and private attorney general statutes

27  incentivize counsel to take cases on behalf of plaintiffs who

28  could not otherwise afford to vindicate their rights through

1  litigation.

2          Although $1,181 sounds like a relatively small amount

3  of money and may not add up to a large aggregate recovery, to the

4  individual class member experiencing problems with his or her

5  car, which is often a significant investment and used as a

6  primary means of transportation, representation by class counsel

7  is likely their only feasible means of recovery.  The

8  overwhelmingly positive responses received from class members in

9  this case demonstrate that the resolution of this case lifted a

10 burden felt by many class members, a burden that would have

11 otherwise gone unresolved.  Use of the POR method in this case

12 would result in an arbitrary reduction in the fee award, contrary

13 to the purpose of the fee-shifting statute.  See Hayward v.

14 Ventura Volvo, 108 Cal. App. 4th 509, 512 (Cal. App. 2003) ("The

15 provision for recovery of attorney's fees allows consumers to

16 pursue remedies in cases as here, where the compensatory damages

17 are relatively modest.  To limit the fee award to an amount less

18 than that reasonably incurred in prosecuting such a case, would

19 impede the legislative purpose underlying section 1780.").

20         Lastly, because the concerns sometimes associated with

21 using the lodestar method, such as cheap and/or collusive

22 settlements, are not present in this case, the Court applies the

23 lodestar method.

24                    **b.   Lodestar Calculation**

25         Plaintiffs calculate a lodestar of $4,132,535 for 8,771

26 hours expended.  (Joint Gibbs/Siegel Decl. ¶ 108; Gibbs Decl. ¶

27 14; Siegel Decl. ¶ 11; Marshall Decl. ¶ 7; Rivas Decl. ¶ 6;

28 Mansfield Decl. ¶ 3.)  Plaintiffs submit the following rates for

1  the billing attorneys:  Gibbs $675, Siegel $650, Hughes $545,

2  Hilton $495, and Munroe $445.  (Motion at 14.)  Plaintiffs

3  justify the large number of hours, accumulated over four years,

4  by pointing to robust advocacy combined with the need to respond

5  to Hyundai's relentless litigation strategy, whose own total

6  litigation hours are unknown.

7          Nothing in Hyundai's opposition detracts from the

8  reasonableness of plaintiffs' rates, as proffered by plaintiff

9  and supported by Professor Rubenstein's analysis.  Contrary to

10  Hyundai's argument, courts recognize that expert testimony

11  regarding attorneys' fees is appropriate.  <u>Winterrowd</u>, 556 F.3d

12  at 827.  Because Professor Rubenstein is an experienced expert in

13  class actions and attorneys' fees awards, and because his

14  methodology is well supported by the explanation in, and

15  documentation submitted with, his declaration, the Court denied

16  Hyundai's request to strike the declaration.[6]  Plaintiffs' rates

17  appear to be in line with National Law Journal surveys, other

18  class actions reviewed by Professor Rubenstein, and, notably, the

19  fees have recently been approved in other courts, including the

20  Central District of California.[7]  (<u>Id.</u> at 14-15.)  <u>See also Bacca</u>

21  <u>v. BMW of North Am., LLC.</u>, No. 2:06-cv-06753-DDP, Dkt. No. 62

22  (C.D. Cal. 2009) (attached as Ex. C to the Joint Gibbs/Siegel

23

24

25  ─────────────────

26          [6]  The declarant's legal conclusions are disregarded.

27          [7]  Although defense counsel does not provide the court its
    rates in this case, plaintiffs imply that, based on prior
28  litigation, defense counsel's hourly rates are higher.

1  Decl.).[8]

2           Courts may find hourly rates reasonable based on

3  evidence of other courts approving similar rates or other

4  attorneys engaged in similar litigation charging similar rates.

5  McIntosh, 2009 WL 673976 at *2 (citing Ackerman v. Western

6  Electric Co., 860 F.2d 1514, 1520 (9th Cir. 1988)).  Moreover,

7  the Court agrees with the rationale that "lawyers are not likely

8  to spend unnecessary time on contingency fee cases in the hope of

9  inflating their fees.  The payoff is too uncertain, as to both

10 the result and the amount of fee. . . .  The [C]ourt should defer

11 [to some extent] to the winning lawyer's professional judgment

12 [regarding hours]; after all, he won, and might not have, had he

13 been more of a slacker."  Moreno v. City of Sacramento, 534 F.3d

14 1106, 1112 (9th Cir. 2008).

15          Plaintiffs have provided the Court with voluminous

16 records, including sworn declarations of counsel and industry

17 benchmarks, in support of the reasonableness of both hours

18 expended and hourly rates charged.  In comparison with other

19 Southern California class actions, plaintiffs' rates are at or

20 below comparable counsel.  (Rubenstein Decl. at 16-17.)  The

21 Court finds that plaintiffs' evidence sufficiently demonstrates

22 that the hourly rates requested are (1) similar to rates approved

23 by other courts and (2) similar to rates customarily charged by

24 other firms performing similar work.  See McIntosh, 2009 WL

25 673976 at *2.  Thus, the requested hourly rates appear to be

26 _____

27        [8]  At the hearing, plaintiffs provided a summary of six
   other federal cases in which both state and federal courts have
28 approved their range of rates.

1   reasonable and customary.  In light of the duration of this case,

2   the number and types of filings, and the relatively small number

3   of attorneys who consistently billed on the matter, the Court

4   finds plaintiffs' calculation of 8,771 hours reasonable.

5   This brings the Court to plaintiffs' lodestar calculation of

6   $4,132,535.89.

7           However, in the face of Hyundai's objections regarding

8   excessive hours and rates, and in an abundance of caution, the

9   Court applies a 10% "haircut" to the lodestar amount.  See

10  Moreno, 534 F.3d at 1112.  Thus, the final lodestar calculation

11  is $3,719,282.30.

12              **c.   Lodestar Multiplier**

13          Plaintiffs request application of a lodestar multiplier

14  of 2.0 to the $3,779,434 in fees that were incurred from the

15  beginning of litigation until the August 2009 settlement.  To

16  determine if a multiplier is appropriate, the Court applies a

17  four-factor balancing test.  Graham, 34 Cal. 4th at 579.  Courts

18  must not consider any multiplier factor to the extent it is

19  already encompassed within the lodestar calculation.  McIntosh,

20  2009 WL 673976 at *3 (citing Ketchum v. Moses, 24 Cal. 4th 1122,

21  1138 (2001)).  The party seeking a fee enhancement bears the

22  burden of proof.  Ketchum, 24 Cal. 4th at 1138.

23              **i.   Contingent Nature of Fee Award**

24          While the purpose of a fee enhancement may be to

25  compensate attorneys for accepting risk of non-payment in

26  contingency cases, a "multiplier fee enhancement would not be

27  proper if the Lodestar hourly rate already accounted for factors

28  such as contingency risk."  McIntosh, 2009 WL 673976 at *3.  For

1  the reasons set forth below, the Court is not convinced that risk

2  of non-payment is not already accounted for in the lodestar

3  calculation.

4          Although plaintiffs note that in contingency fee cases

5  Hyundai's counsel charges fees that are "generally significantly

6  higher than the rates charged to clients who are billed on an

7  hourly basis, reflecting the contingency risk of such matters,"[9]

8  plaintiffs' counsel's own practices with respect to contingency

9  cases appear to be unsupported.  With respect to Stueve Siegel

10  Hanson LLP, counsel provides "the associated hourly rate" for

11  each timekeeper in "this litigation" and states that the hourly

12  rates "are the same as the rates submitted in other contingent

13  class action litigation," but counsel does not demonstrate that

14  the rates are the same charged in non-contingent litigation.

15  (Siegel Decl. at ¶¶ 11-12.)  Counsel merely states that "nearly

16  all of our firm's work is done on a contingency basis," but

17  hypothetically if they did any hourly work in the relevant market

18  they would charge the same rates.  (<u>Id.</u> at ¶ 14.)

19          On the other hand, co-counsel state that the hourly

20  rates used in this case are the same as rates charged in non-

21  contingent cases.  (Gibbs Decl. at ¶ 15; Mansfield Decl. at ¶ 4;

22  Rivas Decl. at ¶ 7.)  However, it does not appear that any of

23  plaintiffs' declarations attach any evidence in support of this

24

25

26          [9]  Plaintiffs are quoting the Declaration of Geoffrey T.

27  Holtz in support of attorneys fees, filed in <u>L.H. v.
   Schwarzenegger</u>, 2:06-CV-02042-LKK-GGH (E.D. Cal. 2008) (Dkt. No.

28  445 at ¶ 13).

1   blanket assertion.[10]   Plaintiffs do not carry their burden with

2   respect to demonstrating that contingency risk favors a

3   multiplier in this case.[11]

4           To account for delay in payment from time of billing to

5   time of award, the Court may augment an award based on historical

6   billing rates, plus interest for the delay, or adjust the award

7   by using current billing rates.   <u>D'Emanuele v. Montgomery Ward &</u>

8   <u>Co.</u>, 904 F.2d 1379, 1384 (9th Cir. 1990).   Such an award is

9   firmly within the Court's discretion.   <u>Jordan v. Multnomah</u>, 815

10  F.2d 1258, 1263 n.7 (9th Cir. 1987).

11          Plaintiffs requested, and the Court has adopted,

12  current hourly rates for all hours billed, which necessarily

13  inflates earlier years' billing rates.   <u>See</u> <u>Coles v. City of</u>

14  <u>Oakland</u>, 2007 WL 39304, *6 (N.D. Cal. 2007) (not reported)

15  ("Under the state fee-shifting statutes, however, a fee applicant

16  may be awarded a lodestar amount reflecting their present hourly

17  rate, rather than the lesser rate applicable when the services

18  were rendered.").   By finding plaintiffs' current billing rates

19  reasonable, the Court has already factored in appropriate

20  compensation for delay.

21

22          [10]   Instead, counsel have provided various documentation

23  regarding rates sought by Hyundai's counsel in other cases, which
    does not help the Court determine if a multiplier is warranted as

24  to counsel's work in this case.

25          [11]   As Hyundai points out, the fact that certain attorneys'

26  hourly rates have gone up anywhere from 50-80% (when compared
    with reported rates in a similar case in 2006) also suggests some

27  contingency risk has been built in to the new, higher rates.
    (<u>Compare</u> Taggart Decl. ¶¶ 61-64, Ex. Q at 212 <u>with</u> Gibbs Decl. ¶

28  14.)

1    Hyundai cites <u>Masimo Corp. v. Tyco Health Care Group,</u>

2    <u>L.P.</u>, 2007 WL 5279897, *7-*8 (C.D. Cal. 2007) (not reported), for

3    the proposition that using current billing rates to account for

4    delay in payment would provide a windfall to plaintiffs.  That

5    case is distinguishable, however, because the <u>Masimo</u> court had no

6    evidence regarding where the requested billing rates fell in

7    comparison to the prevailing market rates.  Here, Professor

8    Rubenstein has provided such a comparison, showing that

9    plaintiffs' requested rates are reasonable, in that they are at

10   or below prevailing rates.  Also, plaintiffs do not request rates

11   at the top of the range for the Southern California market, as

12   plaintiff in <u>Masimo</u> sought.  In light of the totality of the

13   circumstances, including delay in payment, the Court finds the

14   requested hourly rates reasonable.

15        Because plaintiffs have not carried their burden with

16   respect to contingency risk, and because consideration of delay

17   is already accounted for in the approved hourly rates, the Court

18   assigns no weight to this factor in considering whether to apply

19   a lodestar multiplier.

20                  **ii.  Results Obtained/Number Benefitted**

21        The benefit obtained for the class has been cited as

22   the factor bearing the most weight or the determinative factor in

23   the decision of whether to apply a lodestar multiplier.  <u>See,</u>

24   <u>e.g.</u>, <u>Create-A-Card</u>, 2009 WL 3073920 at *2.

25        Although Hyundai downplays the benefit obtained for the

26   class, plaintiffs argue, and the Court agrees, that the benefit

27   obtained for the class is quite favorable, considering the

28   circumstances.  Class members can receive up-to-full

1  reimbursement (depending on mileage), they can get rental car

2  reimbursement, and the claims process has been made strikingly

3  simple.

4           While Hyundai claims the current settlement was

5  basically on the table since the early stages of litigation, this

6  contention is not borne out in a sworn declaration.  On the other

7  hand, plaintiffs' counsel swear to the differences in what

8  Hyundai originally offered and explains why the settlement

9  achieved is "three times" the monetary recovery originally

10  offered.  (Joint Gibbs/Siegel Decl. ¶ 105.)  Based on counsel's

11  negotiations, class members avoided the burden of submitting

12  photographs of their vehicles and they may now receive full

13  reimbursement, rather than reimbursement minus labor costs, as

14  Hyundai initially proposed.

15           Perhaps the best barometer of whether the benefit

16  obtained for the class was fair and reasonable is the perception

17  of class members themselves.[12]  Counsel submitted dozens of

18  letters from class members sharing their joy, appreciation, and

19  relief that someone finally did something to help them.  Hyundai

20  states that they agreed to this settlement to maintain positive

21  customer relations, an implicit admission that the benefit

22  obtained for the class is strong.  While a few Hyundai owners

23  opted out, one class member objected, and others who had yet to

24  perform the repairs complained of having to incur out-of-pocket

25

26 _____

27      [12]  Based on Hyundai's estimated class size of 2,900 people, 1,200 respondents as of the June 28, 2010 hearing translates to a 41% response rate, which is high by typical class action

28  standards.  (See Stein Dec., Ex. 2 at 2.)

1  expenses in order to participate in the settlement, these minor

2  complaints are overshadowed by the overwhelming number of

3  positive responses received from other class members.  Thus, this

4  factor weighs in favor of a multiplier.

5                    **iii. Novelty, Complexity, and Skill**

6          The Court finds that while certain questions in this

7  case were novel or complex (e.g., parts involved both wear and

8  non-wear components), some complexity is fairly typical in

9  nationwide consumer class actions.  The Court finds that counsel

10  was skilled at navigating the complexities of the case.  However,

11  the Court finds that the degree of counsel's skill is already

12  built into the hourly rates requested and approved.  See Ketchum,

13  24 Cal. 4th at 1138.

14                 **iv.  Extent Other Employment Precluded**

15          Class counsel devoted 8,771 hours to this case.  While

16  counsel may be capable of handling multiple cases at a time, time

17  devoted to achieving positive results in this case could not also

18  have been devoted to pursuing other matters.  See Chamberlan v.

19  Ford Motor Co., 4:03-cv-02628-CW, Dkt. No. 479 at 3 (N.D. Cal.

20  Oct. 7, 2005).  However, "[u]nder this reasoning, a multiplier

21  would be appropriate in any lodestar type of case, since it is

22  axiomatic that time spent by individual attorneys on one case

23  prevents them from spending time on another." Robbins v.

24  Alibrandi, 127 Cal. App. 4th 438, 454 (Cal. App. 2005).  As

25  Hyundai argues, there is no showing that counsel in fact turned

26  away other work because of this case.  See id.  Therefore, this

27  factor is neutral.

28  //

```
 1                      v.  Award of Multiplier
 2            In this case, plaintiffs seek a multiplier where the
 3   lodestar calculation already exceeds the estimated total benefit
 4   to the class.  As Hyundai points out, plaintiffs have not cited,
 5   and the Court is unaware of, any contested fee class action
 6   applying a multiplier under this scenario.13  Although there is
 7   no hard and fast rule precluding a multiplier in such a case, see
 8   Estrada v. FedEx Ground Package System, Inc., 154 Cal. App. 4th
 9   1, 18 (Cal. App. 2007) (where lodestar fee award exceeds award to
10   class, court must still determine whether multiplier is
11   appropriate), the Court finds that plaintiffs have not carried
12   their burden to demonstrate that a fee enhancement is warranted
13   here.  Only one factor, benefit to class, tips toward the award
14   of a lodestar multiplier.  After balancing the foregoing
15   considerations, the Court concludes that the totality of the
16   circumstances in this case does not warrant a multiplier.
17   B.       Plaintiffs' Motion for Costs/Expenses
18            1.  Legal Standard
19                 a.  Recoverable Costs
20            Under Cal. Civ. P. Code § 1033.5(a)(1), (4), and (7),
21
22   ─────────────────
          13  Fleury v. Richemont North Am., Inc., 2009 WL 1010514, *5
23   (N.D. Cal. 2009), which the parties discuss, was a class action
     in which the court awarded a 10% multiplier notwithstanding the
24   fact that the lodestar was greater than the actual benefit paid
     to the consumer class (i.e., approximately $221,000 in $100
25   credits redeemed, compared with $1,442,519 total fee award).
     However, the fee enhancement was not contested (there was a
26   settlement agreement providing for fees of up to $2 million), and
     the fee award was only about 19% of the potential total benefit
27   to the class (i.e., if all $100 credits were redeemed, class
     benefit could be up to $7,517,900).
28
```

1  the Court must award costs for court fees, service of process

2  fees, and witness fees.  In addition, Cal. Civ. P. Code §

3  1033.5(a)(3) provides that the Court must award deposition

4  related costs for transcribing, recording, and travel.

5                    **b.  Discretionary Costs**

6            Unlike the foregoing costs recoverable as a matter of

7  right, Cal. Civ. P. Code § 1033.5(c) provides discretion for the

8  Court to award reimbursement for other costs if they are

9  "reasonably necessary to the conduct of the litigation, rather

10 than merely convenient or beneficial to its preparation."

11 Science App. Int'l Corp. v. Sup. Court, 39 Cal. App. 4th 1095,

12 1103 (1995).

13         **2.   Analysis**

14              **a.   Recoverable Costs**

15            Counsel claims $56,085.35 in unreimbursed recoverable

16 costs.  This number is supported by counsel's declarations and,

17 therefore, the Court awards the amount in full.

18                    **b.  Discretionary Costs**

19            Plaintiffs seek $21,925 in costs related to providing

20 class notice.  Because Hyundai agreed to cover the cost of class

21 notice in the Settlement Agreement, the Court orders

22 reimbursement by Hyundai.  (See Taggart Decl. in Opp. Atty. Fees,

23 Ex. O at 160, Settlement Agreement.)

24            Plaintiffs seek an additional $55,855.70 in the form of

25 travel costs and costs associated with mediation.  Specifically,

26 plaintiffs seek $30,408.55 in travel costs and $22,257.32 in

27 mediation costs. (Joint Gibbs/Siegel Decl., Ex. F.)  Although

28 plaintiffs have sworn to their prudent travel spending (e.g., no

1  first class flights, $50 meal limit), plaintiffs exerted little

2  effort to substantiate travel costs.  Thus, the Court awards

3  plaintiffs half of their requested travel costs in the amount of

4  $15,204.27.  The Court awards plaintiffs the full amount of

5  requested mediation costs, $22,257.32, because these costs were

6  reasonably necessary to further the goals of the litigation.

7  Thus, the Court awards discretionary costs of $59,386.59.[14]

8                                  V.

9                              **CONCLUSION**

10          Accordingly, and for the foregoing reasons, the Court

11  orders Hyundai to pay to plaintiffs' counsel forthwith

12  $3,719,282.30 in attorneys' fees and $115,471.94 in costs.

13          IT IS SO ORDERED.

14          IT IS FURTHER ORDERED that the Clerk shall serve a copy

15  of this Order on all counsel in this action.

16          DATED:   September 14, 2010.

17

18                              ___ALICEMARIE H. STOTLER___

19                                 ALICEMARIE H. STOTLER
                                   U.S. DISTRICT JUDGE

20

21

22

23

24

25

26  _____

27      [14]  Plaintiffs point out an additional $265,781.79 in costs,
    and agree that they are non-recoverable, but mention them insofar
28  as they bear on plaintiffs' requested lodestar multiplier.

S:\AHS\3NMO\Formal Orders\Parkinson-v-Hyundai.06-345.AttyFees.NMO&AHS.v5.wpd